UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| IN RE: CAPITAL ONE 360 SAVINGS ACCOUNT INTEREST RATE LITIGATION | Case No. 1:24-md-03111-DJN-LRV<br><br>**CONSOLIDATED AMENDED COMPLAINT**<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Scott C. Savett, Jay Sim, Amber Terrell, Angela Uherbelau, Diana Wise, Gwendolyn Wright, Elizabeth Zawacki, Sheryl Barnes, Alessandra Bellantoni, Ayal Brenner, Anthony Guest, Samuel Hans, Ronald Hopkins, Michael Krause, Steve Lenhoff, Jerry Magaña, Seth Martindale, Jennie Meresak, Gregory Mishkin, Andrew Molloy, Jay Nagdimon, Neelima Panchang, Sailesh Panchang, Patrick Perger Jr., Shantell Pitts, Howard Port, and Jane Rossetti (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their counsel, bring this Consolidated Amended Complaint ("Complaint") against Defendants Capital One, N.A. ("CONA") and Capital One Financial Corp. ("COFC") (collectively "Capital One" or "Defendants"), and in support thereof make the allegations herein based upon personal knowledge with respect to themselves, and on information and belief and the investigation of counsel as to all other matters.

Pursuant to the Court's Pretrial Order No. 1 (ECF 6), this Complaint is intended to supersede prior individual pleadings of the member cases in this consolidated multidistrict class action litigation.

## NATURE OF THE ACTION

1.     Since February 2013, Capital One has maintained an online savings account for depositors called "360 Savings." This savings account is the successor to the high-yield online savings account that had been offered by ING Direct USA, which Capital One acquired in 2012. From February 1, 2013 until on or about September 16, 2019, Capital One offered the 360 Savings account to members of the general public, and advertised the 360 Savings account as a "high-interest" and "great rate" savings account, consistent with how ING Direct USA had positioned the product. The rate paid on the 360 Savings account as of September 16, 2019 was 1.00%.

2.     In mid-September 2019, Capital One furtively dropped the 360 Savings account from its website and swapped in a new online savings account with a similar name: "360 Performance Savings," which was from then on advertised as Capital One's "high-yield" online savings account. From the moment it was created, this new 360 Performance Savings account featured a higher interest rate (1.90% APY as of September 2019) than the 360 Savings account (1.00% APY at that same time). There were, and are, no differences between these two accounts other than the slight difference in the names and the *major* difference in the interest rates.

3.     Although Capital One ceased offering the 360 Savings account to new depositors, it continued to maintain that account for existing 360 Savings accountholders, but with a materially lower interest rate. By removing 360 Savings from its website entirely, Capital One concealed that the new 360 Performance Savings was, in fact, a different account and not just another name for the 360 Savings account, and that 360 Performance Savings paid a higher rate of interest than the 360 Savings account. Instead, Capital One left its 360 Savings accountholders in a lower-yield account and hoped that they would not notice.

4.     Starting in March 2020, in response to the pandemic, the Federal Reserve lowered the federal funds rate to zero, and interest rates decreased throughout the economy. As of December 2020, the rate paid on 360 Performance Savings had fallen to 0.40%, and the rate paid on 360 Savings had fallen to an even lower 0.30%. Thereafter, from March 2022 through August 2023, the federal funds rate increased rapidly from 0.08% to 5.33%, and Capital One steadily increased the rate paid on the 360 Performance Savings account to 4.30%. However, Capital One kept the rate paid on the 360 Savings Account at 0.30%.

5.     The 360 Savings Account Disclosures, which contain the "the terms applicable to [customers'] 360 Savings account[s]" to which customers "agree to be bound" by opening or maintaining the account, provide that "interest rates and annual percentage yields are variable and may change at any time at our [*i.e.*, CONA's] discretion." CONA drafted this agreement and selected Virginia contract law to govern its terms. Under Virginia law, a covenant of good faith and fair dealing is implied into this agreement, and provides that CONA must exercise its discretion honestly and in good faith. CONA breached the covenant of good faith and fair dealing by failing to raise interest rates for its 360 Savings accountholders, to whom Capital One had promised a variable "high interest" rate. Instead, as stated above, CONA capped the interest rate for the 360 Savings account and furtively created a new, similar sounding savings account product with a higher yield (i.e., 360 Performance Savings), without informing its current customers. In contrast to the 360 Performance Savings account, CONA has not increased the interest rate for its 360 Savings accountholders in response to market conditions, depriving 360 Savings accountholders of interest payments on their purportedly "high interest" account to which they were entitled pursuant to the covenant of good faith and fair dealing implied in their contract with CONA.

6.     To summarize, Capital One surreptitiously created a duplicate savings account with a similar name, "360 Performance Savings," with no warning to existing customers, and then hid the old account, "360 Savings," by scrubbing it from its website, in the hopes that customers would not realize that they were not being paid the high interest rates previously promised to them. Capital One's bad faith is self-evident under the circumstances. The only explanation for Capital One's conduct is its desire to cheat customers out of interest payments. No rational person would maintain an otherwise identical account that paid materially lower interest absent deception by Capital One.

7.     Capital One's bad faith is also apparent considering that the 360 Performance Savings Account Disclosures contain the exact same language as the 360 Savings Account Disclosures, namely that "interest rates and annual percentage yields are variable and may change at any time at our [i.e., CONA's] discretion." There is no good-faith explanation for why CONA would use its discretion to offer much higher interest rates to 360 Performance Savings customers than to 360 Savings customers, when both accounts have the same discretionary interest rate provision in their Account Disclosures and when both were marketed with the identical characteristic of "high interest" / "high yield."

8.     Capital One's bad faith is further demonstrated by the fact that it buried all references to 360 Savings on the Capital One website (which is operated by both CONA and COFC). Since September 2019, Capital One's website has prominently advertised the interest rate paid on the 360 Performance Savings account—and ***only*** the 360 Performance Savings account—creating the impression that it has been Capital One's sole online savings account product and sole online savings interest rate. Customers who are shopping for interest rates or are otherwise looking for information about Capital One's savings account interest rate via a search

4

engine will find either the "Open an Account" page or the 360 Performance Savings Account page, neither of which mention that another account exists and pays a lower interest rate for customers who opened accounts prior to September 2019. Even searching for "360 Savings" will return results about the 360 Performance Savings account. Moreover, clicking on the "View All Accounts" or "Compare all accounts and rates" option from the Checking & Savings drop-down menu on Capital One's homepage leads to a page that mentions only 360 Performance Savings, and not 360 Savings, meaning it does not actually allow a consumer to view "all" accounts and rates. In fact, consumers cannot navigate to any information about 360 Savings account within Capital One's website.

9.     Capital One was financially motivated to breach the covenant of good faith and fair dealing and to make materially false and misleading statements and/or omissions with respect to the 360 Savings account. For every day that 360 Savings accountholders keep their money in the 360 Savings account and do not discover and switch to the 360 Performance Savings account, Capital One profits from paying less interest to those accountholders than it otherwise would. Capital One was able to report higher profits by underpaying 360 Savings customers for the use of their cash. According to its Forms 10-K filed with the U.S. Securities and Exchange Commission, Capital One earned $27.1 billion in net interest income in 2022, an increase of over 12% from the prior year; and $29.2 billion in net interest income in 2023. Capital One accomplished this increase in profits in part by exercising its discretion unfairly with respect to the interest rate Capital One paid to its 360 Savings customers.

10.     Capital One's conduct caused its 360 Savings accountholders to lose millions of dollars of interest in the aggregate since September 2019, and especially since interest rates began rising rapidly in March of 2022, benefiting Capital One at the expense of its customers.

11.     Plaintiffs bring this case on behalf of themselves and all others who have been Capital One "360 Savings" accountholders since Capital One created the "360 Performance Savings" account. Plaintiffs also seek to represent subclasses from the states in which they are domiciled, as alleged herein.

## THE PARTIES

12.     Plaintiff Dr. Scott C. Savett ("Savett") is a natural person who is a citizen of the United States and who has been domiciled at all relevant times in the Commonwealth of Pennsylvania.

13.     Plaintiff Jay Sim ("Sim") is a natural person who is a citizen of the United States and who has been domiciled at all relevant times in the State of California.

14.     Plaintiff Amber Terrell ("Terrell") is a natural person who is a citizen of the United States and who has been domiciled at all relevant times in the State of Florida.

15.     Plaintiff Angela Uherbelau ("Uherbelau") is a natural person who is a citizen of the United States and who has been domiciled at all relevant times in the State of Oregon.

16.     Plaintiff Diana Wise ("Wise") is a natural person who is a citizen of the United States and who has been domiciled at all relevant times in the State of Illinois.

17.     Plaintiff Gwendolyn Wright ("Wright") is a natural person who is a citizen of the United States and who has been domiciled at all relevant times in the State of New York.

18.     Plaintiff Elizabeth Zawacki ("Zawacki") is a natural person who is a citizen of the United States and who has been domiciled at all relevant times in the State of New Jersey.

19.     Plaintiff Sheryl Barnes ("Barnes") is a natural person who is a citizen of the United States and who has been domiciled at all relevant times in the Commonwealth of Massachusetts.

20.     Plaintiff Alessandra Bellantoni ("Bellantoni") is a natural person who is a citizen of the United States and who has been domiciled at all relevant times in the State of New York.

21.     Plaintiff Ayal Brenner ("Brenner") is a natural person who is a citizen of the United States and who is presently domiciled in the State of Israel. Brenner lived in New York from 2002 until 2016, is registered to vote in New York, and continues to maintain an address in New York. Brenner made at least one deposit into his 360 Savings account while in New York, including on September 28, 2023.

22.     Plaintiff Anthony Guest ("Guest") is a natural person who is a citizen of the United States and who has been domiciled at all relevant times in the State of Michigan.

23.     Plaintiff Samuel Hans ("Hans") is a natural person who is a citizen of the United States and who has been domiciled at all relevant times in the State of Illinois.

24.     Plaintiff Ronald Hopkins ("Hopkins") is a natural person who is a citizen of the United States and who has been domiciled at all relevant times in the State of Texas.

25.     Plaintiff Michael Krause ("Krause") is a natural person who is a citizen of the United States and who has been domiciled at all relevant times in the State of Nebraska.

26.     Plaintiff Steve Lenhoff ("Lenhoff") is a natural person who is a citizen of the United States and who has been domiciled at all relevant times in the State of Delaware.

27.     Plaintiff Jerry Magaña ("Magaña") is a natural person who is a citizen of the United States and who has been domiciled at all relevant times in the State of California.

28.     Plaintiff Seth Martindale ("Martindale") is a natural person who is a citizen of the United States and who has been domiciled at all relevant times in the State of California.

29.     Plaintiff Jennie Meresak ("Meresak") is a natural person who is a citizen of the United States and who has been domiciled at all relevant times in the State of Missouri.

30. Plaintiff Gregory Mishkin ("Mishkin") is a natural person who is a citizen of the United States and who has been domiciled at all relevant times in the State of Georgia.

31. Plaintiff Andrew Molloy ("Molloy") is a natural person who is a citizen of the United States and who has been domiciled at all relevant times in the State of Maryland.

32. Plaintiff Dr. Jay Nagdimon ("Nagdimon") is a natural person who is a citizen of the United States and who has been domiciled at all relevant times in the State of California.

33. Plaintiff Neelima Panchang ("Neelima Panchang") is a natural person who is a citizen of the United States and who has been domiciled at all relevant times in the Commonwealth of Virginia.

34. Plaintiff Sailesh Panchang ("Sailesh Panchang") is a natural person who is a citizen of the United States and who has been domiciled at all relevant times in the Commonwealth of Virginia.

35. Plaintiff Patrick Perger Jr. ("Perger") is a natural person who is a citizen of the United States and who has been domiciled at all relevant times in the State of California.

36. Plaintiff Shantell Pitts ("Pitts") is a natural person who is a citizen of the United States and who has been domiciled at all relevant times in the State of Ohio.

37. Plaintiff Howard Port ("Port") is a natural person who is a citizen of the United States and who has been domiciled at all relevant times in the State of New Jersey.

38. Plaintiff Jane Rossetti ("Rossetti") is a natural person who is a citizen of the United States and who has been domiciled at all relevant times in the State of North Carolina.

39. Plaintiffs have each been 360 Savings accountholders for a period of time between September 2019 and the present, as alleged in further detail herein.

40.     Defendant Capital One, N.A. is a national bank with its principal place of business in McLean, Virginia. Defendant Capital One, N.A. is a wholly-owned subsidiary of Capital One Financial Corporation.

41.     Defendant Capital One Financial Corporation is a holding company incorporated in the State of Delaware with its principal place of business in McLean, Virginia.

## JURISDICTION AND VENUE

42.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), because this action is a class action in which there are 100 or more Class members; the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs; and at least one Plaintiff and member of the Class is a citizen of a state different from Defendants.

43.     This Court has personal jurisdiction over Defendants because Defendants are headquartered in this District and a substantial portion of the acts complained of took place in this District.

44.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants are headquartered in this District and a substantial portion of the acts complained of took place in this District.

## FACTUAL ALLEGATIONS

### I.     Background on High-Interest and High-Yield Savings Accounts

45.     In the context of bank deposit accounts, including savings accounts, interest is the amount of money that the bank pays the depositor for use of the depositor's funds, typically represented as a percentage of the total deposit amount. The annual percentage yield, or APY, is the percentage reflecting the total amount of interest paid on an account based on the interest rate

and frequency of compounding for a 365-day period.[1] Customers can make additional deposits to their savings accounts, and Capital One pays interest on the balances monthly.

46.     A "variable" rate savings account has an interest rate that is subject to change. Capital One's website states regarding its savings accounts that "[i]nterest rates will always fluctuate based on the Fed and the economy, but your Capital One savings account is here to help you save."[2] The federal funds rate, set by the Federal Reserve (the "Fed"), is "the central interest rate in the U.S. financial market. It influences other interest rates such as the prime rate, which is the rate banks charge their customers with higher credit ratings. Additionally, the federal funds rate indirectly influences longer-term interest rates such as mortgages, loans, and savings, all of which are very important to consumer wealth and confidence."[3]

47.     Capital One notes that there is a difference between "traditional" savings accounts and those that are labeled as "high interest" or "high yield." Its website summarizes the answer to the question, "What is a high-yield savings account?" with the answer, "It's all about the interest." Capital One's website further states: "Simply put, a high-yield savings account—sometimes called a high-interest savings account—is a bank account that often has a higher interest rate or annual percentage yield (APY) than a traditional savings account."[4] Capital One's

---

[1] https://www.capitalone.com/bank/money-management/banking-basics/how-to-calculate-savings-interest/ (dated January 25, 2023; last accessed June 28, 2024).
[2] https://www.capitalone.com/help-center/checking-savings/savings-interest-rate-changes/ (last accessed June 28, 2024).
[3] Board of Governors of the Federal Reserve System (US), Federal Funds Effective Rate [FEDFUNDS], retrieved from FRED, Federal Reserve Bank of St. Louis; https://fred.stlouisfed.org/series/FEDFUNDS (last accessed June 28, 2024).
[4] https://www.capitalone.com/bank/money-management/banking-basics/what-is-a-high-yield-savings-account/ (dated April 13, 2022; last accessed June 28, 2024).

website also states: "Online high-yield savings accounts earn higher than average interest on the balance amount."[5]

48.     Capital One's website advises that interest rates on high-yield savings accounts may change in response to the federal funds rate, and may be subject to promotional introductory rates: "[T]he interest rate a bank offers on a high-yield savings account can change. Each bank sets its own interest rates. The Federal Reserve's benchmark interest rate can also change, and that sometimes impacts the interest rate banks offer on a high-yield savings account. That's because the Fed's rates are one of the things that banks use to determine the rates they offer. In addition, interest rates banks offer sometimes change as the result of bank promotions. Sometimes a bank will offer a high rate for a limited period of time. But the rate decreases once the promotion is over. So, it's important to compare both the promo rate and the standard rate when you look at the options offered by different banks."[6]

49.     Savings accounts are designed to hold customer money for relatively longer periods of time. Capital One's own website reflects this reality, confirming that savings accounts are intended for "longer-term" deposits than a checking account.[7] Capital One's website further notes that "over time interest can be a nice cushion to your savings account and help you reach your future savings goals."[8]

50.     Capital One encourages customers to keep money in high-yield savings accounts for extended periods of time, saying on its website: "Once you deposit your money and keep it in

---

[5] https://www.capitalone.com/bank/savings-accounts/online-performance-savings-account/ (accessed Sept. 11, 2023).
[6] *Supra* n.4.
[7] https://www.capitalone.com/learn-grow/money-management/checking-vs-savings-accounts/ (dated August 9, 2022; last accessed June 28, 2024).
[8] https://www.capitalone.com/bank/money-management/banking-basics/how-does-savings-interest-work/ (dated May 18, 2022; last accessed June 28, 2024).

the account, the interest alone will help your savings grow." Capital One's website further advises: "A high-yield savings account can be a safe place to park your hard-earned cash . . . . There are some common things you can do to help your savings grow faster: Put your money into a high-interest savings account and leave it in there to earn interest."[9]

51.     Online savings accounts, as a category, offer significantly higher interest rates than physical branch savings accounts. As Capital One says: "One benefit of most online banks is that they usually don't have the same costs as physical locations. Because of that, they might be able to pass some of their savings to you with lower fees and higher interest savings rates on your deposits. . . . A big difference between online savings vs. traditional savings accounts is how much interest you can earn. Online banks often offer higher interest rates on savings accounts than traditional banks."[10] Consequently, the term "high interest" or "high yield," when applied to an online savings account, is understood to mean that the interest rate is competitive with other online savings accounts.

