UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| IN RE: CAPITAL ONE 360 SAVINGS ACCOUNT INTEREST RATE LITIGATION | Case No. 1:24-md-03111-DJN |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**THE KAPLAN LAW FIRM**

Matthew B. Kaplan VSB #51027
1100 N Glebe Rd
Suite 1010
Arlington, VA 22201
(703) 665-9529
mbkaplan@thekaplanlawfirm.com

*Plaintiffs' Local Counsel*

**WOLF POPPER LLP**

Chet B. Waldman (*pro hac vice*)*
Carl L. Stine (*pro hac vice*)
Philip M. Black (*pro hac vice*)
Matthew Insley-Pruitt (*pro hac vice*)
Timothy D. Brennan (*pro hac vice*)
845 Third Ave.
New York, NY 10022
212-759-4600
cwaldman@wolfpopper.com
cstine@wolfpopper.com
pblack@wolfpopper.com
minsleypruitt@wolfpopper.com
tbrennan@wolfpopper.com

*\*Plaintiffs' Lead Counsel and Interim Class Counsel*

June 6, 2025

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION .............................................................................................................. 1

RELEVANT BACKGROUND ............................................................................................ 2

I.      Litigation History .................................................................................................... 2

      A.     Plaintiffs' Allegations ................................................................................ 2

      B.     Procedural History ..................................................................................... 4

           1.     Related Cases and Consolidation Proceedings ............................. 4

           2.     Motion Practice .............................................................................. 7

                 a.     Capital One's Initial Motion to Dismiss the *Savett* Action............ 7

                 b.     Capital One's Motion to Dismiss the Consolidated Amended Complaint........................................................................................ 7

                 c.     Capital One's Motion to Strike Plaintiffs' Jury Demand................ 8

                 d.     Capital One's Motion to Certify Question to the Virginia Supreme Court ................................................................................ 8

                 e.     Discovery Dispute Briefing ............................................................ 8

                 f.     Plaintiffs' Motion for Class Certification ...................................... 8

                 g.     Plaintiffs' and Capital One's Respective *Daubert* Motions ........... 9

            3.     Discovery ....................................................................................... 9

      C.     Settlement Negotiations and Mediation Sessions ................................. 11

II.     The Settlement ...................................................................................................... 11

      A.     The Settlement Class................................................................................ 11

      B.     Settlement Relief..................................................................................... 12

      C.     Release .................................................................................................... 12

      D.     Settlement Administration ...................................................................... 13

      E.     Notice Plan.............................................................................................. 13

      F.     Attorneys' Fees and Expenses, and Incentive Awards for the Representative Plaintiffs.................................................................................................. 13

LEGAL STANDARD ......................................................................................................... 13

ARGUMENT ...................................................................................................................... 15

I.      The Proposed Settlement is Fair, Reasonable, and Adequate............................... 15

      A.     The Settlement Is the Result of Arms' Length Negotiations by Experienced

and Informed Counsel Lead by Two Mediators ................................................. 15

B.    The Settlement Provides Adequate Relief ......................................................... 16

1.    Plaintiffs' Claims, While Meritorious, Face Significant Risks ................ 17

2.    Further Litigation Would Result in Significant Expense and Delay ........ 19

3.    The Method for Distributing Relief is Highly Effective ......................... 19

4.    Counsel Will Request Reasonable Attorneys' Fees ................................. 19

5.    There Are No Agreements Besides the Settlement Agreement ................ 20

C.    The Settlement Treats Settlement Class Members Equitably .............................. 20

II.    The Settlement Class Can Be Certified ........................................................................ 21

A.    The Class Is So Numerous That Joinder of All Members Is Impracticable ......... 21

B.    Common Questions of Law and Fact Predominate ............................................. 22

C.    Plaintiffs' Claims Are Typical of the Class ....................................................... 24

D.    Plaintiffs and Their Counsel Have and Will Fairly and Adequately Protect the Interests of the Class ........................................................................................ 25

E.    A Class Action is Superior to Other Available Means of Adjudication .............. 27

F.    The Class Is Ascertainable ............................................................................... 27

G.    Interim Class Counsel Should Be Appointed as Class Counsel .......................... 28

III.    The Proposed Notice Plan Should Be Approved ......................................................... 28

IV.    Proposed Schedule ..................................................................................................... 29

CONCLUSION ..................................................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*1988 Trust for Allen Children Dated 8/8/88 v. Banner Life Ins. Co.*,
   28 F.4th 513 (4th Cir. 2022) ............................................................................ 24

*Albert v. Glob. Tel\*Link Corp.*,
   No. 20-cv-01936-LKG, 2024 U.S. Dist. LEXIS 197800 (D. Md. Oct. 31, 2024).................... 14

*In re: BearingPoint, Inc., Sec. Litig.*,
   232 F.R.D. 534 (E.D. Va. 2006) ...................................................................... 25

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ................................................................................ 21

*Brady v. Thurston Motor Lines*,
   726 F.2d 136 (4th Cir. 1984) ........................................................................ 22

*Brasko v. Howard Bank*,
   Civil Case No. 1:20-cv-3489-SAG, 2022 U.S. Dist. LEXIS 57627
   (D. Md. Mar 30, 2022)............................................................................... 23

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
   155 F.3d 331 (4th Cir. 1998) ........................................................................ 25

*In re Capital One Consumer Data Sec. Breach Litig.*,
   No. 1:19-md-2915 (AJT/JFA), 2022 U.S. Dist. LEXIS 234943 (E.D. Va. Sep. 13, 2022)...... 28

*In re Checking Account Overdraft Litig.*,
   286 F.R.D. 645 (S.D. Fla. 2012) ..................................................................... 24

*Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*,
   No.2:20-CV-265, 2022 U.S. Dist. LEXIS 25222 (E.D. Va. Feb. 11, 2022) ............... 23, 24, 25

*EQT Prod. Co. v. Adair*,
   764 F.3d 347 (4th Cir. 2014) ........................................................................ 23

*Gutierrez v. Wells Fargo Bank, N.A.*,
   No. c 07-05923 WHA, 2008 U.S. Dist. LEXIS 70124 (N.D. Cal. Sep. 11, 2008).................. 24

*Herrera v. Charlotte School of Law, LLC*,
   818 Fed. App'x 165 (4th Cir. 2020) .................................................................. 14

*In re: Jeld-Wen Holding, Inc. Sec. Litig.*,
   Civil Action No. 3:20-cv-112-JAG, 2021 U.S. Dist. LEXIS 59767
   (E.D. Va. Mar. 29, 2021) ........................................................................... 24

*In re Jiffy Lube Sec. Litig.*,
   927 F.2d 155 (4th Cir. 1991) .................................................................. 14, 15, 17

*Krakauer v. Dish Network L.L.C.*,
   925 F.3d 643 (4th Cir. 2019) ...................................................................... 23, 28

*Leinhart v. Dryvit Sys., Inc.*,
    255 F.3d 138 (4th Cir. 2001) ................................................. 23

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*,
    952 F.3d 471 (4th Cir. 2020) ................................................. 14

*Manuel v. Wells Fargo Bank, Nat'l Ass'n*,
    No. 3:14cv238 (DJN), 2016 U.S. Dist. LEXIS 33708 (E.D. Va. Mar. 15, 2016) ............. 15, 16

*McLachlan v. Bd. of Trs. of the Elevator Constructors Annuity*,
    No. 22-4115, 2025 U.S. Dist. LEXIS 71644 (E.D. Pa. Apr. 15, 2025) .................... 19

*Millwood v. State Farm Life Ins. Co.*,
    No. 7:19-CV-01445-DCC, 2022 U.S. Dist. LEXIS 173928 (D.S.C. Sept. 23, 2022) ............. 24

*Morrow v. Navy Fed. Credit Union*,
    No. 1:21-cv-0722 (MSN/LRV); No. 1:22-cv-0844 (MSN/LRV), 2023 U.S. Dist. LEXIS 62806 (E.D. Va. Apr. 6, 2023) ................................................. 25

*Moyer Home Point Fin. Corp.*, Civil Action
    No. RDB-20-3449, 2023 U.S. Dist. LEXIS 183339 (D. Md. Oct. 11, 2023).................... 25, 27

