UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| IN RE: CAPITAL ONE 360 SAVINGS ACCOUNT INTEREST RATE LITIGATION | Case No. 1:24-md-03111-DJN-WBP |

**DECLARATION OF CHET B. WALDMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1. I am a partner in the law firm of Wolf Popper LLP ("Wolf Popper"). I was appointed Plaintiffs' Lead Counsel and Interim Class Counsel for the putative class and subclasses in this matter pursuant to Pretrial Order No.1 filed June 24, 2024 (ECF 6.). I am a member in good standing of the Bar of the State of New York and am admitted pro hac vice before this Court. I have personal knowledge of the matters set forth herein. I respectfully submit this Declaration, together with the attached Exhibits, in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

2. Attached as Exhibit 1 to this Declaration is a true and correct copy of the Settlement Agreement and Release ("Agreement" or "Settlement Agreement), and exhibits thereto, dated June 6, 2025.[1]

    **A.    Background**

3. On July 10, 2023, Plaintiff Scott Savett, represented by Wolf Popper, filed a putative class action complaint against Capital One in the United States District Court for the Eastern District of Virginia. *See* No. 1:23-cv-890, ECF 1. Plaintiff filed an Amended Class Action Complaint on September 15, 2023 and a Second Amended Class Action Complaint on October

---

[1] Capitalized terms not previously defined are used as defined in the Settlement Agreement.

1

19, 2023, adding additional plaintiffs and additional consumer protection claims and subclasses. *See Savett* Action, ECF 9, 19.

4. On February 26, 2024, thirteen Plaintiffs, also represented by Wolf Popper, filed a related putative class action in the same district, seeking to represent the same nationwide class as in the *Savett* Action, plus subclasses from eight more states. *See Hopkins v. Capital One*, N.A., No. 1:24-cv-00292 (E.D. Va.), ECF 1 (the "*Hopkins* Action"). On March 15, 2024, Plaintiffs in the *Hopkins* Action filed an Amended Class Action Complaint, adding two more plaintiffs and two more subclasses. *See Hopkins* Action, ECF 4.

5. Thereafter, additional cases alleging the same wrongdoing against Capital One were filed by different plaintiffs in other federal courts. *See Sim v. Capital One Financial Corp.*, No. 2:24-cv-01222 (C.D. Cal. Feb. 14, 2024); *Pitts v. Capital One Financial Corp.*, No. 3:24-cv-00047 (S.D. Ohio Feb. 19, 2024); *Port v. Capital One, N.A.*, No. 3:24-cv-01006 (D.N.J. Feb. 21, 2024); *Bellantoni v. Capital One Financial Corp.*, No. 1:24-cv-01558 (E.D.N.Y. Mar. 1, 2024).

6. On March 20, 2024, Capital One made an application before the Judicial Panel on Multidistrict Litigation ("JPML") proceedings to consolidate *Savett*, *Hopkins*, and the related cases. *See In Re: Capital One 360 Savings Account Interest Rate Litig.*, J.P.M.L. Case No. 3111, ECF 1. Plaintiffs in *Savett* and *Hopkins* did not oppose consolidation, and the petition was granted on June 7, 2024. *See id.* ECF 22.

7. On April 16, 2024, prior to consolidation, Wolf Popper and counsel for the related cases (Shamis & Gentile, P.A.; Edelsberg Law, PA; Ahdoot & Wolfson, PC; Kaliel Gold PLLC) (collectively the "JPA Firms") executed a Joint Prosecution Agreement ("JPA"), providing that counsel would work cooperatively to prosecute this litigation under the leadership of Wolf Popper. *See* ECF 5-2 ¶¶ 3(a)-(b). On June 24, 2024, this Court appointed Chet B. Waldman of Wolf Popper

as Plaintiffs' Lead Counsel and Interim Class Counsel, and Matthew B. Kaplan of The Kaplan Law Firm as Plaintiffs' Local Counsel. ECF 6.

8. On July 1, 2024, Plaintiffs filed their operative Consolidated Amended Complaint. ECF 10. The Consolidated Amended Complaint alleged that Capital One deceptively created a high-yield savings account called "360 Performance Savings," and concealed from its existing customers that this new, otherwise identical account had replaced their "360 Savings" account as Capital One's high-yield savings account offering. The Consolidated Amended Complaint asserted claims for breach of contract, violations of various state consumer protection statutes, unjust enrichment, and promissory estoppel.

9. On July 26, 2024, Capital One filed a motion to dismiss the Consolidated Amended Complaint. ECF 29, 30. On August 23, 2024, Plaintiffs opposed the motion. ECF 39. On November 12, 2024, the Court denied Defendant's motion to dismiss in substantial part. ECF 49.

10. On September 27, 2024, Plaintiffs and Defendants served their Initial Disclosures. Defendants served Amended Initial Disclosures on January 16, 2025, March 26, 2025, and April 2, 2025.

