# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| IN RE CAPITAL ONE 360 SAVINGS ACCOUNT INTEREST RATE LITIGATION | Civil Action No. 1:24-MD-03111-DJN |

<u>**SETTLEMENT AGREEMENT AND RELEASE**</u>

# TABLE OF CONTENTS

1.      RECITALS ........................................................................................................................1

2.      DEFINITIONS.................................................................................................................4

3.      SETTLEMENT FUND...................................................................................................13

4.      PAYMENTS TO SETTLEMENT CLASS MEMBERS...................................................13

5.      ADDITIONAL INTEREST PAYMENTS TO EXISTING 360 SAVINGS ACCOUNTHOLDERS.........................................................................................................17

6.      CAPITAL ONE'S TOTAL MONETARY LIABILITY ..............................................20

7.      SETTLEMENT FUND ACCOUNT..............................................................................20

8.      PRESENTATION OF SETTLEMENT TO THE COURT .........................................22

9.      EFFECTIVE DATE AND TERMINATION ...............................................................22

10.     DUTIES OF SETTLEMENT ADMINISTRATOR ......................................................24

11.     NOTICE PLAN ...........................................................................................................26

12.     CAFA NOTICE ...........................................................................................................28

13.     COVENANTS NOT TO SUE .......................................................................................28

14.     REPRESENTATIONS AND WARRANTIES................................................................29

15.     RELEASES....................................................................................................................30

16.     NO ADMISSION OF WRONGDOING OR INFIRMITY OF CLAIMS .................32

17.     OPT-OUTS ...................................................................................................................34

18.     OBJECTIONS...............................................................................................................35

19.     SERVICE AWARDS.....................................................................................................36

20.     ATTORNEYS' FEES AND EXPENSES.......................................................................37

21.     CONFIDENTIALITY....................................................................................................38

22.     NOTICES......................................................................................................................38

23.     MISCELLANEOUS PROVISIONS..............................................................................39

## **EXHIBITS**

1. List of Actions

2. Example Quarterly Report Required by Sections 5.5 Through 5.6 of This Agreement

3. Long Form Notice

4. Postcard Notice

5. Email Notice

6. Press Release

7. [Proposed] Preliminary Approval Order

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release is made as of June 6, 2025, by and between, as hereinafter defined, (a) the Settlement Class Representatives,[1] on behalf of themselves and the Settlement Class, and (b) Capital One.  This Agreement fully and finally compromises and settles any and all claims that are, were, or could have been asserted in the litigation styled *In re: Capital One 360 Savings Account Interest Rate Litigation*, No. 1:24-md-03111-DJN (E.D. Va.).

## 1.  Recitals

1.1.    Since February 2013, Capital One has offered to members of the general public savings accounts known as 360 Savings accounts.

1.2.    In September 2019, Capital One began offering a new savings account called 360 Performance Savings and stopped offering new 360 Savings accounts to customers, though it continued to service existing 360 Savings accounts.

1.3.    Between July 10, 2023, and March 1, 2024, seven putative class action lawsuits were filed against Capital One by current or former 360 Savings accountholders.  These suits alleged that Capital One breached the contracts it had with 360 Savings accountholders and the implied covenant of good faith and fair dealing incorporated therein; that Capital One had violated various state consumer-protection statutes; and that Capital One engaged in conduct making it liable for unjust enrichment and promissory estoppel.  The claims asserted in the lawsuits arose from allegations that Capital One failed to raise interest rates on the 360 Savings account commensurate with rates paid on the 360 Performance Savings account, deceptively marketed the 360 Savings account, and failed to disclose (i) that 360 Savings was no longer Capital One's high-

---

[1] All capitalized terms are defined in Section 2 below.

yield online savings account and (ii) the existence of the 360 Performance Savings account—and its higher interest rate—to 360 Savings accountholders.

1.4.    On June 7, 2024, pursuant to 28 U.S.C. § 1407, the U.S. Judicial Panel on Multidistrict Litigation ("JPML") transferred the seven pending lawsuits to the Honorable David J. Novak in the Alexandria Division of the United States District Court for the Eastern District of Virginia for coordinated pretrial proceedings under the caption *In re: Capital One 360 Savings Account Interest Rate Litigation*, No. 1:24-md-03111-DJN (E.D. Va.) (the "Action").

1.5.    On June 24, 2024, the Court appointed Class Counsel.

1.6.    On July 1, 2024, Class Counsel filed the operative Complaint, which superseded the complaints that had been consolidated by the JPML and included additional claims, putative subclasses, and named plaintiffs who now comprise the Settlement Class Representatives. Capital One moved to dismiss the Complaint, and the Court granted in part and denied in part that motion by an order dated November 12, 2024.

1.7.    On July 18, 2024, the Court appointed Mr. Craig P. Seebald, a distinguished attorney and partner at the firm of Vinson & Elkins, to serve as Special Master to oversee and manage discovery in the Action. The Court later expanded Special Master Seebald's duties to include facilitating settlement discussions between the Parties.

1.8.    Beginning in October 2024 and continuing into 2025, Capital One and the Settlement Class Representatives engaged in far-reaching fact and expert discovery. Such discovery included extensive written discovery; nearly 40 depositions; the production of tens of thousands of documents spanning hundreds of thousands of pages; and the service of eight expert reports, three by Capital One and five by the Settlement Class Representatives. Capital One and the Settlement Class Representatives met and conferred on numerous occasions regarding various

discovery issues, litigated a discovery motion, and attended status conferences with the Court and Special Master Seebald.

1.9.    In March and April 2025, the Parties engaged in comprehensive class certification and *Daubert* motions practice.  Capital One and the Settlement Class Representatives filed a total of five *Daubert* motions challenging each other's disclosed experts, and each *Daubert* motion was opposed by the nonmovant.  The Settlement Class Representatives sought certification of a nationwide class of all persons who had been Capital One 360 Savings accountholders at any time since Capital One launched 360 Performance Savings, as well as 17 state-specific subclasses of such persons.  Capital One opposed the Settlement Class Representatives' motion for class certification, and the Parties' briefing on that motion spanned 130 pages.

1.10.    Parallel to their litigation of the Action, the Parties engaged in arm's-length settlement negotiations beginning in March 2025.  The Parties participated in two mediation sessions with Robert A. Meyer, a seasoned mediator and commercial litigator, and Special Master Seebald.  The first mediation was held on March 12, 2025, and the second on April 18, 2025.  In connection with negotiating this Settlement Agreement the Parties engaged in two additional Zoom conferences with the two mediators and submitted written position statements to resolve various issues.  The first of these conferences took place on May 28, 2025, and the second one took place on May 30, 2025.

1.11.    At the April 18, 2025 mediation, the Parties reached an agreement on the material terms of a settlement of the Action.  The final terms of the compromise the Parties reached are set forth in this Agreement.

1.12.    Capital One denies all claims asserted against it in the Action, denies all allegations of wrongdoing and liability, and denies all material allegations of the Complaint.

1.13. The Parties recognize the expense and length of proceedings necessary to continue litigation of the Action through further motion practice, trial, and any possible appeals. The Parties have taken into account the uncertainty and risk of the outcome of further litigation, and the difficulties and delays inherent in such litigation. The Parties are also aware of the burdens of proof necessary to establish liability and damages for the claims alleged in the Action and the defenses thereto. Based upon their investigation, discovery, and motion practice, as set forth above, the Parties have determined that the Settlement set forth in this Agreement is in their respective best interests and that the Agreement is fair, adequate, and reasonable. The Parties have therefore agreed to settle the claims asserted in the Action pursuant to the terms and provisions of this Agreement.

1.14. It is the intention of the Parties to resolve the disputes and claims which they have between them on the terms set forth below.

NOW, THEREFORE, in consideration of the promises, covenants, and agreements herein described and for other good and valuable consideration acknowledged by each of the Parties to be satisfactory and adequate, and intending to be legally bound, the Parties do hereby mutually agree as follows:

## 2. **Definitions**

As used in all parts of this Agreement, including the recitals above, and the exhibits hereto, the following terms have the meanings specified below:

2.1. "Action" means the multidistrict litigation proceedings captioned *In re: Capital One 360 Savings Account Interest Rate Litigation*, No. 1:24-md-03111-DJN (E.D. Va.) and all the cases that have been filed in, transferred to, or otherwise assigned to the Court and included in the multidistrict litigation proceedings, as listed on Exhibit 1.

2.2. "Additional Interest" shall have the meaning given in Section 5.3.

2.3.    "Administrative Costs" means all reasonable costs and expenses incurred by the Settlement Administrator in carrying out its duties under this Agreement or as otherwise ordered by the Court.

2.4.    "Affiliate" means, with respect to any Entity, any other Entity that directly or indirectly controls or is controlled by, or is under common control with, such Entity.  For purposes of this definition, "control" when used with respect to any Entity means an ownership interest of at least twenty-five percent (25%) and/or the power to direct the management and policies of such Entity, directly or indirectly, whether through the ownership of voting securities, by contract, or otherwise.

2.5.    "Agreement" or "Settlement Agreement" means this Settlement Agreement and Release and all of its attachments and exhibits, which the Parties understand and agree set forth all material terms and conditions of the Settlement of the Action between them and which is subject to approval by the Court.

2.6.    "Attorneys' Fees" means any attorneys' fees that Class Counsel request the Court to approve for payment from the Settlement Fund as compensation for all plaintiffs' counsel's work in prosecuting and settling the Action.

2.7.    "Business Day" means Monday, Tuesday, Wednesday, Thursday, and Friday, excluding holidays observed by the U.S. federal government.

2.8.    "Capital One" means Capital One Financial Corporation and Capital One, National Association.

2.9.    "Capital One's Counsel" means Capital One's counsel of record in the Action from the law firms of King & Spalding LLP and McGuireWoods LLP.

2.10.    "Class Counsel" means Chet B. Waldman and the law firm of Wolf Popper LLP.

2.11.   "Class Cash Payment" means the monetary amount paid to a Settlement Class Member pursuant to Section 4 of this Agreement to be paid from the Settlement Fund.

2.12.   "Class List" means the list of Capital One 360 Savings accounts that were open at any time during the Class Period and all holders of such accounts, including any joint or co-holders of such 360 Savings accounts.

2.13.   "Class Period" means September 18, 2019 through and including the date on which the Court enters a Preliminary Approval Order.

2.14.   "Complaint" means the Consolidated Amended Complaint, at Docket Entry Number 10, filed in the Action on July 1, 2024.

2.15.   "Court" means the Alexandria Division of the United States District Court for the Eastern District of Virginia, where the Action is pending.

2.16.   "Effective Date" means the date when all of the conditions set forth in Section 9.1 of this Agreement have occurred; provided, however, that Capital One has not exercised its right of termination under Section 9.2 of this Agreement.

2.17.   "Email Notice" means the written notice substantially in the form of Exhibit 5 to this Settlement Agreement.

2.18.   "End Date" means the date used to determine whether a particular 360 Savings account is open or closed for purposes of calculating the amount of a Class Cash Payment, which shall be forty-eight (48) days after the Notice Date.

2.19.   "Entity" means any corporation, partnership, limited liability company, association, trust, or other organization of any type.

2.20.   "Expenses" means the reasonable costs and expenses incurred in litigating the Action that Class Counsel request the Court to approve for payment from the Settlement Fund.

2.21. "Final Approval" means entry of a Final Approval Order and Judgment.

2.22. "Final Approval Hearing" means the hearing to be conducted before the Court to determine the fairness, adequacy, and reasonableness of the Agreement pursuant to Federal Rule of Civil Procedure 23 and whether to enter a Final Approval Order and Judgment.

2.23. "Final Approval Order and Judgment" means an order and corresponding judgment in a separate document as required by Federal Rule of Civil Procedure 58(a) that the Court enters after the Final Approval Hearing, which finally approves the Agreement, certifies the Settlement Class, dismisses the claims against Capital One with prejudice, and otherwise satisfies the settlement-related provisions of Federal Rule of Civil Procedure 23 in all respects.

2.24. "Individual Recognized Claim" means a Recognized Claim multiplied by a number depending on whether a Class member had an open or closed 360 Savings account as of the End Date as described in Section 4.2 below.

2.25. "Judgment" means the Final Approval Order and Judgment.

2.26. "Long Form Notice" means the written notice substantially in the form of Exhibit 3 to this Settlement Agreement.

2.27. "Minimum Rate" means two times the National Average Rate.

2.28. "National Average Rate" means the National Deposit Rate for Savings Deposit Products as calculated by the Federal Deposit Insurance Corporation and reported on that agency's website at https://www.fdic.gov/national-rates-and-rate-caps.

2.29. "Net Settlement Fund Amount" means the amount remaining in the Settlement Fund (defined in Section 2.51 of this Agreement below) after deducting (i) Service Awards; (ii) Administrative Costs; (iii) Notice Costs; (iv) Expenses; and (v) Attorneys' Fees.

2.30.   "Notice Costs" means all reasonable costs and expenses incurred in connection with implementing and executing the Notice Plan.

2.31.   "Notice Date" means the date by which notice will be sent to the Settlement Class, which shall be sixty (60) days after the Court enters a Preliminary Approval Order.

2.32.   "Notice Plan" means the Settlement notice program to be presented by Class Counsel to the Court for approval in connection with a motion seeking a Preliminary Approval Order.

2.33.   "Objection Deadline" means the deadline by which written objections to the Settlement must be filed with the Court as set forth in the Preliminary Approval Order.  Such deadline shall be forty-eight (48) days after the Notice Date.

2.34.   "Opt-Out Deadline" means the deadline by which written requests for exclusion from the Settlement must be postmarked as set forth in the Preliminary Approval Order.  Such deadline shall be forty-eight (48) days after the Notice Date.

2.35.   "Parent" means, with respect to any Entity, any other Entity that owns or controls, directly or indirectly, at least a majority of the securities or other interests that have by their terms ordinary voting power to elect a majority of the board of directors, or a majority of others performing a similar function, of such Entity.

2.36.   "Parties" means the Settlement Class Representatives, on behalf of themselves and the Settlement Class, and Capital One.

2.37.   "Parties' Counsel" means Class Counsel and Capital One's Counsel.

2.38.   "Postcard Notice" means the written notice substantially in the form of Exhibit 4 to this Settlement Agreement.

2.39.  "Preliminary Approval Order" means an order determining that the Court will likely be able to approve the Settlement under Federal Rule of Civil Procedure 23(e)(2) and certify the Settlement Class for purposes of entering a Judgment, and ordering that notice of the Settlement be provided to Settlement Class Members.  The Preliminary Approval Order will include, among other things, (i) a procedure for Settlement Class Members to object to or request exclusion from the Settlement (along with the applicable Objection and Opt-Out Deadlines), (ii) the date and time of the Final Approval Hearing, and (iii) pertinent information from the Notice Plan.  A proposed version of the Preliminary Approval Order is attached hereto as Exhibit 7.

