## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA

PEOPLE OF THE STATE OF NEW YORK,
by LETITIA JAMES, Attorney General of the
State of New York,

                    Plaintiff,

    - against -

CAPITAL ONE, N.A. and CAPITAL ONE
FINANCIAL CORPORATION,

                  Defendants.

Civil Action No. 1:25-cv-01403-DJN-WBP

---

IN RE: CAPITAL ONE 360 SAVINGS
ACCOUNT INTEREST RATE LITIGATION

Civil Action No. 1:24-md-03111-DJN-WBP

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

LETITIA JAMES
Attorney General of the
State of New York

Adam J. Riff (*pro hac vice*)
Assistant Attorney General
Bureau of Consumer Frauds & Protection
28 Liberty Street, 20th Floor
New York, New York 10005
(212) 416-6250

*Counsel for Plaintiff People of the State
of New York, by Letitia James, Attorney
General of the State of New York*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ....................................................................................................................2

STATUTORY FRAMEWORK..................................................................................................7

    I.     NEW YORK EXECUTIVE LAW AND GENERAL BUSINESS LAW........................7

    II.    THE CFPA, TISA, AND REGULATION DD ...............................................8

ARGUMENT .........................................................................................................................9

    I.     THE NYAG'S COMPLAINT ALLEGES ACTIONABLE STATE AND FEDERAL CLAIMS ...................................................................................................9

        A.   Counts I-VI Allege Actionable State and Federal Claims of Fraud, Deception, and False Advertising .....................................................9

        B.   Count VII Alleges An Actionable Claim of Abusive Acts or Practices Under the CFPA.......................................................................... 16

        C.   The Request for Injunctive Relief Should Not Be Dismissed ........................... 17

    II.    NO CLAIMS SHOULD BE DISMISSED OR STAYED BASED ON PRECLUSION ...........................................................................................................18

        A.   Counts IV-VII Are Not Barred by the CFPB's Decision to Abandon Its Lawsuit Against Capital One ........................................................... 18

            1.    *Res Judicata Does Not Apply to Successive Suits by State and Federal Governments to Enforce the CFPA*.........................................19

            2.    *The CFPB Was Not In Privity with the NYAG When It Dropped Its Lawsuit Against Capital One* ....................................................21

        B.   The Proposed Settlement in the Private Action Does Not Warrant Any Stay... 24

    III.   THE STATE-LAW CLAIMS ARE NOT PREEMPTED...............................................27

CONCLUSION.....................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Baldanzi v. WFC Holdings Corp.*,
No. 07 CIV 9551. LTS GWG, 2008 WL 4924987 (S.D.N.Y. Nov. 14, 2008) .......................28

*Barnes v. Fleet Nat'l Bank*,
370 F.3d 164 (1st Cir. 2004).............................................................................................10, 12

*Cantero v. Bank of Am., N.A.*,
602 U.S. 205 (2024)...............................................................................................................28

*Cablevision Sys. Corp. v. Verizon N.Y. Inc.*,
119 F. Supp. 3d 39 (E.D.N.Y. 2015) ......................................................................................13

*Carovillano v. Sirius XM Radio Inc.*,
715 F. Supp. 3d 562 (S.D.N.Y. 2024).....................................................................................15

*CFPB v. ITT Educ. Servs., Inc.*,
219 F. Supp. 3d 878 (S.D. Ind. 2015) ....................................................................................16

*CFPB v. Nexus Servs., Inc.*,
No. 5:21-cv-00016, 2024 WL 1461382 (W.D. Va. Apr. 2, 2024).............................................8

*City of New York v. Beretta U.S.A. Corp.*,
315 F. Supp. 2d 256 (E.D.N.Y. 2004) ....................................................................................20

*Dionne v. Mayor & City Council of Baltimore*,
40 F.3d 677 (4th Cir. 1994) ......................................................................................... 18, 22-23

*E. Associated Coal Co. v. Dir., Off. of Workers' Comp. Programs*,
578 F. App'x 165 (4th Cir. 2014) ......................................................................................... 23-24

*Ellinghaus v. Educ. Testing Serv.*,
No. 15CV3442SJFAKT, 2016 WL 8711439 (E.D.N.Y. Sept. 30, 2016)................................12

*Farasat v. Wells Fargo Bank, N.A.*,
913 F. Supp. 2d 197 (D. Md. 2012) .......................................................................................28

*FTC v. DirecTV, Inc.*,
No. 15-CV-01129-HSG, 2015 WL 9268119 (N.D. Cal. Dec. 21, 2015) ................................19

*FTC v. Roomster Corp.*,
654 F. Supp. 3d 244 (S.D.N.Y. 2023)................................................................................18, 26

*Gaidon v. Guardian Life Ins. Co. of Am.*,
    94 N.Y.2d 330 (1999) ................................................................................7

*Goshen v. Mut. Life Ins. Co.*,
    98 N.Y.2d 314 (2002) .........................................................................7, 15

*Guggenheimer v. Ginzburg*,
    43 N.Y.2d 268 (1977) .........................................................................8, 14

*Gutierrez v. Wells Fargo Bank, N.A.*,
    704 F.3d 712 (9th Cir. 2012) ................................................................29

*Harbourt v. PPE Casino Resorts Md., LLC*,
    820 F.3d 655 (4th Cir. 2016) ..................................................................9

*Harris Cnty. v. CarMax Auto Superstores Inc.*,
    177 F.3d 306 (5th Cir. 1999) ................................................................19

*Harrison v. Edison Bros. Apparel Stores*,
    924 F.2d 530 (4th Cir. 1991) ................................................................24

*Hickey v. Baxter*,
    833 F.2d 1005 (4th Cir. 1987) ..............................................................25

*Ill. Bankers Ass'n v. Raoul*,
    760 F. Supp. 3d 636 (N.D. Ill. 2024) ....................................................30

*In re Baldwin-United Corp.*,
    770 F.2d 328 (2d Cir. 1985) .............................................................26, 27

*In re Cap. One 360 Sav. Acct. Int. Rate Litig.*,
    779 F. Supp. 3d 666 (E.D. Va. 2024) ............................................. *passim*

*In re Massey Energy Co. Sec. Litig.*,
    883 F. Supp. 2d 597 (S.D. W. Va. 2012) ..............................................13

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
    859 F.3d 178 (2d Cir. 2017) .................................................................22

*Koch v. Acker, Merrall & Condit Co.*,
    18 N.Y.3d 940 (2012) .........................................................................8, 15

*Kyszenia v. Ricoh USA, Inc.*,
    583 F. Supp. 3d 350 (E.D.N.Y. 2022) ..................................................16

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ..............................................................................23

*Nat'l Treas. Emps. Union v. Vought*,
   No. 25-5091, 2025 WL 2371608 (D.C. Cir. Aug. 15, 2025)..................................................21

*Nat'l Treas. Emps. Union v. Vought*,
   No. CV 25-0381 (ABJ), 2025 WL 942772 (D.D.C. Mar. 28, 2025) ............................. 20-21

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*,
   571 F.3d 299 (3d Cir. 2009).............................................................................................23

*Navajo Nation v. Wells Fargo & Co.*,
   344 F. Supp. 3d 1292 (D.N.M. 2018) ...............................................................................22

*Orlander v. Staples, Inc.*,
   802 F.3d 289 (2d Cir. 2015).............................................................................................11

*Patriot Expl., LLC v. SandRidge Energy, Inc.*,
   951 F. Supp. 2d 331 (D. Conn. 2013) ...............................................................................13

*Pennsylvania v. Mariner Fin., LLC*,
   711 F. Supp. 3d 463 (E.D. Pa. 2024) .................................................................................8

*Pennsylvania v. Navient Corp.*,
   967 F.3d 273 (3d Cir. 2020)........................................................................................ 20-21

*People v. Charter Commc'ns, Inc.*,
   No. 450318/2017, 2018 WL 919991 (N.Y. Sup. Ct. Feb. 16, 2018).......................................13

*People v. Gen. Elec. Co.*,
   302 A.D.2d 314 (N.Y. App. Div. 2003) ................................................................. 7-8, 14, 18

*People v. Orbital Publ'g Grp., Inc.*,
   169 A.D.3d 564 (N.Y. App. Div. 2019) ............................................................... 7, 14-16, 18

*People v. Scot.-Am. Ass'n, Inc.*,
   52 A.D.2d 528 (N.Y. App. Div. 1976) .................................................................................7

*People v. Trump*,
   217 A.D.3d 609 (N.Y. App. Div. 2023) ..............................................................................19

*People v. Trump Entrepreneur Initiative LLC*,
   137 A.D.3d 409 (N.Y. App. Div. 2016) ...............................................................................8