52.     Based on the foregoing, consumers reasonably expect that savings accounts that are marketed as "high interest" or "high yield" will continue to pay higher than average interest, even if the rate itself varies over time. Capital One does not advise customers, on its website or otherwise, that high-interest or high-yield accounts are subject to being converted into ***non-high-interest*** or ***non-high-yield*** accounts without advance warning.

53.     Capital One's website is operated jointly by Capital One, N.A. and Capital One Financial Corp. The "terms and conditions" on Capital One's webpages pertaining to online banking products "refer to Capital One and its affiliates and related entities as 'we,' 'us' and

---

[9] https://www.capitalone.com/bank/money-management/banking-basics/what-is-a-high-yield-savings-account/ (dated April 13, 2022; last accessed June 28, 2024).
[10] https://www.capitalone.com/bank/money-management/banking-basics/online-banking-vs-traditional-banking/ (dated March 16, 2022; last accessed June 28, 2024).

'our.' This includes Capital One Financial Corporation, Capital One, N.A. and each of their successors, assigns, agents, and representatives." It also states: "The information contained on the Site, including its arrangement, (other than images licensed from third parties), are copyright ©2022 by Capital One Financial Corporation."[11] COFC's 2022 Form 10-K, at 5, states: "We maintain a website at www.capitalone.com." COFC advertises and promotes Capital One online savings accounts via the Capital One website and benefits financially from customers' deposits into those savings accounts. In Note 8 to its 2022 Form 10-K, COFC states: "Our deposits, which include checking accounts, money market deposits, negotiable order of withdrawals, ***savings deposits*** and time deposits, represent our largest source of funding for our assets and operations." (Emphasis added). Deposits with CONA allow COFC to lend money (via, e.g., credit cards) for profit. *See* COFC 2022 Form 10-K at 6 ("Our consolidated total net revenues are derived primarily from lending to consumer and commercial customers net of funding costs associated with our deposits, long-term debt and other borrowings.").

## II.     Capital One Acquires ING Direct and Begins Offering the "360 Savings" Account

54.     On February 17, 2012, Capital One announced that it had purchased ING Direct USA, a subsidiary of the Dutch-owned bank, ING Group. ING Direct USA at that time was offering an online savings account to U.S. consumers (called ING Direct). This ING Direct savings account was categorized as a high-interest account. After the sale was completed, on or around February 1, 2013, ING Direct became "Capital One 360," the online or cyber branch division of Capital One. Consumers who held ING Direct savings accounts thereafter became Capital One "360 Savings" accountholders, and Capital One began selling 360 Savings accounts to the general public. Capital One's February 17, 2012 press release assured depositors that they

---

[11] https://www.capitalone.com/digital/terms-conditions/ (last modified Feb. 27, 2023; last accessed June 28, 2024).

would "experience no changes to account services and functionality" and that "ING Direct will continue to provide the same high quality customer experience, products, account servicing and functionality to its customers."

55.     Each of the Plaintiffs opened online savings accounts initially with ING Direct prior to its acquisition by Capital One. Their ING Direct accounts were converted to Capital One 360 Savings accounts on or about February 1, 2013.

56.     Customers were made aware of the switch from ING Direct to Capital One in account statements ending January 31, 2013, which was the first account statement with Capital One branding, and which said: "Red's the New Orange. We're the Same Awesome. Hey Saver, ING DIRECT's officially Capital One 360. New red and blue, yes, but everything you've grown to love about us - like eStatements - stays just the same. You'll find everything you need right here, as usual, to easily track your January transactions. It's just part of our ongoing commitment to help you save time and money. Some things never change."

57.     Contemporaneously with the integration and rebranding of ING Direct into Capital One 360, Capital One made statements intended to assure customers that the nature of their ING Direct savings accounts as high-interest accounts would not be changing, and that the 360 Savings account would feature a competitive, high interest rate, like the ING Direct savings account had done.

   a.   On or about April 24, 2013, Capital One had the following on the "Our History" tab of its online banking website: "Way back in 2000, we set out to build a different kind of bank – one focused on helping our Customers save time & money. We did this by offering simple financial products, giving Savers fee-free checking and savings that they could access from their personal computer. Back

then, we were known as this little thing called ING DIRECT USA, and we quickly grew to become the largest direct bank in the country. In 2012, we were acquired by Capital One; and in 2013, we transitioned our ING DIRECT Brand to Capital One 360 – fueled by the same commitment of saving Customers time and money. The name and logo you see today symbolize that we've come full-circle, with a new family, and the same passion. We're excited about our future, and we're committed to helping you save for yours."[12]

b.   On or about May 8, 2013, Capital One issued a "pledge" to customers, saying, among other things: "What's Capital One 360 all about? We'll deliver real value. We'll continue to be home to no-fee, no-minimum checking and saving accounts—***with the great rates that we know are important to you***."[13]

c.   On or about January 22, 2014, Capital One posted a "press kit" on its website regarding its 360 Savings Account, and the first line read as follows: "***High interest***, no fees, no service charges, no kidding. With a 360 Savings, you earn a ***competitive rate*** with a level of flexibility, freedom, and security you simply won't find at other banks."[14]

---

[12] https://home.capitalone360.com/about-us/who-we-are/our-history (accessed on June 15, 2023 via Wayback Machine at URL https://web.archive.org/web/20130424010504/https://home.capitalone360.com/about-us/who-we-are/our-history) (emphasis added).

[13] https://home.capitalone360.com/capitalone/pledge (accessed on June 15, 2023 via Wayback Machine at URL https://web.archive.org/web/20130508064426/https:/home.capitalone360.com/capitalone/pledge) (emphasis added).

[14] https://home.capitalone360.com/downloads/press-kit-360-savings.pdf (accessed on June 15, 2023 via Wayback Machine at URL https://web.archive.org/web/20140122080321/https://home.capitalone360.com/downloads/press-kit-360-savings.pdf) (emphasis added).

58.     The 360 Savings Account Disclosures (available on Capital One's website) contain "the terms applicable to your 360 Savings account," to which customers "agree to be bound" whenever they "submit an application, open an account, or use [Capital One's] services." The 360 Savings Account Disclosures provide that "[t]he interest rates and annual percentage yields are variable and may change at any time at our [i.e., CONA's] discretion."[15]

59.     The 360 Savings Account Disclosures are made on behalf of Capital One, N.A., and state that for purposes thereof, "[t]he words 'our,' 'us,' 'we,' 'Capital One,' and 'bank' mean Capital One, N.A."[16]

60.     Capital One, N.A. drafted the 360 Savings Account Disclosures and provided therein that 360 Savings "accounts are subject to both federal law and the laws of the state of Virginia."

61.     Capital One advertised its 360 Savings account as featuring "high interest" or a "great rate" for over six years, from at least April 2013 through September 2019. For example:

---

[15] Accessible at https://www.capitalone.com/bank/disclosures/savings-accounts/online-savings-account/ (accessed on July 1, 2024).

[16] *Id.*

**April 24, 2013**[17]



---

[17] https://home.capitalone360.com/online-savings-account (accessed June 15, 2023 via Wayback Machine at URL https://web.archive.org/web/20130424015814/https://home.capitalone360.com/online-savings-account).

**July 8, 2016**[18]

## Challenge everything you'd expect from a savings account.

No Fees  |  Great everyday interest rate  |  Real people at **1-800-289-1992**

Open Now

| What's 360 Savings? | Savings Tools | Deposits | Ratings & Reviews |

### 360 Savings® — the online savings account from Capital One 360®.

We've challenged what it means to be a savings account by building one that's better for your money – and we deliver better, every single day. Here's what that means for you:

- **No fees and no minimums:** No fees and no minimum balance required to open or keep an account.
- **A high interest savings account:** Earn a great everyday interest rate on your money – currently 0.75% APY.
- **Real people to help when you need it:** Chat with a real person at **1-800-289-1992** and enjoy 24/7 online and mobile access to your account.
- **Easy ways to stash cash:** Open multiple savings accounts (and nickname them as you wish), keep track with My Savings Goals and put your money on auto-pilot with an Automatic Savings Plan.
- **We have your back:** Your deposits are FDIC–insured up to $250,000 per depositor.
- **Deposit checks in a snap:** Deposit checks from anywhere using your mobile smartphone or computer with Mobile Deposit.

Open Now

### Ratings & Reviews

Check out what Customers are saying about 360 Savings.

### Learn More

View a short demo.
Check out our guide.

### Track Great Saves

Keep your eye on the prize with
My Savings Goals.

**WATCH YOUR SAVINGS GROW**

## 0.75%

---

[18] https://home.capitalone360.com/online-savings-account (accessed June 15, 2023 via Wayback Machine at URL https://web.archive.org/web/20160708101036/https://home.capitalone360.com/online-savings-account).

**September 1, 2019**[19]

## What's a 360 Savings® account?

A fee-free online savings account with a great rate for any savings balance.

**1.00**% Annual Percentage Yield
A great rate for any savings balance

**Fee-Free**
No monthly fees to keep your account going

**$0**
To open or keep the account

Why 360 Savings?   Rates   Account Details   Mobile Banking   Locations & ATMs   Customer Reviews

### Say yes to the future with 360 Savings.

Your savings will be right there with you.



**Great Rate**
Save at your own pace while earning 1.00% APY on your savings account balance.



**FDIC-Insured**
Keep your savings secure with FDIC Insurance up to allowable limits.



**Top Rated Mobile App**
Deposit checks from the couch and check your balance on-the-go with secure mobile banking.

## II.    Capital One Creates the Higher-Yield "360 Performance Savings" Account Without Informing 360 Savings Accountholders

62.     The federal funds rate, and bank deposit interest rates generally, were very low between 2008 and 2017. In January 2017, the federal funds effective rate was 0.65%. Between January 2017 and January 2018, the federal funds effective rate increased gradually to 1.41% due to rate increases implemented by the Federal Reserve. In January 2018, in the midst of this rising

---

[19] https://www.capitalone.com/bank/savings-accounts/online-savings-account/ (accessed June 15, 2023 via Wayback Machine at https://web.archive.org/web/20190901043647/https://www.capitalone.com/bank/savings-accounts/online-savings-account/).

interest rate environment, Capital One increased the rate on the 360 Savings account from 0.75% to 1.00%.

63.     Capital One would never raise the interest rate on 360 Savings again. Instead, on or around September 16, 2019, Capital One introduced a new online savings account: the similarly named "Capital One 360 Performance Savings" account.[20] At the same time, Capital One removed references to the 360 Savings account from the page on its website that listed its savings account products, even though 360 Savings still existed as a separate product. On **September 17, 2019**, Capital One's website showed 360 Savings as its non-retirement online savings account product.[21]

## Compare savings accounts.





---

[20] https://www.capitalone.com/bank/savings-accounts/online-performance-savings-account/ (accessed on June 15, 2023 via Wayback Machine at URL https://web.archive.org/web/20190916153024/https://www.capitalone.com/bank/savings-accounts/online-performance-savings-account/ ).

[21] https://www.capitalone.com/bank/open-an-account/ (accessed on June 15, 2023 via Wayback Machine at URL https://web.archive.org/web/20190917195820/https://www.capitalone.com/bank/open-an-account/).

However, the next day, on **September 18, 2019**, Capital One's website dropped the reference to 360 Savings and instead showed 360 Performance Savings as its non-retirement online savings account product (with no explanation that this was a different account from 360 Savings).[22]

## Compare savings accounts.





64.     As shown above, when it was introduced, the new 360 Performance Savings account featured a 1.90% APY. At that same time, the APY on the 360 Savings account remained at 1.00%. Thus, instead of raising the 360 Savings rate to 1.90%, Capital One created 360 Performance Savings with a 1.90% APY but kept the 360 Savings rate at 1.00% (at the time). The 360 Performance Savings account has continued to have a significantly higher interest rate than 360 Savings, at every moment from its creation on or about September 16, 2019 to the present day.

---

[22] https://www.capitalone.com/bank/open-an-account/ (accessed on June 15, 2023 via Wayback Machine at URL https://web.archive.org/web/20190918192359/https://www.capitalone.com/bank/open-an-account/).

65.     Capital One buried all references to 360 Savings on its website and thereby concealed that 360 Performance Savings was in fact a different product, and not just a new name for the existing 360 Savings product. Capital One did not warn 360 Savings accountholders about the creation or existence of the 360 Performance Savings account, or that the 360 Performance Savings account offered a higher APY than the 360 Savings account. Plaintiffs' monthly statements did not state that Capital One had introduced the 360 Performance savings product with a better APY.

66.     Capital One was financially motivated to not inform 360 Savings accountholders that the new 360 Performance Savings account was available to them. For every day that 360 Savings accountholders keep their money in the 360 Savings account and do not discover and switch to the 360 Performance Savings account, Capital One profits from paying less interest to those accountholders than it otherwise would.

### III.    Capital One Freezes Rates on the 360 Savings Account but Raises Rates on the 360 Performance Savings Account

67.     After creating the 360 Performance Savings account, Capital One did not exercise its contractual discretion in good faith to adjust the variable interest rate for the 360 Savings account. Instead, from October 2019 through December 2020, Capital One dropped the rate paid on 360 Savings from 1.00% APY to 0.30% APY and then froze that rate at 0.30% from December 2020 to the present, notwithstanding material increases in the federal funds rate and the rate paid on the 360 Performance Savings account.

68.     For example, as of August 2023, the federal funds rate was 5.33%, the rate paid on 360 Savings remained 0.30%, and the rate paid on 360 Performance Savings had increased to 4.30%.

69.     The following graph shows the Federal Funds effective rate (gray), the rates on

360 Savings (blue), and the rates on 360 Performance Savings (red) over time[23]:



70.     As shown in the chart above, Capital One has raised interest rates on the 360

Performance Savings account in response to market conditions, but has kept interest rates on the

360 Savings account fixed. Since approximately December 2020, the 360 Savings account has

---

[23] Federal Funds rate data taken from St. Louis Fed, accessible at
https://fred.stlouisfed.org/series/FEDFUNDS. Rate data for 360 Savings taken from Plaintiffs' account
statements. Rate data for 360 Performance Savings taken from Capital One's website, where available,
supplemented by promotions on DepositAccounts.com (https://www.depositaccounts.com/savings/),
accessed via Wayback Machine, as well as account statements. Rates are approximate because they may
change at different points during the month.

maintained an interest rate of 0.30%, which, in contrast to the 360 Performance Savings rate, has not changed in response to rising market interest rates.