*In re Peanut Farmers Antitrust Litig.*,
    No. 2:19-cv-00463, 2021 U.S. Dist. LEXIS 140427 (E.D. Va. July 26, 2021)....................... 21

*Solomon v. Am. Web Loan*,
    Civil Action No. 4:17cv145, 2020 U.S. Dist. LEXIS 112782 (E.D. Va. June 26, 2020)... 17, 18

*Stegemann v. Gannett Co. Inc.*,
    Civil Action No. 1:18-cv-325 (AJT/JFA), 2022 U.S. Dist. LEXIS 209193 (E.D. Va. Nov. 17, 2022) ................................................. 22, 24, 25

*Talbott v. GC Services Ltd. Partnership*,
    191 F.R.D. 99 (W.D. Va. 2000)................................................. 23

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*,
    325 F.R.D. 136 (D.S.C. 2018) ................................................. 24

*Thomas v. FTS USA, LLC*,
    No. 3:13cv825 (REP), 2017 U.S. Dist. LEXIS 45217 (E.D. Va. Jan. 9, 2017), *report and recommendation approved* 2017 U.S. Dist. LEXIS 44946 (E.D. Va. Mar. 27, 2017) ............. 20

*In re Titanium Dioxide Antitrust Litig.*,
    284 F.R.D. 328 (D. Md. 2012), *amended*, 962 F. Supp. 2d 840 (D. Md. 2013)....................... 22

*Trauernicht v. Genworth Financial, Inc.*,
    Civil Action No. 3:22-cv-532, 2024 U.S. Dist. LEXIS 146092 (E.D. Va. Aug. 15, 2024) .... 22, 27, 28

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).................................................22, 23

*In re Willis Towers Watson PLC Proxy Litig.*,
    Case No. 1:17-cv-1338 (AJT/JFA), 2020 U.S. Dist. LEXIS 162810 (E.D. Va. Sept. 4, 2020)................................................. 22, 23, 25, 28

*In re Zetia (Ezetimibe) Antitrust Litig.*,
699 F. Supp. 3d 448 (E.D. Va. 2023) ........................................................ 21

**Other Authorities**

7A Charles Alan Wright et. al. Federal Practice & Procedure § 1760 (3d ed. 2005) ................... 28

Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards,
7 J. Empirical Legal Stud. 811 (2010) ........................................................ 20

Fitzpatrick, Brian T., "We don't need the Consumer Financial Protection Bureau — we have
courts," *The Hill*, March 15, 2025, *available at* https://thehill.com/opinion/5195681-trump-
drops-cfpb-cases/ ........................................................ 7

**Rules**

Fed. R. Civ. P. 23(a)(1) ........................................................ 22

Fed. R. Civ. P. 23(a)(2) ........................................................ 22

Fed. R. Civ. P.  23(a)(3) ........................................................ 24

Fed. R. Civ. P. 23(a)(4) ........................................................ 26

Fed. R. Civ. P. 23(b)(3) ........................................................ 29

Fed. R. Civ. P. 23(c)(2)(B) ........................................................ 29

Fed. R. Civ. P. 23(c)(3) ........................................................ 29

Fed. R. Civ. P. 23(e)(1)(B) ........................................................ 14, 29

Fed. R. Civ. P. 23(e)(2) ........................................................ 14, 15

Fed. R. Civ. P. 23(e)(2)(C) ........................................................ 16

Fed. R. Civ. P. 23(e)(2)(D) ........................................................ 20

Fed. R. Civ. P. 23(e)(3) ........................................................ 20

Fed. R. Civ. P. 23(g)(1)(A) ........................................................ 26

## <u>INTRODUCTION</u>

Plaintiffs in the above-captioned multidistrict litigation, through their undersigned counsel ("Plaintiffs' Counsel"),[1] respectfully seek approval of the Settlement of this matter on a classwide basis. The Settlement—which was the result of hard-fought litigation and arms-length negotiation between experienced counsel, and facilitated by respected mediators (Bob Meyer of JAMS and Court-appointed Special Master Craig Seebald)—provides substantial monetary benefits to the Settlement Class and avoids the risk and delay of further proceedings.

This Settlement is one of the largest settlements ever in a consumer fraud class action against a bank. In the Settlement, Capital One has agreed to pay a total of $425 million, which consists of two components: (1) $300 million to provide a *pro rata* distribution to Settlement Class Members, and to be used to pay fees and expenses, and (2) $125 million to be paid as Additional Interest to Settlement Class Members who continue to maintain 360 Savings accounts after the Settlement's Effective Date, as more fully described below. These payments will be made directly to Settlement Class Members without the need for a claims process. In no event will Capital One pay less than this combined $425 million. This is an excellent result for the Class given the risks of trial and appeal, and easily meets the standards for approval under Fed. R. Civ. P. 26(e). For the reasons set forth below, the Court should preliminarily approve the Settlement, appoint Class Counsel, and direct notice of the Settlement to the Class.

---

[1] All citations to "Ex.__" are to the Declaration of Chet B. Waldman in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement dated June 6, 2025 (the "Waldman Decl."). All capitalized terms herein are defined within the Settlement Agreement (Waldman Decl., Ex. __). Unless otherwise specified, all citations to "ECF __" are to docket entries in the above-captioned matter and refer to the ECF-generated pagination therein.

## RELEVANT BACKGROUND

I. **Litigation History**

A. **Plaintiffs' Allegations**

Since February 2013, Capital One has maintained an online savings account for depositors called "360 Savings." ECF 10 ¶ 1. This savings account is the successor to the high-yield online savings account that had been offered by ING Direct USA, which Capital One acquired in 2012. *Id.* From February 1, 2013, until on or about September 16, 2019, Capital One offered the 360 Savings account to members of the general public, and advertised the 360 Savings account as a "high-interest" and "great rate" savings account, consistent with how ING Direct USA had positioned the product. *Id.* The rate paid on the 360 Savings account as of September 16, 2019, was 1.00%. *Id.*

In mid-September 2019, Capital One removed the 360 Savings account from its website and replaced it with a new online savings account with the name: "360 Performance Savings," which was from then on advertised as Capital One's "high-yield" online savings account. *Id.* ¶ 2. This new 360 Performance Savings account featured a higher interest rate (1.90% APY as of September 2019) than the 360 Savings account (1.00% APY at that same time). Plaintiffs have alleged that there were, and are, no differences between these two accounts other than the modest difference in the names and the major difference in the interest rates. *Id.* Capital One stopped offering the 360 Savings account to new depositors, but millions of existing 360 Savings accountholders remained in the account. Plaintiffs alleged that Capital One failed to adequately inform those accountholders that 360 Savings would no longer be a high yield account going forward. *See id.* ¶ 6. Further, Plaintiffs alleged that by removing 360 Savings from its website entirely, Capital One concealed that the new 360 Performance Savings was, in fact, a different

account than the 360 Savings account, and that 360 Performance Savings paid a higher rate of interest than the 360 Savings account. *Id.* ¶ 3.

Starting in March 2020, in response to the pandemic, the Federal Reserve lowered the federal funds rate to zero, and interest rates decreased nationally. *Id.* ¶ 4. As of December 2020, the rate paid on 360 Performance Savings had decreased to 0.40%, and the rate paid on 360 Savings had decreased to 0.30%. *Id.* Thereafter, from March 2022 through August 2023, the federal funds rate increased rapidly from 0.08% to 5.33%, and Capital One steadily increased the rate paid on the 360 Performance Savings account to 4.30%. *Id.* However, the rate paid on the 360 Savings Account remained at 0.30% until November 2, 2024 (when it raised the rate to 0.50%). *See id.* At all times during the proposed Class Period, 360 Performance Savings accountholders received a higher rate of interest than did 360 Savings accountholders. *See id.* ¶ 64.