11. On August 23, 2024, Plaintiffs served their First Set of Interrogatories and First Set of Requests for Production. Defendants responded on November 6, 2024 and produced documents shortly thereafter. Following meet and confer efforts, Defendants provided supplemental responses to Plaintiffs' First Set of Interrogatories on January 10, 2025, and March 7, 2025.

12. On October 7, 2024, Defendants served interrogatories and requests for production of documents to all twenty-six Plaintiffs. Plaintiffs responded on November 6, 2024 and made an initial production of documents.

13. On November 27, 2024, Plaintiffs served their Second Set of Interrogatories.

Defendants responded on December 27, 2024. On December 13, 2024, Plaintiffs served their Third Set of Interrogatories. Defendants responded on January 13, 2025. On February 11, 2025, Plaintiffs sent Defendants a deposition notice under Rule 30(b)(6). On March 5, 2025, Plaintiffs sent Defendants an amended deposition notice. On April 7, 2025, shortly before settlement discussions suspended further discovery, Plaintiffs served their Fourth Set of Interrogatories, their Second Set of Requests for Production, and Requests for Admission.

14. In total, Plaintiffs' counsel reviewed approximately 75,000 documents (roughly two million pages) produced on a rolling basis by Capital One and third parties.

15. In addition, throughout the discovery process, Plaintiffs' counsel accomplished the following:

- Negotiating a detailed (1) discovery plan, (2) protective order, and (3) protocol for exchange of electronically stored information ("ESI"), with the assistance and oversight of the Special Master. *See* ECF 43-46.

- Responding to Capital One's discovery requests to all twenty-six of the Plaintiffs, each comprising 27 requests for production (or 702 total requests across all Plaintiffs) and 19 interrogatories (495 across all Plaintiffs, including one additional interrogatory specific to one Plaintiff).

- Resolving numerous, ongoing discovery disputes through meet and confer negotiations with Capital One, pertaining to issues including custodians, search terms, document repositories, deposition logistics, and the sufficiency and scope of both Capital One's and Plaintiffs' respective discovery responses.

- Serving and negotiating responses to five non-party subpoenas to Capital One vendors, four of whom provided relevant and helpful documents.

- Defending the depositions of all twenty-six Plaintiffs, both remotely and in locations across the country.

- Preparing for depositions of twenty of Capital One's current and former employees, and taking seven of those depositions prior to the parties' agreement to settle.

- Completing expert discovery (including reports and depositions for six experts between the Parties).

16. On March 12, 2025, the parties' Counsel attended a lengthy mediation session before the Court-appointed Special Master Seebald and the experienced and respected Robert Meyer of JAMS. *See* ECF 95 at 2. The mediation session was unsuccessful.

17. On April 18, 2025, the parties' Counsel attended a second lengthy mediation session with Mr. Seebald and Mr. Meyer, which was informed by the comprehensive mediation statements prepared by the parties and submitted to the mediators. *See id*. At the end of the all-day mediation session, the parties reached a tentative, arms' length settlement, facilitated by Mr. Seebald and Mr. Meyer.

18. Thereafter, the parties held two additional remote mediation sessions with Mr. Seebald and Mr. Meyer on May 28, 2025, and May 30, 2025, to negotiate provisions of the Settlement Agreement.

19. On June 6, 2025, the parties entered into the Settlement Agreement (attached as Exhibit 1), which sets forth the terms and conditions of the settlement of this Action (the "Settlement").

B. **The Proposed Settlement**

20. The Settlement Class consists of all persons who are or were Capital One 360 Savings accountholders at any time since Capital One launched 360 Performance savings (i.e.,

since September 18, 2019). Settlement Agreement ¶ 2.44. According to information provided from Capital One in discovery, there are millions of members of the Settlement Class.

21. The Settlement provides that Defendants will pay direct cash payments to Settlement Class Members from a $425 million common fund with two components: (1) $300 million to be distributed *pro rata* to Settlement Class Members as of the Effective Date, and (2) $125 million to be distributed *pro rata* to Settlement Class Members who remain 360 Savings accountholders after the End Date (defined below), in the form of increasing their interest rate to at least twice the national average until the $125 million has been fully paid out. These amounts are fixed and in no event will Capital One pay less than the combined $425 million. Settlement Agreement ¶¶ 3-5.

22. According to information from Capital One, at the time the Settlement terms were initially agreed, approximately three quarters of the Settlement Class Members (comprising 85% of the class-wide damages) remained in the 360 Savings account, representing a super-majority of the Class.

23. The Settlement's methodology for determining cash payments to Settlement Class Members ensures that Settlement Class Members who have already closed their 360 Savings accounts by the same date that is the deadline to opt out from the Settlement (for this purpose, called the "End Date") will not pay for any attorneys' fees and expenses attributable proportionally to the $125 million in additional interest (which is being paid only to Settlement Class Members who choose to maintain their 360 Savings accounts after receiving notice of the Settlement). This is accomplished by increasing the Class Cash Payments to Class Members who have closed their 360 Savings accounts by a certain ratio relative to Settlement Class Members who continue to maintain their 360 Savings accounts and will receive the additional interest payments (estimated

presently to be approximately 1.15). The 1.15 and 1.0 multiples used for determining cash payments (for closed vs. open accounts as of the End Date, respectively) are meant to provide additional compensation to Settlement Class Members who exited their 360 Savings accounts prior to the End Date based on the fact that all attorneys' fees and expenses will come out of the Settlement Fund rather than the payments of Additional Interest. The multiples were derived after analysis of modeling prepared by Capital One and in consultation with a financial expert (Plaintiffs' damages expert, Mr. David McKnight).