2.40.  "Press Release" means the document substantially in the form of Exhibit 6 to this Settlement Agreement.

2.41.  "Recognized Claim" means the approximate difference between the interest paid on a 360 Savings account during the Class Period and the interest that would have paid on such an account had it been a 360 Performance Savings account, as described in Section 4.2 below.

2.42.  "Released Capital One Parties" means Capital One and any of its current, former, and future Affiliates, Parents, Subsidiaries, representatives, officers, agents, directors, employees, contractors, vendors, insurers, Successors, assigns, and attorneys.

2.43.  "Released Claims" means any and all claims, defenses, demands, actions, causes of action, rights, offsets, setoffs, suits, damages, lawsuits, costs, relief for contempt, losses, attorneys' fees, expenses, or liabilities of any kind whatsoever, in law or in equity, for any relief whatsoever, including monetary sanctions or damage for contempt, injunctive or declaratory relief, rescission, general, compensatory, special, liquidated, indirect, incidental, consequential, or punitive damages, as well as any and all claims for treble damages, penalties, interest, attorneys' fees, costs, or expenses, whether a known or Unknown Claim, suspected or unsuspected,

contingent or vested, accrued or not accrued, liquidated or unliquidated, matured or unmatured, that in any way concern, arise out of, or relate to the facts alleged in the Complaint or the Action, or any theories of recovery that were, or could have been, raised at any point in the Action.

2.44. "Released Plaintiff Parties" means the Settlement Class Representatives and their spouses and counsel, including Class Counsel.

2.45. "Service Awards" means any payments made, subject to Court approval, to Settlement Class Representatives in recognition of their role in litigating and settling this Action.

2.46. "Settlement" means the settlement of the Action by and between the Parties, and the terms and conditions thereof as stated in this Agreement.

2.47. "Settlement Administrator" means, subject to Court approval, Epiq Class Action & Claims Solutions, Inc. A different Settlement Administrator may be substituted if approved by order of the Court.

2.48. "Settlement Class" means the persons or Entities who maintained a Capital One 360 Savings account at any time during the Class Period (i.e., from September 18, 2019 through and including the date on which the Court enters a Preliminary Approval Order), including joint and co-holders of 360 Savings accounts, as reflected in the Class List to be generated by Capital One. Excluded from the Settlement Class are (i) Capital One, any Entity in which Capital One has a controlling interest, and Capital One's officers, directors, legal representatives, Successors, Subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over the Action and the members of their immediate families and judicial staff; and (iii) any individual who timely and validly opts out of the Settlement Class.

2.49. "Settlement Class Member" or "Member of the Settlement Class" means any person or Entity that is a member of the Settlement Class.

2.50.  "Settlement Class Representatives" means the following plaintiffs and proposed class representatives named in the Complaint filed in the Action: Scott C. Savett, Jay Sim, Amber Terrell, Angela Uherbelau, Gwendolyn Wright, Elizabeth Zawacki, Sheryl Barnes, Alessandra Bellantoni, Ayal Brenner, Anthony Guest, Samuel Hans, Ronald Hopkins, Michael Krause, Steve Lenhoff, Jerry Magaña, Seth Martindale, Jennie Meresak, Gregory Mishkin, Andrew Molloy, Jay Nagdimon, Neelima Panchang, Sailesh Panchang, Patrick Perger Jr., Shantell Pitts, Howard Port, and Jane Rossetti.

2.51.  "Settlement Fund" means the three hundred million United States Dollars ($300,000,000) that Capital One shall pay pursuant to Section 3.1 of this Agreement, plus any interest accrued on such amount between the time it is deposited into the Settlement Fund Account and its distribution.

2.52.  "Settlement Fund Account" means the account described in Section 7.1 of this Agreement.

2.53.  "Subsidiary" means, with respect to any Entity, any other Entity of which the first Entity owns or controls, directly or indirectly, at least a majority of the securities or other interests that have by their terms ordinary voting power to elect a majority of the board of directors, or others performing similar functions, of the other Entity.

2.54.  "Successor" means, with respect to a natural person, that person's heirs, successors, and assigns, and, with respect to an Entity, any other Entity that through merger, buyout, assignment, or any other means or transaction, acquires all of the first Entity's duties, rights, obligations, shares, debts, or assets.

2.55.  "Taxes" means (i) any applicable taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest, or penalties) arising in any

jurisdiction with respect to the income or gains earned by or in respect of the Settlement Fund, including, without limitation, any taxes that may be imposed upon the Parties or the Parties' Counsel or other Settlement Class Representatives' counsel with respect to any income or gains earned by, or in respect of, the Settlement Fund; (ii) any other taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest, or penalties) relating to the Settlement Fund that the Settlement Administrator determines are or will become due and owing, if any; and (iii) any and all expenses, liabilities, and costs incurred in connection with the taxation of the Settlement Fund (including without limitation, expenses of tax attorneys and accountants). "Taxes" shall be considered part of the Administrative Costs of the Settlement.

2.56. "Unclaimed Amounts" means (i) Class Cash Payments of less than five United States Dollars ($5.00) for which a Settlement Class Member does not elect payment via electronic means by the deadline specified in the Notice Plan and (ii) checks and electronic payments for Class Cash Payments that remain undeliverable or uncashed ninety (90) days after the Settlement Administrator completes all Class Cash Payments.

2.57. "Unknown Claims" means any and all Released Claims that any Settlement Class Representative or Settlement Class Member does not know or suspect to exist in his, her, or its favor as of the Effective Date and which, if known by him, her, or it might have affected his, her, or its decision(s) with respect to the Settlement. With respect to any and all Released Claims, the Parties stipulate and agree that upon the Effective Date, Settlement Class Representatives and Settlement Class Members shall have waived any and all provisions, rights, protections, and benefits conferred by any law of any state or territory of the United States, the District of Columbia, or principle of common law or otherwise, which includes or is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> THAT THE CREDITOR OR RELEASING PARTY DOES NOT
> KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
> THE TIME OF EXECUTING THE RELEASE AND THAT, IF
> KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY
> AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
> OR RELEASED PARTY.

The Settlement Class Representatives and Class Counsel acknowledge, and each Settlement Class Member by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a key element of the Settlement Agreement.

### 3. **Settlement Fund**

3.1. Capital One shall make a non-reversionary settlement payment of three hundred million United States Dollars ($300,000,000) and deposit that settlement payment into the Settlement Fund Account as follows: (i) within ten (10) Business Days of the Court entering a Preliminary Approval Order, Capital One shall pay five million United States Dollars ($5,000,000) into the Settlement Fund Account to pay for Administrative Costs and Notice Costs; and (ii) within ten (10) Business Days of the Effective Date of the Settlement, Capital One shall fund the remaining balance of the Settlement Fund (*i.e.*, $295,000,000).

3.2. The Settlement Fund shall be used to pay for (i) Notice Costs, (ii) Administrative Costs, (iii) Service Awards approved by the Court, (iv) Attorneys' Fees and Expenses approved by the Court, and (v) Class Cash Payments for the Settlement Class. In no event shall any funds deposited in the Settlement Fund revert to Capital One (except for purposes of redistributing Unclaimed Amounts as Additional Interest, as set forth in Section 4.9 below).

### 4. **Payments to Settlement Class Members**

4.1. All Settlement Class Members shall be entitled to receive a monetary Class Cash Payment from the Settlement Fund. Class Cash Payments of five United States Dollars ($5.00) or

more shall be paid automatically without any requirement for Settlement Class Members to submit claims. Class Cash Payments of less than five United States Dollars ($5.00) shall be paid upon election by a Settlement Class Member for electronic payment, as set forth below.

4.2. Class Cash Payments shall be calculated as follows:

(i) The Settlement Administrator shall first determine the amount of each Individual Recognized Claim for each 360 Savings account that was open at any time during the Class Period.

    a. For 360 Savings accounts that were open at any time during the Class Period and that remain open after the End Date, the Individual Recognized Claim amount shall be calculated as the approximate amount of additional interest that would have been earned on the account during the Class Period had the account received the interest rate of the 360 Performance Savings product.

    b. For 360 Savings accounts that were open at any time during the Class Period and that are closed by the End Date, the Individual Recognized Claim amount shall be calculated as the approximate amount of additional interest that would have been earned on the account during the Class Period had the account received the interest rate of the 360 Performance Savings product, multiplied by a to-be-determined value that will increase the amount of the Individual Recognized Claim (the "Multiplier").

        1 The Multiplier shall be calculated by allocating payment for the Attorneys' Fees that Class Counsel intend to request for recovering the $125 million in Additional Interest (being up to twenty percent (20%) of $125 million, or $25 million) to the 360 Savings accounts that remain open after the End Date and thus will benefit from the Additional Interest payments Capital One will make.

        2 The Multiplier is subject to change based on (i) the amount of Attorneys' Fees ultimately awarded by the Court to Class Counsel for recovery of the $125 million in Additional Interest and (ii) the number of 360 Savings accounts that remain open after the End Date.

        3 By way of example, if the Court were to award $25 million in Attorneys' Fees for Class Counsel's recovery of the $125 million in Additional Interest and the number of open 360 Savings accounts does not change after the date of execution of this Agreement, the Multiplier would be approximately

1.15. Stated differently, the amounts of Individual Recognized Claims for 360 Savings accounts that are closed by the End Date would be increased to be approximately fifteen percent (15%) larger.

c.  Once all Individual Recognized Claim amounts are established, the Settlement Administrator shall aggregate those amounts to calculate the total dollar amount of all Individual Recognized Claims (the "Class Claim Total").

d.  Next, the Settlement Administrator shall divide each Individual Recognized Claim by the Class Claim Total to determine the fractional share of the Net Settlement Fund owed on each 360 Savings account.

e.  Finally, the fractional share attributable to each Individual Recognized Claim shall be multiplied by the Net Settlement Fund to determine the dollar amount of the Class Cash Payment for each 360 Savings account.

4.3.    To facilitate the Settlement Administrator's calculation of each Settlement Class Member's Class Cash Payment, Capital One will provide, within twenty-one (21) days of the Effective Date, data identifying each Capital One 360 Savings account open at any time during the Class Period; all holders of such accounts, including any joint or co-holders of such accounts; and the approximate amount of additional interest each 360 Savings account open during the Class Period would have earned during the Class Period if that account had received the interest rate paid on the 360 Performance Savings account.

4.4.    The Settlement Administrator shall send all eligible Class Cash Payments within sixty (60) days of the Effective Date.

4.5.     As part of the Notice Plan, Settlement Class Members shall be advised of the opportunity to elect to receive their Class Cash Payments via electronic means, including Venmo, PayPal, etc.  Any Settlement Class Member may elect to receive their Class Cash Payment via electronic means by following the instructions provided in the notice materials.  Additionally, any Settlement Class Member whose Class Cash Payment is less than five United States Dollars ($5.00) must elect payment by electronic means to receive a cash payment from the Settlement

Fund (i.e., a Class Cash Payment). Such requirement shall be explained in the notice materials provided to the Settlement Class as part of the Notice Plan.

4.6. For any Settlement Class Member whose Class Cash Payment is five United States Dollars ($5.00) or more and who does not elect the electronic payment option by the deadline disclosed in the Notice Plan, the Settlement Administrator shall mail their Class Cash Payment by check via U.S. Mail. For any Settlement Class Member whose Class Cash Payment is less than five United States Dollars ($5.00) and who does not elect the electronic payment option by the deadline disclosed in the Notice Plan, such Class member will not receive a Class Cash Payment and their Class Cash Payment shall be treated as an Unclaimed Amount subject to Section 4.9 below.

4.7. For purposes of the issuance of Class Cash Payments, the primary holder of a particular 360 Savings account along with any current or former joint or co-holders of that account shall be treated as one. Any Class Cash Payments for Settlement Class Members who are joint or co-holders of a 360 Savings account shall be issued payable to only the primary accountholder but shall be deemed to satisfy any rights or interest of any joint or co-owners of the account and shall be mailed to the last known address of the primary accountholder.

4.8. If any Class Cash Payments are undeliverable, the Settlement Administrator shall use reasonable efforts to resend the Class Cash Payments, including by attempting to identify updated contact information to facilitate resending via U.S. Mail or electronic means.

4.9. Unclaimed Amounts (i.e., Class Cash Payments of less than five United States Dollars ($5.00) for which a Settlement Class Member has not elected payment via electronic means by the deadline specified in the Notice Plan and checks and electronic payments for Class Cash Payments that remain undeliverable or uncashed ninety (90) days after the Settlement

Administrator completes all Class Cash Payments) shall be aggregated and either (i) provided in a second distribution to Settlement Class Members subject to the same terms stated herein related to the initial Class Cash Payment distributions or (ii) added to the amount of Additional Interest that Capital One owes pursuant to Section 5 of this Agreement, at Class Counsel's discretion after analysis of the amount of the Unclaimed Amounts and the cost of a second distribution.

4.9.1. Within fourteen (14) days after unclaimed, undeliverable, and uncashed amounts become Unclaimed Amounts under Section 4.9, the Settlement Administrator shall void all undeliverable and uncashed payments and notify the Parties of the aggregate total amount of Unclaimed Amounts. If Class Counsel selects option (ii) in Section 4.9 above, Capital One shall then promptly provide the Settlement Administrator with wire instructions, and the Settlement Administrator shall transfer the Unclaimed Amounts to Capital One in a single payment.

4.9.2. Upon receipt of the Unclaimed Amounts, if any, Capital One's obligation to pay Additional Interest under Section 5 of this Agreement shall be increased by the amount of the Unclaimed Amounts.

**5. Additional Interest Payments to Existing 360 Savings Accountholders**

5.1. Subject to Sections 5.2, 5.3, and 5.4, Capital One agrees that, beginning no later than forty-five (45) days after the Effective Date, it will maintain an interest rate on the 360 Savings account of at least the Minimum Rate (i.e., not less than two times the National Average Rate).

5.2. Capital One agrees to maintain an interest rate on the 360 Savings account of at least the Minimum Rate until such time as it has paid one hundred twenty-five million United States Dollars ($125,000,000), plus any Unclaimed Amounts as described under Section 4.9 above, in Additional Interest to Settlement Class Members with open 360 Savings accounts. Any future

reduction in the number or balances of open 360 Savings accounts shall not relieve or affect in any way Capital One's obligations under Section 5 of this Agreement.

5.3. "Additional Interest" shall mean the difference between (i) the total amount of interest Capital One pays to Settlement Class Members with open 360 Savings accounts on or after the date on which this Agreement is fully executed, which in no event shall be less than the Minimum Rate (with the limited exception stated in Section 5.4 of this Agreement), and (ii) the approximate total amount of interest Capital One would have paid to Settlement Class Members with open 360 Savings accounts had it paid only the National Average Rate of interest on or after such date. Any Additional Interest Capital One elects to pay following the date this Agreement is fully executed shall count toward the obligation Capital One undertakes in Section 5.2 of this Agreement provided that Capital One is paying at least the Minimum Rate on the 360 Savings account at the time the Additional Interest is paid.