*Redding v. Mayorkas*,
   No. 1:23CV1325(DJN), 2024 WL 663038 (E.D. Va. Feb. 5, 2024) .......................................25

*Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*,
   386 F.3d 419 (2d Cir. 2004).............................................................................................27

*Roley v. Google LLC*,
No. 18-CV-07537-BLF, 2021 WL 1091917 (N.D. Cal. Mar. 22, 2021) ..................................15

*Schuman v. Visa U.S.A., Inc.*,
No. 1:24-CV-666-GHW, 2025 WL 1731795 (S.D.N.Y. June 23, 2025) ................................12

*Stevens v. Walgreen Co.*,
623 F. Supp. 3d 298 (S.D.N.Y. 2022).........................................................................................10

*Taylor v. Sturgell*,
553 U.S. 880 (2008)..............................................................................................................21, 23

*Texas v. Colony Ridge, Inc.*,
No. CV H-24-0941, 2024 WL 4553111 (S.D. Tex. Oct. 11, 2024)...........................................20

*United States v. ITT Rayonier, Inc.*,
627 F.2d 996 (9th Cir. 1980) ....................................................................................................23

*Walker v. People's United Bank*,
305 F. Supp. 3d 365 (D. Conn. 2018)........................................................................................28

*Watters v. Wachovia Bank, N.A.*,
550 U.S. 1 (2007)..................................................................................................................27, 29

*Wiseberg v. Toyota Motor Corp.*,
No. CIV.A. 11-3776 JLL, 2012 WL 1108542 (D.N.J. Mar. 30, 2012) ....................................12

*Yuille v. Uphold HQ Inc.*,
686 F. Supp. 3d 323 (S.D.N.Y. 2023).......................................................................................12

**Federal Statutes & Rules**

12 U.S.C.
§ 25b(b)(2) .....................................................................................................................................30
§ 25b(e) .........................................................................................................................................30
§ 25b(h)(2) .....................................................................................................................................30
§ 4302.............................................................................................................................................6
§ 4302(e) .........................................................................................................................................9
§ 5481............................................................................................................................................20
§ 5531(d)(2)(A)......................................................................................................................8, 9, 16
§ 5536........................................................................................................................................6, 20
§ 5536(a)(1)(A) ...............................................................................................................................8
§ 5536(a)(1)(B) ...............................................................................................................................8
§ 5552(a)(1) ...................................................................................................................................20
§ 5552(a)(2)(B) ..............................................................................................................................20

Fed. R. Civ. P.
    12(b)(6) ...................................................................................................24
    41(a)(1)(A)(i) ..........................................................................................23

**Federal Regulations & Guidance**

12 C.F.R.
    § 1030.8...................................................................................................6
    § 1030.8(a)(1) ..........................................................................................9

Withdrawal of Bureau Guidance, 90 Fed. Reg. 20084 (May 12, 2025) ........................................20

**State Statutes**

New York Executive Law
    § 63(12).............................................................................................. *passim*

New York General Business Law
    § 349.................................................................................................. *passim*
    § 350.................................................................................................. *passim*

**Secondary Source**

18A *Wright & Miller's Federal Practice & Procedure* § 4458 (3d ed. 1998)..............................19

## PRELIMINARY STATEMENT

Defendants Capital One, N.A. ("CONA") and Capital One Financial Corporation ("COFC," and together, "Capital One"), promoted their 360 Savings account as their "high interest" savings account, where consumers could deposit their money and then "put everything on autopilot" to enjoy "one of the nation's top savings rates." ¶¶ 1, 29, 33.[1] But starting in September 2019, Capital One secretly relegated its 360 Savings account to lower-interest status when it created a new type of savings account that was identical to the old one in all other relevant respects, eventually locking the interest rates on the old accounts at a rate 14 times lower than the new ones, and well below the national average. ¶¶ 3-4. Capital One deliberately concealed the new accounts from its existing 360 Savings accountholders and ensured that they would not discover the change even if they looked for it, by, among other things, removing all references to 360 Savings from the Capital One website, and giving the new accounts a nearly identical name: 360 Performance Savings. ¶¶ 45-52. Here, the New York Attorney General ("NYAG") seeks to recover millions of dollars in interest lost by New York consumers who put their money in Capital One's "high interest" 360 Savings account, in addition to injunctive and other relief. ¶¶ 28, 81.

The Court is already familiar with these allegations, as evidenced by its detailed opinion denying Capital One's motion to dismiss the private class actions (the "Private Actions") consolidated before the Court in the multidistrict litigation. *See In re Cap. One 360 Sav. Acct. Int. Rate Litig.*, 779 F. Supp. 3d 666 (E.D. Va. 2024). Many of the arguments advanced by Capital One in its motion to dismiss the NYAG's action were already rejected by the Court in the

---

[1] Unless otherwise stated, paragraph cites are to the NYAG's complaint in this action. Case No. 1:25-cv-1403 (ECF No. 1) (the "Complaint").

Private Actions, including that the Complaint fails to state a claim of deception, and that the state-law claims are preempted by the National Bank Act. *See id.* at 699, 721.  Capital One presents nothing to warrant a different result here.

Capital One's new arguments are equally meritless.  Capital One contends that the NYAG is barred by *res judicata* from asserting its claims predicated on federal law because of the Consumer Financial Protection Bureau's ("CFPB") separate decision to withdraw its own complaint just six weeks after it was filed, without the NYAG's input, and without affording any relief whatsoever to New York consumers, while it was in the process of an illegal shutdown that the NYAG has opposed in litigation.  The CFPB's decision cannot bind the NYAG because the agency was neither acting as the NYAG's representative nor in the interests of New York consumers when it abandoned its lawsuit.  Moreover, under our system of state-federal dual sovereignty, litigation by one sovereign does not bind the other—particularly where Congress has expressly granted concurrent enforcement authority to state enforcement officers, as it has in the Consumer Financial Protection Act ("CFPA").

Capital One's additional argument that this case should be stayed based on the settlement in the Private Actions (the "Proposed Settlement") is doubly premature, as the settlement has not yet been approved, and the requested stay is based on a single *remedy* sought by the NYAG.  For the reasons that the Court already considered in denying the motion to dismiss the Private Actions, and for the additional reasons that follow, the Court should deny Capital One's motion to dismiss the NYAG's complaint in full.

## **BACKGROUND**

The Complaint alleges that from February 2013 to September 2019, Capital One offered an online savings account it promoted as "high-interest," called 360 Savings.  In its marketing

2

materials throughout this period, including on its website, Capital One promoted the competitive

interest rates offered on the 360 Savings accounts.  For example:

- An April 2013 webpage described the account as "***high interest***," and featured a
  chart depicting the interest rate as substantially higher than the national average
  rates for savings and money market accounts.  ¶ 28 (emphasis added).

- A May 2013 webpage promised that "***Your money will earn much more*** than
  what it would in an average savings . . . account . . . . *What's the catch? There is
  none.*"  ¶ 34 (emphasis added).

- A March 2016 webpage described the account as "***high interest***" and promised a
  "great everyday interest rate" and featured a similar chart.  ¶ 28 (emphasis added).

- Email advertisements sent between May 2015 and April 2018 promised a
  "[b]etter everyday interest rate," "*one of the nation's highest savings rates*,"
  "one of the nation's best savings rates," and "one of the nation's top savings
  rates."  ¶ 30 (emphasis added).

- A September 2019 webpage promised a "***great rate***."  ¶ 47 (emphasis added).

Capital One also presented 360 Savings to consumers as a passive savings vehicle, where

consumers could park their money and benefit from interest rates that would remain high even as

market conditions changed.  ¶ 31.  For example, a March 2017 webpage described 360 Savings

as featuring "a competitive rate" that was not time-limited by any "promo periods, just savings

that add up every day"—and encouraged customers to "put everything on autopilot."  ¶ 33; *see

also* ¶ 32.  And indeed, when the Federal Reserve raised the federal funds rate causing market

conditions to change, Capital One likewise raised its rates for all 360 Savings accountholders,

consistent with its marketing.  ¶ 39.  "There's nothing for you to do," Capital One assured them

by email, encouraging them to continue to "[j]ust sit back and enjoy the extra interest, courtesy

of your friends at Capital One."  ¶ 39.

That changed in September 2019, when Capital One created a second type of online

savings account and gave it a remarkably similar name, 360 Performance Savings.  ¶ 41.  In

addition to the misleadingly similar names, the two types of accounts were functionally

3

identical—except for the critical fact that the new accounts paid significantly higher interest. ¶¶ 42-43. Where 360 Savings had recently been touted as "high interest," and carrying one of the "highest savings rates" in the country, it was no longer even the top savings rate at Capital One. ¶¶ 28, 30, 43.