71.     Prior to 2013, the interest rates on ING Direct savings accounts fluctuated over time. After Capital One took over those accounts and converted them into 360 Savings accounts, Capital One raised the interest rate in 2017 in response to changing market conditions. This course of conduct is consistent with customers' reasonable expectation that the variable rate on their 360 Savings accounts would change over time but would still possess the fundamental advertised "high interest"/"high yield" characteristic. Moreover, the newer 360 Performance Savings account also states that it is a variable "high yield" account,[24] and the rate on that account has changed repeatedly (both down and up) since its inception in 2019. However, Capital One has not changed the rate on the 360 Savings account since 2020.

72.     The 360 Performance Savings Account Disclosures contain the exact same language as the 360 Savings Account Disclosures, namely that "interest rates and annual percentage yields are variable and may change at any time at our [i.e., Capital One's] discretion."[25] There is no good faith explanation for why CONA would use its discretion to offer much higher interest rates to 360 Performance Savings customers than to 360 Savings customers, when both accounts have the same discretionary interest rate provision in their Account Disclosures and when both were marketed with the identical characteristic of "high interest" / "high yield."

73.     As alleged above, Capital One positioned its 360 Savings account as its high-interest online savings account offering. After interest rates rose, instead of exercising its discretion in good faith to raise rates for 360 Savings accountholders, Capital One instead

---

[24] *Supra* n.5.
[25] https://www.capitalone.com/bank/disclosures/savings-accounts/online-performance-savings-account/

created a new, but materially identical account, with a similar name, and concealed from current customers that Capital One had changed the nature of the 360 Savings account product at its customers' expense. Capital One did so to take advantage of customers who used their 360 Savings account to—in Capital One's words—"park" their "longer-term" cash holding and "leave it in there," in an account that Capital One had previously promised would pay a variable "High Interest" rate.

74.     As alleged above, Capital One promoted the 360 Savings account as paying "High Interest," and similarly promotes the 360 Performance Savings account as paying a "High Yield." There is no difference between these two terms—as Capital One acknowledges on its website, "High Interest" and "High Yield" mean the same thing.[26] Capital One thus acknowledges the contradictions in its conduct by emphasizing that currently it pays "High Yield" on its 360 Performance Savings account, whereas previously it had committed to pay "High Interest" on the 360 Savings account—two terms that mean the same thing, but used with respect to accounts that currently pay materially different interest rates. The 360 Savings account is in fact no longer "high interest" or "high yield."

75.     Since September 2019, Capital One's website has mentioned only the 360 Performance Savings account and not the 360 Savings account. The "View All Accounts" option from the Checking & Savings drop-down menu on Capital One's homepage leads to a page that mentions only 360 Performance Savings, and not 360 Savings. Consumers cannot navigate to any information about the 360 Savings account within Capital One's website.

76.     Even current accountholders who log in to their accounts on Capital One's website cannot find information showing that 360 Savings and 360 Performance Savings are two

---

[26] https://www.capitalone.com/bank/money-management/banking-basics/what-is-a-high-yield-savings-account/ (dated April 13, 2022; last accessed June 28, 2024).

different accounts. As alleged above, 360 Savings and 360 Performance Savings are online savings account products, which Capital One intends customers to access and use online via a web browser or similar means. When existing customers log on, they are taken to a landing page that shows the account balance and interest paid for each of their accounts, but does not show the interest rate or APY.

77.     360 Savings accountholders must log in to their accounts in order to obtain their account statements. Customers exercising reasonable and ordinary diligence have no particular reason to review their account statements at any particular time, both because savings accounts are marketed and generally used as a place for them to "park" their money, and because information about their online account balances is readily available on the landing page when customers log in. The account statements, if an accountholder happens to view them, show the APY earned for each account in small print under the name of the account and before the transaction history; but seeing this information still does not inform customers that there are two different savings account products, because nowhere are the products differentiated on Capital One's website. Instead, the APY on the account statements leads to confusion because it differs from the only savings account APY figure marketed on Capital One's website. Again, for every day that this deception persists and 360 Savings accountholders do not discover and switch to the 360 Performance Savings account, Capital One profits from paying less interest to those accountholders.

78.     Only 360 Savings accountholders who contacted Capital One after noticing discrepancies between the rates they were receiving and the rates Capital One was advertising were told by Capital One representatives that 360 Performance Savings was a new account and that to obtain the 360 Performance Savings rate, customers would need to close their 360

Savings account and open a 360 Performance Savings account. This information was completely absent from Capital One's website and was never otherwise communicated to 360 Savings accountholders.

79.     As explained in further detail below, Capital One's conduct has caused each of the Plaintiffs to lose out on interest payments proportionate to their account balances since September 2019, compared to what they each would have received had Capital One adjusted the 360 Savings interest rate in good faith, commcusensurate with the 360 Performance Savings rate.

### IV.     360 Savings Accountholders React to Capital One's Conduct

80.     Plaintiffs were entitled to interest rates determined by Capital One's exercise of honest and good faith discretion. By failing to raise rates on the 360 Savings account and instead furtively creating a new savings account product, Capital One acted deceptively, dishonestly, and unfairly. In so doing, Capital One breached its contract with Plaintiffs and violated consumer protection statutes and/or common law as further alleged herein.

81.     There is no reason why anyone would choose the 360 Savings account over the 360 Performance Savings account. The products are identical except for the interest rate.

82.     After the filing of the first member action in this consolidated multidistrict litigation (*Savett v. Capital One, N.A. and Capital One Financial Corp.*, Case No. 1:23-cv-00890-RDA-JFA (E.D. Va.)), on January 21, 2024, an article appeared in *The Wall Street Journal* that described Capital One's deceptive scheme to cheat its 360 Savings accountholders out of good-faith interest payments.[27] Since then, over a hundred 360 Savings accountholders from across the country have reached out to Plaintiffs' counsel.

---

[27] Rachel Louise Ensign, *They Thought Their Money Was in High-Interest Accounts—They Got Paid Peanuts*, WALL ST. J., Jan. 21, 2024.

27

83.    Each of the Plaintiffs herein had a 360 Savings account for some period of time following Capital One's creation of the 360 Performance Savings account in or around September 2019. The 360 Performance Savings account has always had a higher interest rate than the 360 Savings account. Consequently, each one of them lost money in the form of interest payments that they should have received had Capital One acted honestly and in good faith.

84.    Plaintiff Savett has been a 360 Savings accountholder since on or about February 1, 2013, when his ING Direct savings account was converted to a 360 Savings account. Since 2015, Dr. Savett's 360 Savings account has grown from approximately $1,000 to approximately $8,000 due primarily to recurring monthly transfers from another of Dr. Savett's bank accounts. Between September 2019 and May 2023, Dr. Savett received $79.92 in interest on his 360 Savings account. Had his account featured an APY commensurate with the newer 360 Performance Savings account, he would have received approximately $302.31 in interest during this time period. Accordingly, Dr. Savett alone has lost over two hundred dollars ($200) in interest payments that he would have received had Capital One exercised its interest rate discretion in good faith, commensurate with the 360 Performance Savings account. After discovering that he was not being paid Capital One's advertised rate, Dr. Savett transferred his funds to a 360 Performance Savings account, aside from a small amount to preserve access to information.

85.    Plaintiff Sim opened a high-yield savings account offered by ING Direct USA in or around 2005, that was converted to a 360 Savings account in or around February 2013 when it was acquired by Capital One. Sim relied on representations and promises that the account was a "high-interest" savings account with "great rate" savings. As such, Sim always kept a balance in

his account in order to accrue the "high interest" that was promised. Sim's account remained open as of the filing of his complaint.

86.     Plaintiff Terrell had an ING Direct online savings account, which she continued to use after it was converted to a Capital One 360 Savings account. When interest rates were rising throughout 2023, she checked Capital One's website and assumed she was being paid the rate advertised there, since the website mentioned only one savings account. However, she could not understand why she was earning so little interest, and so in or around November 2023, Terrell called Capital One to inquire about the issue. Capital One informed Terrell that she had a "legacy" account and that only the 360 Performance Savings account earned the rate that was advertised on Capital One's website. Terrell informed Capital One that she felt she had been deceived and demanded restitution. The Capital One representative with whom she spoke gave her a mailing address if she wanted to submit a complaint to the bank, but otherwise refused to offer any redress.

87.     Plaintiff Uherbelau had an ING Direct online savings account, which she continued to use after it was converted to a Capital One 360 Savings account. Over the years, she opened additional savings accounts with Capital One. She would check Capital One's main website pages to determine the interest rate Capital One was offering, believing the published rate automatically applied to her accounts, as Capital One only listed one kind of savings account product. In or around February 2024, she discovered that none of her legacy accounts were paying Capital One's advertised rate, aside from one she opened in September 2023. She then deliberately opened a new 360 Performance Savings account to capture the advertised rate, but because of Capital One's dishonest practices, plans to move all of her funds to another bank, aside from a small amount to preserve access to information.

88.     Plaintiff Wise opened a 360 Savings account in or around January 2019. Wise relied on representations and promises that the account was a "high interest" savings account with "great rate" savings. As such, Wise always kept a balance in her account in order to accrue the "high interest" that was promised. Wise's accounts remained open as of the filing of her complaint.

89.     Plaintiff Wright had an ING Direct online savings account, which she continued to use after it was converted to a Capital One 360 Savings account. In or around December 2023, she called Capital One after realizing that her account was not earning a competitive interest rate commensurate with Capital One's advertised rate. Capital One informed her that her account had been "grandfathered." She immediately opened and moved most of her funds to a 360 Performance Savings account, leaving a small amount in her 360 Savings account to preserve access to information.

90.     Plaintiff Zawacki had an ING Direct online savings account, which she continued to use after it was converted to a Capital One 360 Savings account. She called Capital One in or around December 2023 to inquire as to why she was not receiving Capital One's advertised interest rate for online savings accounts and to demand that Capital One reimburse her for the unpaid interest. Capital One denied Zawacki's reimbursement request and informed Zawacki that 360 Savings accounts had been "grandfathered." Zawacki moved almost all of her money to a 360 Performance Savings account in January 2024. Zawacki kept her 360 Saving account open to preserve access to information.

91.     Plaintiff Barnes was a 360 Savings accountholder beginning on or about February 1, 2013, when her two ING Direct savings accounts were converted to 360 Savings accounts. She used those account over the years, and added substantial funds to them between 2020 and

30

2023. After Barnes called Capital One to inquire as to why she was not receiving Capital One's advertised rates for online savings accounts, Capital One closed her two 360 Savings accounts and transferred the funds therein to two new 360 Performance Savings accounts in April 2023, at Barnes's direction. It is estimated that Plaintiff Barnes lost over eight thousand dollars ($8,000) in interest payments that she would have received had Capital One exercised its interest rate discretion in good faith, commensurate with the 360 Performance Savings account.

92.     Plaintiff Bellantoni opened a 360 Savings account offered by ING Direct USA in or around July 2001, which was converted to a 360 Savings account in or around February 2012 when it was acquired by Capital One. Bellantoni relied on representations and promises that the account was a "high interest" savings account with "great rate" savings. As such, Bellantoni always kept a balance in her account in order to accrue the "high interest" that was promised. Bellantoni's account remained open as of the filing of her complaint.

93.     Plaintiff Brenner had an ING Direct online savings account in New York, which he continued to use after it was converted to a Capital One 360 Savings account. As interest rates were rising in recent years, he transferred money to the account believing that it was still a variable interest rate account tied to the national rates. In addition, he searched online to see how his Capital One 360 Savings Account compared to other accounts, which led him to the Capital One website, which indicated (as alleged above) that Capital One had only one savings account with a competitive rate. Based on this he made numerous deposits as rates were rising, include a deposit made into his 360 Savings account while in New York on September 28, 2023. Brenner read *The Wall Street Journal* article on or about January 20, 2024 and was furious to learn about Capital One's deceptive and unfair conduct. He moved almost all of his money out of his 360

Savings account, but kept the account open with a nominal balance to preserve access to information.

94.     Plaintiff Guest initially opened an online savings account with ING Direct, which he continued to use after the accounts were converted to Capital One 360 Savings accounts. In or around May 2024, he learned that his account was not paying Capital One's advertised rates, and converted it to a 360 Performance Savings account that paid higher interest rates.

95.     Plaintiff Hans has been a 360 Savings accountholder since on or about February 1, 2013, when his ING Direct savings account was converted to a 360 Savings account. Hans used the account as an emergency savings fund and contributed money to it over the years. As a result of Capital One's failure to adjust the interest rate associated with his 360 Savings account in good faith, Plaintiff Hans lost approximately one thousand dollars ($1,000) in interest payments.

      a.  Hans called Capital One in April 2023 to inquire as to why he was not receiving Capital One's advertised interest rate for online savings accounts and to demand that Capital One reimburse him for the unpaid interest. When Hans notified the Capital One representative that he had a 360 Savings account, the representative placed Hans on hold; when she returned, she stated that it was the responsibility of accountholders to ensure they are earning the highest possible interest rates on their savings accounts and refused to reimburse Hans for lost interest.

      b.  Hans emailed Capital One in May 2023 to again demand restitution. In response, Capital One wrote: "Our research shows that you're requesting backdated interest to your 360 Savings account, to match what you would've earned in the 360 Performance Savings account. You also are seeking clarity as to why you weren't

notified of this new product, and rate change. We currently don't send proactive notifications about every rate change that occurs, but you can keep track of your current rates and any recent changes by signing in to the Capital One website or mobile app. We also currently don't offer crediting of additional backdated interest when funds are moved to a product earning a higher rate. You can view rates for all our current 360 product offerings at www.capitalone.com by going to the 'Checking & Savings' tab at the top of the page and selecting 'View & Compare Rates.'" This last claim by Capital One is false, because the "View & Compare Rates" webpage only shows the 360 Performance Savings rate, and does not show the 360 Savings rate (or even any indication that it still exists as a separate product).

c.   Hans replied to Capital One's email and explained how its conduct was unfair and dishonest, writing: "Since there is no information about the 360 Savings Account on your website and since I did not know I was not in the 360 Performance Savings Account how can I compare the features and benefits. . . . I don't expect Capital One to notify me every time the interest rate changes. I do expect Capital One to not keep me in a low interest rate earning savings account while publicly advertising a similar sounding savings account with a significantly higher earned rate of interest. I frequently went to the website to check what the earned interest rate was on the sole savings account listed on your website. How was I supposed to know that you had other products that you no longer advertised. It is a reasonable assumption that since there was only one savings account product listed on the website and that one savings account had a similar sounding name,

33

that was the product my money was in. Having an account named '360 Savings Account' vs '360 Performance Savings Account' with significantly different earned interest rates with no distinct features has no rational basis other than to mislead and deceive customers into thinking they are receiving the higher rate of interest earned. Keeping existing customers in the '360 Saving Account' while advertising the higher interest rate of '360 Performance Savings Account' and not notify customers that these are different products and not providing a comparison of the products on your website is further evidence that Capital One intended to deceive customers. The fact that both customer service workers I spoke with immediately changed their tone when I asked questions about the difference in these accounts and refused to answer questions while reading from a corporate prepared script suggest that Capital One is aware of this deceit and is actively trying to manage its risk for customers that are similarly situated like me. The difference in these two accounts is intended to mislead the customer. No reasonable customer should be required to see through this deceptive practice and the difference in the rate of interest earned on the accounts is a material difference." Although Hans's email also asked follow-up questions, Capital One did not respond to it.

d.  Hans also filed a complaint with the Consumer Financial Protection Bureau on or about August 24, 2023. In response, Capital One repeated that it does not send "proactive notifications about every rate change that occurs," but also added that, "[w]e confirmed, as of September 2019 the 360 Savings product was grandfathered."

96.     Plaintiff Hopkins initially opened an online savings account with ING Direct, which he continued to use after it was converted to a Capital One 360 Savings account. In or around November 2022, Hopkins called Capital One to ask why his 360 Savings account had a different interest rate from the 360 Performance Savings account. Capital One advised him that it no longer supported the 360 Savings product and that he should close the 360 Savings account and open another 360 Performance Savings account, which he did.