The 360 Savings Account Disclosures, state that the "the terms applicable to [customers'] 360 Savings account[s]" to which customers "agree to be bound" by opening or maintaining the account, provide that "interest rates and annual percentage yields are variable and may change at any time at our [i.e., Capital One's] discretion." *Id.* ¶ 72. Plaintiffs alleged that under Virginia law, a covenant of good faith and fair dealing is implied into this agreement, and provides that Capital One must exercise its discretion honestly and in good faith. ECF 49 (motion to dismiss decision) at 34-40. Plaintiffs claimed that Capital One breached the covenant of good faith and fair dealing and violated various state consumer protection laws by failing to raise interest rates for its 360 Savings accountholders, to whom Capital One had allegedly promised a variable "high interest" rate. *See id.* Instead, as stated above, Plaintiffs contended that Capital One capped the interest rate for the 360 Savings account and created a new savings account product with a higher yield (i.e., 360 Performance Savings), while allegedly concealing the difference from its current customers.

*See id.* Plaintiffs alleged a breach of the implied covenant on behalf of all accountholders, and violations of the consumer protection statutes of seventeen states. *Id.* at 7-8.

**B.    Procedural History**

**1.    Related Cases and Consolidation Proceedings**

Plaintiff Savett initiated these proceedings through his counsel, Wolf Popper LLP, with the filing of *Savett v. Capital One, N.A.* in this Court in July 2023. *See* No. 1:23-cv-890, ECF 1. The initiating complaint is thirty-four pages long and contains detailed allegations about Capital One's alleged conduct, including allegations pertaining to the nature of online savings accounts, Capital One's statements and alleged omissions over time, and the interest paid on Capital One's online savings accounts in relation to one another and the Federal Funds rate. *See generally id.* The *Savett* Action was amended on September 15, 2023, and again on October 19, 2023, to add two new plaintiffs, as well as additional consumer protection claims and subclasses. *See Savett* Action, ECF 9, 19.

On January 21, 2024, *The Wall Street Journal* published an article reporting on Capital One's alleged conduct in the *Savett* Action and mentioned the case.[2] Thereafter, on February 26, 2024, thirteen more Plaintiffs, also represented by Wolf Popper, filed a related case, also in this District, seeking to represent the same nationwide class as in the *Savett* Action, plus subclasses from eight more states. *See Hopkins v. Capital One*, N.A., No. 1:24-cv-00292 (E.D. Va.), ECF 1 (the "*Hopkins* Action"). On March 15, 2024, the *Hopkins* Action was amended to add two more Plaintiffs and two more subclasses. *See Hopkins* Action, ECF 4. Beginning in late February 2024,

---

[2] Rachel Louise Ensign, *They Thought Their Money Was in High-Interest Accounts—They Got Paid Peanuts*, Wall Street J., Jan. 21, 2024.

additional cases alleging the same wrongdoing against Capital One were filed by different Plaintiffs in other federal courts.[3]

On March 20, 2024, Capital One made an application before the Judicial Panel on Multidistrict Litigation ("JPML") to consolidate *Savett*, *Hopkins*, and these other related cases. *See In Re: Capital One 360 Savings Account Interest Rate Litig.*, J.P.M.L. Case No. 3111, ECF 1. Plaintiffs in *Savett* and *Hopkins* "d[id] not oppose centralization and support[ed] the selection of the Eastern District of Virginia as the transferee district," and the centralization petition was granted on June 7, 2024. *See id.* ECF 22.

While the JPML proceedings were underway, and in anticipation that the cases would be consolidated, on April 16, 2024, Wolf Popper and counsel for Plaintiffs in the related cases then before the JPML (Shamis & Gentile, P.A.; Edelsberg Law, PA; Ahdoot & Wolfson, PC; Kaliel Gold PLLC) (collectively the "JPA Firms") executed a Joint Prosecution Agreement ("JPA"). *See* ECF 5-2. The JPA is straightforward and provides, *inter alia*, that counsel would work cooperatively to prosecute this litigation under the leadership of Wolf Popper, and that Wolf Popper would direct the work to be done by each firm. *See id.* ¶¶ 3(a)-(b). Pursuant to Fed. R. Civ. P. 23(g)(3), on June 24, 2024, this Court appointed Chet B. Waldman of Wolf Popper as Plaintiffs' Lead Counsel and Interim Class Counsel, and Matthew B. Kaplan of The Kaplan Law Firm as Plaintiffs' Local Counsel. ECF 6.

Plaintiffs filed their operative Consolidated Amended Complaint on July 1, 2024. ECF 10. On July 18, 2024, the Court set an aggressive "Rocket Docket" schedule for the case, leaving the

---

[3] *Sim v. Capital One Financial Corp.*, No. 2:24-cv-01222 (C.D. Cal. Feb. 14, 2024); *Pitts v. Capital One Financial Corp.*, No. 3:24-cv-00047 (S.D. Ohio Feb. 19, 2024); *Port v. Capital One, N.A.*, No. 3:24-cv-01006 (D.N.J. Feb. 21, 2024); *Bellantoni v. Capital One Financial Corp.*, No. 1:24-cv-01558 (E.D.N.Y. Mar. 1, 2024).

Parties with seven months to complete all discovery (including expert discovery), with class certification and *Daubert* briefing to occur concurrently. *See* ECF 26; *see also* ECF 24 (acknowledging the "Rocket Docket"). The Court also appointed Craig P. Seebald, a partner at Vinson & Elkins, to serve as Special Master for the purpose of overseeing discovery. *See* ECF 24.

On January 14, 2025, in the final days of the outgoing Biden administration, the Consumer Financial Protection Bureau ("CFPB") also filed a civil action against Capital One based on the same basic facts alleged in this class action. *See Consumer Financial Protection Bureau v. Capital One, N.A.*, E.D. Va. No. 25-cv-61 ("CFPB Action"), ECF 1. A side-by-side comparison of the CFPB complaint (*id.*) with the operative complaint here (ECF 10) confirms that the factual predicate for the cases is nearly identical, with the CFPB complaint even using basically the same screenshots of the Capital One website and chart of comparative interest rates. The Court directed the Parties to state their position on whether this class action should be consolidated with the CFPB Action (ECF 57), and set a hearing to discuss the same (ECF 69). On February 5, 2025, Plaintiffs filed their position, stating that they would not oppose coordination with the CFPB Action for certain discovery purposes, so long as there was no impact to the schedule for this class action. ECF 77. On February 7, 2025, the CFPB voluntarily dismissed its complaint with prejudice, leaving this class action as the sole avenue for relief for all[4] 360 Savings accountholders. CFPB Action, ECF 20.[5]

---

[4] On May 14, 2025, the New York Attorney General filed a lawsuit against Capital One making the same allegations on behalf of New Yorkers. *See People of the State of New York v. Capital One, N.A.*, No 25-cv-4037, ECF 1 (E.D.N.Y. May 14, 2025).

[5] *See* Fitzpatrick, Brian T., "We don't need the Consumer Financial Protection Bureau — we have courts," *The Hill*, March 15, 2025, *available at* https://thehill.com/opinion/5195681-trump-drops-cfpb-cases/ ("The CFPB filed its case only days before Trump took office. But the private bar sued Capital One for the same thing almost two years ago. Seven different class actions against it are currently consolidated in a federal court in Virginia. The CFPB's lawsuit was just

### 2. Motion Practice

This matter has involved many rounds of motion practice on complex legal issues. To date, Plaintiffs have largely prevailed on the motions that the Court has decided.

#### a. Capital One's Initial Motion to Dismiss the *Savett* Action

Capital One initially moved to dismiss the *Savett* Action on November 9, 2023. *See Savett Action*, ECF 32. Plaintiffs' counsel prepared and submitted a forty (40) page opposition to the motion on December 26, 2023; and the motion was fully briefed as of January 25, 2024. *See Savett Action*, ECF 32, 39, 40, & text order dated January 29, 2024. That motion remained pending when the constituent cases were consolidated into this MDL proceeding.