24. Based on my experience, and in my opinion, the Settlement is fair and in the best interest of the Settlement Class Members and meets all of the indicia of fairness, such that it merits the Court's preliminary approval.

25. Class Counsel and the JPA Firms (collectively "Plaintiffs' Counsel") have distinguished experience litigating and resolving complex consumer class actions, having done so throughout the country. Plaintiffs' Counsel believe, based on their evaluation and experience, that the Settlement provides fair and adequate relief, and indeed that it is an excellent result for the Settlement Class. Plaintiffs' Counsel will continue to competently represent the interests of the Settlement Class.

26. Wolf Popper is among the most experienced class action law firms in the country and has a long history of obtaining landmark results for the class members in those cases. Courts throughout the United States have repeatedly recognized Wolf Popper as adequate and qualified class counsel in class actions, and as a law firm that has achieved significant recoveries on behalf of class members.

27. Since the inception of this litigation, Wolf Popper and The Kaplan Law Firm, along with the JPA Firms, have vigorously prosecuted this action for the benefit of Plaintiffs and the

7

proposed Settlement Class. Wolf Popper's efforts have included, among other things: (i) conducting an extensive investigation into the claims underlying this Action; (ii) drafting the initial complaint and a comprehensive Consolidated Amended Complaint after advocating in the MDL proceeding for the transfer of all cases filed around the country, after the initial complaint was filed, to this District; (iii) negotiating a detailed discovery plan, protective order, and protocol for ESI, with assistance and oversight of the Special Master; (iv) briefing, and largely defeating, Defendants' motion to dismiss; (v) briefing, and defeating, Defendants' motion to certify a question to the Virginia Supreme Court; (vi) diligently pursuing factual discovery from Defendants and reviewing approximately seventy-five thousand documents spanning approximately two million pages; (vii) responding to written discovery from Defendants and producing documents in response; (viii) serving and negotiating responses to five non-party subpoenas to Capital One vendors; (ix) defending twenty-six depositions of the named Plaintiffs; (x) preparing for depositions of twenty of Capital One's current and former employees, and taking seven of those depositions prior to the parties' agreement to settle; (xi) retaining, and working with, three experts who filed reports, and engaging in expert discovery that included producing and reviewing documents, defending Plaintiffs' three experts at their depositions, taking the depositions of Defendants' three experts, and drafting briefs in support of three Daubert motions relating to Defendants' expert witnesses, as well as three briefs in opposition to Defendants' motions to exclude Plaintiffs' experts; (xii) supervising dedicated teams of experienced attorneys and staff to prosecute the claims on behalf of Plaintiffs and the Settlement Class; (xiii) drafting briefs in support of Plaintiffs' Motion for Class Certification.

28. Each Plaintiff has worked diligently in the interests of the Settlement Class, and have, among other things: (a) responded to Defendants' interrogatories, produced documents, and

sat for lengthy depositions; (b) demonstrated their knowledge about the case and their duties and responsibilities as Class Representatives; and (c) regularly kept in contact with their attorneys about the litigation.

29. Each named Plaintiff agreed in their engagement letter that their counsel could seek a fee of up to one third of any common fund resulting from any settlement or verdict.

**C.  Notice Plan**

30. The proposed Notice Plan, as set forth in the Declaration of Cameron R. Azari, Esq. Regarding Notice Plan ("Notice Plan") (Exhibit 2 hereto) provides for notice via email and direct mail to all 360 Savings accountholders using contact information from Capital One's records. As part of the Notice Plan, the Settlement Administrator will send direct email notice to Settlement Class Members with email addresses provided by Capital One. Attached as Exhibit 5 to the Settlement Agreement is a true and correct copy of the Email Notice of Class Action Settlement. In addition, the Settlement will mail postcard notice to the listed mailing addresses of Settlement Class Members held by Capital One. Attached as Exhibit 4 to the Settlement Agreement is a true and correct copy of the Postcard Notice of Class Action Settlement. Finally, the Notice Plan calls for publication of press releases announcing the Settlement. Attached as Exhibit 6 to the Settlement Agreement is a true and correct copy of the Press Release.

31. The proposed Notice Plan also provides for the implementation of a Settlement website. The Settlement Administrator will publish on the dedicated website notice providing comprehensive information about the Settlement. Attached as Exhibit 3 to the Settlement Agreement is a true and correct copy of the Long Form Notice of Class Action Settlement.

32. I hereby declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 6th day of June, 2025 in Los Angeles, California.

                                                            /s/*Chet B. Waldman*
                                                            Chet B. Waldman