5.4. In the event the National Average Rate changes, Capital One shall have a grace period of thirty (30) days within which to make any corresponding adjustment to the 360 Savings rate in order to comply with its obligation to pay at least two times the National Average Rate, as set forth in Sections 5.1 and 5.2 of this Agreement. Any Additional Interest Capital One pays during such a grace period shall count toward the obligation Capital One undertakes in Section 5.2 of this Agreement regardless of whether Capital One pays at least the Minimum Rate on the 360 Savings account during that grace period.

5.5. Capital One agrees to provide quarterly reports to Class Counsel, within twenty (20) days of the conclusion of a quarter, containing the following information:

(i)     The interest rate(s) Capital One paid on 360 Savings accounts during the previous three months;

(ii)    The National Average Rate(s) during the previous three months;

(iii)     The total amount of interest Capital One paid on 360 Savings accounts during the previous three months;

(iv)     The total amount of interest Capital One would have paid on 360 Savings accounts during the previous three months had it paid the National Average Rate;

(v)     The approximate total amount of Additional Interest Capital One paid during the previous three months;

(vi)     The total amount of Additional Interest Capital One has paid since the date on which this Agreement was fully executed; and

(vii)     The amount of Additional Interest remaining to be paid before Capital One's obligations under this Section of the Agreement are discharged.

Capital One shall provide such quarterly reports to Class Counsel via email at the addresses identified in Section 22.1.

5.6.     The format of the quarterly reports described in Section 5.5 shall substantially follow the template attached hereto as Exhibit 2.

5.7.     After Capital One has paid $125 million, plus any Unclaimed Amounts as described under Section 4.9, option (ii) above (by means of Additional Interest to members of the Settlement Class), it shall have no further obligations under Section 5 of this Agreement.  Capital One expects to satisfy its obligations under Section 5.2 within approximately 3 years of the Effective Date.   If, as a result of unforeseen circumstances, Class Counsel becomes reasonably concerned that the $125 million in Additional Interest will not be paid out within a reasonable amount of time, the Parties agree to meet and confer in good faith to consider options to ensure the $125 million in Additional Interest is earned and paid within a reasonable amount of time or otherwise.

5.8.     Capital One's obligations under Section 5 of this Agreement shall not be relieved or affected in any way in the event the 360 Savings account is renamed or converted to a different savings account product.

**6.  Capital One's Total Monetary Liability**

6.1.  In no event shall Capital One be obligated to pay more than four hundred twenty-five million United States Dollars ($425,000,000) in connection with the Settlement of the Action, including with respect to all Class Cash Payments, Additional Interest, Attorneys' Fees and Expenses, Notice Costs, and Administrative Costs.

**7.  Settlement Fund Account**

7.1.  The Settlement Fund monies shall be held in the Settlement Fund Account, which shall be an interest-bearing account established at The Huntington National Bank.

7.2.  All funds held in the Settlement Fund Account shall be deemed to be in the custody of the Court until such time as the funds shall be disbursed pursuant to this Agreement or further order of the Court.

7.3.  No amounts may be withdrawn from the Settlement Fund Account unless (i) authorized by this Agreement; (ii) authorized by the Notice Plan, after approval by the Court; or (iii) otherwise approved by the Court.

7.4.  The Parties agree that the Settlement Fund Account is intended to constitute a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1, *et seq*., and that the Settlement Administrator shall be the "administrator" within the meaning of Treasury Regulation § 1.468B-2(k)(3).  The Parties further agree that the Settlement Fund Account shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election required to treat the Settlement Fund Account as a qualified settlement fund from the earliest date possible.

7.5.  Upon or before establishment of the Settlement Fund Account, the Settlement Administrator shall apply for an employer identification number for the Settlement Fund Account utilizing IRS Form SS-4 and in accordance with Treasury Regulation § 1.468B-2(k)(4), and shall

provide Capital One with that employer identification number on a properly completed and signed IRS Form W-9.

7.6.    The Settlement Administrator shall file or cause to be filed, on behalf of the Settlement Fund Account, all required federal, state, and local tax returns, information returns, including, but not limited to, any Form 1099-series return, and tax withholdings statements, in accordance with the provisions of Treasury Regulation § 1.468B-2(k)(l) and Treasury Regulation § l.468B-2(1)(2).  Any contract, agreement, or understanding with the Settlement Administrator relating to the Settlement Fund Account shall require the Settlement Administrator or its agent to file or cause to be filed, on behalf of the Settlement Fund Account, all required federal, state, and local tax returns, information returns, including, but not limited to, any Form 1099-series return and tax withholdings statements, in accordance with the provisions of Treasury Regulation § 1.468B-2(k)(1) and Treasury Regulation § l.468B-2(1)(2).  The Settlement Administrator may, if necessary, secure the advice of a certified public accounting firm in connection with its duties and tax issues arising hereunder.

7.7.    All Taxes relating to the Settlement Fund Account shall be paid out of the Settlement Fund Account, shall be considered to be an Administrative Cost of the Settlement, and shall be timely paid by the Settlement Administrator without prior order of the Court.  Further, the Settlement Fund Account shall indemnify and hold harmless the Parties and the Parties' Counsel for Taxes (including, without limitation, taxes payable by reason of any such indemnification payments).

7.8.    Following its payment of the Settlement Fund monies as described in Section 3.1 of this Agreement, Capital One shall have no responsibility, financial obligation, or liability whatsoever with respect to investment of Settlement Fund Account funds, payment of federal,

state, and local income, employment, unemployment, excise, and any other Taxes, penalties, interest, or other charges related to Taxes imposed on the Settlement Fund Account or its disbursements, or payment of the administrative, legal, accounting, or other costs occasioned by the use or administration of the Settlement Fund Account.

**8.  Presentation of Settlement to the Court**

8.1.    No later than May 16, 2025, the Settlement Class Representatives and Class Counsel shall file with the Court a fully executed copy of this Agreement or, if the Agreement has not been fully executed by that date, a memorandum of understanding setting forth the key terms of the Settlement and signed by the Parties.

8.2.    No later than June 6, 2025, the Settlement Class Representatives and Class Counsel shall file a motion seeking a Preliminary Approval Order pursuant to the requirements of Federal Rule of Civil Procedure 23(e)(1).  Such motion shall also include and seek approval of the Notice Plan.

8.3.    After entry by the Court of a Preliminary Approval Order, and no later than twenty-one (21) days prior to the Objection Deadline, the Settlement Class Representatives shall file a motion seeking Final Approval of the Settlement and entry of a Final Approval Order and Judgment, including a request that the preliminary certification of the Settlement Class for settlement purposes be made final.

**9.  Effective Date and Termination**

9.1.    The Effective Date of the Settlement shall be the first Business Day after all of the following conditions have occurred:

9.1.1.   The Parties execute this Agreement;

9.1.2.   The Court enters a Preliminary Approval Order, which shall include approval of the Notice Plan to be proposed by Class Counsel;

9.1.3. Notice is provided to the Settlement Class in accordance with the Preliminary Approval Order and Notice Plan;

9.1.4. The Court enters a Final Approval Order and Judgment; and

9.1.5. The Final Approval Order and Judgment have become final because (i) the time for appeal, petition, rehearing, or other review has expired; (ii) if any appeal, petition, or request for rehearing or other review has been filed, the Final Approval Order and Judgment are affirmed without material change, or the appeal is dismissed or otherwise disposed of, and no other appeal, petition, rehearing or other review is pending, and the time for further appeals, petitions, and requests for rehearing or other review has expired.

9.2.    Capital One may, in its sole discretion, terminate this Agreement upon five (5) Business Days written notice to Class Counsel if:

(i)      The Parties fail to obtain and maintain Preliminary Approval consistent with the material provisions of this Settlement Agreement, and after negotiating in good faith, the Parties are unable to modify the Settlement in a manner to obtain and maintain Preliminary Approval;

(ii)     More than a specified number of individuals or Entities submit valid and timely requests to exclude themselves from the Settlement Class, as agreed to by the Parties and submitted to the Court for *in camera* review.

(iii)    The Court fails to enter a Final Approval Order and Judgment under the provisions of this Settlement Agreement;

(iv)     The settlement of the Settlement Class claims, or the Final Approval Order and Judgment, is not upheld on appeal; or

(v)      The Effective Date does not occur for any reason, including but not limited to the entry of an order by any court that would require either material modification or termination of the Settlement Agreement.

9.3.    If this Agreement is terminated under Section 9.2 above, the following shall occur:

9.3.1. Within ten (10) Business Days of receiving notice of a termination event from Capital One's Counsel, the Settlement Administrator shall pay to Capital One an

amount equal to the amount paid into the Settlement Fund by Capital One to date, together with any interest or other income earned thereon, less (i) any Taxes paid or due with respect to such income and (ii) any reasonable and necessary Administrative Costs or Notice Costs already actually incurred and paid or payable from the Settlement Fund pursuant to the terms of this Agreement;

9.3.2. The Parties shall return to the status quo ante in the Action as if the Parties had not entered into this Agreement;

9.3.3. Any Court orders approving certification of the Settlement Class and any other orders entered based upon this Agreement shall be null and void and vacated, and shall not be used in or cited by any person or Entity in support of claims or defenses or in support or in opposition to a future class certification motion in connection with any further proceedings in the Action or in any other action, lawsuit, arbitration, or other proceeding involving a Released Claim; and

9.3.4. This Agreement shall become null and void, and the fact of this Settlement and that Capital One did not oppose certification of a Settlement Class shall not be used or cited by any person or Entity in support of claims or defenses or in support of or in opposition to a future class certification motion in connection with any further proceedings in the Action or in any other action, lawsuit, arbitration, or other proceeding involving a Released Claim.

## 10. Duties of Settlement Administrator

10.1. The Parties agree that Class Counsel will retain, subject to Court approval, an independent Settlement Administrator. The Settlement Administrator shall perform the functions specified in this Agreement, any functions specified in the Notice Plan after Court approval, and any other functions approved by the Court. In addition to other responsibilities that are described

elsewhere in this Agreement (and in the Notice Plan, once approved by the Court), the duties of the Settlement Administrator shall include:

10.1.1. Providing notice to the Settlement Class in accordance with the Notice Plan;

10.1.2. Establishing and maintaining a Settlement website;

10.1.3. Responding to Settlement Class Member inquiries via U.S. mail, email, and telephone;

10.1.4. Establishing a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answering the questions of Settlement Class Members who call with or otherwise communicate such inquiries;

10.1.5. Paying Taxes;

10.1.6. Establishing and maintaining a post office box for receiving requests for exclusion from the Settlement Class;

10.1.7. Receiving and processing all written requests for exclusion from the Settlement Class and providing copies thereof to the Parties' Counsel. If the Settlement Administrator receives any requests for exclusion or other requests after the Opt-Out Deadline, the Settlement Administrator shall promptly provide copies thereof to the Parties' Counsel;

10.1.8. Within twenty-four (24) days after the Opt-Out Deadline, providing a final report to the Parties' Counsel summarizing the number of written requests for exclusion received, the number of written requests for exclusion determined to be valid and timely, and any other information requested by the Parties' Counsel;

10.1.9. After the Effective Date, processing and paying Class Cash Payments to Settlement Class Members, and attempting to resend any Class Cash Payments that are returned as undeliverable;

10.1.10. Prior to the Final Approval Hearing, preparing and executing an affidavit to submit to the Court that identifies each Settlement Class Member who timely and validly requested exclusion from the Settlement Class; and

10.1.11. Performing any other functions that the Parties jointly agree are necessary to accomplish administration of the Settlement.

10.2. As specified in Section 3.2, all Administrative Costs incurred by the Settlement Administrator or otherwise in connection with administering the Settlement shall be paid from the Settlement Fund. For the avoidance of doubt, Capital One shall not under any circumstances be responsible for any Administrative Costs (aside from Capital One's paying of the Settlement Fund).

10.3. Neither the Parties nor the Parties' Counsel shall have any liability whatsoever with respect to any act or omission of the Settlement Administrator, or any of its designees or agents, in connection with its performance of its duties under this Agreement, or under the Notice Plan once approved by the Court.

10.4. The Settlement Administrator shall indemnify and hold harmless the Parties and the Parties' Counsel for any liability arising from any act or omission of the Settlement Administrator, or any of its designees or agents, in connection with its performance of its duties under this Agreement, or under the Notice Plan once approved by the Court.

## 11. Notice Plan

11.1. In connection with a motion seeking a Preliminary Approval Order, Class Counsel shall present the Notice Plan to the Court for approval, which shall describe in detail the process

for implementing and executing a plan to notify Settlement Class Members of, among other things, (i) the Settlement, (ii) the availability and process for payment of the Class Cash Payments under the Settlement, and (iii) the procedure for Settlement Class Members to object to the Settlement or request exclusion from the Settlement.

11.2.    The Notice Plan shall specify that notice shall be sent to all Settlement Class Members, regardless of whether a particular Settlement Class Member is a joint or co-accountholder on a 360 Savings account or has a joint or co-accountholder listed on his, her, or its 360 Savings account. However, if joint or co-accountholders share the same residence/address, only one Notice will be sent for that account (addressed to all joint or co-accountholders).

11.3.    The Notice Plan shall provide that the Settlement Administrator shall cause the Complaint, Long Form Notice, Postcard Notice, Email Notice, Press Release, this Settlement Agreement, the Preliminary Approval Order, and other relevant Settlement and Court documents to be available on the Settlement website. Any other content proposed to be included or displayed on the Settlement website shall be approved in advance by Class Counsel and Capital One's Counsel, which approval shall not be unreasonably withheld.

11.4.    The Settlement Administrator shall be responsible for implementing and executing the Notice Plan.  Within twenty-one (21) days after the Court's entry of a Preliminary Approval Order, Capital One shall provide to the Settlement Administrator a Class List, which shall include each Settlement Class Member's full name, last known address, and last known email address (to the extent available) as reflected in Capital One's records.

11.4.1. The Parties agree that the Class List shall be provided to the Settlement Administrator solely for the purpose of effectuating the terms of this Settlement

27

Agreement, and that such information shall not be used, disseminated, or disclosed by or to any other person for any other purpose.

11.4.2. Capital One's inclusion of an individual's information on the Class List is in no way an admission of liability by Capital One with respect to that individual nor is it an admission that a litigation class could be certified under Federal Rule of Civil Procedure 23 in the Action.

11.4.3. The Class List shall be designated as "Highly Confidential" pursuant to the Stipulated Protective Order entered by the Court, Docket Entry Number 46.