Capital One did not inform 360 Savings accountholders about the new account type or its higher interest rate. To the contrary, Capital One took several measures to actively conceal from them the fact that (1) Capital One had created a new type of savings account, and (2) the new accounts paid a significantly higher interest rate than the supposedly "high interest" 360 Savings accounts. ¶¶ 55-58. For example, Capital One excluded 360 Savings accountholders from its marketing about 360 Performance Savings, ¶ 56, and instructed its employees not to tell 360 Savings accountholders about the new product unless a customer asked about it explicitly, ¶ 58. Capital One did not give its 360 Savings customers the benefit of the higher interest rate, as it had in the past. ¶¶ 39, 68. Customers who had deposited their money in Capital One's "high interest" savings account and then "put everything on autopilot" continued to earn a lower interest rate. ¶¶ 28, 33, 68. Despite Capital One previously assuring 360 Savings customers that "[t]here's nothing for you to do" when Capital One raised its rates, ¶ 39, those same customers, if they wanted a better rate, now had to opt-in to an account that had been concealed from them.

What is worse, Capital One ensured that even diligent 360 Savings accountholders would not discover the change if they looked for it. Most glaring was the name that Capital One gave the new accounts, which was nearly identical to the old accounts, and therefore susceptible to confusion about the distinctions between the account types, or whether they were even different at all. This potential for confusion was magnified by concurrent changes that Capital One made to its website. At the same time that Capital One started offering the new accounts in September

4

2019, it quietly scrubbed all references to the 360 Savings accounts (which it stopped offering, except to legacy accountholders), and replaced them with information about 360 Performance Savings, which was the only savings account marketed on Capital One's website, and was described as a "high-yield savings account."  ¶¶ 45-52, 71.  Capital One even deleted 360 Savings from its list of "all" account products and eliminated the ability to compare 360 Savings to other types of Capital One accounts, including 360 Performance Savings.  ¶¶ 50-52.

As a result, 360 Savings customers searching the Capital One website for information about their account, including their interest rate, would find only information about the similarly-named 360 Performance Savings and *its* much-higher rate.  *Id.*  To actually identify their interest rate on the Capital One website or app, the customer would have to log into their online account and then know to click a nondescript link that said nothing about interest rates—either a tiny ⓘ icon or the words "view details" in small type.  ¶ 70.  Because consumers had no reason to notice and understand that "360 Performance Savings" referred to a type of account that was different from their own and carried a different rate, they would also have no reason to investigate further at all—they would simply be misled into thinking that the interest rate stated on the 360 Performance Savings webpage described their own.  As a result, many New York consumers who thought they were enrolled in a "high interest" or "high-yield" savings account with "one of the nation's top savings rates" remained in accounts with a far lower interest rate.  *See, e.g.*, ¶¶ 74-77.

Since inception in September 2019, Capital One has invariably set the interest rate on the 360 Performance Savings accounts substantially higher than the legacy 360 Savings accounts. ¶ 61.  At inception, Capital One set the rates at 1.90% and 1.0%, respectively.  *Id.*  During the COVID pandemic the next year, the rates dropped, reaching a low of 0.40% and 0.30%,

respectively.  ¶ 64.  After that, Capital One left the rate on its "high interest" 360 Savings accounts at 0.30%—and never changed it again.  ¶ 67.  By contrast, as the federal funds rate bounced back starting in early 2022, Capital One raised the rates for all 360 Performance Savings accountholders repeatedly, eventually reaching a high of 4.35% in January 2024—more than 14 times higher than the 360 Savings rate, which remained stuck at 0.30%.  ¶¶ 65-68.  For more than a year, the 360 Savings rate was even lower than the national average savings rate. ¶ 69.  As a result, New York consumers with deposits in legacy 360 Savings accounts lost out on millions of dollars in interest.  ¶ 80.

Discharging its statutory duty to protect New Yorkers from deceptive and unlawful business practices, the NYAG sued Capital One on May 14, 2025, seeking relief for Capital One's violations of New York Executive Law § 63(12), New York General Business Law (GBL) §§ 349 and 350, and the federal Consumer Financial Protection Act (CFPA), 12 U.S.C. § 5536, Truth in Savings Act (TISA), 12 U.S.C. § 4302, and Regulation DD, 12 C.F.R. § 1030.8.  The Complaint was filed in the District Court for the Southern District of New York (ECF No. 1[2]), and on August 14, 2025, the action was transferred to this Court pursuant to an order of the U.S. Judicial Panel on Multidistrict Litigation (ECF Nos. 12-13).  On August 18, 2025, this Court directed Capital One "to file a responsive pleading."[3]  (ECF No. 14.)  On August 29, 2025, Capital One moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 17.)

---

[2] ECF citations are to Civil Action No. 1:25-cv-01403-DJN-WBP unless specified otherwise.

[3] Capital One has not filed a responsive pleading.

## STATUTORY FRAMEWORK

### I.    NEW YORK EXECUTIVE LAW AND GENERAL BUSINESS LAW

New York has a public policy of protecting its residents from business practices that are fraudulent, illegal, deceptive, or misleading, and of restraining such business practices from occurring in New York.  The Attorney General is charged with enforcing that policy, which is codified in statutes including Executive Law § 63(12) and GBL §§ 349 and 350.

Executive Law § 63(12) authorizes the NYAG to bring an action for injunctive and monetary relief when a business engages in "repeated [or] . . . persistent fraud or illegality." Exec. L. § 63(12).  Fraud is broadly interpreted to include any act that "has the capacity or tendency to deceive, or creates an atmosphere conducive to fraud." *People v. Gen. Elec. Co.*, 302 A.D.2d 314, 314 (N.Y. App. Div. 2003).  Illegal conduct that is actionable under Executive Law § 63(12) includes violations of GBL §§ 349 and 350, *see People v. Orbital Publ'g Grp., Inc.*, 169 A.D.3d 564, 565 (N.Y. App. Div. 2019), and of federal statutes and regulations, *see, e.g., People v. Scot.-Am. Ass'n, Inc.*, 52 A.D.2d 528, 528 (N.Y. App. Div. 1976).  Section 63(12) "was meant to protect not only the average consumer, but also the ignorant, the unthinking and the credulous." *Gen. Elec.*, 302 A.D.2d at 314 (quotation marks omitted).

Sections 349 and 350 of the GBL prohibit "[d]eceptive acts or practices" and "[f]alse advertising in the conduct of any business, trade or commerce." Gen. Bus. L. §§ 349(a), 350. Acts or practices are deceptive under § 349 if they are likely to mislead a reasonable person "acting reasonably under the circumstances." *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344 (1999).[4]

---

[4] Although not at issue in Capital One's motion, injury is not an element of a GBL 349 or 350 claim by the NYAG, unlike a claim by a private party. *See Goshen v. Mut. Life Ins. Co.*, 98

It is not necessary to establish the traditional elements of common law fraud, such as intent to deceive and reliance, to establish liability under sections 63(12) or 349 and 350. *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012); *People v. Trump Entrepreneur Initiative LLC*, 137 A.D.3d 409, 417 (N.Y. App. Div. 2016); *Gen. Elec. Co.*, 302 A.D.2d at 315.

## II.     THE CFPA, TISA, AND REGULATION DD

The federal CFPA prohibits any "deceptive[] or abusive act or practice." 12 U.S.C. § 5536(a)(1)(B). An act or practice is deceptive under the CFPA if "(1) there is a representation, omission, or practice that, (2) is likely to mislead consumers acting reasonably under the circumstances, and (3) the representation, omission, or practice is material." *CFPB v. Nexus Servs., Inc.*, No. 5:21-cv-00016, 2024 WL 1461382, at *5 (W.D. Va. Apr. 2, 2024) (quotation marks omitted). An act or practice is abusive if it "takes unreasonable advantage of" "a lack of understanding on the part of the consumer of the material risks, costs, or conditions of the product or service." 12 U.S.C. § 5531(d)(2)(A).

In addition, the CFPA makes it unlawful "to offer or provide to a consumer any financial product or service not in conformity with Federal consumer financial law, or otherwise commit any act or omission in violation of a Federal consumer financial law." 12 U.S.C. § 5536(a)(1)(A). Under this provision of the CFPA, the NYAG has authority to enforce laws such as TISA and Regulation DD. *See Pennsylvania v. Mariner Fin., LLC*, 711 F. Supp. 3d 463, 482-84 (E.D. Pa. 2024) (concerning the Truth in Lending Act).