97.     Plaintiff Krause initially opened several online savings accounts with ING Direct, which he continued to use after the accounts were converted to Capital One 360 Savings accounts. In or around March 2024, he learned that his accounts were not paying Capital One's advertised rates, and he called Capital One to convert his accounts from 360 Savings accounts to 360 Performance Savings accounts that paid higher interest rates.

98.     Plaintiff Lenhoff initially opened an online savings account with ING Direct, which he continued to use after it was converted to a Capital One 360 Savings account. In or around April 2024, he learned that his account was not paying Capital One's advertised rates, and he called Capital One to ask why his 360 Savings account had a different interest rate from the rate offered by the 360 Performance Savings account. Capital One told Lenhoff that they needed his authorization to convert his 360 Savings account to a 360 Performance Savings account in order for him to receive the higher rate of interest offered. Thereafter, Lenhoff converted his account from a 360 Savings account to a 360 Performance Savings account.

99.     Plaintiff Magaña initially opened an online savings account with ING Direct, which he continued to use after it was converted to a Capital One 360 Savings account. In or around May of 2023, he removed nearly all of his funds from his 360 Savings account and

placed it in a higher yielding account. Magaña left a nominal amount in his 360 Savings account to preserve access to information.

100.     Plaintiff Martindale initially opened an online savings account with ING Direct, which he continued to use after it was converted to a Capital One 360 Savings account. Martindale called Capital One in or around fall of 2022 to inquire as to why he was not receiving Capital One's advertised interest rate for online savings accounts and to demand that Capital One reimburse him for the unpaid interest. The Capital One representative informed Martindale that, at some point, Capital One moved everyone over to old antiquated accounts, which he had, and that anyone who opened a new account from that point on was paid a high interest rate. The Capital One representative further admitted that Capital One did not notify anyone of its conduct. After this call, Martindale closed his 360 Savings accounts and moved his money to savings accounts that paid a higher interest rate at a different bank.

101.     Plaintiff Meresak initially opened an online savings account with ING Direct, which she continued to use after it was converted to a Capital One 360 Savings account. Plaintiff Meresak opened the online savings account with ING Direct specifically because it was a high interest account compared to other accounts available at the time and was advertised as such. At the time the account was converted to a Capital One 360 Savings account, the interest rates that were offered were high compared to the market for interest rates, but were later reduced by Capital One by March 2024 to extremely low interest rates compared to the market. In or around March 2024, she learned that her account had effectively been turned into a low interest account, and that the account was not paying Capital One's advertised rates, and converted it to a 360 Performance Savings account that paid higher interest rates. Thus, Capital One converted Meresak's account from a "high interest" account to what was effectively a low interest account,

at a time when market interest rates were rising, allowing Capital One to take advantage of the rise in market interest rates, while denying Meresak the benefit of her prior decision to utilize and to continue to maintain her funds in a "high interest" account.

102.    Plaintiff Mishkin initially opened an online savings account with ING Direct, which he continued to use after it was converted to a Capital One 360 Savings account. Over the years, he opened additional accounts, and would check Capital One's website monthly to determine the interest rate Capital One was offering on its savings accounts. In or around November 2023, after discovering that he was not being paid Capital One's advertised rate, Mishkin called Capital One to demand restitution of unpaid interest. Capital One refused Mishkin's demand. Mishkin has since moved his funds to a different bank.

103.    Plaintiff Molloy initially opened an online savings account with ING Direct, which he continued to use after it was converted to a Capital One 360 Savings account. In or around October 2022, Molloy called Capital One to inquire as to why he was not receiving Capital One's advertised savings account interest rate, and to demand that Capital One reimburse him for the unpaid interest. Capital One informed Molloy that 360 Savings accounts were "legacy" accounts and that Capital One was no longer updating that account product, and refused his request for compensation. Molloy moved almost all of his money to a new 360 Performance Savings account but maintained a small balance in his existing 360 Savings account to preserve access to information.

104.    Plaintiff Nagdimon initially opened an online savings account with ING Direct, which he continued to use after it was converted to a Capital One 360 Savings account. Dr. Nagdimon also opened other accounts with ING and also directly with Capital One, totaling over 20 accounts combined. In December of 2022, he called Capital One with a request for banking

assistance. In discussing changes to his accounts, he was told that the Capital One Performance 360 account paid much higher interest than what he was currently receiving. It was at that time Dr. Nagdimon realized that all of his accounts were legacy accounts and not earning the same rate as the Capital One Performance savings account.

105.    Plaintiffs Neelima and Sailesh Panchang initially opened a joint online savings account with ING Direct, which they continued to use jointly after the account was converted to a Capital One 360 Savings account. In or around January 2024, Sailesh Panchang contacted Capital One via phone regarding the interest rate he and his wife were earning on their 360 Savings account and to demand restitution. The Capital One representative with whom Sailesh spoke refused to provide restitution and advised Sailesh to open a 360 Performance Savings account, which he did. Sailesh moved almost all of his funds from the 360 Savings account to a new 360 Performance Savings account. Sailesh kept a nominal amount of funds in the 360 Savings account to preserve access to information and the account details.

106.    Plaintiff Perger initially opened an online savings account with ING Direct, which he continued to use after it was converted to a Capital One 360 Savings account. In or around March 2023, he contacted Capital One via phone regarding the interest he was earning on his 360 Savings accounts. He was told that he needed to open 360 Performance Savings accounts to receive Capital One's advertised interest rate, which he did. Capital One did not reimburse him for the higher interest he missed out on.

107.    Plaintiff Pitts opened two 360 Savings accounts in or around June 2017. In or around February 2019, Pitts opened a third 360 Savings account. Pitts relied on representations and promises that the account was a "high interest" savings account with "great rate" savings. As

such, Pitts always kept a balance in her account in order to accrue the "high interest" that was promised. Pitts's accounts remained open as of the filing of her complaint.

108.    Plaintiff Port first acquired his savings account at Capital One when Capital One purchased ING in 2012 and converted his ING savings account to a Capital One 360 Savings account. Mr. Port held this Capital One 360 Savings account continuously through February 2023. Plaintiff Port noticed a market-wide increase in interest rates in the fall of 2022 and decided to take a closer look at the interest rate on his savings account. He could only see the Capital One 360 Performance Savings account on www.capitalone.com, which had a listed rate that was competitive with the market but appeared to be much higher than the rate he was receiving on his savings account. In or around November or December of 2022, Plaintiff Port called Capital One's customer service line and spoke with a representative. He inquired about the discrepancy between the interest rate represented on the website and the interest rate on his account. The representative informed Plaintiff Port that Capital One had instituted a new high-yield savings account—i.e., 360 Performance Savings—to provide market-competitive rates. This phone call marked the first time Plaintiff Port became aware of the 360 Performance Savings account and that the 360 Savings account, the account type where he kept his funds, no longer offered competitive rates. Plaintiff Port quickly began transferring funds away from his 360 Savings account to another bank. All of his funds were removed from Capital One by the end of February 2023. Plaintiff Port maintained an account at Capital One for approximately 11 years because 360 Savings was represented as a market-competitive high-yield savings account. Plaintiff Port had no reason to suspect that Capital One unilaterally created a new high-yield savings account without any notice or warning to 360 Savings accountholders that the

introduction of the 360 Performance Savings account would mean a silent phasing out of their accounts.

109.    Plaintiff Rossetti initially opened an online savings account with ING Direct, which she continued to use after it was converted to a Capital One 360 Savings account. She read *The Wall Street Journal* article on or about January 20, 2024 and was shocked to learn about Capital One's deceptive and unfair conduct. Realizing that her account was paying only 0.3%, she immediately opened a 360 Performance Savings account and transferred her funds to it.

110.    Capital One's conduct has been widely panned as dishonest and unfair. Complaints from consumers regarding Capital One's practices abound on the Internet, and even savvy consumers who follow and post on personal finance blogs were surprised by Capital One's conduct with respect to its savings accounts.

111.    On October 24, 2019, a personal finance YouTuber posted a video alerting followers of her "Freedom in a Budget" channel to the existence of the new 360 Performance Savings account and to the fact that existing Capital One customers would have to open a new account and move their money in order to take advantage of Capital One's high yield savings account rate.[28] She further said: "I wish that they had automatically just transferred everyone to the Performance Savings, I mean, why wouldn't you want it? There's no other benefits that the old one had that this one doesn't, so you're getting more interest. So, to me, I don't know, I feel like it's, I don't want to say shady, but just come on, like seriously Capital One, you're making everyone transfer it over rather than just bumping it up?"

---

[28] https://www.youtube.com/watch?v=ACpLVLwMznI (dated October 24, 2019; last accessed June 28, 2024).

112.     Writers on the Bogleheads personal finance forum have taken note of Capital One's conduct. One thread beginning on June 17, 2020 is entitled "Capital One is at it again."[29]

a.  A post on June 18, 2020 reads: "Nobody is saying a savings account should have a fixed rate. Rates are dropping, we get that. What's shady is when Capital One, CIT, and others create a new type of account, and only the new one has a competitive rate, while rates on existing accounts become uncompetitive. When you add the lack of notification about rate changes and difficulty of seeing the actual rate (both in contrast to Ally and Marcus, who put it right on their home pages, no need to even log in), yeah, I think it's totally fair to call it shady."

b.  Another post on June 18, 2020 reads: "What's slimy is that while 360 Savings used to be heavily promoted and had a competitive rate, Capital One created a whole new account, 360 Performance Savings, with competitive rates, and made the old accounts' rates uncompetitive (the older one gets 0.5% and the new one gets 1%). Unlike with [a money market account], there's no discernible difference between 360 Savings and 360 Performance Savings, so there's zero reason for this except to screw over existing customers. And because they don't "spam" their customers as you call it (except, interestingly, when rates go up!), many customers don't know about this."

c.  Yet another post on June 18, 2020 lamented: "Capital One dropped the rates to an uncompetitive level for existing customers, didn't tell them about it, also didn't tell them about the new account."

---

[29] https://www.bogleheads.org/forum/viewtopic.php?t=317965 (last accessed June 28, 2024).

113.     As illustrated in the chart above, when prevailing interest rates were low in 2020 and 2021, there was a comparatively small difference between the 360 Savings account rate (0.30% APY) and the 360 Performance Savings account rate (0.40% APY). However, when market interest rates started rising in 2022 alongside increases in the federal funds rate, 360 Savings accountholders increasingly were deprived of high interest rates.

114.     Another Bogleheads post dated November 5, 2022 reads: "[I]f you look at nearly every popular high yield online bank, they do new promos / bonus offers, but very rarely screw their existing base. They just raise your account to their normal high rate. Sure you may miss out on 1% extra bonus up to $x dollar amount, but you're never completely slammed like 0.3% -> 3%…"[30] A response to this post on the same date reads: "I do find it unscrupulous of them and it's basically a form of bait and switch."

115.     The Women's Money blog has a post, dated September 29, 2022, entitled "IS CAPITAL ONE CHEATING YOU TOO? THE SECRET YOU MUST KNOW ABOUT YOUR HIGH-INTEREST ACCOUNT."[31] This post alleges the same conduct by Capital One at issue in this Complaint. Specifically, the author writes: "As diligent as I am with my money, I recently discovered I was losing thousands of dollars a year in interest. I thought I had a high-interest bank account with Capital One, but it turns out, my interest rate was only 0.30%. Why was it so low? Because apparently several years ago Capital One essentially archived certain legacy accounts – the "360 Savings Accounts"– and instead created a competing product that actually earns high interest. (These new accounts are called a deceptively similar name – the "360 Performance Savings Account" and currently earn 2.15% interest.) At first upon learning I had

---

[30] https://www.bogleheads.org/forum/viewtopic.php?t=389707 (last accessed June 28, 2024).
[31] https://womensmoney.com/blog/capital-one-cheating-you-too-high-interest-accounts/ (dated September 29, 2022; last accessed June 28, 2024).

only been earning 0.30% interest instead of a competitive rate, I was embarrassed – how could I as a personal finance writer miss this? Then I was angry, not just for myself, but for the millions of consumers who are similarly situated to me. Why was I angry? Because Capital One told us we had high-interest accounts. Further, when Capital One stopped keeping our accounts at high-interest, and instead created a competing product that paid much higher rates, they didn't email us or automatically opt us in to the new accounts. They just left us to sit out there believing we still held high-interest accounts." The author later concludes: "Personally, I'm really angry at Capital One and believe they violated the law. U.S. banks aren't allowed to engage in unfair, deceitful, or abusive acts or practices. I believe that by holding out the legacy ING Direct accounts as high-interest accounts and not contacting consumers of the accounts to let us know that we in fact no longer part of their high-interest rate account family (you can't even find information about the 360 Savings Account on their website), Capital One engaged in deceitful practices. They could have sent an email or automatically rolled our accounts into the new 360 Performance Accounts. But instead, they just let us lose money." The Women's Money Blog post has seventeen (17) comments, including the following:

    a. On October 2, 2022, one commenter wrote: "Yes, I thought about opening a Performance Account (and I probably would have if they had ever emailed me and offered it or told me I needed to do it to keep my rate. I kept every one of my emails from them. I thought I must have missed an email but I went back and never did. They tried to get me to open a money market account, but never mentioned the Performance Savings!)[]. But I would just worry that they would do it again with the Performance Account. Seemed safer to move my money to a company that seems more interested in keeping my business."

b.  On February 3, 2023, a commenter wrote: "I discovered this same fraudulent behavior by capital one bank today. I have been a customer since the ING Direct days, from 2004. I lost over ten thousand dollars in interest due to this scam by Capital One. I am mad at them and closing my account soon and considering moving to SoFi or AllyBank."

c.  Also on February 3, 2023, a commenter wrote: "We just found out about this scam by Capital One bank today as well. Like many of you posting here, we have been a customer since the ING Direct days. We spoke with customer service about this and escalated to a manager. I requested them to send me information on when this Performance Savings account product was created and what the interest rates have been since inception. They said they will provide this information in 30 days though[] I doubt I'll hear back from them. They took an action item that they should improve their process to let existing customers know about this new product – again I doubt that will lead to anything since they know customers have been complaining about this for many years now. We all have lost thousands of $ of interest at this point – Wonder if there is a class action lawsuit here. This just stinks."

d.  On February 9, 2023, another commenter wrote: "My wife and I banked with ING Direct > Capital One for many years and experienced the same thing. Capital One reduced the rates on our accounts as market rates decreased in 2020 and 2021 and we assumed wrongly they were increasing them as market rates increased in 2022. It's embarrassing to say we lost many thousands of dollars interest by not

paying attention to what they were doing with the interest rates. They've probably made many millions on this scheme by cheating inattentive clients."

116.    On the informational website DepositAccounts.com, posters similarly complained about Capital One's conduct.[32]

    a.   A post from December 30, 2022 reads: "I discovered today that my Capital One savings accounts were only earning 0.3% and not earning the advertised 3.3% APY. So I called to ask why, and it turns out I had OLD "360 Savings" accounts and not the new "360 Performance Savings" accounts…I did not know I was playing a shell game with my bank. Don't take an eye off these slime bags!"

    b.   A post from February 5, 2023 reads: "I have been a customer of Capital One (IngDirect originally) since 2004. I had their '360 Savings account'. Capital One claimed it is a high interest account and rates will fluctuate based on Federal reserve interest rates. Apparently, some years ago they started a new savings account called '360 Performance Savings' with much higher interest rates. For example, the new Performance savings has an interest rate of 3.4% as of today. While the legacy account is only at 0.3% and it stopped fluctuating with Fed rates many years ago. So I lost a lot of money over the years as my savings account silently turned into a regular savings account and stopped being a high interest account. They didn't inform established customers of the new Performance savings account and kept people like me at 0.3%. They should have upgraded all accounts to the new type. At a minimum, they should have informed existing customers of this new account type. I learned about this new account type

---

[32] https://www.depositaccounts.com/banks/reviews/capital-one-360.html (last accessed June 28, 2024).

yesterday. This is clearly bad faith behavior by the bank. I am in the process of

closing out my account. I can never trust Capital One again. You should not do

this to long term customers to make a few bucks."