#### b. Capital One's Motion to Dismiss the Consolidated Amended Complaint

On July 26, 2024, Capital One moved to dismiss the new Consolidated Amended Complaint (ECF 29). In its motion to dismiss, Capital One argued (among other things) that all of Plaintiffs' claims were preempted by the National Bank Act, and that Plaintiffs had not stated a claim for violation of the implied covenant of good faith and fair dealing stemming from CONA's "discretion" to set interest rates, as specified in the 360 Savings Account Disclosures. *See generally* ECF 30. On August 23, 2024, Plaintiffs submitted a 50-page opposition to the motion to dismiss. ECF 39. On November 12, 2024, in a 106-page opinion, the Court denied in substantial part Capital One's motion to dismiss, except for Counts XVI, XX, XXII, and XXIII (ECF 49).

---

a me-too lawsuit. Capital One is not off the hook without it. Indeed, consumers are in better hands now.").

### c.    Capital One's Motion to Strike Plaintiffs' Jury Demand

On July 26, 2024, Capital One also moved to strike Plaintiffs' jury demand. ECF 31. On August 23, 2024, Plaintiffs submitted a 10-page opposition to the motion to strike. ECF 38. On November 12, 2024, the Court denied Capital One's motion to strike. ECF 51.

### d.    Capital One's Motion to Certify Question to the Virginia Supreme Court

On November 26, 2024, after the Court decided the motion to dismiss, Capital One filed a motion to certify to the Virginia Supreme Court the question of whether "Virginia law's implied covenant of good faith and fair dealing impose[s] a duty of honesty in the exercise of express contractual rights." ECF 53, 54. Plaintiffs opposed the motion on December 10, 2024 (ECF 55), and the Court denied the motion on January 16, 2025 (ECF 61).

### e.    Discovery Dispute Briefing

On the one occasion when the Parties were unable to resolve a discovery dispute through negotiation, both sides presented briefing and argument to the Special Master, who ruled in Plaintiffs' favor. *See* ECF 62 (Report and Recommendation), 76 (Order adopting Report and Recommendation).

### f.    Plaintiffs' Motion for Class Certification

On March 28, 2025, Plaintiffs submitted their class certification motion, accompanied by a 40-page brief and 63 exhibits. ECF 102-104. On April 11, 2025, Capital One responded to the motion with a 50-page opposition brief and 62 exhibits. ECF 143. Six calendar days later, on April 17, 2025, Plaintiffs submitted a 40-page reply brief with 37 additional exhibits. ECF 145-146. The motion remained pending at the time the Parties agreed in principle to the Settlement.

g.      **Plaintiffs' and Capital One's Respective *Daubert* Motions**

On March 28, 2025, Plaintiffs submitted three motions to exclude Capital One's expert witnesses, along with accompanying briefs (totaling 50 pages) and 28 exhibits. ECF 112-113, 115-116, 119-120, 129. On the same date, Capital One submitted three motions to exclude Plaintiffs' experts, along with accompanying briefs (totaling 59 pages) and 41 total exhibits. ECF 106-107, 118, 121, 125-126. On April 11, 2025, each side responded to the other side's motions, with Plaintiffs submitting three briefs (totaling 74 pages) and 18 exhibits, and Capital One submitting three briefs (totaling 72 pages) and 49 exhibits. ECF 132-142. On April 18, 2025, each side submitted replies, with Plaintiffs submitting three briefs (totaling 39 pages) and one additional exhibit, and Capital One submitting three briefs (totaling 50 pages) and 15 additional exhibits. ECF 148-158. These motions remained pending at the time the parties agreed in principle to the Settlement.

3.      **Discovery**

Beginning immediately after the initial status conference on July 18, 2024, and continuing through April 18, 2025 (when the Parties agreed to the settlement in principle), Plaintiffs and their counsel have worked constantly and tirelessly on discovery to adhere to the Court's schedule, including by doing the following:

- Drafting and serving discovery requests, including (1) a first set of requests for production dated August 23, 2024; (2) a first set of interrogatories dated August 23, 2024; (3) a second set of interrogatories dated November 27, 2024; (4) a third set of interrogatories dated December 13, 2024; (5) a fourth set of interrogatories dated April 7, 2025; (6) a second set of requests for production dated April 7, 2025; and (7) requests for admission dated April 7, 2025.

- Negotiating a detailed (1) discovery plan, (2) protective order, and (3) protocol for exchange of electronically stored information ("ESI"), with the assistance and oversight of the Special Master. *See* ECF 43-46.

- Responding to Capital One's discovery requests to all twenty-six of the Plaintiffs, each comprising 27 requests for production (or 702 total requests across all Plaintiffs) and 19 interrogatories (495 across all Plaintiffs, including one additional interrogatory specific to one Plaintiff).

- Reviewing approximately 75,000 documents (roughly two million pages) produced on a rolling basis by Capital One and third parties.

- Resolving numerous, ongoing discovery disputes through meet and confer negotiations with Capital One, pertaining to issues including custodians, search terms, document repositories, deposition logistics, and the sufficiency and scope of both Capital One's and Plaintiffs' respective discovery responses.

- Serving and negotiating responses to five non-party subpoenas to Capital One vendors, four of whom provided relevant and helpful documents.

- Defending the depositions of all twenty-six Plaintiffs, both remotely and in locations across the country.

- Preparing for depositions of twenty of Capital One's current and former employees, and taking seven of those depositions prior to the Parties' agreement to settle.

- Completing expert discovery (including reports and depositions for six experts between the Parties).

*See* Waldman Decl. ¶¶ 10-15.

### C.     Settlement Negotiations and Mediation Sessions

The Court's initial scheduling order required the Parties to complete mediation by May 17, 2025. ECF 26 ¶ 20(a). On March 1, 2025, the Court amended that order, and instead ordered that "[a]ll efforts at settlement must be completed by May 17, 2025." ECF 90 ¶ 7 (emphasis added). The Court appointed Special Master Seebald as a mediator (ECF 90 ¶ 2 & ECF 96) in conjunction with the Parties' chosen private mediator, Robert Meyer of JAMS (ECF 90 ¶ 3).

The Parties held an all-day, in-person mediation session with Mr. Meyer and Mr. Seebald on March 12, 2025. *See* ECF 95 at 2. The Parties were unable to reach settlement after this first session; in fact, they were not even close. Accordingly, the Parties held a second all-day, in-person mediation session with Mr. Meyer (appearing remotely) and Mr. Seebald on April 18, 2025. *See id.* At this point, the Parties had completed expert discovery, approximately 40 depositions, and fully briefed class certification and *Daubert* motions. Through negotiation and with the assistance of both Mr. Meyer and Mr. Seebald, the Parties agreed in principle to the Settlement after this April 18, 2025 mediation session. Waldman Decl. ¶¶ 16-17.

Thereafter, the Parties held two additional remote mediation sessions with Mr. Meyer and Mr. Seebald on May 28, 2025, and May 30, 2025, to discuss and resolve disputes concerning the structure of the Settlement. *See id.* ¶ 18.

## II.     <u>The Settlement</u>

### A.     The Settlement Class

The Settlement Class is comprised of "the persons or Entities who maintained a Capital One 360 Savings account at any time during the Class Period (i.e., from September 18, 2019 through and including the date on which the Court enters a Preliminary Approval Order), including joint and co-holders of 360 Savings accounts, as reflected in the Class List to be generated by Capital One."  Settlement Agreement ¶ 2.41.

11

### B.    Settlement Relief

Under the terms of the Settlement, Capital One will pay $425 million to Settlement Class Members consisting of two components: (1) $300 million to be used to pay fees and expenses and provide a *pro rata* distribution to Settlement Class Members, and (2) $125 million to be paid as Additional Interest to Settlement Class Members who continue to maintain 360 Savings accounts. Settlement Agreement ¶¶ 3-5. These amounts are fixed and in no event will Capital One pay less than the combined $425 million. *Id.* ¶¶ 3.2, 5.2. Importantly, at the time the Settlement terms were initially agreed upon, approximately three quarters of the 360 Savings accounts (comprising 85% of the class-wide damages) remained open, representing a super-majority of the Class. Waldman Decl. ¶ 22.  Only 360 Savings accountholders whose accounts remain open at or after the End Date will bear any attorneys' fees relating to the Additional Interest payments. Settlement Agreement ¶ 4.2.[6]

### C.    Release

The Settlement releases the Capital One Parties from all claims that in any way concern, arise out of, or relate to the facts alleged in the Complaint or the Action, or any theories of recovery that were, or could have been, raised at any point in the Action. Settlement Agreement ¶ 2.39; *id.* ¶ 15.1.[7]

---

[6] Whether a 360 Savings account is closed or remains open for this purpose will be determined based on an "End Date," which will be the same date as the deadline to opt out or object to the Settlement, and which will be disclosed to Settlement Class Members in the Notices. *See* Settlement Agreement ¶¶ 2.17 & 4.2.