11.4.4. Should the Settlement be terminated for any of the reasons identified in Section 9.2, the Settlement Class Representatives, the Settlement Administrator, and Class Counsel shall promptly destroy any and all copies of the Class List.

11.4.5. The provisions regarding the compilation and treatment of the Class List described in Section 11.4 and its subsections are material terms of this Settlement Agreement.

11.5.   As specified in Section 3.2, all Notice Costs incurred by the Settlement Administrator or otherwise in connection with implementing and executing the Notice Plan shall be paid from the Settlement Fund.

## 12. CAFA Notice

12.1.   Capital One will serve any notice required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, not later than ten (10) days after this Agreement is filed with the Court.

## 13. Covenants Not to Sue

13.1.   The Class Representatives covenant and agree: (i) not to file, commence, prosecute, intervene in, or participate in the litigation of any action in any jurisdiction based on or relating to any Released Claim, or the facts and circumstances relating thereto, against any of the Released

Parties; (ii) not to organize or solicit the participation of Settlement Class Members, or persons or Entities who would otherwise fall within the definition of the Settlement Class but who requested to be excluded from the Settlement Class, in a separate class for purposes of pursuing any action based on or relating to any Released Claim or the facts and circumstances relating thereto, against any of the Released Parties; and (iii) that the foregoing covenants and this Agreement shall be a complete defense to any Released Claim against any of the Released Parties.

## 14. Representations and Warranties

14.1.    Each Party represents that:

(i)    such Party has the full legal right, power, and authority to enter into and perform this Agreement, subject to Court approval;

(ii)    such Party is voluntarily entering into the Agreement as a result of arm's-length negotiations conducted by its counsel;

(iii)    such Party is relying solely upon its own judgment, belief, and knowledge, and the advice and recommendations of its own independently selected counsel, concerning the nature, extent, and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof;

(iv)    such Party has been represented by, and has consulted with, the counsel of its choice regarding the provisions, obligations, rights, risks, and legal effects of this Agreement and has been given the opportunity to review independently this Agreement with such legal counsel and agree to the particular language of the provisions herein;

(v)    the execution and delivery of this Agreement by such Party and the consummation by such Party of the transactions contemplated by this Agreement have been duly authorized by such Party;

(vi)    except as provided herein, such Party has not been influenced to any extent whatsoever in executing the Agreement by representations, statements, or omissions pertaining to any of the foregoing matters by any Party or by any person representing any party to the Agreement;

(vii)    each of the Parties assumes the risk of mistake as to facts or law;

(viii)    this Agreement constitutes a valid, binding, and enforceable agreement; and

<blockquote>

(ix)   no consent or approval of any person or Entity is necessary for such Party to enter into this Agreement.

</blockquote>

14.2.   The Settlement Class Representatives represent and warrant that they have not assigned or otherwise transferred any interest in any of the Released Claims against any of the Released Parties, and further covenant that they will not assign or otherwise transfer any interest in any of the Released Claims against any of the Released Parties.

14.3.   The Settlement Class Representatives represent and warrant that after the Final Approval Order and Judgment is granted, and the Effective Date has occurred, they have no surviving claim or cause of action against any of the Released Parties with respect to any of the Released Claims.

## **15. Releases**

15.1.   <u>Release of Capital One Parties.</u>   As of the Effective Date, all Settlement Class Members and all Settlement Class Representatives, on behalf of themselves, their heirs, assigns, executors, administrators, predecessors, and Successors, and any other person or Entity purporting to claim on their behalf, hereby expressly, generally, absolutely, and unconditionally release and discharge any and all Released Claims against the Released Capital One Parties, and any of their current, former, and future Affiliates, Parents, Subsidiaries, representatives, officers, agents, directors, employees, contractors, vendors, insurers, Successors, assigns, and attorneys, except for claims relating to the enforcement of the Settlement or this Agreement.

15.2.   <u>Release of Plaintiff Parties.</u>   As of the Effective Date, Capital One, and any of its current, former, and future Affiliates, Parents, Subsidiaries, representatives, officers, agents, directors, employees, contractors, vendors, insurers, Successors, assigns, and attorneys hereby expressly, generally, absolutely, and unconditionally release and discharge the Released Plaintiff Parties from all claims and causes of actions of every nature and description, whether known or

Unknown, that arise out of or relate in any way to the institution, prosecution, or settlement of the Action, except for claims relating to the enforcement of the Settlement or this Agreement.

15.3.    The Parties understand that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, each Party expressly assumes the risk of such possible difference in facts, and agrees that this Agreement, including the releases contained herein, shall remain effective notwithstanding such difference in facts.  The Parties agree that in entering this Agreement, it is understood and agreed that each Party relies wholly upon its own judgment, belief, and knowledge and that each Party does not rely on inducements, promises, or representations made by anyone other than those embodied herein.  Notwithstanding any other provision of this Agreement (including, without limitation, this Section), nothing in this Agreement shall be deemed to in any way impair, limit, or preclude the Parties' rights to enforce any provision of this Agreement, or any court order implementing this Agreement, in a manner consistent with the terms of this Agreement.

15.4.    The Parties agree that the Released Capital One Parties and Released Plaintiff Parties will suffer irreparable harm if any of them takes action inconsistent with Section 15 of this Agreement, and that in that event, the Released Parties may seek an injunction as to such action without further showing of irreparable harm in this or any other forum.

15.5.    Class Counsel and the Settlement Class Representatives shall ask the Court to dismiss with prejudice all claims, actions, or proceedings that are released pursuant to this Agreement as of the Effective Date in connection with its motion seeking Final Approval of the Settlement.

15.6.     For the avoidance of doubt, the releases described in Section 15 of this Agreement apply to all Settlement Class Members regardless of whether they hold a 360 Savings account individually or jointly with other joint or co-accountholders.

**16.** **No Admission of Wrongdoing or Infirmity of Claims**

16.1.     This Agreement is made for the sole purpose of attempting to consummate a settlement of the Action on a class-wide basis.  The Agreement compromises claims which are contested in good faith, and it shall not be deemed an admission by any of the Parties as to the merits or weakness of any claim or defense.

16.2.     This Agreement, whether or not consummated, any communications and negotiations relating to this Agreement or the Settlement, and any proceedings taken pursuant to this Agreement:

16.2.1. Shall not be offered or received against Capital One as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by Capital One with respect to the truth of any fact alleged by any Settlement Class Representative or any Settlement Class Member or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, breach of duty, or wrongdoing of Capital One;

16.2.2. Shall not be offered or received against Capital One as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by Capital One;

16.2.3. Shall not be offered or received against Capital One as evidence of a presumption, concession, or admission with respect to any liability, negligence, fault, breach of duty, or wrongdoing, or in any way referred to for any other reason as against

Capital One, in any other civil, criminal, or administrative action, or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Agreement; provided, however, that if this Agreement is approved by the Court, Capital One may refer to it to effectuate the liability protection granted to it hereunder;

16.2.4. Shall not be construed against Capital One as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial;

16.2.5. Shall not be construed as or received in evidence as an admission, concession, or presumption against any Settlement Class Representative or any Settlement Class Member that any of their claims are without merit, or that any defenses asserted by Capital One have any merit, or that damages recoverable under the Action would not have exceeded the Settlement Fund, provided, however, that if this Agreement is approved by the Court, Capital One may refer to it to enforce the release of claims granted to it hereunder; and

16.2.6. Shall not be used by the Settlement Class Representatives or Class Counsel to argue or present any argument that Capital One could not contest class certification and/or proceeding collectively on any grounds if the Action were to proceed or to establish any of the elements of class certification in any litigated certification proceedings, whether in the Action or in any other judicial proceeding in which Capital One is a party.

16.3.　The negotiation, terms, and entry of the Parties into this Agreement shall remain subject to the provisions of Federal Rule of Evidence 408, any and all state statutes of a similar nature, and the mediation privilege.

16.4. Notwithstanding the foregoing, Capital One may use, offer, admit, or refer to this Agreement and to the Settlement reached herein where necessary to defend itself in any other action, or in any judicial, administrative, regulatory, arbitrative, or other proceeding, and as necessary to comply with regulatory and/or disclosure obligations.

## 17. **Opt-Outs**

17.1. Any Settlement Class Member who wishes to be excluded from the Settlement Class must submit a written request for exclusion to the Settlement Administrator, postmarked no later than the Opt-Out Deadline, as specified in the Preliminary Approval Order.

17.2. The written request for exclusion must:

(i) Identify the case name of the Action;

(ii) Identify the name, telephone number, address, and email address of the Settlement Class Member seeking exclusion;

(iii) Be personally signed by the Settlement Class Member seeking exclusion;

(iv) Include a statement clearly indicating the Settlement Class Member's intent to be excluded from the Settlement; and

(v) Request exclusion only for that one Settlement Class Member whose personal signature appears on the request.

17.3. Opt-out requests seeking exclusion on behalf of more than one Settlement Class Member shall be deemed invalid in their entirety by the Settlement Administrator unless the request only seeks the exclusion of the Settlement Class Member making the request and any of his, her, or its joint or co-holders of a particular 360 Savings account.

17.4. Any Settlement Class Member who submits a valid and timely request for exclusion in the manner described herein shall not: (i) be bound by any orders or judgments entered in connection with the Settlement; (ii) be entitled to any relief under, or be affected by, the

Agreement; (iii) gain any rights by virtue of the Agreement; or (iv) be entitled to object to or appeal any aspect of the Settlement.

17.5.    For purposes of requests for exclusion, all holders of a particular 360 Savings account shall be treated as one.  Any valid request for exclusion made by one holder of a particular 360 Savings account shall apply to all holders of that account.

17.6.    Any Settlement Class Member who does not submit a valid and timely request for exclusion in the manner described in this Agreement and in the notice provided pursuant to the Notice Plan and who is not excluded by virtue of Section 17.5 of this Agreement shall be deemed to be part of the Settlement Class upon expiration of the Opt-Out Deadline, and shall be bound by all subsequent proceedings, orders, and judgments applicable to the Settlement Class, unless otherwise ordered by the Court.

## **18.** **Objections**

18.1.    Any Settlement Class Member who wishes to object to the Settlement must submit a written objection to the Court on or before the Objection Deadline, as specified in the Preliminary Approval Order.

18.2.     The written objection must include:

(i)      The case name and number of the Action;

(ii)     The name, address, telephone number, and email address of the objecting Settlement Class Member and, if represented by counsel, of his/her/its counsel;

(iii)    A statement of whether the objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class;

(iv)    A statement of the specific grounds for the objection; and

(v)     A statement of whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing, and if so, whether personally or through counsel.

18.3.    In addition to the foregoing requirements, if an objecting Settlement Class Member is represented by counsel and such counsel intends to speak at the Final Approval Hearing, the written objection must include a detailed description of any evidence the objecting Settlement Class Member may offer at the Final Approval Hearing, as well as copies of any exhibits the objecting Settlement Class Member may introduce at the Final Approval Hearing.

18.4.    Any Settlement Class Member who fails to object to the Settlement in the manner described in this Agreement and in the notice provided pursuant to the Notice Plan shall be deemed to have waived any such objection, shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall be precluded from seeking any review of the Settlement or the terms of this Agreement by appeal or any other means, unless otherwise ordered by the Court.

## 19. Service Awards

19.1.    The Settlement Class Representatives and Class Counsel shall submit a request to the Court for payment of any Service Awards, not to exceed ten thousand United States Dollars ($10,000), for each Settlement Class Representative.  Any request for Service Awards must be filed with the Court at least twenty-one (21) days before the Objection Deadline.  If approved by the Court, such Service Awards shall be paid from the Settlement Fund within fourteen (14) Business Days after the Effective Date.  For the avoidance of doubt, Capital One shall not under any circumstances be responsible for the payment of any Service Awards (aside from Capital One's paying of the Settlement Fund).

19.2.    The Parties agree that the effectiveness of this Agreement is not contingent upon the Court's approval of the payment of any Service Awards.  If the Court declines to approve, in whole or in part, a request for Service Awards, all remaining provisions in this Agreement shall remain in full force and effect.  No decision by the Court, or modification or reversal or appeal of

any decision by the Court, concerning the payment of Service Awards, or the amount thereof, shall be grounds for cancellation or termination of this Agreement.

**20. Attorneys' Fees and Expenses**

20.1.    Class Counsel shall submit a request to the Court for payment of any Attorneys' Fees and for reimbursement of any Expenses incurred in prosecuting and settling the Action.  Any request for Attorneys' Fees and Expenses must be filed with the Court at least twenty-one (21) days before the Objection Deadline.  If approved by the Court, such Attorneys' Fees and Expenses shall be paid from the Settlement Fund within fourteen (14) Business Days of the Effective Date. For the avoidance of doubt, Capital One shall not under any circumstances be responsible for the payment of any Attorneys' Fees and Expenses (aside from Capital One's paying of the Settlement Fund).

20.2.    Capital One agrees not to oppose any request to the Court for Attorneys' Fees, provided such a request does not seek a fee in excess of twenty percent (20%) of the $425,000,000 settlement value, being the combined value of (i) the Settlement Fund (being $300,000,000) and (ii) the Additional Interest Capital One agrees to pay in Section 5.2 ($125,000,000). Notwithstanding the foregoing, Capital One shall have the right to file a response to any request for Attorneys' Fees or Expenses to address any misstatements made therein.

20.3.    The Parties agree that the effectiveness of this Agreement is not contingent upon the Court's approval of the payment of any Attorneys' Fees or Expenses.  If the Court declines to approve, in whole or in part, a request for Attorneys' Fees or Expenses, all remaining provisions in this Agreement shall remain in full force and effect.  No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the payment of Attorneys' Fees or Expenses, or the amount thereof, shall be grounds for cancellation or termination of this Agreement.

**21. Confidentiality**

21.1.   The Parties and the Parties' Counsel agree that the terms of this Settlement shall remain confidential and not be disclosed until the Agreement is publicly filed in the Action.

**22. Notices**

22.1.   All notices to Class Counsel provided for in this Agreement shall be sent by e-mail to the following:

> Chet B. Waldman
> Carl L. Stine
> Philip M. Black
> **WOLF POPPER LLP**
> 845 Third Avenue
> 12th Floor
> New York, NY 10022
> cwaldman@wolfpopper.com
> cstine@wolfpopper.com
> pblack@wolfpopper.com

22.2.   All notices to Capital One or Capital One's Counsel provided for in this Agreement shall be sent by e-mail to the following:

> David L. Balser
> Jamie Dycus
> John C. Toro
> Robert D. Griest
> **KING & SPALDING LLP**
> 1180 Peachtree Street, N.E.
> Suite 1600
> Atlanta, GA 30309
> dbalser@kslaw.com
> jdycus@kslaw.com
> jtoro@kslaw.com
> rgriest@kslaw.com

22.3.   The notice recipients and addresses designated in this Section may be changed by written notice posted to the Settlement website.