The federal TISA prohibits any "depository institution" from making "any advertisement, announcement, or solicitation relating to a deposit account that is inaccurate or misleading or that

---

N.Y.2d 314, 324 (2002); *see also Guggenheimer v. Ginzburg*, 43 N.Y.2d 268, 273 (1977). *Cf. Cap. One 360 Sav. Acct.*, 779 F. Supp. 3d at 729-30 (stating elements of private action).

misrepresents its deposit contracts." 12 U.S.C. § 4302(e). Regulation DD likewise prohibits any advertisement that is "misleading or inaccurate or misrepresent[s] a depository institution's deposit contract." 12 C.F.R. § 1030.8(a)(1).

## ARGUMENT

In evaluating Capital One's motion to dismiss for failure to state a claim, the Court must consider whether the facts alleged in the Complaint render the NYAG's right to relief "plausible," accepting the well-pled allegations "as true," and "constru[ing] the facts and reasonable inferences derived therefrom in the light most favorable" to the NYAG. *Harbourt v. PPE Casino Resorts Md., LLC*, 820 F.3d 655, 658 (4th Cir. 2016). Applying that standard, the Court should deny Capital One's motion to dismiss in full.

## I.    THE NYAG'S COMPLAINT ALLEGES ACTIONABLE STATE AND FEDERAL CLAIMS

Capital One's argument that the NYAG's complaint fails to state any claim of fraud or deception rehashes arguments this Court rejected in the Private Action. *See Cap. One 360 Sav. Acct.*, 779 F. Supp. 3d at 713-25, 729-30. Deciding whether the class action complaint stated claims for consumer fraud and deception under various states' laws—including New York GBL §§ 349 and 350—the Court found that it did, and denied Capital One's motion to dismiss. Because the relevant findings in the Court's prior decision are applicable here, and because the NYAG's complaint also states a claim for abusiveness under the CFPA and properly seeks injunctive relief, the Court should deny Capital One's motion to dismiss here as it did in the Private Action.

### A.    Counts I-VI Allege Actionable State and Federal Claims of Fraud, Deception, and False Advertising

Under the applicable standards set out above, the Complaint sufficiently alleges that Capital One engaged in repeated and persistent deceptive acts and practices and false advertising

9

in violation of Executive Law § 63(12), GBL §§ 349 and 350, the CFPA, TISA, and Regulation DD.

For example, Capital One's repeated description of its 360 Savings account as "high interest," a "great rate," "one of the nation's top savings rates," etc.—up until the day before 360 Performance Savings was launched, ¶¶ 28-29, 39-40—was deceptive in light of the fact that the account was not even the top savings rate at Capital One after September 2019, ¶¶ 61-68.  *See Stevens v. Walgreen Co.*, 623 F. Supp. 3d 298, 305-06 (S.D.N.Y. 2022) (upholding GBL §§ 349 and 350 claims where plaintiff alleged that defendant's description of its lidocaine patches as "maximum strength" was deceptive by comparison to defendant's "regular strength" patches, which actually had the same amount of lidocaine).  Likewise, after assuring its 360 Savings customers for years that their account was "high interest"—"one of the nation's highest"—and that "[t]here's nothing for [them] to do" to continue to benefit from the high rate, ¶¶ 28-29, 39, Capital One deceived customers by requiring them to opt-in to an account they did not know about and that Capital One had concealed from them. *See Barnes v. Fleet Nat'l Bank*, 370 F.3d 164, 175 (1st Cir. 2004) (granting judgment on TISA and Regulation DD claims where bank told customers, following a merger, that "[t]here is nothing you need to do" and "[y]our accounts will transfer to the Fleet accounts that are most similar to your existing BankBoston accounts," which was technically accurate but would have left customers with less favorable account terms).

And as this Court previously found in scrutinizing the complaint in the Private Action, Capital One's alleged conduct—"removing all references to 360 Savings and furtively replacing those references with the nearly identically named 360 Performance Savings"—was deceptive because it "conceal[ed] the nature of [consumers'] savings account[s]," and "left [them] unable to identify that the advertised 'high yield' product and corresponding interest rate applied to an

10

entirely new Capital One savings account, rather than their existing accounts." *Cap. One 360 Sav. Acct.*, 779 F. Supp. 3d at 715; *see* ¶¶ 45-58, 71.  "[R]easonable 360 Savings accountholders would . . . need to go to the Capital One website, open the specific webpage promoting Capital One's savings products and identify that the 360 Performance Savings account was a distinct product with a different interest rate, and not merely their same product with a new name, despite the fact that the two accounts bear nearly identical names and were never listed side-by-side anywhere on Capital One's website." *Cap. One 360 Sav. Acct.*, 779 F. Supp. 3d at 719; *see* ¶¶ 45-56, 71.  Capital One's misrepresentations were material, because they "encourage[ed] [consumers] to maintain their 360 Savings accounts on the reasonable expectation that they remained a 'high interest' Capital One savings offering." *Cap. One 360 Sav. Acct.*, 779 F. Supp. 3d at 730; *see* ¶¶ 53, 80.

Notwithstanding this Court's detailed earlier opinion, Capital One advances four futile arguments for why Counts I-VI of the NYAG's Complaint fail to state a claim.  *See* Defs.' Mem. of Law ("Mem.") at 16-23 (ECF No. 18).  *First*, Capital One argues that its representations about the 360 Savings account prior to September 2019 were true when they were made, and that by the time they allegedly became false, too much time had passed for them to be considered misleading to a reasonable person.  Mem. at 17-18.  But the Court rejected exactly this argument the last time Capital One made it.  Relying in part on *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015), the Court explained that GBL §§ 349 and 350 (among other statutes) "prohibit a wide variety of fraudulent, deceptive or unfair practices and do not necessarily require, as an element of a claim, that Plaintiffs prove that a representation was false when made." *See Cap. One 360 Sav. Acct.*, 779 F. Supp. 3d at 714 (citing GBL §§ 349, 350).  Capital One attempts to distinguish the NYAG's Complaint by framing it as one that is not based on

11

"concealment," Mem. at 17 n.9, but the Complaint does allege deception through deliberate concealment, as noted above, *see* ¶¶ 45-58, 71. Capital One also cites two cases purportedly in support of its position that a statement is not deceptive under the GBL if its falsity is revealed only by subsequent events. Mem. at 17-18. But neither of the cases bear any resemblance to the allegations in the Complaint, as neither concerns statements that were made false as a result of the defendant's *own deliberate conduct. See Wiseberg v. Toyota Motor Corp.*, No. CIV.A. 11-3776 JLL, 2012 WL 1108542, at *6 (D.N.J. Mar. 30, 2012) (car dealership's representation that vehicle was "in good condition" upon purchase was not made false by the emergence of problems with the sliding door five years later); *Ellinghaus v. Educ. Testing Serv.*, No. 15CV3442SJFAKT, 2016 WL 8711439, at *8 (E.D.N.Y. Sept. 30, 2016) (testing company's representation about "reliable scores" was not made false by a subsequent printing error that gave some students an extra 5 minutes on the test).[5]

*Second*, Capital One argues that its statements about the 360 Savings accounts were not deceptive because they were consistent with the definition of a "high interest" savings account on Capital One's website—that is, one that "often has a higher interest rate . . . than a traditional savings account." Mem. at 19 (quoting ¶ 21). But consumers "reasonabl[y] expect[ed] that the 'high interest' 360 Savings account would not, unbeknownst to them, be relegated to a 'much less than high interest' status in comparison to a separate, similarly named replacement account,"

---

[5] The other two cases cited by Capital One are even less relevant, as they do not concern allegedly accurate statements that were later proven false, but rather statements that were not false at all. *See Schuman v. Visa U.S.A., Inc.*, No. 1:24-CV-666-GHW, 2025 WL 1731795, at *8 n.8 (S.D.N.Y. June 23, 2025); *Yuille v. Uphold HQ Inc.*, 686 F. Supp. 3d 323, 345 (S.D.N.Y. 2023). Further, Capital One's argument that Counts IV and V (predicated on TISA and Regulation DD) "especially" require a statement that was inaccurate when made, Mem. at 17 n.9, is also incorrect. *See Barnes*, 370 F.3d at 175 (granting judgment on TISA and Regulation DD claims based on statements that were not "inaccurate in themselves").

12

as this Court has already recognized. *Cap. One 360 Sav. Acct.*, 779 F. Supp. 3d at 724.