117.    The online complaints alleged above are illustrative and not an exhaustive

recounting of the many online complaints against Capital One for the conduct alleged herein.

118.    Capital One's conduct is deceptive, unfair, and done in bad faith, and is not

implicitly authorized by its deposit taking powers under the National Bank Act, because state

laws regarding contracts and torts generally "are not preempted." 12 C.F.R. § 7.4007(c). The

United States Office of the Comptroller of the Currency has warned that "[u]nfair or deceptive

acts or practices are unlawful under federal and State law," and that the "consequences of

engaging in practices that may be unfair or deceptive under federal or state law can include

litigation, enforcement actions, monetary judgments, and harm to the institution's reputation."

OCC Advisory Letter, Guidance on Unfair or Deceptive Acts or Practices, 2002 OCC CB LEXIS

16, at *2, *5 (Mar. 22, 2002). The OCC has cautioned banks to "ensure that customers receiving

the information can reasonably be expected to understand the information about products or

services—including any material limitations—without having to do 'detective' work." *Id.* at *14-

15. As explained herein, Capital One has ignored this guidance.

## CLASS ALLEGATIONS

119.    This action is brought by Plaintiffs, for themselves and on behalf of all others

similarly situated, as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3). Plaintiffs

seek to represent a class of all persons who have been Capital One 360 Savings accountholders

since Capital One created the 360 Performance Savings account (the "Class").

a.  Plaintiff Savett seeks to represent a subclass of all persons in Pennsylvania who have been Capital One 360 Savings accountholders since Capital One created the 360 Performance Savings account (the "Pennsylvania Subclass").

b.  Plaintiff Terrell seeks to represent a subclass of all persons in Florida who have been Capital One 360 Savings accountholders since Capital One created the 360 Performance Savings account (the "Florida Subclass").

c.  Plaintiff Uherbelau seeks to represent a subclass of all persons in Oregon who have been Capital One 360 Savings accountholders since Capital One created the 360 Performance Savings account (the "Oregon Subclass")

d.  Plaintiffs Wright, Bellantoni, and Brenner seek to represent a subclass of all persons in New York who have been Capital One 360 Savings accountholders since Capital One created the 360 Performance Savings account (the "New York Subclass").

e.  Plaintiffs Zawacki and Port seek to represent a subclass of all persons in New Jersey who have been Capital One 360 Savings accountholders since Capital One created the 360 Performance Savings account (the "New Jersey Subclass").

f.  Plaintiff Barnes seeks to represent a subclass of all persons in Massachusetts who have been Capital One 360 Savings accountholders since Capital One created the 360 Performance Savings account (the "Massachusetts Subclass").

g.  Plaintiff Guest seeks to represent a subclass of all persons in Michigan who have been Capital One 360 Savings accountholders since Capital One created the 360 Performance Savings account (the "Michigan Subclass").

h. Plaintiffs Hans and Wise seek to represent a subclass of all persons in Illinois who have been Capital One 360 Savings accountholders since Capital One created the 360 Performance Savings account (the "Illinois Subclass").

i. Plaintiff Hopkins seeks to represent a subclass of all persons in Texas who have been Capital One 360 Savings accountholders since Capital One created the 360 Performance Savings account (the "Texas Subclass").

j. Plaintiff Krause seeks to represent a subclass of all persons in Nebraska who have been Capital One 360 Savings accountholders since Capital One created the 360 Performance Savings account (the "Nebraska Subclass").

k. Plaintiff Lenhoff seeks to represent a subclass of all persons in Delaware who have been Capital One 360 Savings accountholders since Capital One created the 360 Performance Savings account (the "Delaware Subclass").

l. Plaintiffs Magaña, Martindale, Nagdimon, Perger, and Sim seek to represent a subclass of all persons in California who have been Capital One 360 Savings accountholders since Capital One created the 360 Performance Savings account (the "California Subclass").

m. Plaintiff Meresak seeks to represent a subclass of all persons in Missouri who have been Capital One 360 Savings accountholders since Capital One created the 360 Performance Savings account (the "Missouri Subclass").

n. Plaintiff Mishkin seeks to represent a subclass of all persons in Georgia who have been Capital One 360 Savings accountholders since Capital One created the 360 Performance Savings account (the "Georgia Subclass").

o.  Plaintiff Molloy seeks to represent a subclass of all persons in Maryland who have been Capital One 360 Savings accountholders since Capital One created the 360 Performance Savings account (the "Maryland Subclass").

p.  Plaintiffs Neelima Panchang and Sailesh Panchang seek to represent a subclass of all persons in Virginia who have been Capital One 360 Savings accountholders since Capital One created the 360 Performance Savings account (the "Virginia Subclass").

q.  Plaintiff Pitts seeks to represent a subclass of all persons in Ohio who have been Capital One 360 Savings accountholders since Capital One created the 360 Performance Savings account (the "Ohio Subclass").

r.  Plaintiff Rossetti seeks to represent a subclass of all persons in North Carolina who have been Capital One 360 Savings accountholders since Capital One created the 360 Performance Savings account (the "North Carolina Subclass").

120.    Unless specifically indicated otherwise, all allegations below concerning the Class include and apply equally to the Subclasses, individually and collectively.

121.    Excluded from the Class are Capital One and any person, firm, trust, corporation, or other entity related to or affiliated with any of Capital One's partners, subsidiaries, affiliates or joint ventures.

122.    The members of the Class are so numerous and dispersed that it would be impracticable to join them individually. At all relevant times, there were thousands of 360 Savings accountholders. The precise number of Class members and their identities are unknown to Plaintiffs at this time but can be determined through discovery.

49

123.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to Class and/or Subclasses are:

a.   Whether Capital One, N.A. adjusted (or did not adjust) the interest rate associated with 360 Savings accountholders dishonestly, unfairly, and/or in bad faith;

b.   Whether Capital One, N.A. breached the covenant of good faith and fair dealing implied by law into its contracts with 360 Savings customers;

c.   Whether Capital One Financial Corp.'s conduct violates the Virginia Consumer Protection Act;

d.   Whether, as to the respective Subclasses, Capital One's conduct violates the state consumer protection statutes alleged herein;

e.   Whether Capital One's wrongful conduct caused Plaintiffs and the Class members damages;

f.   The amount of damages suffered by Plaintiffs and Class members;

g.   Whether Capital One's conduct violates principles of quasi-contract and/or promissory estoppel;

h.   Whether Capital One's conduct caused Capital One to be unjustly enriched;

i.   The amount of restitution to which Plaintiffs and Class members are entitled;

j.   Whether Plaintiffs and the Subclass members are entitled to treble and/or punitive damages; and

k.   Whether Plaintiffs and Class members are entitled to a reasonable award of attorneys' fees, interest, and costs of suit.

124.     Plaintiffs' claims are typical of the claims of the members of the Class they seek to represent because they were all 360 Savings accountholders and received the same interest rate, and because Capital One's website appears the same to Class members.

125.     Plaintiffs will adequately represent and protect the interests of the Class and have no interests that conflict with or are antagonistic to the interests of Class members. Plaintiffs have retained attorneys who are experienced and capable of prosecuting class actions and complex litigation. Plaintiffs' attorneys will actively conduct and be responsible for prosecuting this litigation, and have adequate resources, experience, and commitment to litigate this matter.

126.     A class action is superior to any other method available for the fair and efficient adjudication of this controversy because it would be impractical and unduly burdensome for each of the individual Class members to bring a separate action. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the respective Class members to seek redress for the wrongful conduct alleged. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. Moreover, individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

127.     Defendants have acted on grounds that apply generally to the Class, such that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

128.     Class certification is also appropriate because there is a readily identifiable class on whose behalf this action can be prosecuted. Class members are readily ascertainable from

Capital One's records. A notice of pendency or resolution of this class action can be provided to Class members by direct mail, email, publication notice, or other similar means.

129.    To the extent reliance is an element of any of the claims asserted herein, Plaintiffs and all Class members uniformly have relied on Defendants' conduct. Other than the interest rate paid on the accounts, the 360 Savings Account and the 360 Performance Savings Account are identical. No rational person would maintain an identical account that paid materially lower interest absent Defendants' wrongful conduct.

## CAUSES OF ACTION

## COUNT I

## BREACH OF CONTRACT
## AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

## AGAINST DEFENDANT CAPITAL ONE, N.A.

## ON BEHALF OF THE CLASS

130.    Plaintiffs re-allege and incorporate all other factual allegations set forth in this Complaint.

131.    The 360 Savings Account Disclosures, which contain the "the terms applicable to [customers'] 360 Savings account" to which customers "agree to be bound," provide that 360 Savings "accounts are subject to both federal law and the laws of the state of Virginia."

132.    The contract between the respective Plaintiffs (and other Class members) on the one hand, and Capital One, N.A. on the other hand, previously described herein, provides that "interest rates and annual percentage yields are variable and may change at any time at our [i.e., Capital One, N.A.'s] discretion."

133.    A covenant of good faith and fair dealing is implied by law in Capital One, N.A.'s contracts with 360 Savings customers, and provides that Capital One, N.A. must exercise contractual discretion honestly and in good faith.

134.    Although Capital One, N.A. had discretion to set the interest rate paid on the 360 Savings account, that discretion is subject to the covenant of good faith and fair dealing.

135.    Capital One, N.A. breached the covenant of good faith and fair dealing by paying a materially lower rate of interest for its 360 Savings account, which Capital One represented as having the same fundamental characteristic (i.e., a high interest rate) as the newer 360 Performance Savings account. Instead of exercising its discretion to adjust the interest rate on the 360 Savings account after market interest rates rose, Capital One instead furtively created a new account, the similarly named "360 Performance Savings" account, which featured a higher APY than the 360 Savings account. Capital One's conduct is dishonest and unfair because Capital One concealed the creation or existence of the 360 Performance Savings account, and that the 360 Performance Savings account offered a higher APY than the 360 Savings account, and that 360 Performance Savings was in fact a different product, and not just a new name for the existing 360 Savings product, and because Capital One failed to pay the same interest rate on the 360 Savings account that it paid on the 360 Performance Savings Account.

136.    Defendant's breach damaged Plaintiffs and members of the putative Class.

## COUNT II

### VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT, VA. CODE ANN. § 59.1-200

### AGAINST DEFENDANT CAPITAL ONE FINANCIAL CORP.

### ON BEHALF OF THE CLASS AND/OR THE VIRGINIA SUBCLASS

137.    Plaintiffs, including Neelima Panchang and Sailesh Panchang, re-allege and incorporate all other factual allegations set forth in this Complaint.

138.    Capital One Financial Corp. is a "supplier" and the conduct described herein is a "consumer transaction" within the meaning of Va. Code Ann. § 59.1-198.

139.    As described above, while engaging in trade or commerce within the Commonwealth of Virginia during the time period relevant hereto, Defendant Capital One Financial Corp.:

   a.   Furtively created a new account, the similarly named "360 Performance Savings" account, which featured a higher APY than the 360 Savings account, while failing to pay 360 Savings depositors the same APY as paid on the 360 Performance Savings account;

   b.   Concealed that the 360 Performance Savings account was not Capital One's only online savings account, and that the 360 Savings account continued to exist with a much lower interest rate, which information is material to customers; and

   c.   Failed to correct representations that the 360 Savings online savings account was Capital One's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online savings account products or Capital One's own online savings account product line, including the 360

54

Performance Savings account (i.e., 0.30% is not "high interest," when Capital

One gives 4.35% on its "high yield" 360 Performance Savings account).

140.     The aforesaid fraudulent acts and practices are unlawful and prohibited by the

provisions of the Virginia Consumer Protection Act, Va. Code. Ann. § 59.1-200, including, but

not limited to, the following:

a.   "Misrepresenting that goods or services have certain quantities, characteristics,

ingredients, uses, or benefits" (§ 59.1-200(A)(5));

b.   "Misrepresenting that goods or services are of a particular standard, quality,

grade, style, or model" (§ 59.1-200(A)(6));

c.   "Advertising goods or services with intent not to sell them as advertised, or with

intent not to sell at the price or upon the terms advertised" (§ 59.1-200(A)(8));

d.   "Using any other deception, fraud, false pretense, false promise, or

misrepresentation in connection with a consumer transaction" (§ 59.1-

200(A)(14)); and

e.    "Violating any provision of § 18.2-178," i.e., "obtain[ing] by any false pretense

or token, from any person, with intent to defraud, money" (§ 59.1-200(A)(57)).

141.     The Virginia Consumer Protection Act is "remedial legislation to promote fair

and ethical standards of dealings between suppliers and the consuming public." Va. Code. Ann. §

59.1-197. Application of the Virginia Consumer Protection Act to Defendant Capital One

Financial Corp.'s conduct as alleged herein is proper because that conduct was committed by

Defendant in Virginia and Defendant was unjustly enriched in Virginia.

142.     The aforesaid acts damaged Plaintiffs and members of the putative Class and/or

Virginia Subclass.

143.    Plaintiffs the putative Class and/or Virginia Subclass are entitled to treble and/or punitive damages pursuant to Va. Code. Ann. § 59.1-204.

## COUNT III

**VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750, ET SEQ.**

**AGAINST ALL DEFENDANTS**

**ON BEHALF OF THE CALIFORNIA SUBCLASS**

144.    Plaintiffs Magaña, Martindale, Nagdimon, Perger, and Sim re-allege and incorporate all other factual allegations set forth in this Complaint.

145.    The conduct of Defendants alleged above constitutes an unfair method of competition and unfair or deceptive act or practice in violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq. ("CLRA").

146.    Defendants' savings accounts are services as defined by Cal. Civ. Code § 1761(b). The 360 Savings Account Disclosures further refer to CONA's "services," including Electronic Fund Transfer (EFT) "services," a Mobile Deposit "service," and Automatic Clearing House (ACH) External Transfer transactions.

147.    Defendants are each persons under Cal. Civ. Code § 1761(c).

148.    Plaintiffs and California Subclass members are consumers under Cal. Civ. Code § 1761(d).

149.    Plaintiffs' use of their savings accounts were transactions under Cal. Civ. Code § 1761(e).

150.    As described above, while engaging in trade or commerce within the State of California during the time period relevant hereto, Defendants:

a.  Furtively created a new account, the similarly named "360 Performance Savings" account, which featured a higher APY than the 360 Savings account, while failing to pay 360 Savings depositors the same APY as paid on the 360 Performance Savings account;

b.  Concealed that the 360 Performance Savings account was not Capital One's only online savings account, and that the 360 Savings account continued to exist with a much lower interest rate, which information is material to customers; and

c.  Failed to correct representations that the 360 Savings online savings account was Capital One's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online savings account products or Capital One's own online savings account product line, including the 360 Performance Savings account (i.e., 0.30% is not "high interest," when Capital One gives 4.35% on its "high yield" 360 Performance Savings account).

151.   Defendants' conduct constitutes unfair methods of competition and unfair or deceptive acts or practices listed in this subdivision undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer, in violation of the CLRA, as follows:

a.   Cal. Civ. Code § 1770(a)(5) ("Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have.");

b. Cal. Civ. Code § 1770(a)(7) ("Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.");

c. Cal. Civ. Code § 1770(a)(9) ("Advertising goods or services with intent not to sell them as advertised.");

d. Cal. Civ. Code § 1770(a)(14) ("Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law."); and

e. Cal. Civ. Code § 1770(a)(16) ("Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.").

152. The misrepresentations and omissions set forth above are of material facts that a reasonable person would have considered important in deciding whether or not to purchase Defendants' services. Plaintiffs and class members justifiably and uniformly acted or relied upon Defendants' misrepresentations and omissions to their detriment.

153. Plaintiffs and the other members of the California Subclass have been, and/or continue to be, injured as a direct and proximate result of Defendants' violations of the CLRA.

154. Plaintiffs are entitled to pursue a claim against Defendants on behalf of themselves and the California Subclass to enjoin Defendants from continuing their unfair or deceptive acts or practices under Cal. Civ. Code § 1780(a) and § 1781, as well as to pursue costs and attorneys' fees under § 1780(e).