[7] The Settlement also releases the Plaintiffs from all claims that arise out of or relate in any way to the institution, prosecution, or settlement of the Action. *Id.* ¶ 15.2

### D.    Settlement Administration and Notice Plan

Plaintiffs have selected Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Settlement Administrator, subject to the Court's approval. *See* Settlement Agreement ¶ 2.43. Epiq is a well-respected settlement administrator that has administered, among other settlements, the $190 million Capital One data breach settlement. *See* Declaration of Cameron R. Azari, Esq. Regarding Notice Plan ("Azari Decl.") annexed as Ex. 2 to the Waldman Decl, ¶ 5.d. Epiq maintains thorough and strict data privacy and security standards. *Id.* ¶¶ 10-16.

Epiq will maintain a Settlement Website, and class notice will be distributed by email and direct mail (postcards) to all 360 Savings accountholders using contact information from Capital One's records, as well as via press releases. *Id.* ¶¶ 17-30. This Notice Plan is expected to reach at least 90% of the Settlement Class. *Id.* ¶ 32. The forms of notice are enclosed as Exhibits 3-5 to the Settlement Agreement.

### E.    Attorneys' Fees and Expenses, and Incentive Awards for the Representative Plaintiffs

The Settlement provides that Plaintiffs may request, and Capital One will not oppose, reimbursement of reasonable expenses from the Settlement Fund, and payment of attorneys' fees in an amount not to exceed 20% of the settlement value. Settlement Agreement ¶ 20.2. The Settlement further provides that Plaintiffs may request Service Awards of up to $10,000 per Plaintiff from the Settlement Fund. *Id.* ¶ 19.1.

## <u>LEGAL STANDARD</u>

The Court directs notice of a class action settlement to class members upon a showing "that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). At the preliminary approval stage, "the Court determines whether the settlement is within the range of possible

approval, such that there is probable cause to notify the class members of the proposed settlement." *Albert v. Glob. Tel\*Link Corp.*, No. 20-cv-01936-LKG, 2024 U.S. Dist. LEXIS 197800, at \*14 (D. Md. Oct. 31, 2024) (quotation and citation omitted). "At this initial stage, the Court must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.* (quotation and citation omitted). "Preliminary approval should be granted when a proposed settlement is within the range of possible approval, subject to further consideration after a final fairness hearing at which interested parties have had an opportunity to object." *Id.* (quotation, formatting, and citation omitted).

"The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991).[8] "Though the parties enjoy a strong initial presumption that the compromise is fair and reasonable, the Court must still appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14cv238 (DJN), 2016 U.S. Dist. LEXIS 33708, at \*8 (E.D. Va. Mar. 15, 2016) (quotation and citation omitted).

---

[8] The Fourth Circuit has held that the *Jiffy Lube* standards "almost completely overlap with the new Rule 23(e)(2) factors, rendering the analysis the same." *See Herrera v. Charlotte School of Law, LLC*, 818 Fed. App'x 165, 176 n.4, 2020 WL 3118494, at \*8 n.4 (4th Cir. 2020) (citing *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 474 n.8 (4th Cir. 2020)).

## **ARGUMENT**

I.    **The Proposed Settlement is Fair, Reasonable, and Adequate**

    A.    **The Settlement Is the Result of Arms' Length Negotiations by Experienced and Informed Counsel Led by Two Mediators**

Rule 26(e) requires the Court to consider whether "(A) the class representatives and class counsel have adequately represented the class; [and] (B) the proposal was negotiated at arm's length." Fed. R. Civ. P. 26(e)(2). "When assessing the fairness of a settlement, the Court looks primarily at whether a 'settlement was reached as a result of good-faith bargaining at arm's length, without collusion.'" *Manuel v. Wells Fargo*, 2016 U.S. Dist. LEXIS 33708, at *9 (quoting *In re Jiffy Lube*, 927 F.2d at 159)). In making this fairness determination, the Court considers four factors: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of [consumer] class action litigation." *In re Jiffy Lube*, 927 F.2d at 159.

Here, these factors support approval. Class certification and *Daubert* motions had been fully briefed and filed, but not yet decided. The parties had completed the majority of discovery at the time of settlement (with all twenty-six Plaintiffs and six experts having been deposed, and seven of the twenty fact witnesses noticed by Plaintiffs). Additionally, Capital One and other third parties produced (and Plaintiffs' Counsel reviewed) over 75,000 documents (over 2 million pages), and the Parties had submitted over 750 pages of substantive briefing on contested legal issues. Thus, the Parties had ample information by which to assess the case and evaluate the Settlement.

The settlement negotiations took place over multiple days with the assistance of two independent mediators—Robert Meyer of JAMS, who is well-respected on both sides of the bar and routinely successfully mediates cases of this magnitude and complexity; and Special Master

Seebald, who was hand-picked by the Court for his experience, temperament, and knowledge of the facts of this particular case. *See* ECF 24, 90. This Settlement is the result of the input and guidance of both Mr. Meyer and Mr. Seebald, as well as the judgment of Plaintiffs' Counsel (including the JPA Firms), who are highly experienced in class actions generally and consumer class actions specifically. *See* Waldman Decl. ¶¶ 25-26. Under these circumstances, there is no doubt that this Settlement is the result of good-faith, arms-length negotiations, by knowledgeable counsel and with the help of respected mediators.

These circumstances strongly support approval of the Settlement. *See Manuel v. Wells Fargo*, 2016 U.S. Dist. LEXIS 33708, at *9 (settlement fair where, among other things, "the parties had engaged in extensive and aggressive discovery"; "the in-person negotiations took place over the course of an entire day in front of a seasoned and respected private mediator"; and "this Court would have difficulty overstating Class Counsel's experience in the area of [relevant] class action litigation.").

### B.    The Settlement Provides Adequate Relief

Rule 23(e) further requires the Court to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Correspondingly, in considering whether a settlement is adequate, the Fourth Circuit directs Courts to consider "(1) the relative strength of the plaintiff's case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition

16

to the settlement." *In re Jiffy Lube*, 927 F.2d at 159. Here, these factors weigh strongly in favor of approval.[9]

### 1.    Plaintiffs' Claims, While Meritorious, Face Significant Risks

The Court sustained most of Plaintiffs' claims in its decision denying in substantial part Capital One's motion to dismiss (ECF 49), and Plaintiffs' Counsel believe that the discovery record supports their allegations. However, there are considerable risks weighing in favor of the Settlement, including:

- As noted above, Capital One filed a 50-page opposition to Plaintiffs' motion for class certification raising arguments that, if accepted, would result in the denial of class certification as to the Class and all proposed subclasses, and would effectively end the litigation. Even assuming Plaintiffs prevailed on class certification, the Fourth Circuit could accept a Rule 23(f) petition from Capital One, which, at a minimum, would have delayed resolution and given Capital One an additional opportunity to defeat class certification.

- Capital One intended to move for summary judgment, and while Plaintiffs' Counsel believe the risk of the Court granting such a motion was low, it could nonetheless have resulted in dismissal of the case or an unfavorable narrowing of the issues remaining for trial.