**23. Miscellaneous Provisions**

23.1.   Further Steps.   The Parties agree that they each shall undertake any reasonable required steps to further effectuate the purposes and intent of this Agreement.

23.2.   Cooperation.   The Parties: (i) acknowledge that it is their intent to consummate this Settlement Agreement and (ii) agree to cooperate to the extent reasonably necessary to effect and implement all terms and conditions of the Settlement Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of the Settlement Agreement.

23.3.   Contractual Agreement.   The Parties understand and agree that all terms of this Agreement, including the exhibits hereto, are contractual and are not a mere recital, and each signatory warrants that he or she is competent and possesses the full and complete authority to execute and covenant to this Agreement on behalf of the Party that he or she represents.

23.4.   Recitals.   The recitals set forth above in Section 1 shall be and hereby are terms of this Agreement as if set forth herein.

23.5.   Headings.   Any headings contained herein are for informational purposes only and do not constitute a substantive part of this Agreement.   In the event of a dispute concerning the terms and conditions of this Agreement, the headings shall be disregarded.

23.6.   Integration.   This Agreement constitutes the entire agreement among the Parties and no representations, warranties, or inducements have been made to any Party concerning this Agreement other than the representations, warranties, and covenants expressly contained and memorialized herein.

23.7.   Exhibits.   The exhibits to this Agreement are expressly incorporated by reference and made part of the terms and conditions set forth herein.

23.8.   Drafting.   The language of all parts of this Agreement shall in all cases be construed as a whole, according to their fair meaning, and not strictly for or against any Party.   No Party shall

be deemed the drafter of this Agreement. The Parties acknowledge that the terms of the Agreement are contractual and are the product of negotiations between the Parties and their counsel. Each Party and their counsel cooperated in the drafting and preparation of the Agreement. In any construction to be made of the Agreement, the Agreement shall not be construed against any Party and any canon of contract interpretation to the contrary shall not be applied.

23.9.  <u>Modification or Amendment</u>.  This Agreement may not be modified or amended, nor may any of its provisions be waived, except by an express writing signed by the Parties who executed this Agreement, or their Successors.

23.10.  <u>Waiver</u>.  The failure of a Party to insist upon strict performance of any provision of this Agreement shall not be deemed a waiver of such Party's rights or remedies or a waiver by such Party of any default by another Party in the performance of or compliance with any of the terms of this Agreement. In addition, the waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

23.11.  <u>Severability</u>.  Should any part, term, or provision of this Agreement be declared or determined by any court or tribunal to be illegal or invalid, the Parties agree that the Court may modify such provision to the extent necessary to make it valid, legal, and enforceable. In any event, such provision shall be severable and shall not limit or affect the validity, legality, or enforceability of any other provision hereunder.

23.12.  <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that the Parties' Counsel shall exchange among themselves original signed counterparts (which may include electronically signed counterparts).

23.13.  <u>Electronic Mail</u>.  Transmission of a signed Agreement by electronic mail shall constitute receipt of an original signed Agreement by mail.

23.14.  <u>Successors and Assigns</u>.  The Agreement shall be binding upon, and inures to the benefit of, the heirs, executors, Successors, and assigns of the Parties hereto.

23.15.  <u>Survival</u>.  The Parties agree that the terms set forth in this Agreement shall survive the signing of this Agreement.

23.16.  <u>Governing Law</u>.  All terms and conditions of this Agreement shall be governed by and interpreted according to the laws of the Commonwealth of Virginia, without reference to its conflict of law provisions, except to the extent the federal law of the United States requires that federal law governs.

23.17.  <u>Interpretation</u>.  The following rules of interpretation shall apply to this Agreement:

(i)      Definitions apply to the singular and plural forms of each term defined.

(ii)     Definitions apply to the masculine, feminine, and neutral genders of each term defined.

(iii)    Whenever the words "include," "includes" or "including" are used in this Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

23.18.  <u>No Precedential Value</u>.  The Parties agree and acknowledge that this Agreement carries no precedential value.

23.19.  <u>Fair and Reasonable</u>.  The Parties and the Parties' Counsel believe this Agreement is a fair and reasonable compromise of the disputed claims and in the best interest of the Parties. The Parties have arrived at this Agreement as a result of extensive arm's-length negotiations.

23.20.  <u>Retention of Jurisdiction</u>.  The administration and consummation of the Settlement as embodied in this Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction over the Settlement and the Parties for the purpose of enforcing the terms of this

Agreement.  The Court also shall retain exclusive jurisdiction over any determination of whether any subsequent suit is released by the Settlement Agreement.

23.21.  <u>Confidentiality of Discovery Material</u>.  The Parties, the Parties' Counsel, and any retained or consulting experts, agree that they remain subject to the terms of the Stipulated Protective Order entered by the Court, Docket Entry Number 46.

23.22.  <u>Non-Disparagement</u>. Neither the Settlement Class Representatives nor Class Counsel shall make, publish, or state, or cause to be made, published, or stated, any defamatory or disparaging statement, writing, or communication pertaining to Capital One or its Affiliates, Parents, Subsidiaries, representatives, officers, agents, directors, employees, or attorneys. Similarly, Capital One shall not make, publish, or state, or cause to be made, published, or stated, any defamatory or disparaging statement, writing, or communication pertaining to any of the Settlement Class Representatives or their immediate families or Class Counsel.

23.23.  <u>No Government Third-Party Rights or Beneficiaries</u>.  Except as expressly provided for herein, no government agency or official can claim any rights or credit under this Agreement or Settlement, whether with respect to the alleged conduct that is the subject of the releases in Section 15 or the funds (or remainder of funds) paid or used in the Settlement.

23.24.  <u>No Collateral Attack</u>.  The Settlement Agreement shall not be subject to collateral attack, including by any Settlement Class Member or any recipient of notices of the Settlement after the Judgment is entered.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by themselves or by their duly authorized counsel:

**Class Counsel on behalf of the Settlement Class Representatives (who have specifically assented to the terms of this Settlement Agreement) and the Settlement Class:**

_____

Name: Chet B. Waldman

Date:

**Defendant Capital One Financial Corporation:**

DocuSigned by:

*Matthew Cooper*

D150659537B4416...

Name: Matthew Cooper

Title: General Counsel

Date: June 6, 2025

**Defendant Capital One, N.A.:**

DocuSigned by:

*Matthew Cooper*

D150659537B4416...

Name: Matthew Cooper

Title: General Counsel

Date: June 6, 2025

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by themselves or by their duly authorized counsel:

**Class Counsel on behalf of the Settlement Class Representatives (who have specifically assented to the terms of this Settlement Agreement) and the Settlement Class:**

Name: Chet B. Waldman
Date: 6/6/2025

**Defendant Capital One Financial Corporation:**

Name:
Title:
Date:

**Defendant Capital One, N.A.:**

Name:
Title:
Date:

# EXHIBIT 1



# EXHIBIT 1: LIST OF ACTIONS

1.    *In re: Capital One 360 Savings Account Interest Rate Litigation*, No. 1:24-md-03111-DJN (E.D. Va.)

2.    *Bellantoni v. Capital One Financial Corporation* (E.D.N.Y., No. 1:24-cv-01558) (E.D. Va., No. 1:24-cv-01076-DJN-WBP)

3.    *Hopkins v. Capital One, N.A.*, No. 1:24-cv-00292-DJN-WBP (E.D. Va.)

4.    *Pitts v. Capital One Financial Corporation* (S.D. Ohio, No. 3:24-cv-00047) (E.D. Va., No. 1:24-cv-01087-DJN-WBP)

5.    *Port v. Capital One, N.A.* (D.N.J., No. 3:24-cv-01006) (E.D. Va., No. 1:24-cv-01028-DJN-WBP)

6.    *Savett v. Capital One N.A.*, No. 1:23-cv-00890-DJN-WBP (E.D. Va.)

7.    *Sim v. Capital One Financial Corporation* (C.D. Cal., No. 2:24-cv-01222) (E.D. Va., No. 1:24-cv-01031-DJN-WBP)

8.    *Wise v. Capital One Financial Corporation* (S.D. Ill. No. 3:24-cv-00941) (E.D. Va., No. 1:24-cv-01080-DJN-WBP)

# EXHIBIT 2

**EXHIBIT 2: EXAMPLE QUARTERLY REPORT REQUIRED BY SECTIONS 5.5 THROUGH 5.7 OF THE SETTLEMENT AGREEMENT AND RELEASE**

## CAPITAL ONE'S QUARTERLY REPORT
## REGARDING ADDITIONAL INTEREST PAID ON 360 SAVINGS

Pursuant to Sections 5.5 and 5.6 of the June 6, 2025 Settlement Agreement and Release, Capital One provides the following report regarding the interest paid on 360 Savings accounts for the period of _____ through _____ (the "Relevant Period"):

| | |
|---|---|
| The interest rate(s) Capital One paid on 360 Savings accounts during the Relevant Period | |
| The National Average Rate(s) during the Relevant Period | |
| The total amount of interest Capital One paid on 360 Savings accounts during the Relevant Period | |
| The total amount of interest Capital One would have paid on 360 Savings accounts during the Relevant Period had it paid the National Average Rate | |
| The total amount of Additional Interest Capital One paid during the Relevant Period | |
| The total amount of Additional Interest Capital One has paid since the date on which this Agreement was fully executed | |
| The amount of Additional Interest remaining to be paid before Capital One's obligations under Section 5 of the Settlement Agreement are discharged | |

DATED:

Certified By:

_____
Signature

_____
Name

_____
Title

# EXHIBIT 3

# CAPITAL ONE 360 SAVINGS ACCOUNT INTEREST RATE CLASS ACTION SETTLEMENT

**If You Are or Were A Capital One <u>360 Savings</u> Accountholder**

**At Any Time Since September 18, 2019,**

**You Are Eligible For Benefits From A $425 Million Class Action Settlement**

**This notice explains your rights. Please read it carefully.**

**A court authorized this notice. This is not a solicitation from a lawyer.**

A class action settlement has been proposed that, if approved by the Court, would resolve a lawsuit filed against Capital One, N.A., and Capital One Financial Corp. ("Capital One" or "Defendants"), in the matter titled *In Re: Capital One 360 Savings Account Interest Rate Litigation*, No. 1:24-md-03111-DJN, pending in the United States District Court for the Eastern District of Virginia ("Court"). The Court authorized this notice to inform you how you may be affected by this proposed settlement.

This proposed class action concerns the interest rate Capital One paid on its 360 Savings account product. The proposed settlement requires Capital One to pay $425 million consisting of two components: (1) a $300 million "Settlement Fund" to be used to make cash payments to 360 Savings accountholders in relation to their account balances; and (2) $125 million of "Additional Interest" to be paid going forward to customers who continue to maintain 360 Savings accounts.

If you are or were a 360 Savings accountholder at any time since September 18, 2019, you are part of the "Settlement Class." This notice describes the lawsuit, the general terms of the proposed settlement and your rights and benefits under the settlement. This notice also explains how to exclude yourself from the settlement if you are a member of the Settlement Class and do not want to receive any part of the Settlement Fund.

Questions? Visit <u>CapitalOne360SavingsAccountLitigation.com</u> or call 1-855-604-1811.

Your legal rights are affected whether you act or don't act. Read this notice carefully. This notice summarizes the proposed settlement. For the precise terms and conditions of the settlement, please see the settlement agreement available at CapitalOne360SavingsAccountLitigation.com, or contact the Settlement Administrator by calling _____ or write to Capital One 360 Savings Account Class Action Settlement, c/o Settlement Administrator, P.O. Box _____, Portland, OR 97208-4518. Please do not telephone the Court or the Court clerk's office, or Capital One, to inquire about this settlement.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DEADLINE |
|---|---|---|
| RECEIVE PAYMENT | No claim form is required as part of this settlement. All Settlement Class Members are automatically eligible to receive a Class Cash Payment for your share of the Settlement Fund. You do, however, have the option to receive your payment via electronic payment instead of a check. To select the electronic payment option, please follow the instructions in Section 5 below.<br><br>If the amount of your Class Cash Payment is <u>$5 or more</u> and you do not select electronic payment, a check will be mailed to your last known address. ***However, if the amount of your Class Cash Payment is <u>less than $5</u>, you will only receive it if you elect to receive your payment electronically.***<br><br>The Settlement Administrator has not yet determined the amount of your Class Cash Payment. Accordingly, you are ***strongly encouraged*** to choose the electronic payment option to make sure you receive your Class Cash Payment. | **<u>Month XX, 20YY</u>** (to choose electronic payment). |

| | | |
|---|---|---|
| CLOSE ANY OPEN 360 SAVINGS ACCOUNTS | If your 360 Savings account is already closed, or you choose to close it prior to Month XX, 20YY (the "End Date"), you will receive a Class Cash Payment that is currently estimated to be approximately 15% larger than you otherwise would. You will still be able to close your 360 Savings account after the End Date, but if your account has not been closed by the End Date, you will not receive this larger Class Cash Payment. Instead, you will receive a smaller Class Cash Payment, and you will receive Additional Interest Payments in the future. See Section 5 below for additional details. | **Month XX, 20YY** (the "End Date") |
| EXCLUDE YOURSELF | You may choose to exclude yourself (or "opt out") of the settlement. This is the only option that allows you to separately sue Capital One at your own expense for the same or similar legal claims released by this settlement. However, if you opt out you will receive no payment from the Settlement Fund. | **Month XX, 20YY** |
| OBJECT OR COMMENT | You may write to the Court about why you do or don't like the settlement, the amount of requested attorneys' fees and expenses, or the Service Awards sought by the Settlement Class Representatives. You may also attend the hearing during which the Court will consider the fairness of the settlement, the amount of attorneys' fees and expenses, and the Service Awards sought by the Settlement Class Representatives, although you have no obligation to do | **Month XX, 20YY** |

| | so. For more information, see Section 10. | |
|---|---|---|

TABLE OF CONTENTS

1.   What Is This Lawsuit About?....................................................................................5

2.   Why Is The Lawsuit Being Settled?.........................................................................6

3.   What Is The Settlement? ...........................................................................................7

4.   Am I A Member Of The Settlement Class?...............................................................7

5.   What Can I Get In The Settlement? ..........................................................................8

6.   What Claims Are Released By The Settlement? .......................................................9

7.   How Will Class Counsel Be Paid?............................................................................9

8.   Will the Settlement Class Representatives Receive Any Additional Money?..............9

9.   Can I Exclude Myself From The Settlement?...........................................................10

10.  How Do I Object To Or Comment On The Settlement? ..........................................11

11.  How Will My Cash Payment Be Calculated?..........................................................12

12.  When Will The Court Decide If The Settlement Is Approved? ...............................13

13.  How Do I Get More Information?............................................................................13

**1.  What Is This Lawsuit About?**

This lawsuit is a proposed class action brought against Capital One concerning the interest rate it paid on its 360 Savings account product. Since February 2013, Capital One has offered savings accounts known as 360 Savings accounts. On September 18, 2019, Capital One began offering a separate savings account called 360 Performance Savings, and stopped offering new 360 Savings accounts to customers, though it continued to service existing 360 Savings accounts. Since then, Capital One has paid a higher rate of interest on 360 Performance Savings than it has paid on 360 Savings, though Plaintiffs allege the two accounts are otherwise identical.