    *Third*, Capital One argues that several of the allegedly deceptive statements are inactionable puffery. Capital One acknowledges that the Court previously found that its "high interest" representations were not puffery. Mem. at 19-20; *see Cap. One 360 Sav. Acct.*, 779 F. Supp. 3d at 716-17. Nor do other significant representations made by Capital One constitute puffery. In particular, the statements that 360 Savings offered "one of the nation's highest savings rates," "one of the nation's best savings rates," and "one of the nation's top savings rates," ¶¶ 29-30, are "subject to objective verification[,] [g]iven the appropriate data, all of which was available to the defendants." *Patriot Expl., LLC v. SandRidge Energy, Inc.*, 951 F. Supp. 2d 331, 359 (D. Conn. 2013) (representation that asset had "one of the best [rates of return] in America" was "not inactionable puffery"); *accord In re Massey Energy Co. Sec. Litig.*, 883 F. Supp. 2d 597, 617-18 (S.D. W. Va. 2012) (holding that defendants' statements that it was "an industry leader in safety" was not puffery because its "truth or falsity . . . can be determined"); *People v. Charter Commc'ns, Inc.*, No. 450318/2017, 2018 WL 919991, at *12 (N.Y. Sup. Ct. Feb. 16, 2018) ("[T]he advertisements regarding Internet speeds contain concrete statements of fact that are legally sufficient to withstand this motion to dismiss."), *aff'd*, 162 A.D.3d 553, 554 (N.Y. App. Div. 2018). The cases cited by Capital One are not to the contrary. For example, in *Cablevision Sys. Corp. v. Verizon N.Y. Inc.*, the court concluded that Cablevision's claim that it had a "better data network" than Verizon was insufficiently specific, because "better" could relate either to geographic coverage or download speeds. 119 F. Supp. 3d 39, 53 (E.D.N.Y. 2015). By contrast, the interest rates at issue here can readily be "quantitively assess[ed]," *Cap. One 360 Sav. Acct.*, 779 F. Supp. 3d at 717, and they demonstrate that after September 2019, the 360 Savings rate was not even the top savings rate at Capital One, *see* ¶ 68.

In any event, Capital One ignores that courts consider the "overall misleading impression" caused by a defendant's representations, and do not parse out individual phrases from their total context. *People v. Orbital Publ'g Grp., Inc.*, 169 A.D.3d 564, 566 (N.Y. App. Div. 2019); *accord Guggenheimer v. Ginzburg*, 43 N.Y.2d 268, 273 (1977). Here, the "overall misleading impression" created by Capital One's consistent representations was that its 360 Savings account was a "high interest" account that would not later become relegated to a much less than high interest status in reference to another Capital One savings product. *See Cap. One 360 Sav. Acct.*, 779 F. Supp. 3d at 724.

*Fourth*, Capital One argues that 360 Savings accountholders had access to information to correct any misunderstanding about the interest rate on their accounts. Mem. at 20-23. But none of Capital One's arguments constitute a defense, and none of the information it identifies cures its failure to honor its representations to its 360 Savings customers. The law does not require consumers to continually monitor a company's conduct to ensure that they are receiving what the company promised. In this case, the Court has already considered most of the information Capital One cites as supposedly sufficient to correct any misunderstanding, and it rejected Capital One's arguments. The Court considered the allegation that accountholders could view their interest rate on the Capital One website or mobile app, *see* Mem. at 20, 23 (citing ¶ 70), and held that it did not cure the deception because "only an incredibly attentive consumer would be able to identify the distinction between" 360 Savings and 360 Performance Savings, due to Capital One's concealment of the distinction between the accounts. *Cap. One 360 Sav. Acct.*, 779 F. Supp. 3d at 719; *accord Guggenheimer*, 43 N.Y.2d at 273 (sections 349 and 350 "were enacted to safeguard" persons who "do not stop to analyze but are governed by appearances and general impressions"); *Gen. Elec.*, 302 A.D.2d at 314 (concerning section 63(12)).

14

The Court also rejected the argument that Capital One's disclosures warrant dismissal of deception claims.[6]  *See Cap. One 360 Sav. Acct.*, 779 F. Supp. 3d at 720-21, 723-24.  Indeed, it is well established that disclaimers "do not bar claims for deceptive trade practices" at the pleading stage, "as they do not establish a defense as a matter of law."  *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012) (alterations omitted) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 326 (2002)).  Reasonable 360 Savings accountholders would expect that the account disclosures confirm the high-interest nature of their accounts—not that Capital One would be able to secretly relegate them to a much less than high interest status by comparison to a new, similarly-named Capital One savings product.  *See Carovillano v. Sirius XM Radio Inc.*, 715 F. Supp. 3d 562, 575 (S.D.N.Y. 2024) ("New York courts have rejected the argument that a generalized disclaimer as to 'additional fees' bars claims asserting the non-disclosure of fees that a reasonable consumer would not expect."); *see also Roley v. Google LLC*, No. 18-CV-07537-BLF, 2021 WL 1091917, at *8 (N.D. Cal. Mar. 22, 2021) (refusing to dismiss deception claim on summary judgment where disclosure stated that benefit was offered "at the discretion of Google" and "subject to change"); *Orbital Publ'g*, 169 A.D.3d at 566 ("The disclaimer . . . is insufficiently prominent or clear to negate the overall misleading impression" where it "appears on the back of the solicitation, is not referenced on the front, and consists of two dense paragraphs of block text all in the same typeface, making it unlikely to be read by consumers").

---

[6] Capital One alleges that the disclosures included the customer's rate and stated that "the interest rates and annual percentage yields are variable and may change at any time at our discretion" and that Capital One could "cancel, change or add products, accounts or services whenever we want."  Mem. at 21-22 (brackets omitted).  For these allegations, Capital One cites an exhibit it submitted in the Private Action, which is clearly outside the pleading.  Mem. at 20-21 (citing Ex. A to Capital One's Mem. of Law at 1-2, MDL Dkt. (July 26, 2024) (ECF No. 30-1)).  This document is not properly before the Court at this stage, but regardless, Capital One is wrong that it warrants dismissal of the NYAG's claims, as explained in the text.

Finally, Capital One's contention that it disclosed that 360 Performance Savings was a distinct product by using the word "Introducing" in some of its marketing also fails. Mem. at 23 (citing ¶¶ 48, 56). Capital One excluded 360 Savings accountholders from its direct marketing about 360 Performance Savings, ¶ 56, and in any event, the word "Introducing" was not enough to alter the "overall misleading impression" caused by Capital One's representations and concealment, *Orbital Publ'g*, 169 A.D.3d at 566.[7]

### B. Count VII Alleges An Actionable Claim of Abusive Acts or Practices Under the CFPA

An act or practice is abusive if it (*i*) takes unreasonable advantage of (*ii*) consumers' lack of understanding of a product or service's material risks, costs, or conditions. 12 U.S.C. § 5531(d)(2)(A). Capital One challenges the second element (lack of understanding),[8] but its arguments are largely duplicative of its arguments, refuted above, that consumers had access to information to correct any deception. Mem. at 23-25. Based on the allegations in the Complaint, the NYAG has plausibly alleged that 360 Savings accountholders did not understand that:

---

[7] Capital One also argues that the information available to 360 Savings accountholders is fatal to the NYAG's claims to the extent those claims are based on omissions (*but see infra* at 29), because it establishes that consumers could "reasonably obtain the omitted information" themselves. Mem. at 22-23 (quoting *Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 360 (E.D.N.Y. 2022)). But as explained above, "reasonabl[e]" 360 Savings accountholders could *not* obtain information explaining that 360 Performance Savings was a distinct account type from their own and carried a significantly higher interest rate – only "incredibly attentive consumer[s]" could. *Cap. One 360 Sav. Acct.*, 779 F. Supp. 3d at 719. And even if customers could have reasonably obtained that information, Capital One cannot take refuge in the cases it cites, Mem. at 22-23, because none of them concern allegations that a defendant deliberately concealed the allegedly omitted information, as the NYAG's complaint alleges here.

[8] Capital One does not meaningfully dispute that the Complaint alleges it took "unreasonable advantage." *See* Mem. at 23-24 (conclusory statement with no argument or basis). In any event, the Complaint alleges that COFC took unreasonable advantage of consumers by profiting from the lower interest rate it paid to 360 Savings accountholders due to its concealment of information from them. *See* ¶¶ 59, 81; *accord CFPB v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d 878, 918 (S.D. Ind. 2015).

- Capital One had created a new type of account, 360 Performance Savings, that was identical to their own in all respects apart from the higher interest rate, ¶¶ 6-8, 56, 71;

- The advertised interest rate for the 360 Performance Savings accounts was not the interest rate applicable to their own 360 Savings accounts, ¶¶ 7, 45-50;

- In order to continue to benefit from rising market interest rates, they would have to switch to a 360 Performance Savings account, ¶ 6;

- Their own rate had been fixed at 0.30%, ¶¶ 6, 68; and

- They would have to regularly monitor the above, plus other market rates, to check whether Capital One was still delivering on its promises, ¶ 35.