155. On February 26, 2024, Plaintiffs Magaña, Martindale, Nagdimon, and Perger served Defendants with written notice of its CLRA violations pursuant to Cal. Civ. Code § 1782, via letter sent by certified mail, return receipt requested. After the requisite thirty (30) days,

Defendants failed to terminate the alleged unlawful or deceptive practice, and did not make any

appropriate correction, repair, replacement, or other remedy. Pursuant to Cal. Civ. Code § 1782,

Plaintiffs are thus entitled to seek, and do seek, damages at this time.

## COUNT IV

### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW, CAL. CIV. CODE § 17200, ET SEQ.

### AGAINST ALL DEFENDANTS

### ON BEHALF OF THE CALIFORNIA SUBCLASS

156.    Plaintiffs Magaña, Martindale, Nagdimon, Perger, and Sim re-allege and

incorporate all other factual allegations set forth in this Complaint.

157.    Plaintiffs assert this cause of action against Defendants for unlawful, unfair and

fraudulent business practices; and unfair, deceptive, untrue and misleading advertising, as

defined by California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq. (the

"UCL").

158.    Defendants' conduct violates the UCL, as the acts and practices of Defendants

constitute a common and continuing course of conduct by means of "unlawful" "unfair" and

"fraudulent" business acts or practices within the meaning of the UCL.

159.    As described above, while engaging in trade or commerce within the State of

California during the time period relevant hereto, Defendants:

> a.    Furtively created a new account, the similarly named "360 Performance Savings"
> account, which featured a higher APY than the 360 Savings account, while failing
> to pay 360 Savings depositors the same APY as paid on the 360 Performance
> Savings account;

     b.   Concealed that the 360 Performance Savings account was not Capital One's only online savings account, and that the 360 Savings account continued to exist with a much lower interest rate, which information is material to customers; and

     c.   Failed to correct representations that the 360 Savings online savings account was Capital One's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online savings account products or Capital One's own online savings account product line, including the 360 Performance Savings account (i.e., 0.30% is not "high interest," when Capital One gives 4.35% on its "high yield" 360 Performance Savings account).

160.    Defendants' conduct is fraudulent. As alleged above, after advertising the 360 Savings account as Capital One's high-interest online savings account offering, Capital One created a new, but materially identical account, with a similar name, without informing current customers, thus attempting to conceal from current customers that Capital One had changed the nature of the 360 Savings account product in order to enrich itself at its customers' expense.

161.    Defendants' conduct is unlawful in that it violates, among other things, Cal. Civ. Code §§ 1572, 1709 and 1710, as well as Cal. Bus. & Prof. Code § 17500. As alleged herein, after advertising the 360 Savings account as Capital One's high-interest online savings account offering, Capital One created a new, but materially identical account, with a similar name, and concealing from current customers that Capital One had changed the nature of the 360 Savings account product in order to enrich itself at its customers' expense.

162.    Defendants' conduct is unfair, because its utility, if any, is greatly outweighed by the harm it causes to Plaintiffs and members of the California Subclass; and because it is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers; and

because it violates established public policy as alleged herein. As alleged herein, after advertising the 360 Savings account as Capital One's high-interest online savings account offering, Capital One created a new, but materially identical account, with a similar name, and concealing from current customers that Capital One had changed the nature of the 360 Savings account product in order to enrich itself at its customers' expense.

163.     As a direct and proximate cause of Defendant's violations of the UCL, Plaintiffs and members of the California Subclass suffered an injury in fact and have suffered monetary harm. Defendants, on the other hand, have been unjustly enriched. The Court should impose a constructive trust and should require Defendants to make restitution to Plaintiffs and the California Subclass and/or disgorge its ill-gotten profits pursuant to Business & Professions Code § 17203.

164.     Defendants' unlawful, unfair, and fraudulent business practices, as described herein, present a continuing threat to Plaintiffs and the general public in that Defendants' deceptive conduct is ongoing. Plaintiffs further seek an order enjoining Defendant from engaging in any unlawful or inequitable acts and practices as alleged herein.

165.     Plaintiffs and the California Subclass seek equitable relief because they have no other adequate remedy at law.

## COUNT V

### VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT, TEX. BUS. & COM. CODE §§ 17.41 ET SEQ.

### AGAINST ALL DEFENDANTS

### ON BEHALF OF THE TEXAS SUBCLASS

166.     Plaintiff Hopkins re-alleges and incorporates all other factual allegations set forth in this Complaint.

167. The Texas Deceptive Trade Practices Act ("Texas DTPA"), Tex. Bus. & Com. Code §§ 17.41 *et seq.*, prohibits false, misleading, or deceptive acts or practices in the conduct of any trade or commerce and any unconscionable action or course of action.

168. The Texas DTPA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection." Tex. Bus. & Com. Code § 17.44(a).

169. Plaintiff Hopkins is a "consumer" under Tex. Bus. & Com. Code § 17.45(4). The 360 Savings Account Disclosures refer to CONA's "services" to accountholders (*see id.* § 17.45(2)), including Electronic Fund Transfer (EFT) "services," a Mobile Deposit "service," and Automatic Clearing House (ACH) External Transfer transactions.

170. Defendants' actions constitute "trade" and "commerce" under Tex. Bus. & Com. Code § 17.45(6).

171. As described above, while engaging in trade or commerce within the State of Texas during the time period relevant hereto, Defendants:

    a. Furtively created a new account, the similarly named "360 Performance Savings" account, which featured a higher APY than the 360 Savings account, while failing to pay 360 Savings depositors the same APY as paid on the 360 Performance Savings account;

    b. Concealed that the 360 Performance Savings account was not Capital One's only online savings account, and that the 360 Savings account continued to exist with a much lower interest rate, which information is material to customers; and

    c.   Failed to correct representations that the 360 Savings online savings account was Capital One's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online savings account products or Capital One's own online savings account product line, including the 360 Performance Savings account (i.e., 0.30% is not "high interest," when Capital One gives 4.35% on its "high yield" 360 Performance Savings account).

172.    The aforesaid methods, acts, and practices constitute false, misleading, or deceptive acts or practices in the conduct of any trade or commerce in violation of the Texas DTPA, including, but not limited to, the following:

    a.   "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not" (Tex. Bus. & Com. Code § 17.46(b)(5));

    b.   "advertising goods or services with intent not to sell them as advertised" (*id.* § 17.46(b)(9));

    c.   "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law" (*id.* § 17.46(b)(12)); and

    d.   "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed" (*id.* § 17.46(b)(24)).

173.    Defendants' conduct also violates the Texas DTPA's prohibition on "any unconscionable action or course of action by any person" that causes damages to a consumer (Tex. Bus. & Com. Code § 17.50(a)(3)).

174.    Plaintiff Hopkins, on behalf of himself and the Texas Subclass, is entitled to seek economic damages, three times economic damages, costs, attorneys' fees, injunctive relief, and any other relief which the Court deems proper.

175.    Pursuant to Section 17.505 of the Texas DTPA, 60 days' written notice is rendered impracticable by reason of the necessity of filing this petition in order to prevent the potential expiration of the statute of limitations. Nevertheless, pursuant to Section 17.505 of the Texas DTPA, Plaintiff Hopkins is providing written notice to Defendants of the allegations in this Complaint and the amount of his damages and expenses incurred. Defendants are hereby placed on notice for the reasons set forth in the DTPA Notice and this Complaint that Plaintiff Hopkins demands restitution and/or damages, on behalf of himself and persons similarly situated, pursuant to the Texas DTPA.

**COUNT VI**

**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW**

**AGAINST ALL DEFENDANTS**

**ON BEHALF OF THE NEW YORK SUBCLASS**

176.    Plaintiffs Wright, Bellantoni, and Brenner re-allege and incorporate all other factual allegations set forth in this Complaint.

177.    New York Gen. Bus. Law § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service[.]"

178.     New York Gen. Bus. Law § 350 further declares unlawful "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

179.     As described above, while engaging in consumer-oriented trade or commerce within the State of New York during the time period relevant hereto, Defendants:

  a.  Furtively created a new account, the similarly named "360 Performance Savings" account, which featured a higher APY than the 360 Savings account, while failing to pay 360 Savings depositors the same APY as paid on the 360 Performance Savings account;

  b.  Concealed that the 360 Performance Savings account was not Capital One's only online savings account, and that the 360 Savings account continued to exist with a much lower interest rate, which information is material to customers; and

  c.  Failed to correct representations that the 360 Savings online savings account was Capital One's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online savings account products or Capital One's own online savings account product line, including the 360 Performance Savings account (i.e., 0.30% is not "high interest," when Capital One gives 4.35% on its "high yield" 360 Performance Savings account).

180.     The foregoing deceptive acts and practices were directed at consumers.

181.     As a result of Defendants' false, misleading, and deceptive misrepresentations and omissions, Plaintiffs Wright, Bellantoni, and Brenner and the members of the New York Subclass have suffered and continue to suffer economic injury.

182.     Plaintiffs Wright, Bellantoni, and Brenner and members of the New York Subclass suffered an ascertainable loss caused by Capital One's misrepresentations.

183.     On behalf of themselves and other members of the New York Subclass, Plaintiffs Wright, Bellantoni, and Brenner seek to enjoin the unlawful acts and practices described herein, to recover actual damages or fifty dollars, whichever is greater, three-times actual damages, and reasonable attorneys' fees.

**COUNT VII**

**VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT,
N.J. STAT. ANN. §56:8-1, ET SEQ.**

**AGAINST ALL DEFENDANTS**

**ON BEHALF OF THE NEW JERSEY SUBCLASS**

184.     Plaintiffs Zawacki and Port re-allege and incorporate all other factual allegations set forth in this Complaint.

185.     Defendants are each a "person" as defined in the New Jersey Consumer Fraud Act ("NJCFA"). N.J.S.A. § 56:8-1(d).

186.     The NJCFA states in pertinent part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practices....

N.J.S.A. §56:8-2.

187.     The NJCFA further defines "merchandise" to include "services or anything offered, directly or indirectly to the public for sale." N.J. Stat. Ann. 56:8-1(c).

188.     As described above, while engaging in trade or commerce within the State of New Jersey during the time period relevant hereto, Defendants:

a.  Furtively created a new account, the similarly named "360 Performance Savings" account, which featured a higher APY than the 360 Savings account, while failing to pay 360 Savings depositors the same APY as paid on the 360 Performance Savings account;

b.  Concealed that the 360 Performance Savings account was not Capital One's only online savings account, and that the 360 Savings account continued to exist with a much lower interest rate, which information is material to customers; and

c.  Failed to correct representations that the 360 Savings online savings account was Capital One's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online savings account products or Capital One's own online savings account product line, including the 360 Performance Savings account (i.e., 0.30% is not "high interest," when Capital One gives 4.35% on its "high yield" 360 Performance Savings account).

189.   Plaintiffs Zawacki and Port and the New Jersey Subclass have been and continue to be injured as a direct and proximate result of Capital One's violations of the NJCFA.

190.   Plaintiffs Zawacki and Port and the New Jersey Subclass are entitled to pursue a claim against Capital One pursuant to N.J.S.A. §§56:8-2.11, 56:8-2.12 and/or 56:8-19 for damages, treble damages, equitable relief, and attorney's fees and costs to remedy Capital One's violations of the NJCFA.

## COUNT VIII

**VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES
AND CONSUMER PROTECTION LAW,
73 P.S. §§ 201-1–201-9.2**

**AGAINST ALL DEFENDANTS**

**ON BEHALF OF THE PENNSYLVANIA SUBCLASS**

191.    Plaintiff Savett re-alleges and incorporates all other factual allegations set forth in this Complaint.

192.    As described above, while engaging in trade or commerce within the Commonwealth of Pennsylvania during the time period relevant hereto, Capital One:

    a.   Furtively created a new account, the similarly named "360 Performance Savings" account, which featured a higher APY than the 360 Savings account, while failing to pay 360 Savings depositors the same APY as paid on the 360 Performance Savings account;

    b.   Concealed that the 360 Performance Savings account was not Capital One's only online savings account, and that the 360 Savings account continued to exist with a much lower interest rate, which information is material to customers; and

    c.   Failed to correct representations that the 360 Savings online savings account was Capital One's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online savings account products or Capital One's own online savings account product line, including the 360 Performance Savings account (i.e., 0.30% is not "high interest," when Capital One gives 4.30% on its "high yield" 360 Performance Savings account).

193.    The aforesaid methods, acts, and practices constitute unfair methods of competition

68

and unfair acts or practices in the conduct of trade or commerce prohibited by § 201-2 of the Unfair

Trade Practices and Consumer Protection Law, including, but not limited to, the following:

    a.   "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have" (§ 201-2(4)(v));

    b.   "representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (§ 201-2(4)(vii));

    c.   "advertising goods or services with intent not to sell them as advertised" (§ 201-2(4)(ix)); and

    d.   "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding" (§ 201-2(4)(xxi)).

194.    The aforesaid acts damaged Plaintiff Savett and members of the putative Pennsylvania Subclass.

195.    Plaintiff Savett and the putative Pennsylvania Subclass are entitled to actual damages, treble and/or punitive damages, costs and reasonable attorneys' fees, and such additional relief as the Court deems necessary and proper, pursuant to 73 P.S. § 201-9.2(a).

<u>**COUNT IX**</u>

**VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION LAW, MASS. GEN. LAWS CH. 93A**

**AGAINST ALL DEFENDANTS**

**ON BEHALF OF THE MASSACHUSETTS SUBCLASS**

196.    Plaintiff Barnes re-alleges and incorporates all other factual allegations set forth in this Complaint.

197.    Both Plaintiff and Capital One are "persons" as defined in Mass. Gen. Laws ch.

93A, § 1(a).

198.   Capital One's dealings with Massachusetts Subclass members, as described herein, constitute "trade" and "commerce" under Mass. Gen. Laws ch. 93A, § 1(b).

199.   Section 2(a) of Mass. Gen. Laws ch. 93A (the "Massachusetts Consumer Protection Law") declares unlawful any "unfair or deceptive acts or practices in the conduct of trade or commerce."

200.   As described above, while engaging in trade or commerce within the Commonwealth of Massachusetts during the time period relevant hereto, Capital One:

    a.   Furtively created a new account, the similarly named "360 Performance Savings" account, which featured a higher APY than the 360 Savings account, while failing to pay 360 Savings depositors the same APY as paid on the 360 Performance Savings account;

    b.   Concealed that the 360 Performance Savings account was not Capital One's only online savings account, and that the 360 Savings account continued to exist with a much lower interest rate, which information is material to customers; and

    c.   Failed to correct representations that the 360 Savings online savings account was Capital One's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online savings account products or Capital One's own online savings account product line, including the 360 Performance Savings account (i.e., 0.30% is not "high interest," when Capital One gives 4.30% on its "high yield" 360 Performance Savings account).

201.   Capital One's conduct as alleged herein violates a common-law, regulatory, or other established concept of fairness and is unethical and unscrupulous.

202.    The aforesaid acts damaged Plaintiff Barnes and members of the putative Massachusetts Subclass.

203.    Plaintiff Barnes and the putative Massachusetts Subclass are entitled to treble and/or punitive damages pursuant to Mass. Gen. Laws ch. 93A, § 9.

204.    In accordance with Mass. Gen. Laws ch. 93A, § 9(3), Plaintiff, more than thirty days prior to the filing of this Complaint, delivered a written demand for relief upon Capital One, describing Capital One's unfair and deceptive acts, the injury she and other Capital One customers have suffered, and demanding that Capital One cease and rectify its unlawful conduct. Capital One has failed to remedy its unlawful conduct within the requisite time period.

## COUNT X

### VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESSES PRACTICE ACT, 815 ILL. COMP. STAT. § 505 et seq.

### AGAINST ALL DEFENDANTS

### ON BEHALF OF THE ILLINOIS SUBCLASS

205.    Plaintiffs Hans and Wise re-allege and incorporate all other factual allegations set forth in this Complaint.

206.    Both Plaintiffs Hans and Wise and Capital One are "persons" as defined in the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1(c).

207.    Capital One's dealings with Illinois Subclass members, as described herein, constitute "trade" and "commerce" under 815 ILCS 505/1(f).