- A reasonable jury could issue a verdict in Capital One's favor after trial (for example, by agreeing with Capital One's argument that nothing was concealed from 360 Savings accountholders, because their monthly account statements listed their APY earned, and

---

[9] The fifth *Jiffy Lube* factor—the degree of opposition to the settlement—cannot be addressed until after the Class is notified. Additionally, Capital One's solvency is not a concern, and in any event, "is beside the point given the other factors weighing in favor of preliminary approval." *Solomon v. Am. Web Loan*, Civil Action No. 4:17cv145, 2020 U.S. Dist. LEXIS 112782, at *17-18 (E.D. Va. June 26, 2020) (quotation omitted).

because 360 Performance Savings was generally available and widely marketed, *see* ECF 30 at 19, 23-24, 44; *see also* ECF 40 at 31).[10] Even if the jury issued a verdict in Plaintiffs' favor, the jury could reduce damages from Plaintiffs' proposed calculation.[11]

- Even if Plaintiffs prevailed through trial, there would be significant appellate risk. For example, the Fourth Circuit could reverse this Court's preemption decision and hold that all of Plaintiffs' claims are preempted by the National Bank Act. The Fourth Circuit could also reverse the Court's earlier determination that Plaintiffs had stated a claim for breach of the implied covenant of good faith and fair dealing under Virginia law (or could certify that question to the Virginia Supreme Court, which could hold accordingly). *See Solomon*, 2020 U.S. Dist. LEXIS 112782, at *16 ("Here, the Defendants have continually asserted that they are immune to suit . . . . This Court has repeatedly disagreed with the Defendants' positions on these issues. . . . However, it is possible that the Fourth Circuit could render a decision adverse to the Plaintiffs . . . . Accordingly, these facts point to the uncertainty of the Plaintiffs' case and, thus, weigh in favor of settlement approval.").

Any of the abovementioned risks could have resulted in no recovery, or a substantially reduced recovery, and the cumulative probability of any one of them occurring weighs in favor of

---

[10] Additional subsidiary risks include: one or more of Plaintiffs' experts may have been disqualified pursuant to the pending *Daubert* motions; the law could change unfavorably to Plaintiffs; key witnesses favorable to Plaintiffs could be unavailable; and/or the jury could credit Capital One affiliated witnesses or interpret Capital One internal documents unfavorably to Plaintiffs.

[11] The Settlement here represents 14.8% of damages based on Plaintiffs' best-case maximum damages calculation in Plaintiffs' damages expert's reply report. Capital One advanced competing damages theories and calculations; based on one such calculation in Capital One's damages expert's report that could have been presented to the jury, the Settlement here represents 57.2% of damages. While Plaintiffs' Counsel does not endorse that alternative view of damages, the point remains that obtaining Plaintiffs' best-case damages figure was uncertain even if Plaintiffs prevailed on liability at trial.

approving the Settlement. *See McLachlan v. Bd. of Trs. of the Elevator Constructors Annuity*, No. 22-4115, 2025 U.S. Dist. LEXIS 71644, at *16 (E.D. Pa. Apr. 15, 2025) ("The Settlement represents around a 5.11% recovery based on Plaintiffs' estimate of maximum damages or a 40.6% recovery based on Defendants' estimate of damages. . . . Considering the risks, the Settlement Amount—negotiated at arm's length with the hands-on involvement of an experienced mediator— is reasonable since there is a probability that proceeding to trial would have yielded no recovery. This weighs in favor of approval of the Settlement.").

### 2. Further Litigation Would Result in Significant Expense and Delay

As mentioned above, there is the possibility that the Fourth Circuit could accept a Rule 23(f) petition after class certification, and the near certainty that either side would appeal after trial. The Settlement provides relief to Settlement Class Members at least a year earlier than would be expected if the matter went through the appeals process.

### 3. The Method for Distributing Relief is Highly Effective

Settlement relief will be sent via check or electronic payment without the need to file any claim forms, and additional interest payments will be deposited directly into the accounts of Settlement Class Members who continue to maintain 360 Savings accounts—all highly effective, direct means of distribution.

### 4. Counsel Will Request Reasonable Attorneys' Fees

Plaintiffs' Counsel will request no more than 20% of the settlement value in attorneys' fees, which is reasonable in light of the exhaustive efforts that Plaintiffs' Counsel expended in discovery and briefing contentious legal issues (*supra* Background Sections I.B.2-3); the degree of success Plaintiffs' Counsel obtained (a $425 million monetary benefit); the substantial contingent risk Plaintiffs' Counsel assumed; and the fact that such a percentage is consistent with settlements of similar size. *See* Brian T. Fitzpatrick, An Empirical Study of Class Action

19

Settlements and Their Fee Awards, 7 J. Empirical Legal Stud. 811, 835 (2010) (for federal consumer class action settlements in 2006 and 2007, the mean and median awards were 23.5% and 24.6%, respectively).[12]

### 5.    There Are No Agreements Besides the Settlement Agreement

There are no other agreements between the Parties to identify besides the Settlement Agreement. *See* Fed. R. Civ. P. 23(e)(3).

### C.    The Settlement Treats Settlement Class Members Equitably

Rule 26(e) requires the Court to consider whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 26(e)(2)(D). Here, Settlement Class Members who are or were 360 Savings accountholders up until the Effective Date will receive their *pro rata* share of the $300 million (net of expenses and fees) common fund, and Settlement Class Members who continue to maintain 360 Savings accounts after the End Date will also receive an ongoing *pro rata* share of the $125 million in increased interest payments. Because the Settlement's monetary benefits are paid on a *pro rata* basis, all Settlement Class Members are treated equitably. *See In re Zetia (Ezetimibe) Antitrust Litig.*, 699 F. Supp. 3d 448, 460 (E.D. Va. 2023) ("the *pro rata* distribution of the Settlement Fund provided in the Plan of Allocation satisfies this requirement"). The proposed service awards to the Plaintiffs do not affect this conclusion. *See In*

---

[12] Each named Plaintiff agreed *ex ante* in their engagement letter that their counsel could seek a fee of one third of any common fund resulting from any settlement or verdict. Waldman Decl. ¶ 29. Since a one-third fee is both authorized and customary, a request for slightly more than half of that amount would be reasonable. *See Thomas v. FTS USA, LLC*, No. 3:13cv825 (REP), 2017 U.S. Dist. LEXIS 45217, at *14 (E.D. Va. Jan. 9, 2017) (Novak, M.J.), *report and recommendation approved* 2017 U.S. Dist. LEXIS 44946, at *1 (E.D. Va. Mar. 27, 2017) (awarding fees of 33.33% and noting that "any discussion of percentage awards should acknowledge the age-old assumption that a lawyer receives a third of his client's recovery under most contingency agreements. Newberg on Class Actions § 15:73 (5th ed.). Consequently, a fee award of one-third of the settlement fund would be consistent with that awarded in other cases").

*re Peanut Farmers Antitrust Litig.*, No. 2:19-cv-00463, 2021 U.S. Dist. LEXIS 140427, at *16 (E.D. Va. July 26, 2021) ("Should the Court grant a service award to the class representatives, the reward will be fair and reasonable in accordance with the requirements under Rule 23(e)(2). Therefore, the proposed . . . class settlement treats class members equitably relative to one another.").

Importantly, the terms of the Agreement ensures that Settlement Class Members who have already closed their 360 Savings accounts by the End Date will not pay for any attorneys' fees attributable proportionally to the $125 million in additional interest (which is being paid only to Settlement Class Members who choose to maintain their 360 Savings accounts after receiving notice of the Settlement). This is accomplished by increasing the Class Cash Payments to Settlement Class Members who have closed their 360 Savings accounts by a certain Multiplier relative to Settlement Class Members who continue to maintain their 360 Savings accounts and will receive payments of Additional Interest (explained to Settlement Class Members in the Notice). Plaintiffs' Counsel will determine this ratio using balance and attrition information provided by Capital One and in consultation with their damages expert, Mr. David McKnight. *See* Waldman Decl. ¶ 23. Thus, attorneys' fees will be paid "proportionately among those benefited by the suit." *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980).