Questions? Visit CapitalOne360SavingsAccountLitigation.com or call 1-855-604-1811.

Multiple lawsuits were brought on behalf of 360 Savings accountholders. Judge David J. Novak of the United States District Court for the Eastern District of Virginia is overseeing these lawsuits, which are consolidated under the name *In re: Capital One 360 Savings Account Interest Rate Litigation*, No. 1:24-md-03111-DJN (E.D. Va.) (the "Action"). The accountholders who sued are called the "Plaintiffs" or the "Settlement Class Representatives." Capital One, N.A. and Capital One Financial Corp. are the "Defendants."

The Plaintiffs in the Action allege that Capital One failed to raise interest rates on the 360 Savings account commensurate with rates paid on the 360 Performance Savings account, deceptively marketed the 360 Savings account, and concealed (i) that 360 Savings was no longer Capital One's high-yield online savings account; and (ii) the existence of the 360 Performance Savings account— and its higher interest rate—to 360 Savings accountholders.

Capital One denies all claims asserted against it in the Action, denies all allegations of wrongdoing and liability, and denies all material allegations of the Complaint. The Court has not determined that Capital One did anything wrong; instead, the Plaintiffs and Capital One have decided to settle the lawsuit.

**2. Why Is The Lawsuit Being Settled?**

The Court has not decided in favor of Plaintiffs or Defendants. Instead, both sides agreed to a settlement after a lengthy mediation process overseen by two neutral mediators. Settlements help to avoid the costs and uncertainty of a trial and related appeals, while more quickly providing benefits to members of the Settlement Class.

The Court previously appointed Chet B. Waldman of Wolf Popper, LLP as Class Counsel to represent 360 Savings accountholders. Class Counsel has determined that, while Plaintiffs believe their claims have merit, there are significant risks of continuing the litigation, including:

- The Court could decide not to certify the Class for trial;

- The Court could grant summary judgment for Capital One, in whole or in part;

- A jury could rule in Capital One's favor after trial;

- A jury could reduce any damages awarded after trial; and/or

- Any rulings in Plaintiffs' favor could be overturned on appeal.

After taking into account the risks, costs, and delay of further litigation, Class Counsel believe that the proposed settlement is in the best interest of the Settlement Class Members.

**3. What Is The Settlement?**

Capital One has agreed to pay the sum of $425,000,000 in two components as part of a settlement agreement (the "Settlement Agreement").

The first component is $300 million (the "Settlement Fund"), to be used to pay (i) Administrative Costs; (ii) Notice Costs; (iii) Attorneys' Fees and Expenses awarded by the Court; (iv) Service Awards awarded by the Court; and (v) *pro rata* cash payments ("Class Cash Payments") to Settlement Class Members based on the approximate amount of interest each Settlement Class Member would have earned if their 360 Savings account(s) had paid the interest rate then applicable to the 360 Performance Savings account. If there are Unclaimed Amounts from checks that are not cashed or from checks or electronic payments that are undeliverable, those funds will, in Class Counsel's discretion, be either redistributed *pro rata* to Settlement Class Members or added to the amount of Additional Interest that Capital One will pay to existing 360 Savings accountholders (discussed below).

The second component of the settlement consists of $125 million, which will be paid by Capital One as Additional Interest payments to Settlement Class Members who continue to maintain 360 Savings accounts. In order to accomplish such payments of Additional Interest, Capital One shall maintain an interest rate on the 360 Savings account of at least two times the national average rate for savings deposit accounts as calculated by the FDIC (the "Minimum Rate"), until such time as $125 million in Additional Interest has been paid to 360 Savings accountholders. For purposes of meeting the $125 million requirement, "Additional Interest" shall mean the difference between (i) the total amount of interest Capital One pays to Settlement Class Members with open 360 Savings accounts and (ii) the total amount of interest Capital One would have paid to Settlement Class Members with open 360 Savings accounts had it paid only the national average rate for savings deposit accounts.

**4. Am I A Member Of The Settlement Class?**

For purposes of settlement only, the Court has issued a Preliminary Approval Order to preliminarily certify a Settlement Class, which includes persons or entities that maintained a Capital One 360 Savings account at any time during the Class Period (i.e., from September 18, 2019, through and including Month XX, 20YY, the date on which the Court entered the Preliminary Approval Order), including joint and co-holders of 360 Savings accounts, as reflected in the Class List to be generated by Capital One.[1] If you are a Settlement Class Member, you will be bound by the settlement and any Judgment entered in this Action unless you request to be excluded.

5. **What Can I Get In The Settlement?**

Unless you opt out of the settlement, you are automatically eligible to receive a check or electronic payment for your Class Cash Payment. There is no need to file a claim.

However, you are ***strongly encouraged*** to choose to receive your Class Cash Payment electronically. ***<u>NOTE:</u>*** ***You will not receive a check if the amount of the check would be less than $5, but if you choose an electronic payment instead, you will receive your Class Cash Payment no matter the amount.*** If you wish to receive your Class Cash Payment electronically instead of by check, please follow the instructions available at the settlement website, CapitalOne360SavingsAccountLitigation.com.

If you continue to have an open 360 Savings account after Month XX, 20YY, you will also automatically receive payments of Additional Interest in your account going forward. There is no need to file a claim to receive the Additional Interest payments.

However, if your 360 Savings account is already closed, or you choose to close it prior to Month XX, 20YY, you will receive a Class Cash Payment that is currently estimated to be approximately 15% larger. This higher payment reflects that you will not be receiving any benefit from the payments of Additional Interest and therefore will not have to pay any attorneys' fees

---

[1] Excluded from the Settlement Class will be (i) Capital One, any entity in which Capital One has a controlling interest, and Capital One's officers, directors, legal representatives, successors, subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over the Action and the members of their immediate families and judicial staff; and (iii) any individual who timely and validly opts out of the Settlement Class.

attributable to the $125 million in Additional Interest provided under the settlement. For more information, please see Section 11 below.

### 6. What Claims Are Released By The Settlement?

Unless you exclude yourself from the settlement, all of the decisions by the Court will bind you. That means you will be bound to the terms of the settlement and accompanying Court orders and cannot bring a lawsuit or be part of another lawsuit against Capital One relating to, among other things, the interest paid on your 360 Savings account(s). Unless you exclude yourself from the settlement, you will be releasing all of your legal claims against Capital One relating to, among other things, the interest paid on your 360 Savings account(s) when the settlement becomes final. By releasing your legal claims, you are giving up the right to file, or to continue to pursue, separate legal claims against or seek further compensation from Capital One for any harm relating to the interest paid on your 360 Savings account(s) or the claims that were or could have been alleged in the lawsuits—whether or not you are currently aware of those claims. However, any such lawsuit you would bring would be at your own expense.

Paragraph 2.43 of the Settlement Agreement defines the claims that will be released by Settlement Class Members who do not exclude themselves from the settlement. You can access the Settlement Agreement and read the specific details of the legal claims being released on the settlement website, CapitalOne360SavingsAccountLitigation.com. On the other hand, if you exclude yourself from the settlement, you will not receive a Class Cash Payment.

### 7. How Will Class Counsel Be Paid?

Class Counsel and the other lawyers representing Plaintiffs and the Settlement Class Members (together, "Plaintiffs' Counsel") have prosecuted the Action on a contingency basis. This means that, to date, Plaintiffs' Counsel have paid for all of the expenses related to this case and have not been compensated for any of their work on this case. Accordingly, Plaintiffs' Counsel will ask the Court to award them Attorneys' Fees of no greater than 20% of the $425 million that Capital One is required to pay under the settlement, and reimbursement for Expenses (which are approximately $1.6 million). If awarded, such Attorneys' Fees and Expenses will be paid out of the Settlement Fund.  The Court

will determine the amount of Attorneys' Fees and Expenses to be paid to Plaintiffs' Counsel. You will not have to separately pay any portion of these amounts yourself. Plaintiffs' Counsel's request for Attorneys' Fees and Expenses will be filed by Month XX, 20YY and will be available to view on the settlement website at CapitalOne360SavingsAccountLitigation.com.

**8. Will the Settlement Class Representatives Receive Any Additional Money?**

Class Counsel will also ask the Court for "Service Awards" to be paid to the twenty-six Settlement Class Representatives in the amount of $10,000 each. These payments are designed to compensate the Settlement Class Representatives for the time, effort, and risks they undertook in pursuing this litigation, including gathering and providing documents related to their Capital One accounts, submitting to lengthy depositions, and answering multiple sets of interrogatories during the discovery process. This amount will have to be approved by the Court. Any amount approved by the Court will be paid from the Settlement Fund.

**9. Can I Exclude Myself From The Settlement?**

If you are a Settlement Class Member, you can exclude yourself from the Settlement Class if you wish to retain the right to sue Capital One separately for the claims released by the settlement. If you choose to have an attorney represent you, you would need to find your own attorney and pay him or her at your own cost to represent you in that lawsuit. If you exclude yourself, you cannot participate in, benefit from, or object to, the settlement.

To exclude yourself, you must submit a written request to the Settlement Administrator, via mail to: Capital One 360 Savings Account Class Action Settlement, c/o Settlement Administrator, P.O. Box _____, Portland, OR 97208-4518. The exclusion request must contain the following information:

(1) The name of this Action (*In re: Capital One 360 Savings Account Interest Rate Litigation*, No. 1:24-MD-3111-DJN);

(2) Your full name, telephone number, current address, and email address;

(3) Your personal signature (your lawyer's signature is not sufficient);

(4) A statement clearly indicating your intent to be excluded from the settlement; and

Questions? Visit CapitalOne360SavingsAccountLitigation.com or call 1-855-604-1811.

(5) A statement that your request for exclusion applies only to you, the one Settlement Class Member whose personal signature appears on the request. (Requests seeking exclusion on behalf of more than one Settlement Class Member shall be deemed invalid by the Settlement Administrator.).

Any exclusion requests must be postmarked no later than Month XX, 20YY (the "Opt-Out Deadline"). Under the terms of the Settlement Agreement, all holders of a particular 360 Savings account are to be treated as one for purposes of exclusions. Therefore, any valid exclusion request made by one holder of a particular 360 Savings account will exclude all holders of that account from participation in the settlement.

If you do not comply with these procedures and the Opt-Out Deadline, you will lose any opportunity to exclude yourself from the Settlement Class, and your rights will be determined in this lawsuit by the Settlement Agreement if it is approved by the Court.

### 10. How Do I Object To Or Comment On The Settlement?

If you are a Settlement Class Member, you can tell the Court what you think of the settlement. You can object to the settlement if you don't think it is fair, reasonable, or adequate, and you can give reasons why you think the Court should not approve it. You can't ask the Court to order a larger settlement; the Court can only approve or deny the settlement as it is. If the Court denies approval to the entire settlement, no settlement benefits will be made available, and the lawsuit will continue. If the Court approves the settlement, you will still be eligible to receive settlement benefits even if you object to the settlement.

You may also, but are not required to, appear at the Final Approval Hearing (see section 12 below), either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. To appear and speak at the Final Approval Hearing, you need to file a written objection to the settlement.

To object, you must file a written objection with the Court stating that you object to the settlement or any portion of it. Your objection must include:

(1) The case name and number of this Action (*In re: Capital One 360 Savings Account Interest Rate Litigation*, No. 1:24-MD-3111-DJN);

(2) Your full name, current address, telephone number, and email address and, if you are represented by counsel, those of your counsel;

(3) A statement whether the objection applies only to you, to a specific subset of the Settlement Class, or to the entire Settlement Class;

(4) A statement of the specific grounds for the objection; and

(5) A statement of whether you intend to appear at the Final Approval Hearing, and if so, whether personally or through counsel.

Additionally, if you are represented by a lawyer and your lawyer intends to speak at the Final Approval Hearing, your written objection must include:

(6) A detailed description of any evidence you may offer at the Final Approval Hearing; and

(7) Copies of any exhibits you may introduce at the Final Approval Hearing.

To be considered by the Court, your written objection must be filed with the Court by _____, 2025 (the "Objection Deadline"). The Court's address is: _____ [ address].

If you do not comply with these procedures and the deadline for objections, you may lose any opportunity to have your objection considered at the Final Approval Hearing or otherwise to contest the approval of the settlement or to appeal from any orders or judgments entered by the Court in connection with the proposed settlement.

11. **How Will My Class Cash Payment Be Calculated?**

Your Class Cash Payment is based on your "Individual Recognized Claim," which is determined as follows:

For each 360 Savings account that existed during the Class Period but was terminated before the End Date,[2] the Individual Recognized Claim amount is calculated as the approximate amount of additional interest that would have been earned on the account during the Class Period had the account received the interest rate of the 360 Performance Savings product, multiplied by a to-be-determined value that will increase the amount of the Individual Recognized Claim (the "Multiplier"). The

---

[2] The "End Date" means the date used to determine whether a particular 360 Savings account is open or closed for purposes of calculating the amount of a Class Cash Payment, which shall be forty-eight (48) days after the Notice Date.

Multiplier is currently estimated to be approximately 1.15 (or an approximately 15% increase), though it may change depending on the amount of Attorneys' Fees and expenses awarded by the Court and the number of 360 Savings accounts that remain open after the End Date.[3]

For each 360 Savings account that existed during the Class Period and remains open after the End Date, the Individual Recognized Claim shall be calculated as the approximate amount of additional interest that would have been earned on the account during the Class Period had the account received the interest rate of the 360 Performance Savings product. The Individual Recognized Claim amounts will then be used to calculate *pro rata* Class Cash Payments from the Net Settlement Fund (being the amount remaining in the Settlement Fund after deducting (i) Service Awards; (ii) Administrative Costs; (iii) Notice Costs; (iv) Expenses; and (v) Attorneys' Fees).

### 12. When Will The Court Decide If The Settlement Is Approved?

The Court will hold a hearing on Month XX, 20YY to consider whether to approve the Settlement ("Final Approval Hearing"). The Final Approval Hearing will be held before the Honorable David J. Novak, in the courtroom located at the United States District Court for the Eastern District of Virginia, _____ [address].

Consult the settlement website at CapitalOne360SavingsAccountLitigation.com, for updated information on the hearing date and time (which may be moved by the Court).