These allegations about gaps in consumers' knowledge are bolstered by additional allegations concerning individual New York accountholders' lack of understanding. *See* ¶ 74 (consumer "thought [they] held a high-interest account"); ¶ 75 (consumer not aware they "would have to switch [their] money to the new savings account . . . to receive the competitive rate" and "all this time [I] thought I was getting paid a high rate"); ¶¶ 76-77. Moreover, the lack of understanding was no accident—it was a result of Capital One's deliberate deception, as discussed above.

Capital One's argument relies on the account disclosures, the fact that the interest rate was available on the website, and the use of the word "Introducing" on some marketing. Mem. at 24-25. But just as each of these fail to negate deception, *see supra* at 14-16, none of these show that consumers understood the relevant risks and costs either.

## C. The Request for Injunctive Relief Should Not Be Dismissed

Capital One argues that the NYAG is not entitled to injunctive relief on any of its claims because the Complaint "does not allege that Capital One's alleged misleading or deceptive conduct is ongoing." Mem. at 25. But the NYAG has no obligation to allege ongoing misconduct at all, as courts routinely grant injunctions pursuant to Executive Law § 63(12) and GBL § 349 even where the illegal acts have been discontinued, in order to ensure that similar

misconduct does not occur in the future. *See, e.g.*, *People v. Orbital Publ'g Grp., Inc.*, 169 A.D.3d 564, 565 (N.Y. App. Div. 2019); *People v. Gen. Elec. Co.*, 302 A.D.2d 314, 316 (N.Y. App. Div. 2003). What is more, Capital One does not even claim that it has changed its practices in any respect, and its conduct clearly is ongoing, as reflected in the Proposed Settlement structure in the Private Action. *See* Mem. of Law at 12, 25, In Re: Capital One 360 Savings Account Interest Rate Litigation, No. 1:24-md-03111 ("MDL Dkt.") (June 6, 2025) (ECF No. 162) (explaining that "a super-majority of the Class" still have 360 Savings accounts, and that those accountholders have received a lower rate of interest "at all times"). Moreover, Capital One's argument about the scope of relief is "grossly premature" because "[t]here is no requirement that Plaintiffs demonstrate at the pleading stage that they are entitled to each form of relief sought." *FTC v. Roomster Corp.*, 654 F. Supp. 3d 244, 266 (S.D.N.Y. 2023).

## II.    NO CLAIMS SHOULD BE DISMISSED OR STAYED BASED ON PRECLUSION

### A.    Counts IV-VII Are Not Barred by the CFPB's Decision to Abandon Its Lawsuit Against Capital One

Capital One invokes the "drastic doctrine" of claim preclusion in an effort to avoid the NYAG's statutorily-authorized enforcement of the CFPA in Counts IV-VII. *Dionne v. Mayor & City Council of Baltimore*, 40 F.3d 677, 683 (4th Cir. 1994). In making this argument, Capital One points to the pre-answer voluntary dismissal of a separate lawsuit against Capital One by the CFPB, even though the NYAG was not involved in that lawsuit or the CFPB's decision to discontinue it, and even though the CFPB dropped that case, in which it alleged Capital One "illegally avoided paying billions in interest to millions of consumers," Compl. ¶ 1, CFPB v. Cap. One Fin. Corp., No. 1:25-cv-00061 (E.D. Va.) ("CFPB Dkt.") (ECF No. 1), without achieving any benefit for consumers whatsoever, *see* Pl.'s Not. of Voluntary Dismissal, CFPB Dkt. (ECF No. 20). Nevertheless, Capital One argues that the NYAG was somehow "in privity"

18

with the CFPB because both are suing as "representatives" of the same New York consumers, such that Capital One can now use the CFPB's discontinuance as a shield from certain claims by the NYAG, a nonparty to the prior action. Mem. at 7-11. The Court should reject Capital One's audacious attempt to evade government scrutiny, which is contrary to caselaw, as well as longstanding principles of federalism and Congress's grant of concurrent enforcement authority in the CFPA. Capital One's position further ignores the reality that the CFPB's interests were plainly not aligned with the NYAG or New York consumers.

> *1. Res Judicata Does Not Apply to Successive Suits by State and Federal Governments to Enforce the CFPA*

The CFPB and the NYAG represent separate, independent sovereigns under core principles of federalism enshrined in our federal Constitution. *See* 18A *Wright & Miller's Federal Practice & Procedure* § 4458 (3d ed. 1998) ("It is clear that state and federal governments are separate parties for *res judicata* purposes, so that litigation by one does not bind another."). Under New York law, the NYAG does "not su[e] on behalf of a private individual, but [to] vindicate[e] the state's sovereign interest in enforcing its legal code—including its civil legal code—within its jurisdiction." *People v. Trump*, 217 A.D.3d 609, 610 (N.Y. App. Div. 2023). Even if the CFPB and the NYAG aimed to protect the same group of New York consumers (which the CFPB did not, as discussed below), that is irrelevant for *res judicata* purposes. Courts have repeatedly rejected the notion that government entities with concurrent enforcement authority act in a "representative capacity" for purposes of nonparty preclusion. *See, e.g., Harris Cnty. v. CarMax Auto Superstores Inc.*, 177 F.3d 306, 319 (5th Cir. 1999) ("Harris County and its officials [are not] in privity with or virtually represented by . . . the attorney general of Texas [or other officials], such that they are bound by the [earlier] judgment."); *FTC v. DirecTV, Inc.*, No. 15-CV-01129-HSG, 2015 WL 9268119, at *4 (N.D. Cal.

Dec. 21, 2015) ("[T]he facts alleged in the affirmative defense give no indication that th[e] attorneys general understood themselves to be acting in a representative capacity for the federal government or that the original court took care to protect the interests of the federal government."); *City of New York v. Beretta U.S.A. Corp.*, 315 F. Supp. 2d 256, 267 (E.D.N.Y. 2004) ("New York courts have largely refused to find two functionally independent governmental entities in privity with each other for purposes of preclusion.").

While Capital One's *res judicata* argument can be rejected on this basis alone, it is undermined further by the fact that Congress has specifically assigned concurrent state-federal enforcement authority in the CFPA. The CFPA authorizes states to litigate independently of the federal government.[9] 12 U.S.C. §§ 5552(a)(1), (a)(2)(B). Even if the CFPB had not dropped its lawsuit, the NYAG would have been entitled to proceed independently against Capital One. *Pennsylvania v. Navient Corp.*, 967 F.3d 273, 286-87 (3d Cir. 2020) (holding the CFPA "permits concurrent state claims," and acknowledging states' "fundamental right to protect their citizens and prevent harmful conduct from occurring in their jurisdictions"); *accord Texas v. Colony Ridge, Inc.*, No. CV H-24-0941, 2024 WL 4553111, at *5 (S.D. Tex. Oct. 11, 2024).

The CFPB itself relies on the cooperative federalism model embedded in the CFPA. In a Withdrawal of Guidance issued just this past May, the CFPB explained that it has "reduc[ed] its own enforcement," anticipating that "[s]tate attorneys general [would] bring actions to enforce" the CFPA themselves. Withdrawal of Bureau Guidance, 90 Fed. Reg. 20084, 20085 & n.3 (May 12, 2025). Indeed, it was less than three weeks after the CFPB "stopped all work" and began instead "to dismantle and shut down the [CFPB] entirely, in violation of statutory mandates,"

---

[9] This expressly includes authority to enforce consumer financial laws such as TISA and Regulation DD. *See* 12 U.S.C. §§ 5481(12)(P), 5481(14), 5536(a), 5552(a).

that the CFPB filed the discontinuance of its action against Capital One. *Nat'l Treas. Emps. Union v. Vought*, No. CV 25-0381 (ABJ), 2025 WL 942772, at *43 (D.D.C. Mar. 28, 2025); *see id.* at *11 ("The evidence . . . showed that . . . the Acting Director of the CFPB[] ordered all employees to stop work on February 10, 2025. As of that date, the [CFPB was] fully engaged in a hurried effort to dismantle and disable the agency entirely . . . .").[10]  The CFPA's concurrent enforcement authority gives states tools "to pick up slack when the federal Government fails to enforce and regulate." *Navient Corp.*, 967 F.3d at 286 & n.10.  Before filing the instant lawsuit, the NYAG notified the CFPB, and the agency did not intervene or object.

### 2.  *The CFPB Was Not In Privity with the NYAG When It Dropped Its Lawsuit Against Capital One*

In any event, it is clear that the CFPB's voluntary dismissal of its lawsuit against Capital One does not preclude the NYAG's claims here, because (*i*) the NYAG and CFPB's interests are not aligned, and (*ii*) the CFPB did not understand itself to be acting in a representative capacity. *See Taylor v. Sturgell*, 553 U.S. 880, 900 (2008) (setting out two "minimum" requirements for nonparty claim preclusion).  In addition, (*iii*) a pre-answer voluntary dismissal cannot preclude a different plaintiff, and the CFPB could not have brought the NYAG's claim pursuant to § 63(12).