208.    Pursuant to the ICFA, "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any

material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' [815 ILCS 510/2] . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

209.    As described above, while engaging in trade or commerce within the State of Illinois during the time period relevant hereto, Capital One:

    a.  Furtively created a new account, the similarly named "360 Performance Savings" account, which featured a higher APY than the 360 Savings account, while failing to pay 360 Savings depositors the same APY as paid on the 360 Performance Savings account;

    b.  Concealed that the 360 Performance Savings account was not Capital One's only online savings account, and that the 360 Savings account continued to exist with a much lower interest rate, which information is material to customers; and

    c.  Failed to correct representations that the 360 Savings online savings account was Capital One's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online savings account products or Capital One's own online savings account product line, including the 360 Performance Savings account (i.e., 0.30% is not "high interest," when Capital One gives 4.30% on its "high yield" 360 Performance Savings account).

210.    The aforesaid methods, acts, and practices constitute unfair methods of competition and unfair acts or practices in the conduct of trade or commerce in violation of the ICFA, including, but not limited to, the following:

     a.   "represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have" (id. 510/2(5));

     b.   "represent[ing] that goods or services are of a particular standard, quality, or grade or that goods are a particular style or model, if they are of another" (id. 510/2(7));

     c.   "advertis[ing] goods or services with intent not to sell them as advertised" (id. 510/2(9)); and

     d.   "engag[ing] in any other conduct which similarly creates a likelihood of confusion or misunderstanding" (id. 510/2(12)).

211.    Plaintiffs Hans and Wise and the other members of the Illinois Subclass have been and continue to be damaged as a direct and proximate result of Capital One's violation of the ICFA.

212.    Plaintiffs Hans and Wise are entitled to pursue a claim on behalf of the Illinois Subclass against Capital One for actual damages, punitive damages, injunctive relief, other equitable relief, and attorneys' fees and costs to remedy Capital One's violations of the ICFA pursuant to 815 ILCS 505/10a.

## COUNT XI

### VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT, MD. CODE ANN., COM. LAW §§13-101, ET SEQ.

### AGAINST ALL DEFENDANTS

### ON BEHALF OF THE MARYLAND SUBCLASS

213.    Plaintiff Molloy re-alleges and incorporates all other factual allegations set forth in this Complaint.

214.     Defendants are each a "person" as defined in the Maryland Consumer Protection Act ("MCPA"). Md. Code Ann., Com. Law § 13-101(h).

215.     "The provisions of [the MCPA] apply to the subject matter of a consumer contract as defined in § 22-102 of this article in the same manner they apply to consumer goods and consumer services." Md. Code Ann., Com. Law § 13-101.1.

216.     As described above, while engaging in trade or commerce within the State of Maryland during the time period relevant hereto, Defendants:

>    a.   Furtively created a new account, the similarly named "360 Performance Savings" account, which featured a higher APY than the 360 Savings account, while failing to pay 360 Savings depositors the same APY as paid on the 360 Performance Savings account;

>    b.   Concealed that the 360 Performance Savings account was not Capital One's only online savings account, and that the 360 Savings account continued to exist with a much lower interest rate, which information is material to customers; and

>    c.   Failed to correct representations that the 360 Savings online savings account was Capital One's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online savings account products or Capital One's own online savings account product line, including the 360 Performance Savings account (i.e., 0.30% is not "high interest," when Capital One gives 4.35% on its "high yield" 360 Performance Savings account).

217.     The aforesaid methods, acts, and practices constitute unfair methods of competition and unfair acts or practices in the conduct of trade or commerce prohibited by the MCPA, including, but not limited to, the following:

a. Making a "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers," *id.* § 13-301(1);

b. "representat[ing] that … [c]onsumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have," *id.* 13-301(2)(i);

c. "representing that … [c]onsumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not," *id.* § 13-301(2)(iv);

d. "[f]ail[ing] to state a material fact if the failure deceives or tends to deceive," *id.* § 13-301(3);

e. "advertis[ing] or offer of … consumer services … [w]ithout intent to sell, lease, or rent them as advertised or offered," *id.* § 13-301(5)(i); and

f. "deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with the promotion or sale of any consumer goods, consumer realty, or consumer service," *id.* § 13-301(9)(i).

218.   Plaintiff Molloy and the other members of the Maryland Class have been and continue to be injured as a direct and proximate result of Defendants' violations of the MCPA.

219.   Plaintiff Molloy is entitled to pursue a claim on behalf of himself and the Maryland Subclass against Defendants under Md. Code Ann., Com. Law § 13-408 for damages and attorney's fees and costs to remedy Capital One's violations of the MCPA.

<u>**COUNT XII**</u>

**VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. § 501.204(1)**

**AGAINST DEFENDANT CAPITAL ONE FINANCIAL CORP.**

**ON BEHALF OF THE FLORIDA SUBCLASS**

220.    Plaintiff Terrell re-alleges and incorporates all other factual allegations set forth in this Complaint.

221.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

222.    As described above, while engaging in trade or commerce within the State of Florida during the time period relevant hereto, COFC:

    a.    Furtively created a new account, the similarly named "360 Performance Savings" account, which featured a higher APY than the 360 Savings account, while failing to pay 360 Savings depositors the same APY as paid on the 360 Performance Savings account;

    b.    Concealed that the 360 Performance Savings account was not Capital One's only online savings account, and that the 360 Savings account continued to exist with a much lower interest rate, which information is material to customers; and

    c.    Failed to correct representations that the 360 Savings online savings account was Capital One's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online savings account products or Capital One's own online savings account product line, including the 360 Performance Savings account (i.e., 0.30% is not "high interest," when Capital One

76

gives 4.30% on its "high yield" 360 Performance Savings account).

223.     Capital One's conduct, as alleged herein, was likely to deceive a consumer acting

reasonably in the same circumstances, and that conduct caused actual damages to Plaintiff Terrell

and members of the Florida Subclass.

224.     Plaintiff Terrell, on behalf of herself and the Florida Subclass, seeks damages,

injunctive relief, other equitable relief, costs, and attorneys' fees as permitted by Fla. Stat. §

501.211 and § 501.2105.

<u>**COUNT XIII**</u>

**VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE
PRACTICES ACT,
N.C. GEN. STAT. §§ 75-1, ET SEQ.**

**AGAINST ALL DEFENDANTS**

**ON BEHALF OF THE NORTH CAROLINA SUBCLASS**

225.     Plaintiff Rossetti re-alleges and incorporates all other factual allegations set forth

in this Complaint.

226.     The North Carolina Unfair and Deceptive Trade Practices Act ("NC UDTPA")

declares unlawful any "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen.

Stat. § 75-1.1(a).

227.     Defendants' conduct as alleged herein is "in or affecting commerce" under N.C.

Gen. Stat. § 75-1.1(a).

228.     As alleged herein, while engaging in trade or commerce within the State of North

Carolina during the time period relevant hereto, Defendants:

a.     Furtively created a new account, the similarly named "360 Performance Savings"

account, which featured a higher APY than the 360 Savings account, while failing

to pay 360 Savings depositors the same APY as paid on the 360 Performance Savings account;

b. Concealed that the 360 Performance Savings account was not Capital One's only online savings account, and that the 360 Savings account continued to exist with a much lower interest rate, which information is material to customers; and

c. Failed to correct representations that the 360 Savings online savings account was Capital One's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online savings account products or Capital One's own online savings account product line, including the 360 Performance Savings account (i.e., 0.30% is not "high interest," when Capital One gives 4.35% on its "high yield" 360 Performance Savings account).

229.   Each week that Capital One fails to pay good-faith interest payments on its 360 Savings accounts establishes a separate offense of the NC UDTPA pursuant to N.C. Gen. Stat. § 75-8.

230.   Plaintiff Rossetti and the other members of the North Carolina Subclass have been and continue to be injured as a direct and proximate result of Defendants' violations of the NC UDTPA.

231.   Plaintiff Rossetti and the members of the North Carolina Subclass are entitled to seek actual damages and treble damages pursuant to N.C. Gen. Stat. § 75-16.

232.   Plaintiff Rossetti and the other members of the North Carolina Subclass are also entitled to seek attorney's fees pursuant to N.C. Gen. Stat. § 75-16.1.

<u>**COUNT XIV**</u>

**VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT,
O.G.C.A. § 10-1-393**

**AGAINST ALL DEFENDANTS**

**ON BEHALF OF THE GEORGIA SUBCLASS**

233.     Plaintiff Mishkin re-alleges and incorporates all other factual allegations set forth in this Complaint.

234.     The purpose of the Georgia Fair Business Practices Act ("Georgia FBPA") is "to protect consumers and legitimate business enterprises from unfair or deceptive practices in the conduct of any trade or commerce in part or wholly in the state." O.G.C.A. § 10-1-391.

235.     Plaintiff Mishkin is a "consumer" as defined by the Georgia FBPA, O.G.C.A. § 10-1-392(a)(6).

236.     Defendants are each a "person" as defined by the Georgia FBPA, O.G.C.A. § 10-1-392(a)(24).

237.     As described above, while engaging in trade or commerce within the State of Georgia during the time period relevant hereto, Defendants:

   a.   Furtively created a new account, the similarly named "360 Performance Savings" account, which featured a higher APY than the 360 Savings account, while failing to pay 360 Savings depositors the same APY as paid on the 360 Performance Savings account;

   b.   Concealed that the 360 Performance Savings account was not Capital One's only online savings account, and that the 360 Savings account continued to exist with a much lower interest rate, which information is material to customers; and

   c.   Failed to correct representations that the 360 Savings online savings account was

Capital One's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online savings account products or Capital One's own online savings account product line, including the 360 Performance Savings account (i.e., 0.30% is not "high interest," when Capital One gives 4.35% on its "high yield" 360 Performance Savings account).

238.    Defendants' conduct violates the Georgia FBPA, which provides that "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful." O.G.C.A. § 10-1-393(a).

239.    Defendants' conduct was intentional as defined by O.C.G.A. § 10-1-392(b).

240.    Plaintiff Mishkin and members of the Georgia Subclass suffered injury or damages as a result of Defendants' conduct in violation of the Georgia FBPA.

241.    Pursuant to O.G.C.A. § 10-1-399(b), at least 30 days prior to the filing of this claim, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, was delivered to Defendants.

242.    Plaintiff Mishkin is entitled to pursue a claim on behalf of himself and the Georgia Subclass against Defendants, and to seek and recover equitable injunctive relief, general and exemplary damages, three times damages, and attorneys' fees and costs under O.G.C.A. § 10-1-399.

## COUNT XV

### VIOLATIONS OF THE OREGON UNLAWFUL TRADE PRACTICES ACT, OR. REV. STAT. § 646.605 ET SEQ.

### AGAINST ALL DEFENDANTS

### ON BEHALF OF THE OREGON SUBCLASS

243.    Plaintiff Uherbelau re-alleges and incorporates all other factual allegations set forth

in this Complaint.

244. Defendants are each a "person" as defined in the Oregon Unlawful Trade Practices Act ("Oregon UTPA"), Or. Rev. Stat. § 646.605(4).

245. Defendants' savings accounts are "real estate, goods or services" as defined in the Oregon UTPA, Or. Rev. Stat. § 646.605(6).

246. Defendants' conduct constitutes "trade" or "commerce" as defined in the Oregon UTPA, Or. Rev. Stat. § 646.605(8).

247. As described above, while engaging in trade or commerce within the State of Oregon during the time period relevant hereto, Defendants:

    a. Furtively created a new account, the similarly named "360 Performance Savings" account, which featured a higher APY than the 360 Savings account, while failing to pay 360 Savings depositors the same APY as paid on the 360 Performance Savings account;

    b. Concealed that the 360 Performance Savings account was not Capital One's only online savings account, and that the 360 Savings account continued to exist with a much lower interest rate, which information is material to customers; and

    c. Failed to correct representations that the 360 Savings online savings account was Capital One's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online savings account products or Capital One's own online savings account product line, including the 360 Performance Savings account (i.e., 0.30% is not "high interest," when Capital One gives 4.35% on its "high yield" 360 Performance Savings account).

248. The aforesaid methods, acts, and practices constitute unlawful trade practices in the

course of Defendants' business, vocation, or occupation prohibited by the Oregon UTPA, including, but not limited to, the following:

   a. "[E]mploy[ing] any unconscionable tactic in connection with selling, renting or disposing of real estate, goods or services, or collecting or enforcing an obligation." Or. Rev. Stat. § 646.607(1).

   b. "Represent[ing] that real estate, goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, quantities or qualities that the real estate, goods or services do not have or that a person has a sponsorship, approval, status, qualification, affiliation, or connection that the person does not have." Or. Rev. Stat. § 646.608(1)(e).

   c. "Represent[ing] that real estate, goods or services are of a particular standard, quality, or grade, or that real estate or goods are of a particular style or model, if the real estate, goods or services are of another." Or. Rev. Stat. § 646.608(1)(g).

   d. "Advertis[ing] real estate, goods or services with intent not to provide the real estate, goods or services as advertised . . . ." Or. Rev. Stat. § 646.608(1)(i).

249.   "A representation under [ORS 646.608(1)] or ORS 646.607 may be any manifestation of any assertion by words or conduct, including, but not limited to, a failure to disclose a fact." Or. Rev. Stat. § 646.608(2)

250.   Plaintiff Uherbelau and members of the Oregon Subclass have suffered an ascertainable loss.

251.   Plaintiff Uherbelau is entitled to pursue a claim on behalf of herself and the Oregon Subclass against Defendants under Or. Rev. Stat. §§ 646.636 and 646.638 for actual damages or statutory damages of $200, whichever is greater; punitive damages; any equitable

relief the court considers necessary or proper; attorneys' fees and costs; and such additional orders or judgments as may be necessary to restore to any person in interest any moneys or property, real or personal, of which the person was deprived by means of any practice declared to be unlawful in ORS 646.607 or 646.608, or as may be necessary to ensure cessation of unlawful trade practices.

## COUNT XVI

### VIOLATION OF OHIO DECEPTIVE TRADE PRACTICES ACT
### OHIO REV. CODE § 4165.02 ET SEQ.

### AGAINST ALL DEFENDANTS

### ON BEHALF OF THE OHIO SUBCLASS

252.     Plaintiff Pitts re-alleges and incorporates all other factual allegations set forth in this Complaint.

253.     The Ohio Deceptive Trade Practices Act declares unlawful deceptive acts or practices in the course of a person's business. See Ohio Rev. Code § 4165.02.

254.     Specifically, Capital One, *inter alia*:

a.   Deceptively created a new account with a near-identical name that offered higher interest rates than the "high-interest" 360 Savings account;

b.   Concealed that (1) it had created a superior savings account with an almost-identical name, (2) it was ending new access to the 360 Savings account, (3) it was providing a superior product to new accountholders, or (4) they could easily take advantage of the near-identical 360 Performance Savings account and immediately receive significantly higher interest;

c.   Misrepresented material facts that the 360 Savings online savings account a "high interest" savings account, even though it paid a rate of interest that is not "high

83

interest" relative to, *inter alia*, other online savings account products or Capital One's own online savings account product line (i.e., the 360 Performance Savings account); and

    d.   Misrepresented material facts that the 360 Savings account has performance characteristics of a "high interest" and "great rate" savings account even though it does not.

255.   The aforementioned acts and practices are unlawful and prohibited by Ohio Rev. Code § 4165.02, including, but not limited to, the following provisions:

    a.   Causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

    b.   Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have; and

    c.   Advertising goods or services with intent not to sell them as advertised.

256.   Capital One's deceptive acts or practices offended established public policy and were immoral, unethical, oppressive, unconscionable, unscrupulous, or substantially injurious to consumers.

257.   There were reasonably available alternatives to further Capital One's legitimate business interests, other than engaging in the misleading and deceptive conduct described herein.

258.   Capital One's conduct and actions are deceptive, untrue, and misleading to reasonable consumers, and will continue to mislead consumers in the future.

259.   Plaintiff Pitts relied on Capital One's representations to open three 360 Savings Accounts and to deposit her savings into those accounts.