## II.    The Settlement Class Can Be Certified

### A.    The Class Is So Numerous That Joinder of All Members Is Impracticable

Rule 23(a)(1) requires a class to be "so numerous that joinder of all members is impracticable." "No specified number is needed to maintain a class action." *In re Willis Towers Watson PLC Proxy Litig.*, Case No. 1:17-cv-1338 (AJT/JFA), 2020 U.S. Dist. LEXIS 162810, at *35 (E.D. Va. Sept. 4, 2020) (quoting *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984)). Instead, "the determination rests on the court's practical judgment in light of the particular

facts of the case." *Willis Towers Watson*, 2020 U.S. Dist. LEXIS 162810, at *35 (citations omitted); *accord Stegemann v. Gannett Co. Inc.*, Civil Action No. 1:18-cv-325 (AJT/JFA), 2022 U.S. Dist. LEXIS 209193, at *25 (E.D. Va. Nov. 17, 2022). Courts within the Fourth Circuit generally "find classes of at least 40 members sufficiently large to satisfy the impracticability requirement." *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 337 (D. Md. 2012), *amended*, 962 F. Supp. 2d 840 (D. Md. 2013) (citation omitted). Numerosity is met here because, at all relevant times, there were millions of 360 Savings accountholders. Waldman Decl. ¶ 20.

### B. Common Questions of Law and Fact Predominate

Rule 23(a)(2) requires "questions of law or fact common to the class," and Rule 23(b)(3) requires that "questions of law or fact predominate over any questions affecting only individual members." Here, common questions of law and fact predominate over any individual issues.

A common question is one whose determination will "resolve an issue that is central to the validity of each one of the claims in one stroke." *Trauernicht v. Genworth Financial, Inc.*, 2024 U.S. Dist. LEXIS 146092, at *23 (E.D. Va. Aug. 15, 2024) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). In a class action brought under Rule 23(b)(3), as here, "the 'commonality' requirement of Rule 23(a)(2) is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over other questions." *Willis Towers Watson*, 2020 U.S. Dist. LEXIS 162810, at *35 (quoting *Leinhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 n.4 (4th Cir. 2001)).

To satisfy predominance, common questions must have significant "bearing on the central issue in the litigation." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 366 (4th Cir. 2014). "In other words, the requirement is met where all Class members' claims 'depend upon a common contention and establishing' its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Brasko v. Howard Bank*, Civil Case No. 1:20-cv-3489-SAG, 2022 U.S.

Dist. LEXIS 57627, at *11 (D. Md. Mar 30, 2022) (quoting *Dukes*, 564 U.S. at 350, 359)). "Predominance is a test readily met in certain cases alleging consumer . . . laws" (*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)), and "is normally satisfied where there is an essential common factual link, such as standardized documents and practices . . . even though the nature and amount of damages may differ among class members." *Talbott v. GC Services Ltd. Partnership*, 191 F.R.D. 99, 106 (W.D. Va. 2000).[13]

Cases like this one, involving a uniform practice that allegedly breached a form contract, are routinely certified. *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, No.2:20-CV-265, 2022 U.S. Dist. LEXIS 25222, at *45, *58-59 (E.D. Va. Feb. 11, 2022) ("Indeed, because this is a breach of contract and breach of implied covenant and fair dealing case, all of the questions that Plaintiff[s] allege [] are at issue involve the meaning of Defendants' [contract] and the impact of Defendants' conduct."), *rev'd and remanded (on other non-class certification grounds)*, 95 F.4th 181 (4th Cir. 2024).[14] This is especially true in cases involving banking practices for consumer deposit accounts, as here. *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. 136, 157 (D.S.C. 2018) ("If there is any type of standardized agreement that ought to be interpreted

---

[13] "The entire notion of predominance implies that the plaintiffs' claims need not be identical, and, as the Supreme Court and Fourth Circuit have noted, a class can meet this requirement 'even though other important matters will have to be tried separately.'" *See, e.g.*, *Krakauer v. Dish Network L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019).

[14] *See also Millwood v. State Farm Life Ins. Co.*, No. 7:19-CV-01445-DCC, 2022 U.S. Dist. LEXIS 173928, at *21 (D.S.C. Sept. 23, 2022) (where a "case involves interpretation of a form contract, the interpretation of which will apply to all class members, ...class action[s] [are] an efficient form of adjudication"); *1988 Trust for Allen Children Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 522 (4th Cir. 2022) (common questions predominate when the "central question" is whether the defendant's conduct "breached the standardized policy language").

uniformly, without regard to the non-drafting party's idiosyncratic comprehension of its terms, it is a consumer checking account agreement.").[15]

### C.    Plaintiffs' Claims Are Typical of the Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "Typicality requires that a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Stegemann*, 2022 U.S. Dist. LEXIS 209193, at *26.[16] "The typicality requirement is met if a plaintiff's claim arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Willis Towers Watson*, 2020 U.S. Dist. LEXIS 162810, at *36. "It is not necessary to show that the movant be identically situated to other class members to meet the typicality standard." *Id.*; *see also Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998) (typicality does not "require that members of the class have identical factual and legal claims in all respects"). "Rather, the movant need only show that the disputed issues in this litigation are as central to its clams as to those of the other

---

[15] *See also Gutierrez v. Wells Fargo Bank, N.A.*, No. c 07-05923 WHA, 2008 U.S. Dist. LEXIS 70124 (N.D. Cal. Sep. 11, 2008) ("The challenged practice is a standardized one applied on a routine basis to all customers . . . . [I]ndividual variations will not predominate over the pervasive commonality of the [challenged business practice] and its adverse impact on hundreds of thousands of depositors."); *In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 656 (S.D. Fla. 2012) ("Here, irrespective of the individual issues which may arise, the focus of the litigation concerns the alleged common course of unfair conduct embodied in [the bank's] alleged scheme to maximize overdraft fees through the hidden reordering of transactions at account posting. . . . Any analysis of this scheme will depend on evidence relating to the standardized form account agreement and bank practices affecting all class members in a uniform manner." (citation and quotation omitted)).

[16] Put another way, the "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *In re: Jeld-Wen Holding, Inc. Sec. Litig.*, Civil Action No. 3:20-cv-112-JAG, 2021 U.S. Dist. LEXIS 59767, at *6 (E.D. Va. Mar. 29, 2021).

proposed Class members." *Stegemann*, 2022 U.S. Dist. LEXIS 209193, at *27 (citing *In re BearingPoint, Inc., Sec. Litig.*, 232 F.R.D. 534, 538 (E.D. Va. 2006)).

The named Plaintiffs' claims, and the claims of the Settlement Class Members, arise from the same alleged conduct. Plaintiffs, as well as all Settlement Class Members, were 360 Savings accountholders and received the same interest rate, which was at all times lower than the interest rates received by the 360 Performance Savings accountholders. ECF 33 ¶ 64. By proving their own case, Plaintiffs would also be proving Settlement Class Members' claims against Capital One. Consequently, typicality is satisfied. *See, e.g.*, *Morrow v. Navy Fed. Credit Union*, No. 1:21-cv-0722 (MSN/LRV); No. 1:22-cv-0844 (MSN/LRV), 2023 U.S. Dist. LEXIS 62806, at *14 (E.D. Va. Apr. 6, 2023) (finding "typicality" satisfied "because the representative plaintiffs, like all other class members, were improperly charged [bank] fees under Defendant's policy"); *Moyer Home Point Fin. Corp.*, Civil Action No. RDB-20-3449, 2023 U.S. Dist. LEXIS 183339, at *18 (D. Md. Oct. 11, 2023) (typicality satisfied where plaintiffs' "claims arise out of the same alleged kickback scheme between [defendants]"); *Elegant Massage, LLC*, 2022 U.S. Dist. LEXIS 25222, at *47 (typicality satisfied where "[p]laintiff allege[d] that State Farm wrongfully interpreted the Policy Provisions in the same way as to all Class members").

### D.    Plaintiffs and Their Counsel Have and Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "The adequacy inquiry under Rule 23(a)(4) 'serves to uncover conflicts of interest between named parties and the class they seek to represent.' *Amchem*, 521 U.S. at 625. "A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625-26 (citations omitted). "The adequacy heading 'also factors in competency and conflicts of class counsel.'" *Id.* at 626 n.20. In assessing adequacy of counsel,

the Court considers: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

Here, Interim Class Counsel Chet Waldman, and his firm Wolf Popper LLP, are highly experienced in consumer, finance, and complex class action litigation and have been appointed as class or lead counsel in numerous class actions recovering billions of dollars for the classes they have represented. *See* Waldman Decl. ¶¶ 25-26; *see also* ECF 5-3 (firm resume). Similarly, Matthew Kaplan, Esq. has not only provided necessary advice as local counsel, but has been actively involved in litigation, participating in depositions and strategic decisions. *See id*. The JPA Firms are also highly experienced in complex consumer class actions. *See* ECF 5-4 through 5-7 (firm resumes). Counsel's efforts to prosecute this case, and negotiate on behalf of the Class, are already set forth above.