### 13. How Do I Get More Information?

This notice is only a summary of the Action and the settlement. Other important documents can be accessed through the settlement website. If you have questions about the proposed Settlement or wish to receive a copy of the Settlement Agreement but do not have access to the Internet to download a copy online, you may contact the Settlement Administrator. Please note that the Court

---

[3] The Multiplier shall be calculated by allocating payment for the Attorneys' Fees that Class Counsel intend to request for recovering the $125 million in Additional Interest (being up to twenty percent (20%) of $125 million, or $25 million) to the 360 Savings accounts that remain open after the End Date and thus will benefit from the Additional Interest payments Capital One will make. The Multiplier is subject to change based on (i) the amount of Attorneys' Fees ultimately awarded by the Court to Class Counsel for recovery of the $125 million in Additional Interest and (ii) the number of 360 Savings accounts that remain open after the End Date.

and Capital One cannot respond to any questions regarding this notice, the Action, or the proposed settlement.

If you wish to communicate directly with Class Counsel, you may contact them by phone, mail, or email at the following address:

Chet B. Waldman
Wolf Popper LLP
845 Third Ave.
New York, NY 10022
(212) 759-4600
outreach@wolfpopper.com

# EXHIBIT 4

Capital One 360 Savings Litigation
Settlement Administrator
PO Box XXXX
Portland, OR 972XX-XXXX

FIRST-CLASS MAIL
U.S. POSTAGE
PAID
Portland, OR
PERMIT NO.xxxx

Court-Approved Legal Notice

**If you are or were a Capital One 360 Savings accountholder at any time since September 18, 2019, you are eligible for benefits from a $425 million class action settlement.**

**This notice is only a summary.** Learn more about the Settlement at www.CapitalOne360SavingsAccountLitigation.com, or by calling toll free 1-855-604-1811.

<<UNIQUEID>>

<<MAIL ID>>
<<NAME 1>>
<<NAME 2>>
<<ADDRESS LINE 1>>
<<ADDRESS LINE 2>>
<<ADDRESS LINE 3>>
<<ADDRESS LINE 4>>
<<ADDRESS LINE 5>>
<<CITY, STATE ZIP>>
<<COUNTRY>>

A class action settlement has been proposed that, if approved by the Court, would resolve the lawsuit titled *In re: Capital One 360 Savings Account Interest Rate Litigation*, No. 1:24-md-03111-DJN (E.D. Va.). The lawsuit concerns allegations that Capital One acted deceptively regarding the marketing and payment of interest on its 360 Savings account product. Capital One, N.A. and Capital One Financial Corporation ("Capital One" or "Defendants") deny any wrongdoing, and the Court has not determined that Capital One did anything wrong.

**Who is Included?** You are receiving this notice because records show you are a member of the Settlement Class, i.e. all persons or entities who are or were <u>360 Savings</u> accountholders between September 18, 2019, and [PA date].

**What does the Settlement Provide?** The Settlement provides for $425 million consisting of: (1) a $300 million Settlement Fund to be used to make cash payments to 360 Savings accountholders in relation to their historical account balances; and (2) $125 million to be used to make increased interest payments going forward for customers who continue to maintain 360 Savings accounts. You do not need to file a claim to receive a cash payment; if you do nothing, a check will be mailed to your last known address, as long as your payment is $5 or more. You will not receive a mailed check if the amount of the check would be less than $5, but if you choose an electronic payment instead, you will receive your payment no matter the amount. <u>You are therefore strongly encouraged to choose to receive your share of the Settlement Fund as an electronic payment (instead of a check) by visiting www.CapitalOne360SavingsAccountLitigation.com.</u> The deadline to choose an electronic payment is **Month XX, 20YY**. The amount and timing of your Settlement benefits will differ depending on whether your 360 Savings account is open or closed as of **Month XX, 20YY**; please see the Long Form Notice at www.CapitalOne360SavingsAccountLitigation.com for more details regarding how the payment amounts will be calculated.

**Other Options**. If you do not want to be legally bound by the Settlement, you must submit a request to opt out **postmarked** no later than **Month XX, 20YY**. If you do not opt out, you will be legally bound by the Settlement, will give up the right to sue Capital One, and will release Capital One from the legal claims that were or could have been brought in this lawsuit. If you opt out, you will receive no benefits from the Settlement. If you do not opt out, you may object to or comment on the Settlement and/or Plaintiffs' Counsel's application for attorneys' fees, expenses, and service awards by **Month XX, 20YY**. The Long Form Notice at www.CapitalOne360SavingsAccountLitigation.com explains how to opt out or object. The Court will hold a final approval hearing on **Month XX, 20YY**, to consider whether to approve the Settlement, Plaintiffs' Counsel's requested attorneys' fees of up to 20% of the settlement amount plus expenses, service awards for the settlement class representative, and any objections. You or your lawyer, at your own expense, may attend the hearing if you object, but you are not required to do so.

**This notice is only a summary.** More information is available at
www. CapitalOne360SavingsAccountLitigation.com or by calling toll-free 1-855-604-1811.

# EXHIBIT 5

---

### Subject: Important Legal Notice of Class Action Settlement - 360 Savings Account Interest Rate Litigation

A class action settlement has been proposed that, if approved by the Court, would resolve the lawsuit titled *In re: Capital One 360 Savings Account Interest Rate Litigation*, No. 1:24-md-03111-DJN (E.D. Va.). The lawsuit concerns allegations that Capital One acted deceptively regarding the marketing and payment of interest on its 360 Savings account product. Capital One, N.A. and Capital One Financial Corporation ("Capital One" or "Defendants") deny any wrongdoing, and the Court has not determined that Capital One did anything wrong.

**<u>Who is Included</u>?** You are receiving this notice because records show you are a member of the Settlement Class, defined as: all persons or entities who are or were <u>360 Savings</u> accountholders between September 18, 2019 and [PA date].

**<u>What does the Settlement Provide</u>?** The Settlement provides for $425 million consisting of: (1) a $300 million Settlement Fund to be used to make cash payments to 360 Savings accountholders in relation to their historical account balances; and (2) $125 million to be used to make increased interest payments going forward for customers who continue to maintain 360 Savings accounts. You do not need to file a claim to receive a cash payment; if you do nothing, a check will be mailed to your last known address, as long as your payment is $5 or more. You will not receive a mailed check if the amount of the check would be less than $5, but if you choose an electronic payment instead, you will receive your payment no matter the amount. <u>You are therefore strongly encouraged to choose to receive your share of the Settlement Fund as an electronic payment (instead of a check) by visiting www.CapitalOne360SavingsAccountLitigation.com</u>. The deadline to choose an electronic payment is **Month XX, 20YY**. The amount and timing of your Settlement benefits will differ depending on whether your 360 Savings account is open or closed as of **Month XX, 20YY**; please see the Long Form Notice at www. CapitalOne360SavingsAccountLitigation.com for more details regarding how the payment amounts will be calculated.

**<u>Other Options</u>**. If you do not want to be legally bound by the Settlement, you must submit a request to opt out **postmarked** no later than **Month XX, 20YY**. If you do not opt out, you will be legally bound by the Settlement, will give up the right to sue Capital One, and will release Capital One from the legal claims that were or could have been brought in this lawsuit. If you opt out, you will receive no benefits from the Settlement. If you do not opt out, you may object to or comment on the Settlement and/or Plaintiffs' Counsel's application for attorneys' fees, expenses, and service awards by **Month XX, 20YY**. The Long Form Notice at www. CapitalOne360SavingsAccountLitigation.com explains how to opt out or object. The Court will hold a final approval hearing on **Month XX, 20YY**, to consider whether to approve the Settlement, Plaintiffs' Counsel's requested attorneys' fees of up to 20% of the settlement amount plus

expenses, service awards for the settlement class representative, and any objections. You or your lawyer, at your own expense, may attend the hearing if you object, but you are not required to do so.

**This notice is only a summary.** More information is available at www. CapitalOne360SavingsAccountLitigation.com or by calling toll-free 1-855-604-1811.

# EXHIBIT 6

**Exhibit 6**

**Proposed Press Release**

---

### **$425 Million Settlement Reached in Capital One 360 Savings Account Interest Rate Litigation**

PR Newswire / CITY, STATE / Month, Day 20YY - A class action settlement has been proposed that, if approved by the Court, would resolve the lawsuit titled *In re: Capital One 360 Savings Account Interest Rate Litigation*, No. 1:24-md-03111-DJN (E.D. Va.). The Defendants, Capital One, N.A. and Capital One Financial Corporation. (collectively "Capital One" or "Defendants") deny any wrongdoing, and the Court has not determined that Capital One did anything wrong.

This Settlement resolves a class action brought against Capital One concerning the interest paid on its 360 Savings account product. Since February 2013, Capital One has offered to members of the general public savings accounts known as 360 Savings accounts. On September 18, 2019, Capital One began offering a separate savings account called 360 Performance Savings, and stopped offering new 360 Savings accounts to customers, though it continued to service existing 360 Savings accounts. Since then, Capital One has paid a higher rate of interest on 360 Performance Savings than it has paid on 360 Savings, though Plaintiffs allege the two accounts are otherwise identical. The Plaintiffs in the Action allege that Capital One failed to raise interest rates on the 360 Savings account commensurate with rates paid on the 360 Performance Savings account, deceptively marketed the 360 Savings account, and concealed (i) that 360 Savings was no longer Capital One's high-yield online savings account; and (ii) the existence of the 360 Performance Savings account—and its higher interest rate—to 360 Savings accountholders. Capital One denies all claims asserted against it in the Action, denies all allegations of wrongdoing and liability, and denies all material allegations of the Complaint. The Court has not determined that Capital One did anything wrong; instead, the Plaintiffs and Capital One have decided to settle the lawsuit.

The Settlement Class includes all persons or entities who are or were 360 Savings accountholders between September 18, 2019, and [the date of preliminary approval].

The Settlement provides for $425 million consisting of: (1) a $300 million Cash Settlement Fund to be used to make cash payments to all 360 Savings accountholders in relation to their account balances (the "Class Cash Payment"); and (2) $125 million to be used to make increased interest payments going forward for customers who continue to maintain 360 Savings accounts.

Settlement Class Members do not need to file a claim to receive a cash payment; if Settlement Class Members do nothing, a check will be mailed to their last known address, as long as their payment is $5 or more. Settlement Class Members will not receive a mailed check if the amount of the check would be less than $5, but if they choose an electronic payment instead, they will receive their payment no matter the amount. Settlement Class Members are strongly

encouraged to choose to receive your share of the Cash Settlement Fund as an electronic payment (instead of a check) by visiting www. CapitalOne360SavingsAccountLitigation.com. The deadline to choose an electronic payment is Month XX, 20YY. The amount and timing of Settlement benefits will differ depending on whether a Settlement Class Member's 360 Savings account is open or closed as of Month XX, 20YY; please see the full notice at www. CapitalOne360SavingsAccountLitigation.com for more details.

Settlement Class Members who do not want to be legally bound by the Settlement must submit a request to opt out postmarked no later than Month XX, 20YY. If Settlement Class Members do not opt out, they will give up the right to sue Capital One and will release Capital One from the legal claims that were or could have been brought in this lawsuit. If Settlement Class Members opt out, they will receive no Class Cash Payment. If Settlement Class Members do not opt out, they may object to or comment on the Settlement and/or Plaintiffs' Counsel's application for attorneys' fees, expenses, and service awards by Month XX, 20YY. The full notice at www. CapitalOne360SavingsAccountLitigation.com explains how to opt out or object.

The Court will hold a final approval hearing on Month XX, 20YY, to consider whether to approve the Settlement, Plaintiffs' Counsel's requested attorneys' fees of up to 20% of the settlement amount plus expenses, service awards for the settlement class representatives, and any objections. You or your lawyer, at your own expense, may attend the hearing if you object, but you are not required to do so.

The foregoing is only a summary. More information is available at www.CapitalOne360SavingsAccountLitigation.com or by calling toll-free 1-855-604-1811.

# EXHIBIT 7

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

IN RE: CAPITAL ONE 360 SAVINGS
ACCOUNT INTEREST RATE
LITIGATION

Case No. 1:24-md-03111-DJN

## [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL
## OF CLASS ACTION SETTLEMENT

WHEREAS:

Since February 2013, Capital One has offered to members of the general public savings accounts known as 360 Savings accounts.

In September 2019, Capital One began offering a new savings account called 360 Performance Savings, and stopped offering new 360 Savings accounts to customers, though it continued to service existing 360 Savings accounts.

Between July 10, 2023, and March 1, 2024, seven putative class action lawsuits were filed against Capital One by current or former 360 Savings accountholders. These suits alleged that Capital One breached the contracts it had with 360 Savings accountholders and the implied covenant of good faith and fair dealing incorporated therein; that Capital One had violated various state consumer-protection statutes; and that Capital One engaged in conduct making it liable for unjust enrichment and promissory estoppel. The claims asserted in the lawsuits arose from allegations that Capital One failed to raise interest rates on the 360 Savings account commensurate with rates paid on the 360 Performance Savings account, deceptively marketed the 360 Savings account, and failed to disclose (i) that 360 Savings was no longer Capital One's high-yield online savings account and (ii) the existence of the 360 Performance Savings account—and its higher interest rate—to 360 Savings accountholders.

On June 7, 2024, pursuant to 28 U.S.C. § 1407, the U.S. Judicial Panel on Multidistrict Litigation ("JPML") transferred the seven pending lawsuits to the Honorable David J. Novak in the Alexandria Division of the United States District Court for the Eastern District of Virginia for coordinated pretrial proceedings under the caption *In re: Capital One 360 Savings Account Interest Rate Litigation*, No. 1:24-md-03111-DJN (E.D. Va.) (the "Action").

On June 24, 2024, the Court appointed Class Counsel.[1]

On July 1, 2024, Class Counsel filed the operative Complaint, which superseded the complaints that had been consolidated by the JPML and included additional claims, putative subclasses, and named plaintiffs who now comprise the Settlement Class Representatives. Capital One moved to dismiss the Complaint, and the Court granted in part and denied in part that motion by an order dated November 12, 2024.

On July 18, 2024, the Court appointed Mr. Craig P. Seebald, a distinguished attorney and partner at the firm of Vinson & Elkins, to serve as Special Master to oversee and manage discovery in the Action. The Court later expanded Special Master Seebald's duties to include facilitating settlement discussions between the Parties.

Beginning in October 2024 and continuing into 2025, Capital One and the Settlement Class Representatives engaged in far-reaching fact and expert discovery. Such discovery included extensive written discovery; nearly 40 depositions; the production of tens of thousands of documents spanning hundreds of thousands of pages; and the service of eight expert reports, three by Capital One and five by the Settlement Class Representatives. Counsel for Capital One and the Settlement Class Representatives met and conferred on numerous occasions regarding various

---

[1] The capitalized terms not otherwise defined herein shall have the same meaning as defined in the Settlement Agreement.

discovery issues, litigated a discovery motion, and attended status conferences with the Court and Special Master Seebald.