*First*, the NYAG's "interests" are certainly not "aligned" with the CFPB's here. *Taylor*, 553 U.S. at 900.  Anything but.  The NYAG is actively involved in the *National Treasury*

---

[10] The District Court for the District of Columbia preliminarily enjoined the CFPB's shutdown, after finding that the plaintiffs in that case were "likely to establish" the above facts based on "an evidentiary hearing and . . . review of an extensive record." *Nat'l Treas. Emps. Union*, 2025 WL 942772, at *43.  Although the preliminary injunction was vacated on appeal, the D.C. Circuit found no error in the district court's factual findings. *See Nat'l Treas. Emps. Union v. Vought*, No. 25-5091, 2025 WL 2371608, at *11 (D.C. Cir. Aug. 15, 2025) ("Questions of what CFPB leadership wanted or intended to do at any particular point in time are factual, and we are reluctant to conclude that the district court's factual assessments were clearly erroneous.").

*Employees Union* case against the CFPB over the agency's withdrawal from enforcement of the CFPA and other laws. *See* Mem. of Amici Curiae States, Nat'l Treas. Emps. Union v. Vought, No. 1:25-cv-381 (D.D.C. Feb. 21, 2025) (ECF No. 24). Moreover, the CFPB dropped its case against Capital One six weeks after filing it, without obtaining any compensation at all for New York consumers, or any remediation of Capital One's allegedly deceptive business practices. That establishes that "the [NYAG]'s interests are not sufficiently aligned with those of the [CFPB]." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 859 F.3d 178, 187 (2d Cir. 2017) (public water district not precluded by earlier settlements with county prosecutor because the settlements with the county did not afford compensation to the district and the harms were allegedly continuing).

The Court should reject Capital One's reliance on the *Navajo Nation* case, an out-of-circuit case that was wrongly decided and is not binding on this Court. *Navajo Nation v. Wells Fargo & Co.*, 344 F. Supp. 3d 1292 (D.N.M. 2018). In that case, the District Court for the District of New Mexico failed to acknowledge or apply constitutional dual sovereignty and the enforcement structure designed by Congress when it held that the Nation's CFPA claims were precluded. *See id.* at 1305-08. The facts in *Navajo Nation* are also far afield from this case, and underscore the fact that the CFPB's and NYAG's interests are not remotely aligned here. The Navajo Nation sued Wells Fargo only after the CFPB had entered into a lengthy consent order with Wells Fargo requiring it to reform its business practices and pay a significant penalty and restitution to the benefit of consumers including members of the Navajo Nation. *Navajo Nation*, 344 F. Supp. 3d at 1299. Here, the CFPB's interests were not aligned with the NYAG or New York consumers when it decided to abandon its lawsuit against Capital One, virtually *ab initio*, without obtaining any benefit for New York consumers at all. *See also Dionne*, 40 F.3d at 683

22

("a critical predicate for applying claim preclusion is that the claimant shall have had a fair opportunity to advance all its 'same transaction' claims in [the prior] proceeding"). Similarly, in *United States v. ITT Rayonier, Inc.*, 627 F.2d 996 (9th Cir. 1980), also cited by Capital One, there was no contention that the earlier plaintiff "failed to assert vigorously its position in the [earlier] proceedings." 627 F.2d at 1003.[11]

*Second*, the CFPB did not "underst[and] [it]self to be acting in a representative capacity." *Taylor*, 553 U.S. at 900.[12] The relevant question under the "representative capacity" prong of *Taylor* is not whether the plaintiffs in the separate actions represented the interests of the same third parties; that would be duplicative of the first prong which is about the plaintiffs' alignment of interests. *See id.* The relevant question is whether there was a "representative relationship between a party to the prior action [*i.e.*, the CFPB] and the nonparty against whom estoppel is asserted [*i.e.*, the NYAG]." *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 312 (3d Cir. 2009). For this reason, the Fourth Circuit held that a surviving spouse's claim for benefits was not precluded by the decedent's earlier claim for benefits, even though their interests were "plainly aligned." *E. Associated Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 578 F. App'x 165, 176 (4th Cir. 2014) (applying *Taylor* in the context of issue

---

[11] Furthermore, the application of *res judicata* in *ITT Rayonier* arose out of "the need for uniformity" which might be challenged by "conflicting [state- and federal-court] judicial constructions" of a footnote in a permit issued pursuant to federal law. 627 F.2d at 1001. Here, the CFPB's case was dismissed before the Court was even called upon to make any substantive determination. The other case cited by Capital One is not about claim preclusion at all, but about the right to intervene under the Federal Rules of Civil Procedure. *See Mumford Cove Ass'n, Inc. v. Town of Groton*, 786 F.2d 530 (2d Cir. 1986).

[12] Capital One does not and could not assert that the Court "took care to protect the interests" of the NYAG. *Taylor*, 553 U.S. at 900. As the Court acknowledged, the CFPB's dismissal was as-of-right pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) because Capital One had not answered the complaint or moved for summary judgment. Order, CFPB Dkt. (ECF No. 21).

preclusion). The court explained that the surviving spouse filed the lawsuit "in her own name, on her own behalf, and for her own award of benefits," and "[t]he record is devoid of any indication that [the surviving spouse] 'understood herself to be acting in a representative capacity' for her deceased spouse." *Id.* Similarly, the NYAG here has sued to vindicate the sovereign interests of the State of New York, and there is no dispute that it is not acting in a representative capacity for the CFPB (or vice versa). *See* Mem. at 9 (acknowledging that "the CFPB did not represent the NYAG" when it filed and dismissed its lawsuit against Capital One).

*Finally*, Capital One is also wrong that the other elements of claim preclusion are satisfied. *See* Mem. at 8. A voluntary dismissal by a plaintiff is a bar to further action between the parties because a plaintiff is not allowed "to unscramble the egg it has made for itself" when it decided to dismiss the earlier case. *Harrison v. Edison Bros. Apparel Stores*, 924 F.2d 530, 535 (4th Cir. 1991) (precluding action *by the same plaintiff*). Capital One has identified no authority suggesting that one plaintiff can file a claim, quickly drop it, and thereby bar other plaintiffs—much less sovereign plaintiffs acting in the public interest—from pursuing the same claims. Such a principle would be ripe for mischief. In addition, the CFPB did not bring—and could not have brought—Count IV of the NYAG's complaint in its earlier lawsuit. Count IV alleges that Capital One engaged in illegal conduct in violation of New York Executive Law § 63(12), which is a distinct claim that carries its own standards and remedies, and which the New York Legislature granted the NYAG exclusive authority to enforce. *See* N.Y. Exec. L. 63(12).

**B. The Proposed Settlement in the Private Action Does Not Warrant Any Stay**

Capital One's request for a stay pending final approval of the proposed class action settlement is improper on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* ECF No. 17.) But even if it were properly presented as a motion for a stay, the

24

stay that Capital One seeks is impractical and unwarranted, and Capital One's arguments about the NYAG's authority to seek a particular remedy are premature.

First, Capital One's requested stay would be both unfeasible, if not unworkable, and profoundly inefficient. Capital One is not seeking a stay of the entire action. It is not seeking a stay of one or more causes of action. Instead, Capital One argues that "[t]he NYAG's claims" should be stayed only "to the extent they seek monetary relief for consumers." Mem. at 13; *see also* Mem. at 11 (seeking stay only of "NYAG's claims for restitution"). But Capital One cites no authority for imposition of a segmented stay, much less a stay limited to a particular *remedy*. *See* Mem. at 13 (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 253 (1936) (stay of "all proceedings" pending a decision by the Supreme Court) and *Hickey v. Baxter*, 833 F.2d 1005 (4th Cir. 1987) (same)). Capital One does not challenge the NYAG's continuing authority to obtain *other* forms of relief besides "monetary relief for consumers" if and when the Proposed Settlement becomes effective.[13] *See* Mem. at 11-13. The other forms of relief sought in the NYAG's Complaint—which are undisputedly unaffected by the Proposed Settlement—include injunctive relief, disgorgement, and penalties. ¶¶ i, iii, iv, v.