260.   As a direct and proximate result of Capital One's misconduct, Plaintiff Pitts and the

84

other members of the Ohio Subclass have suffered and will continue to suffer actual damages.

261.    Capital One's wrongful conduct is ongoing and presents a continuing threat to the members of the Ohio Subclass.

262.    Pursuant to Ohio Rev. Code § 4165.03, Plaintiff Pitts seeks damages and an injunction enjoining Capital One from continuing to engage in the unfair business practices described above.

## COUNT XVII

### VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT, MICH. COMP. LAWS SERV. § 445.901, ET SEQ.

### AGAINST ALL DEFENDANTS

### ON BEHALF OF THE MICHIGAN SUBCLASS

263.    Plaintiff Guest re-alleges and incorporates all other factual allegations set forth in this Complaint.

264.    The Michigan Consumer Protection Act ("Michigan CPA") provides that "[u]nfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce are unlawful . . ." Mich. Comp. Laws Serv. § 445.903(1).

265.    Defendants are each a "person" as defined in the Michigan CPA, Mich. Comp. Laws Serv. § 445.902(1)(d).

266.    Defendants' conduct constitutes "trade" or "commerce" as defined in the Michigan CPA, Mich. Comp. Laws Serv. § 445.902(1)(g).

267.    As described above, while engaging in trade or commerce within the State of Michigan during the time period relevant hereto, Defendants:

  a.  Furtively created a new account, the similarly named "360 Performance Savings" account, which featured a higher APY than the 360 Savings account, while failing

to pay 360 Savings depositors the same APY as paid on the 360 Performance Savings account;

b. Concealed that the 360 Performance Savings account was not Capital One's only online savings account, and that the 360 Savings account continued to exist with a much lower interest rate, which information is material to customers; and

c. Failed to correct representations that the 360 Savings online savings account was Capital One's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online savings account products or Capital One's own online savings account product line, including the 360 Performance Savings account (i.e., 0.30% is not "high interest," when Capital One gives 4.35% on its "high yield" 360 Performance Savings account).

268. The aforesaid methods, acts, and practices constitute unfair, unconscionable, or deceptive acts or practices in the conduct of any trade or commerce in violation of the Michigan CPA, including, but not limited to, the following:

a. "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have." (Mich. Comp. Laws Serv. § 445.903(1)(c));

b. "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." (Mich. Comp. Laws Serv. § 445.903(1)(e)).

     c.   "Advertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented." (Mich. Comp. Laws Serv. § 445.903(1)(g)).

269.    Plaintiff Guest and the other members of the Michigan Subclass have been and continue to be injured as a direct and proximate result of Defendants' violations of the Michigan CPA.

270.    Defendants' conduct constitutes fraud and is gross, oppressive, aggravated, and involves breach of trust or confidence.

271.    Plaintiff Guest, on behalf of himself and the Michigan Subclass, seeks actual damages, injunctive relief, other equitable relief, costs, and attorneys' fees as permitted by Mich. Comp. Laws Serv. § 445.911.

## COUNT XVIII

### VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT, MO. REV. STAT. § 407.010, ET SEQ.

### AGAINST ALL DEFENDANTS

### ON BEHALF OF THE MISSOURI SUBCLASS

272.    Plaintiff Meresak re-alleges and incorporates all other factual allegations set forth in this Complaint.

273.    The Missouri Merchandising Practices Act ("Missouri MPA") provides that "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material

fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . is declared to be an unlawful practice." Mo. Rev. Stat. § 407.020(1).

274.    According to the enabling regulations for the Missouri MPA, an unfair practice is conduct that (1) either "offends any public policy;" or "is unethical, oppressive, or unscrupulous;" and (2) "[p]resents a risk of, or causes, substantial injury to consumers." Mo. Code Regs. Ann. tit. 15, § 60-8.020.

275.    Defendants are each a "person" as defined in the Missouri MPA, Mo. Rev. Stat. § 407.010(5).

276.    Defendants' savings accounts are "merchandise" as defined in the Missouri MPA, Mo. Rev. Stat. § 407.010(4).

277.    Defendants' conduct constitutes "trade" or "commerce" as defined in the Missouri MPA, Mo. Rev. Stat. § 407.010(7).

278.    As described above, while engaging in trade or commerce within the State of Missouri during the time period relevant hereto, Defendants:

a.   Furtively created a new account, the similarly named "360 Performance Savings" account, which featured a higher APY than the 360 Savings account, while failing to pay 360 Savings depositors the same APY as paid on the 360 Performance Savings account;

b.   Concealed that the 360 Performance Savings account was not Capital One's only online savings account, and that the 360 Savings account continued to exist with a much lower interest rate, which information is material to customers; and

c.   Failed to correct representations that the 360 Savings online savings account was Capital One's "high interest" savings account, even though it paid a rate of interest

that is not "high interest" relative to other online savings account products or Capital One's own online savings account product line, including the 360 Performance Savings account (i.e., 0.30% is not "high interest," when Capital One gives 4.35% on its "high yield" 360 Performance Savings account).

279.    Plaintiff Meresak and the other members of the Missouri Subclass have been and continue to be injured as a direct and proximate result of Defendants' violations of the Missouri MPA.

280.    Plaintiff Meresak, on behalf of herself and the Missouri Subclass, seeks monetary damages, punitive damages, injunctive relief, other equitable relief, costs, and attorneys' fees as permitted by Mo. Rev. Stat. § 407.025(2).

## COUNT XIX

### VIOLATIONS OF THE NEBRASKA CONSUMER PROTECTION ACT, NEB. REV. STAT. § 59-1601, ET SEQ.

### AGAINST ALL DEFENDANTS

### ON BEHALF OF THE NEBRASKA SUBCLASS

281.    Plaintiff Krause re-alleges and incorporates all other factual allegations set forth in this Complaint.

282.    The Nebraska Consumer Protection Act ("Nebraska CPA") provides that "[u]fair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful." Neb. Rev. Stat. Ann § 59-1602.

283.    Defendants are each a "person" as defined in the Nebraska CPA, Neb. Rev. Stat. Ann § 59-1601(1).

284.    Defendants' conduct constitutes "trade" or "commerce" as defined in the Nebraska CPA, Neb. Rev. Stat. Ann § 59-1601(2).

285.    As described above, while engaging in trade or commerce within the State of Nebraska during the time period relevant hereto, Defendants:

a.   Furtively created a new account, the similarly named "360 Performance Savings" account, which featured a higher APY than the 360 Savings account, while failing to pay 360 Savings depositors the same APY as paid on the 360 Performance Savings account;

b.   Concealed that the 360 Performance Savings account was not Capital One's only online savings account, and that the 360 Savings account continued to exist with a much lower interest rate, which information is material to customers; and

c.   Failed to correct representations that the 360 Savings online savings account was Capital One's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online savings account products or Capital One's own online savings account product line, including the 360 Performance Savings account (i.e., 0.30% is not "high interest," when Capital One gives 4.35% on its "high yield" 360 Performance Savings account).

286.    Plaintiff Krause and the other members of the Nebraska Class have been and continue to be injured as a direct and proximate result of Defendants' violations of the Nebraska CPA.

287.    Plaintiff Krause, on behalf of himself and the Nebraska Class, seeks actual damages, as well as enhanced damages up to $1,000, injunctive relief, other equitable relief, costs, and attorneys' fees as permitted by Neb. Rev. Stat. Ann § 59-1609.

## COUNT XX

**VIOLATIONS OF THE NEBRASKA UNIFORM DECEPTIVE TRADE PRACTICES
ACT,
NEB. REV. STAT. ANN § 87-301, ET SEQ.**

**AGAINST ALL DEFENDANTS**

**ON BEHALF OF THE NEBRASKA SUBCLASS**

288.    Plaintiff Krause re-alleges and incorporates all other factual allegations set forth in
this Complaint.

289.    Defendants' alleged conduct constitutes a deceptive trade practice in violation of
the Nebraska Uniform Deceptive Trade Practices Act ("Nebraska UDTPA"). Neb. Rev. Stat. Ann
§ 87-301, et seq.

290.    As described above, while engaging in trade or commerce within the State of
Nebraska during the time period relevant hereto, Defendants:

a.    Furtively created a new account, the similarly named "360 Performance Savings"
account, which featured a higher APY than the 360 Savings account, while failing
to pay 360 Savings depositors the same APY as paid on the 360 Performance
Savings account;

b.    Concealed that the 360 Performance Savings account was not Capital One's only
online savings account, and that the 360 Savings account continued to exist with a
much lower interest rate, which information is material to customers; and

c.    Failed to correct representations that the 360 Savings online savings account was
Capital One's "high interest" savings account, even though it paid a rate of interest
that is not "high interest" relative to other online savings account products or
Capital One's own online savings account product line, including the 360

91

Performance Savings account (i.e., 0.30% is not "high interest," when Capital One gives 4.35% on its "high yield" 360 Performance Savings account).

291.    The aforesaid fraudulent acts and practices are unlawful and prohibited by the provisions of the Nebraska UDTPA, Neb. Rev. Stat. Ann § 87-302, including, but not limited to, the following:

    a.    "Represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (§ 87-302(5));

    b.    "Represent[ing] that goods or services are of a particular standard, quality, or grade . . . if they are of another" (§ 87-302(8));

    c.    "Advertis[ing] goods or services with intent not to sell them as advertised or advertis[ing] the price in any manner calculated or tending to mislead or in any way deceive a person" (§ 87-302(10)); and

    d.    "Us[ing] any scheme or device to defraud by means of: (i) Obtaining money or property by knowingly false or fraudulent pretenses, representations, or promises; or (ii) Selling, distributing, supplying, furnishing, or procuring any property for the purpose of furthering such scheme" (§ 87-302(16));

292.    Plaintiff Krause and the other members of the Nebraska Class have been and continue to be injured as a direct and proximate result of Defendants' violations of the Nebraska UDTPA.

293.    Plaintiff Krause, on behalf of himself and the Nebraska Class, seeks injunctive relief, other equitable relief, costs, and attorneys' fees as permitted by Neb. Rev. Stat. Ann § 87-303.

## COUNT XXI

**VIOLATIONS OF THE DELAWARE CONSUMER FRAUD ACT,
6 DEL. CODE ANN. TIT. § 2511, ET SEQ.**

**AGAINST ALL DEFENDANTS**

**ON BEHALF OF THE DELAWARE SUBCLASS**

294.    Plaintiff Lenhoff re-alleges and incorporates all other factual allegations set forth in this Complaint.

295.    The Delaware Consumer Fraud Act ("Delaware CFA") provides that "[t]he act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale, lease, receipt, or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is an unlawful practice." 6 Del. Code § 2513(a).

296.    Defendants are each a "person" as defined in the Delaware CFA, 6 Del. Code § 2511(7).

297.    Defendants' savings accounts are "merchandise" as defined in the Delaware CFA, 6 Del. Code § 2511(6).

298.    Defendants' practices as alleged herein are "unfair practices" as defined in the Delaware CFA, 6 Del. Code § 2511(9).

299.    As described above, while engaging in trade or commerce within the State of Delaware during the time period relevant hereto, Defendants:

      a.    Furtively created a new account, the similarly named "360 Performance Savings" account, which featured a higher APY than the 360 Savings account, while failing

93

to pay 360 Savings depositors the same APY as paid on the 360 Performance Savings account;

b.   Concealed that the 360 Performance Savings account was not Capital One's only online savings account, and that the 360 Savings account continued to exist with a much lower interest rate, which information is material to customers; and

c.   Failed to correct representations that the 360 Savings online savings account was Capital One's "high interest" savings account, even though it paid a rate of interest that is not "high interest" relative to other online savings account products or Capital One's own online savings account product line, including the 360 Performance Savings account (i.e., 0.30% is not "high interest," when Capital One gives 4.35% on its "high yield" 360 Performance Savings account).

300.   Plaintiff Lenhoff and the other members of the Delaware Subclass have been and continue to be injured as a direct and proximate result of Defendants' violations of the Delaware CFA.

301.   Defendants' conduct constitutes fraud and is gross, oppressive, aggravated, and involves breach of trust or confidence.

302.   Plaintiff Lenhoff, on behalf of himself and the Delaware Subclass, seeks monetary damages, punitive damages, injunctive relief, other equitable relief, costs, and attorneys' fees as permitted by 6 Del. Code §§ 2513 & 2525.

<u>**COUNT XXII**</u>

**BREACH OF QUASI-CONTRACT AND UNJUST ENRICHMENT**

**AGAINST ALL DEFENDANTS**

**ON BEHALF OF THE CLASS**

303.     Plaintiffs re-allege and incorporate all other factual allegations set forth in this Complaint.

304.     Plaintiffs and the Class conferred a benefit on Capital One by maintaining their cash in 360 Savings accounts paying less interest than Plaintiffs and the Class should have rightfully received based on Defendants' conduct as alleged herein. Defendants knowingly retained this deposited cash and unjustly profited from the lower interest rate it paid to Plaintiffs and the Class.

305.     In the absence of a contract, Plaintiffs and the Class have no adequate remedy at law.

306.     Defendants' unjust enrichment can be remedied by ordering Defendants to provide restitution, and to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and the Class, all proceeds received from Plaintiffs and the Class as a result of the unlawful and/or inequitable conduct described herein.

## COUNT XXIII

### PROMISSORY ESTOPPEL

### AGAINST ALL DEFENDANTS

### ON BEHALF OF THE CALIFORNIA, DELAWARE, FLORIDA, GEORGIA, ILLINOIS, MARYLAND, MASSACHUSETTS, MISSOURI, NEBRASKA, NEW JERSEY, NEW YORK, OHIO, OREGON, PENNSYLVANIA, and TEXAS SUBCLASSES

307.     Plaintiffs re-allege and incorporate all other factual allegations set forth in this Complaint.

308.     Defendants promised that the 360 Savings account would be "high interest" and would pay a "great rate," which promises were designed to induce customers to deposit funds in 360 Savings accounts and/or keep funds in 360 Savings accounts. Defendants then concealed

that they had created a new, materially identical, similarly named online savings account, namely the 360 Performance Savings account, which paid a higher interest rate than the 360 Savings account.

309.    In reliance on Defendants' conduct as alleged herein, Plaintiffs (and Subclass members) took action by depositing their funds in 360 Savings accounts, and refrained from taking action by leaving their funds in 360 Savings accounts.

310.    Class members are presumed to have relied on Defendants' conduct. Other than the interest rate paid on the accounts, the 360 Savings account and the 360 Performance Savings account are identical. No rational person would maintain an identical account that paid materially lower interest absent Defendants' wrongful conduct.

311.    Injustice can be avoided only by enforcing Defendants' promise.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, request that the Court award the following relief:

312.    Certify this action as a class action, appoint Plaintiffs as the Class representatives, and designate the undersigned as Class counsel;

313.    Declare Defendants' conduct unlawful;

314.    Enjoin Defendants from the unlawful conduct alleged herein;

315.    Award Plaintiffs and the Class (and Subclasses) damages under common law and/or by statute, including treble and/or punitive damages;

316.    Award Plaintiffs and the Class (and Subclasses) restitution and/or disgorgement;

317.    Award Plaintiffs attorney's fees, costs, and pre-judgment and post-judgment interest; and

318.   Grant such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, and the Class and Subclass members, demand a trial by jury on all triable issues.

Dated: July 1, 2024

Respectfully submitted,

By: /s/ Matthew B. Kaplan
Matthew B. Kaplan VSB #51027
The Kaplan Law Firm
1100 N Glebe Rd
Suite 1010
Arlington, VA 22201
(703) 665-9529
mbkaplan@thekaplanlawfirm.com

*Local Counsel for Plaintiffs*

Chet B. Waldman (*pro hac vice*)
Philip M. Black (*pro hac vice*)
Timothy D. Brennan (*pro hac vice*)
WOLF POPPER LLP
845 Third Ave.
New York, NY 10022
212-759-4600
cwaldman@wolfpopper.com
pblack@wolfpopper.com
tbrennan@wolfpopper.com

*Lead Counsel for Plaintiffs and Interim
Class Counsel*