There are no conflicts between the twenty-six named Plaintiffs and other Settlement Class Members because they all have the same goal: holding Capital One accountable for its alleged uniform deceptive and bad faith conduct, which Plaintiffs contend damaged them all. *See Moyer*, 2023 U.S. Dist. LEXIS 183339, at *20 ("adequacy" satisfied where plaintiffs' and class "claims arise out of the same alleged kickback arrangement. . . . and . . . will need to prove the same elements" of the same claims). The Plaintiffs' adequacy is demonstrated by the fact that each Plaintiff (a) responded to Defendants' interrogatories, produced documents, and sat for lengthy depositions; (b) demonstrated their knowledge about the case and their duties and responsibilities as Class Representatives; and (c) regularly kept in contact with their attorneys about the litigation. Waldman Decl. ¶ 28; *see Trauernicht*, 2024 U.S. Dist. LEXIS 146092, at *32 (finding plaintiffs

26

adequate where they "have demonstrated a willingness to assist in the case by providing information to counsel, reviewing pleadings, providing documents, and continuing to communicate with counsel"). The twenty-six Plaintiffs easily qualify as adequate Settlement Class representatives and, indeed, Defendants never challenged that the adequacy prerequisite was satisfied in this case.

### E.    A Class Action is Superior to Other Available Means of Adjudication

Rule 23(b)(3) also provides that a class action must be "superior to other alternative methods for fairly and efficiently adjudicating the controversy." The Supreme Court has recognized that, when creating the Rule 23(b)(3) class action mechanism, the Advisory Committee "had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all" due to the potential for only a small recovery. *See Amchem*, 521 U.S. at 617 ("[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights" (citation and quotations omitted,). Since the damages suffered by individual Settlement Class Members may be relatively small, the costs of litigating these claims are prohibitive relative to the amount of losses and thus a class action is superior to individual actions. *See id*.[17]

### F.    The Class Is Ascertainable

The Fourth Circuit reads into Rule 23 an implied requirement of "ascertainability," meaning that the "Court can readily identify the class members in reference to objective criteria." *Krakauer*, 925 F.3d at 655 (quoting *EQT Prod. Co.*, 764 F.3d at 358). Here, Settlement Class

---

[17] Where, as here, a court is "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems." *Id.* at 620.

Members are readily ascertainable from Capital One's records, and therefore "it is administratively feasible for the court to determine whether a particular individual is a member." *Willis Towers Watson*, 2020 U.S. Dist. LEXIS 162810, at *31-32 (quoting 7A Charles Alan Wright et. al. Federal Practice & Procedure § 1760 (3d ed. 2005)); *Trauernicht*, 2024 U.S. Dist. LEXIS 146092, at *21 ("ascertainability" prerequisite satisfied where "the class members can be identified in an administratively feasible way from a review of the Plan's own records.").

### G.    Interim Class Counsel Should Be Appointed as Class Counsel

The fact that Interim Class Counsel and his firm prosecuted this Action efficiently and effectively on behalf of the Settlement Class—largely winning all motions decided and diligently meeting all deadlines—weighs conclusively in favor of appointment as Class Counsel. *See In re Capital One Consumer Data Sec. Breach Litig.*, No. 1:19-md-2915 (AJT/JFA), 2022 U.S. Dist. LEXIS 234943, at *18 (E.D. Va. Sep. 13, 2022) ("Plaintiffs' Counsel have substantial experience in consumer class action litigation, . . . [led] a significant effort to well develop every aspect of this case up through the certification and summary judgment stage, and were able to negotiate a well-informed Settlement that provides meaningful relief to Plaintiffs and the Class. The Court previously appointed [counsel] as interim Class Counsel and now appoints them as Class Counsel pursuant to Federal Rule of Civil Procedure 23(g)."). Accordingly, Chet Waldman and his firm Wolf Popper LLP should be appointed Class Counsel under Rule 23(g) and Matthew B. Kaplan of The Kaplan Law Firm should be appointed Local Counsel.

### III.    <u>The Proposed Notice Plan Should Be Approved</u>

Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) further provides that where the proposed class is to be certified under Rule 23(b)(3):

the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed Notices provide all of this information and will be sent directly to Settlement Class Members via their email addresses (if available) and/or last known mailing address. *See generally* Azari Decl.

**IV.    Proposed Schedule**

Plaintiffs propose the following schedule for notice and final approval:

| | |
|---|---|
| Notice Date | **Sixty (60) days after the Court enters a Preliminary Approval Order** |
| Last day for Class Counsel to file (1) motion for final approval, and (2) motion for an award of Settlement Class Counsel attorneys' fees, costs, and expenses and/or Service Awards | **Twenty-one (21) days before the Opt-Out & Objection Deadline** |
| Deadline to Opt Out or Object to the Settlement | **Forty-eight (48) days after the Notice Date** |
| Last day for Settlement Administrator to certify to the Court that it has complied with the requirements set forth in the Notice Plan | **Twenty-four (24) days after the Opt-Out Deadline** |
| Last day for Plaintiff's Counsel to file list of Settlement Class Members who have excluded themselves from the Settlement Class | **14 days before Final Approval hearing** |
| Last day for Parties to file responses to any Settlement Class Member objections or requests to intervene and any replies in support of final settlement approval and/or motion for attorneys' fees, costs, expenses, and/or Service Awards | **14 days before Final Approval hearing** |
| Final Approval Hearing | **[*at least 100 days after the Notice Date, see 28 U.S.C. § 1715*]** |

29

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) conditionally certify the Settlement Class, (2) appoint Plaintiffs as Class Representatives, (3) appoint Interim Class Counsel and his law firm as Class Counsel, (4) preliminarily approve the Settlement, (5) approve the Notice Plan and direct that Notice be provided to the Settlement Class Members, (6) approve and order the opt-out and objection procedures set forth in the Settlement, and (7) set a date for a Final Approval Hearing.

Dated: June 6, 2025                                 Respectfully submitted,

/s/ *Chet B. Waldman*
Chet B. Waldman (admitted *pro hac vice*)*
Carl L. Stine (admitted *pro hac vice*)
Philip M. Black (admitted *pro hac vice*)
Matthew Insley-Pruitt (admitted *pro hac vice*)
Timothy D. Brennan (admitted *pro hac vice*)
WOLF POPPER LLP
845 Third Avenue 12th Floor
New York, NY 10022
Email: cwaldman@wolfpopper.com
          cstine@wolfpopper.com
          pblack@wolfpopper.com
          minsley-pruitt@wolfpopper.com
          tbrennan@wolfpopper.com

*\*Lead Counsel for Plaintiffs and Interim Class Counsel*

/s/ *Matthew B. Kaplan*
Matthew B. Kaplan VSB #51027
THE KAPLAN LAW FIRM
1100 N Glebe Rd
Suite 1010
Arlington, VA 22201
(703) 665-9529
Email: mbkaplan@thekaplanlawfirm.com

*Local Counsel for Plaintiffs*

SHAMIS & GENTILE P.A.
Andrew J. Shamis

30

14 N.E. 1st Ave., Suite 705
Miami, FL 33132
Email  ashamis@shamisgentile.com

EDELSBERG LAW PA
Scott Edelsberg
Gabriel Mandler
20900 NE 30th Avenue, Suite 417
Aventura, FL 33180
Email: chris@edelsberglaw.com
        gabriel@edelsberglaw.com

KALIEL GOLD PLLC
Sophia Goren Gold
950 Gilman Street, Suite 200
Berkeley, CA 94710
Email: sgold@kalielgold.com

AHDOOT & WOLFSON, P.C.
Christopher E. Stiner
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
521 5th Avenue, 17th Floor
New York, NY 10175
Email: cstiner@ahdootwolfson.com

*Counsel for Plaintiffs*