In March and April 2025, the Parties engaged in comprehensive class certification and *Daubert* motions practice. Capital One and the Settlement Class Representatives filed a total of five *Daubert* motions challenging each other's disclosed experts, and each *Daubert* motion was opposed by the nonmovant. The Settlement Class Representatives sought certification of a nationwide class of all persons who had been Capital One 360 Savings accountholders at any time since Capital One launched 360 Performance Savings, as well as 17 state-specific subclasses of such persons. Capital One opposed Plaintiffs' motion for class certification, and the Parties' briefing on that motion spanned 130 pages.

Parallel to their litigation of the Action, the Parties engaged in arm's-length settlement negotiations beginning in March 2025. The Parties participated in two mediation sessions with Robert A. Meyer, a seasoned mediator and commercial litigator, and Special Master Seebald. The first mediation was held on March 12, 2025, and the second on April 18, 2025.

At the April 18, 2025 mediation, the Parties reached an agreement on the material terms of a settlement of the Action (the "Settlement"). After reaching the material terms, the Parties engaged with the mediators two additional times to resolve a disagreement related to the structure of the Settlement. The final terms of the Settlement the Parties reached are set forth in the Settlement Agreement and Release, dated June 6, 2025 (the "Agreement"), which was filed with the Court on June 6, 2025, and are summarized in the Long Form Notice, which is attached as Exhibit 3 to the Agreement.

As detailed in the Agreement and summarized in the Long Form Notice, in exchange for a release, Capital One has agreed to provide $425 million to Settlement Class Members, which will

be composed of two parts: (a) $300 million in cash, the net after fees and expenses are deducted to be distributed to the Class pursuant to a plan of allocation; and (b) $125 million of Additional Interest to be paid to Class Members who continue to hold 360 Savings accounts. Class Members will not have to submit proofs of claim. Payments will be provided based on Capital One's records and additional diligence locating Class Members who are former Capital One customers.

As part of the Settlement, the Parties have agreed that Plaintiffs' Counsel may apply to this Court for an award of attorneys' fees, costs, and expenses. Plaintiffs' Counsel may also apply to this Court for payment of Service Awards to the individual Settlement Class Representatives. These applications must be approved by the Court, and the Court will defer any ruling on the appropriateness of such awards until the Final Approval Hearing.

In accordance with the terms of the Agreement, Plaintiffs filed an unopposed motion (the "Preliminary Approval Motion") for an order: (i) preliminarily approving the Settlement; (ii) preliminarily certifying the Action as a class action, for settlement purposes; (iii) approving the form, content, and method of providing notice of the Settlement to the Class; and (iv) scheduling the date and time for the Final Approval Hearing, as defined herein.

NOW, THEREFORE, having considered all matters submitted to it at or prior to the hearing on the Preliminary Approval Motion and otherwise, including the complete record of this Action, and good cause appearing therefore, the Court hereby ORDERS as follows:

1.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d), and has personal jurisdiction over the Parties and the Settlement Class members. Venue is proper in this District.

2.      Pending the Final Approval Hearing, all proceedings in the Action, other than proceedings necessary to carry out or enforce the terms and conditions of the Settlement Agreement and this Order, are hereby stayed.

3.      The Court preliminarily approves the Settlement, as embodied in the Agreement, as being within the range of possible final approval, and as meriting submission to the Settlement Class for its consideration. The Agreement was reached as a result of arm's-length negotiations by the Parties and their counsel with the help of two experienced mediators, Robert Meyer and Craig Seebald.  Based on the record in the Action, the Court finds that Settlement Class Representatives and their counsel had sufficient information to evaluate the strengths and weaknesses of the case and to conduct informed settlement discussions.

4.      The Court hereby provisionally certifies, for purposes of the Settlement only, a Settlement Class consisting of:

> all persons or Entities who maintained a Capital One 360 Savings account at any time during the Class Period (i.e., from September 18, 2019, through and including the date this Order is entered), including joint and co-holders of 360 Savings accounts, as reflected in the Class List to be generated by Capital One.

5.      Excluded from the Settlement Class are (i) Capital One, any Entity in which Capital One has a controlling interest, and Capital One's officers, directors, legal representatives, Successors, Subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over the Action and the members of their immediate families and judicial staff; and (iii) any individual who timely and validly opts out of the Settlement Class.

6.      The Court preliminarily finds and concludes, for settlement purposes only, that the Settlement Class, as defined above, meets the requirements for class certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3).  Specifically, the Court finds that (1) the Settlement Class members are sufficiently numerous such that joinder is impracticable; (2) there are common questions of law and fact; (3) Plaintiffs' claims are typical of those of the Settlement Class Members; (4) Plaintiffs and Settlement Class Counsel have fairly and adequately represented, and will continue to fairly and adequately represent, the interests of the Settlement Class Members; and (5) for purposes of settlement, the Settlement Class meets the predominance and superiority requirements of Rule 23(b)(3).

7.    Certification of the Settlement Class shall be solely for settlement purposes and without prejudice to the Parties in the event the Settlement is not finally approved by this Court or otherwise does not take effect, and the Parties preserve all rights and defenses regarding class certification in the event the Settlement is not finally approved by this Court or otherwise does not take effect.

8.    The Court conditionally appoints Chet B. Waldman and his law firm Wolf Popper LLP as Class Counsel and The Kaplan Law Firm as Local Counsel, and designates Plaintiffs in the Action, *i.e.*, Dr. Scott C. Savett, Jay Sim, Amber Terrell, Angela Uherbelau, Gwendolyn Wright, Elizabeth Zawacki, Sheryl Barnes, Alessandra Bellantoni, Ayal Brenner, Anthony Guest, Samuel Hans, Ronald Hopkins, Michael Krause, Steve Lenhoff, Jerry Magaña, Seth Martindale, Jennie Meresak, Gregory Mishkin, Andrew Molloy, Jay Nagdimon, Neelima Panchang, Sailesh Panchang, Patrick Perger Jr., Shantell Pitts, Howard Port, and Jane Rossetti, as Settlement Class Representatives for purposes of this Settlement. The Court also designates, and approves, Epiq Class Action & Claims Solutions, Inc. to serve as Settlement Administrator.

9.    Since the Settlement, as reflected in the Agreement, is within the range of reasonableness and possible final approval, notice shall be provided to the Settlement Class pursuant to the Agreement as set forth in the Notice Plan, which was provided to the Court as Exhibit __ to the Waldman Declaration, submitted in support of the Preliminary Approval Motion. The Settlement Administrator shall provide notice in compliance with 28 U.S.C. § 1715 and as set forth in the Notice Plan.

10.    The Court approves, as to form and content, Notices that are substantially similar to the forms attached as Exhibits 3 to 5 to the Agreement. The Notices are written in plain English and are easy to comprehend. The Parties shall have discretion to jointly make non-material revisions to the Notices before publishing. Responsibility for settlement administration, including, but not limited to, notice and related procedures, shall be performed by the Settlement Administrator, subject to the oversight of the Parties and this Court as described in the Agreement.

11.     The Court finds that the Notice Plan is reasonably calculated to provide notice to the Settlement Class of the pendency of the Action, certification of the Settlement Class, the terms of the Agreement, Plaintiffs' Counsel's anticipated application for an award of attorneys' fees and reimbursement of expenses, and the Final Approval hearing, and complies fully with all applicable law.

12.     Any member of the Settlement Class who desires to be excluded from the Settlement Class, and therefore not be bound by the terms of the Agreement, must mail a request for exclusion to the Settlement Administrator, pursuant to the instructions set forth in the Long Form Notice.  The request must be postmarked no later than _____ __, _____. For purposes of requests for exclusion, all holders of a particular 360 Savings account shall be treated as one.  Any valid request for exclusion made by one holder of a particular 360 Savings account shall apply to all holders of that account.  The written request for exclusion must (i) identify the case name of the Action; (ii) identify the name, telephone number, address, and email address of the Settlement Class Member seeking exclusion; (iii) be personally signed by the Settlement Class Member seeking exclusion; (iv) include a statement clearly indicating the Settlement Class Member's intent to be excluded from the Settlement; and (v) request exclusion only for that one Settlement Class Member whose personal signature appears on the request.  Opt-out requests seeking exclusion on behalf of more than one Settlement Class Member shall be deemed invalid in their entirety by the Settlement Administrator unless the request only seeks the exclusion of the Settlement Class Member making the request and any of his, her, or its joint or co-holders of a particular 360 Savings account.  Any Settlement Class Member who does not submit a valid and timely request for exclusion in the manner described herein shall be deemed to be part of the Settlement Class upon expiration of the Opt-Out Deadline, and shall be bound by all subsequent proceedings, orders, and judgments applicable to the Settlement Class.

13.     Any Settlement Class Member who does not submit a valid and timely request for exclusion may file a written objection to the Settlement Agreement or any aspect thereof. The objection must satisfy the requirements described in the Long Form Notice.  The objection must

be filed with the Court on or before _____ __, _____.  The written objection must include (i) the case name and number of the Action; (ii) the name, address, telephone number, and email address of the objecting Settlement Class Member and, if represented by counsel, of his/her/its counsel; (iii) a statement of whether the objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class; (iv) a statement of the specific grounds for the objection; and (v) a statement of whether the objecting Settlement Class Member intends to appear at the Final Approval Hearing, and if so, whether personally or through counsel. In addition to the foregoing requirements, if an objecting Settlement Class Member is represented by counsel and such counsel intends to speak at the Final Approval Hearing, the written objection must include a detailed description of any evidence the objecting Settlement Class Member may offer at the Final Approval Hearing, as well as copies of any exhibits the objecting Settlement Class Member may introduce at the Final Approval Hearing.  Any Settlement Class Member who fails to object to the Settlement in the manner described herein shall be deemed to have waived any such objection, shall not be permitted to object to any terms or approval of the Settlement at the Final Approval Hearing, and shall be precluded from seeking any review of the Settlement or the terms of this Agreement by appeal or any other means.

14.     A Final Approval Hearing shall be held before this Court on November __, 2025, at [time] , at the United States District Court for the Eastern District of Virginia, Albert V. Bryan United States  Courthouse, 401 Courthouse Square, Alexandria, VA 22314, Courtroom 601, to address: (a) whether the Class should be certified for purposes of the Settlement; (b) whether the proposed Settlement should be finally approved as fair, reasonable, and adequate and whether the Final Approval Order should be entered; and (c) whether Class Counsel's applications for attorneys' fees, expenses, and payment of Service Awards to the Settlement Class Representatives should be approved.

15.     Any Settlement Class Member shall have the right to appear and be heard at the Final Approval hearing, either personally or through an attorney retained at the Settlement Class

Member's own expense, provided they file an objection pursuant to the requirements in the Settlement Agreement and this Order.

16.     Plaintiffs shall file their motions for Final Approval of the Settlement and for any award of attorneys' fees, costs, expenses, and Service Awards no later than twenty-one (21) days before the Objection deadline.  The Parties shall also file any responses to any Settlement Class Member objections and any replies in support of final settlement approval no later than _____.  These motions and all supporting documentation shall simultaneously be posted to the Settlement website.

17.     No later than _____, the Settlement Administrator shall provide a declaration to the Court regarding the status of compliance with the Notice Plan.

18.     In the event that final certification of the Settlement Class, Final Approval of the Settlement, or any other order necessary to effectuate the Agreement is denied, or the Agreement is not finally approved, or is terminated or cancelled or fails to become effective for any reason whatsoever, or if this Court or a reviewing court takes any action to impair or reduce the scope or effectiveness of the releases set forth in the Agreement or to impose greater financial or other burdens on Capital One than those contemplated in the Agreement, or if Final Approval is reversed on appeal, the Action shall revert to its status as it existed prior to the date of the Agreement, and the Settlement Administrator shall return to Capital One any amounts Capital One had already deposited in the Settlement Fund Account that are not required to pay for reasonable notice and administration costs already incurred.  In the event of such a reversion, no class shall be deemed to have been certified, and the proposed or actual certification of a Settlement Class shall not be urged or considered as a factor in any subsequent litigation over the certification of a litigation class or classes.  Additionally, in the event of such a reversion, the Agreement shall be void *ab initio*, shall have no force or effect, and shall impose no obligations on the Parties except as set forth in the Agreement.  Alternatively, in the event that certification of the Settlement Class, Preliminary Approval or Final Approval of the Settlement, or any other order necessary to effectuate the Agreement is denied, or the Agreement is not finally approved, or is terminated or

cancelled or fails to become effective for any reason whatsoever, or if this Court or a reviewing court takes any action to impair or reduce the scope or effectiveness of the Release set forth in the Agreement or to impose greater financial or other burdens on Capital One than those contemplated in the Agreement, or if Final Approval is reversed on appeal, the Parties may, but are not required to, modify the Agreement.  Such a modification shall be binding only if it is in writing and executed by Class Counsel and Capital One.

19.     Pending final determination of whether the Agreement should be finally approved, Plaintiffs and all Settlement Class Members (and any persons purporting to act on their behalf) are barred and enjoined from filing, commencing, prosecuting, maintaining, or enforcing any action against the Released Parties insofar as such action asserts Released Claims, directly or indirectly, in any judicial, administrative, arbitral, or other forum.  This bar and injunction is necessary to protect and effectuate the Agreement and this Preliminary Approval order, and this Court's authority to effectuate the Agreement, and is ordered in aid of this Court's jurisdiction.

20.     This Preliminary Approval order, the Agreement, and all negotiations, statements, agreements, and proceedings relating to the Settlement, and any matters arising in connection with settlement negotiations, proceedings, or agreements, shall not constitute or be described as, construed as, offered, or received against Capital One or the other Released Parties as evidence or an admission of (i) the truth of any allegations made by the Plaintiffs, (ii) liability or fault of any kind, or (iii) that this Action or any other action may be properly certified as a class action for litigation, non-settlement purposes.  This Preliminary Approval order, the Agreement, and all negotiations, statements, agreements, and proceedings relating to the Settlement, and any matters arising in connection with settlement negotiations, proceedings, or agreements, also shall not constitute or be described as, construed as, offered, or received against Plaintiffs as evidence or an admission of any weakness or infirmity of any claim or allegation made by Plaintiffs in this Action.

21.     The Court may, for good cause, extend any of the deadlines set forth in this Order without further notice to the Settlement Class Members.  The Final Approval hearing may, from

time to time and without further notice to the Settlement Class Members, be continued by order of the Court. However, any continuance by the Court will be noted on the Settlement website.

22. The Parties shall have the right, by agreement and subject to the Court's approval, to grant any reasonable extension of time that might be needed to carry out any of the provisions of the Agreement.

It is so **ORDERED**.

Dated: _____

_____
Hon. David J. Novak
United States District Judge