Capital One's request does not address—much less satisfy—any of the factors that courts consider to justify a stay, despite its "clear and convincing" burden to do so: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." *Redding v. Mayorkas*, No. 1:23CV1325(DJN), 2024 WL 663038, at *3 (E.D. Va. Feb. 5, 2024) (brackets omitted). A stay of the action in its entirety (which, as noted, Capital One does not seek) would impede judicial economy and

---

[13] Capital One challenges the NYAG's entitlement to injunctive relief on a different basis (also incorrect), which is refuted above. *See supra* at 17.

prejudice the NYAG because it would delay resolution of the NYAG's claims for injunctive

relief, disgorgement, and penalties—which the NYAG is indisputably entitled to seek—without

any corresponding gains in efficiency, and Capital One has not identified any hardship if the stay

is denied.  Similarly, a stay of "claims for restitution" only—to the extent such a stay could be

fashioned—would introduce redundancies and needless disputes as the action proceeds to

discovery and motion practice while somehow isolating claims for restitution from other

remedies, even if based on the same nucleus of facts.

Capital One's arguments about the preclusive effect of class action settlements on

government enforcement actions are also premature.  The issue is unripe because the Proposed

Settlement has not been approved, and it seeks a ruling on a particular remedy (restitution) at the

pleading stage.  *See Roomster*, 654 F. Supp. 3d at 266 ("There is no requirement that Plaintiffs

demonstrate at the pleading stage that they are entitled to each form of relief sought.").  The

Proposed Settlement remains subject to final approval by the Court, and the Court may reject it,

or may require that the parties modify the settlement in a manner that moots this issue entirely.[14]

Capital One cites only one case where a court halted a government enforcement action before a

class action settlement was approved.  Mem. at 12 (citing *In re Baldwin-United Corp.*, 770 F.2d

328 (2d Cir. 1985)).  In that case, the court enjoined a group of state attorneys general from

*commencing* parallel actions in *state court*, out of a concern that the existence of state-court

actions would "frustrate" the court's jurisdiction over the settlement, that they would imperil the

proposed settlement, and based on the court's view that the state attorneys general, who had

---

[14] The objection the NYAG will submit with other states in the Private Action (discussed *infra* at 27) will urge the Court to require the parties to modify the release in the Proposed Settlement to expressly exclude government entities.

26

planned their lawsuits only after learning of the proposed settlement, intended to sue simply "as a means of coercing the defendants to pay more funds into the federal settlement pool." *Baldwin-United*, 770 F.2d at 337-39; *accord Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 428 (2d Cir. 2004) (characterizing the rationale of *Baldwin-United* as "protecting an actual or impending settlement in a federal action from being undone or thwarted by state-court litigation"). None of these concerns are present here: the NYAG filed this lawsuit before the terms of the Proposed Settlement were even announced; Capital One has not argued (much less demonstrated) that this lawsuit would imperil the Proposed Settlement; and this Court maintains jurisdiction over both the NYAG's lawsuit and the class action.

Finally, the Proposed Settlement does not warrant a stay of the NYAG's action to enforce state and federal consumer protection laws, because the settlement does not benefit consumers—it benefits Capital One. As the NYAG will explain in a formal objection submitted jointly with other states in the Private Action, the settlement is fundamentally flawed because it entrenches the two-tier structure at the heart of the class's (and the NYAG's) claims of fraud and deception, while saving Capital One from having to pay customers anything close to the interest it wrongfully withheld. The Court should reject the Proposed Settlement—and it should not delay the NYAG's action in the meantime.

## III.    THE STATE-LAW CLAIMS ARE NOT PREEMPTED

Capital One also seeks to relitigate its losing argument that the state-law claims asserted by the NYAG are preempted by the National Bank Act ("NBA"). As Capital One well knows, the Court has already ruled in the Private Action that the similar "state law consumer protection claims" asserted there "do[] not demand preemption," because they simply "require[] banks not to engage in deception or fraud in setting the interest rates for savings accounts." *Cap. One 360 Sav. Acct.*, 779 F. Supp. 3d at 691. This is consistent with the well-established principle that

27

federal banking laws typically do not preempt state laws of general applicability. *See Cantero v. Bank of Am., N.A.*, 602 U.S. 205, 219 (2024); *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007). Indeed, courts regularly hold that state statutes concerning deceptive acts and practices, like those asserted here, are not preempted. *See, e.g.*, *Walker v. People's United Bank*, 305 F. Supp. 3d 365, 377-78 (D. Conn. 2018); *Farasat v. Wells Fargo Bank, N.A.*, 913 F. Supp. 2d 197, 205 (D. Md. 2012); *Baldanzi v. WFC Holdings Corp.*, No. 07 CIV 9551. LTS GWG, 2008 WL 4924987, at *2-3 (S.D.N.Y. Nov. 14, 2008). This Court has already described the commonsense rationale underlying this precedent: "To preempt these generally applicable laws would in essence leave potential victims susceptible to fraudulent or deceptive practices with no ability to hold the offending national bank liable for unlawful behavior." *Cap. One 360 Sav. Acct.*, 779 F. Supp. 3d at 694.

Capital One cannot get around this unavoidable hurdle by transforming the NYAG's Complaint into one that seeks "to impose a mandated interest rate." Mem. at 15. The Complaint's Demand for Relief seeks no such remedy. Like the claims in the Private Action, which this Court upheld, the allegedly preempted state-law claims here seek to hold Capital One accountable for "deception and concealment in setting interest rates and in dealing with savings accountholders," as discussed above—not to impose a mandatory interest rate. *Cap. One 360 Sav. Acct.*, 779 F. Supp. 3d at 693. The allegations that Capital One "froze" the 360 Savings rate at an "artificially low level," Mem. at 15 (citing ¶ 87), are not requests for a mandatory interest rate, but rather evidence of how Capital One deceived customers who saved their money in purportedly "high interest" accounts.

The Court should also reject Capital One's argument that some of the claims at issue are preempted as based on omissions.[15] Mem. at 14.  In rejecting a similar argument in the Private Action, the Court explained that "[t]he state laws at issue do not require Defendants to disclose specific information." *Cap. One 360 Sav. Acct.*, 779 F. Supp. 3d at 697.  Here too, the NYAG seeks to hold Capital One accountable for its "affirmative efforts taken to keep [consumers] in the dark and hide material information pertaining to their preexisting 360 Savings accounts." *Id.* at 698.  For example, the Complaint alleges that Capital One gave the two account types similar names, scrubbed any mention of 360 Savings from its website and replaced it with 360 Performance Savings, and excluded 360 Savings customers from marketing about 360 Performance Savings. *See* ¶¶ 45-56.  The Ninth Circuit came to a similar conclusion in the very case (indeed the lone case) cited by Capital One in purported support of its argument about omissions. *See Gutierrez v. Wells Fargo Bank, N.A.*, 704 F.3d 712, 726 (9th Cir. 2012).  In the face of a preemption challenge, the Ninth Circuit held that even though the court could not "require[] the bank to make specific disclosures," it could "provide injunctive relief and restitution" for violations of a generally applicable state-law prohibition on "statements that are likely to mislead the public." *Id.* at 726-28.

Finally, even if the state-law claims are preempted as against CONA—which they are not—they are not preempted as against COFC, which is not a national bank.  Capital One cites *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 18 (2007) in support of its argument that the NBA's preemptive force extends to COFC—a nonbank entity that made deceptive statements on the website it owns and maintains jointly with CONA, according to the Complaint. *E.g.*, ¶¶ 131-32.

---

[15] Capital One concedes that the alleged misrepresentations made prior to September 2019 are not preempted.  Mem. at 14.

But Capital One fails to disclose that that aspect of *Watters* was unambiguously abrogated by Congress in 2010. As part of the Dodd-Frank Act, where Congress sought to address the regulatory lapses that enabled practices that contributed to the 2008 financial crisis, Congress made explicit that NBA preemption does *not* extend to bank affiliates. 12 U.S.C. § 25b(h)(2) ("No provision of [the National Bank Act] or section 371 of this title shall be construed as preempting . . . State law to any subsidiary, affiliate, or agent of a national bank"); 12 U.S.C. §§ 25b(b)(2), (e); *see Ill. Bankers Ass'n v. Raoul*, 760 F. Supp. 3d 636, 660 (N.D. Ill. 2024) (acknowledging that the Dodd-Frank Act "overruled" *Watters*).

## CONCLUSION

For the reasons set forth above, the Court should deny Capital One's Motion to Dismiss.

Dated:  September 17, 2025
          New York, New York

Respectfully submitted,

LETITIA JAMES
Attorney General of the State of New York

By: _____
      Adam J. Riff (*pro hac vice*)
      Assistant Attorney General
      Bureau of Consumer Frauds and Protection
      28 Liberty Street
      New York, New York 10005
      (212) 416-6250
      adam.riff@ag.ny.gov

      *Attorney for the People of the State of New York*

Of counsel:

      JANE M. AZIA (*pro hac vice*), Bureau Chief
      LAURA J. LEVINE, Deputy Bureau Chief

30