UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| IN RE: CAPITAL ONE 360 SAVINGS ACCOUNT INTEREST RATE LITIGATION | Case No. 1:24-md-03111-DJN-WBP |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**THE KAPLAN LAW FIRM**

Matthew B. Kaplan VSB #51027
1100 N Glebe Rd
Suite 1010
Arlington, VA 22201
(703) 665-9529
mbkaplan@thekaplanlawfirm.com

*Plaintiffs' Local Counsel*

**WOLF POPPER LLP**

Chet B. Waldman (*pro hac vice*)*
Carl L. Stine (*pro hac vice*)
Philip M. Black (*pro hac vice*)
Matthew Insley-Pruitt (*pro hac vice*)
Timothy D. Brennan (*pro hac vice*)
845 Third Ave.
New York, NY 10022
212-759-4600
cwaldman@wolfpopper.com
cstine@wolfpopper.com
pblack@wolfpopper.com
minsleypruitt@wolfpopper.com
tbrennan@wolfpopper.com

*\*Plaintiffs' Lead Counsel and
Interim Class Counsel*

December 23, 2025

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

RELEVANT BACKGROUND ............................................................................................... 1

I.     Litigation History ......................................................................................................... 1

     A.     Plaintiffs' Allegations .................................................................................... 1

     B.     Procedural History ........................................................................................ 2

         1.     Related Cases and Consolidation Proceedings ........................................... 2

         2.     Motion Practice ............................................................................................ 4

         3.     Discovery ..................................................................................................... 4

     C.     Settlement Negotiations and Mediation Sessions ....................................... 5

     D.     Approval Proceedings for the Previous Agreement ...................................... 6

II.     The Settlement ............................................................................................................. 7

     A.     The Settlement Class ................................................................................... 7

     B.     Settlement Relief .......................................................................................... 7

     C.     Release ......................................................................................................... 8

     D.     Settlement Administration and Notice Plan ................................................. 8

     E.     Attorneys' Fees and Expenses, and Incentive Awards for the Representative Plaintiffs ....................................................................................................... 9

LEGAL STANDARD ............................................................................................................. 9

ARGUMENT ........................................................................................................................ 10

I.     The Proposed Settlement is Fair, Reasonable, and Adequate .................................... 10

     A.     The Settlement Is Fair ................................................................................ 10

     B.     The Settlement Provides Adequate Relief ................................................. 11

     C.     The Settlement Treats Settlement Class Members Equitably ..................... 15

II.     The Settlement Class Can Be Certified ..................................................................... 15

III.     The Proposed Notice Plan Should Be Approved ...................................................... 16

IV.     Schedule for Notice and Final Approval .................................................................. 17

CONCLUSION ..................................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Albert v. Glob. Tel\*Link Corp.*,
  No. 20-cv-01936-LKG, 2024 U.S. Dist. LEXIS 197800 (D. Md. Oct. 31, 2024)............... 9, 10

*Gutierrez v. Wells Fargo Bank*,
  704 F.3d 712 (9th Cir. 2012) ................................................... 14

*Herrera v. Charlotte School of Law, LLC*,
  818 Fed. App'x 165 (4th Cir. 2020) ................................................... 10

*In re Jiffy Lube Sec. Litig.*,
  927 F.2d 155 (4th Cir. 1991) ................................................... 10, 11, 12

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*,
  952 F.3d 471 (4th Cir. 2020) ................................................... 10

*Manuel v. Wells Fargo Bank, Nat'l Ass'n*,
  No. 3:14cv238 (DJN), 2016 U.S. Dist. LEXIS 33708 (E.D. Va. Mar. 15, 2016) ............. 10, 11

*McLachlan v. Bd. of Trs. of the Elevator Constructors Annuity*,
  No. 22-4115, 2025 U.S. Dist. LEXIS 71644 (E.D. Pa. Apr. 15, 2025)................................... 13

*In re Peanut Farmers Antitrust Litig.*,
  No. 2:19-cv-00463, 2021 U.S. Dist. LEXIS 140427 (E.D. Va. July 26, 2021)....................... 15

*People of the State of New York v. Capital One, N.A.*,
  No 25-cv-4037, ECF 1 (E.D.N.Y. May 14, 2025)................................... 4

*Solomon v. Am. Web Loan*,
  Civil Action No. 4:17cv145, 2020 U.S. Dist. LEXIS 112782 (E.D. Va. June 26, 2020)... 12, 13

*Thomas v. FTS USA, LLC*,
  No. 3:13cv825 (REP), 2017 U.S. Dist. LEXIS 45217 (E.D. Va. Jan. 9, 2017), *report and recommendation approved* 2017 U.S. Dist. LEXIS 44946 (E.D. Va. Mar. 27, 2017) ............. 15

*Torres v. Bank of Am. (In re Checking Account Overdraft Litig.)*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) ................................................... 12, 13

*In re Zetia (Ezetimibe) Antitrust Litig.*,
  699 F. Supp. 3d 448 (E.D. Va. 2023) ................................................... 15

**Other Authorities**

Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards,
  7 J. Empirical Legal Stud. 811, 839 (2010) ................................................... 15

Rachel Louise Ensign, *They Thought Their Money Was in High-Interest Accounts—They Got Paid Peanuts*,
  WALL ST. J., Jan. 21, 2024 .................................................................................................. 2

**Rules**

Fed. R. Civ. P. 23(b)(3) ......................................................................................................... 16

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................................... 16

Fed. R. Civ. P. 23(c)(3) ......................................................................................................... 16

Fed. R. Civ. P. 23(e)(1)(B) ...................................................................................................... 9

Fed. R. Civ. P. 23(e)(2) ......................................................................................................... 10

Fed. R. Civ. P. 23(e)(2)(C) .................................................................................................... 11

Fed. R. Civ. P. 23(e)(2)(D) .................................................................................................... 15

Fed. R. Civ. P. 23(e)(3) ......................................................................................................... 11

Fed. R. Civ. P. 23(e)(1)(B) .................................................................................................... 16

Fed. R. Civ. P. 23(e)(2) ......................................................................................................... 10

## **INTRODUCTION**

Plaintiffs in the above-captioned multidistrict litigation, through their undersigned counsel ("Plaintiffs' Counsel"),[1] respectfully seek approval of the settlement of this matter on a classwide basis. This new Settlement—which is one of the largest settlements ever in a consumer fraud class action against a bank—provides substantial monetary benefits to the Settlement Class and avoids the risk and delay of further proceedings. In the new Settlement, Capital One has agreed to pay a total of $425 million (the "Settlement Fund") directly to Settlement Class Members without the need for a claims process, and will also match and tether the interest rates for its 360 Savings and 360 Performance Savings accounts going forward, amounting to a further prospective benefit presently estimated to be roughly $530 million to class members who continue to maintain 360 Savings accounts. This is an excellent result for the class given the risks of trial and appeal, and easily meets the standards for approval under Fed. R. Civ. P. 23(e). For the reasons set forth below, the Court should preliminarily approve the Settlement, appoint Class Counsel, and direct notice of the Settlement to the Class.

## **RELEVANT BACKGROUND**

### I.    **Litigation History**

### A.    **Plaintiffs' Allegations**

In mid-September 2019, Capital One replaced its long-running "high interest" 360 Savings account with a new, substantially identical, account called "360 Performance Savings" featuring a

---

[1] All citations to "Ex.__" are to the Declaration of Chet B. Waldman in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement dated December 23, 2025 (the "Waldman New PA Decl."). All capitalized terms herein are defined within the new Settlement Agreement dated December 12, 2025 (Waldman New PA Decl., Ex. 1). The prior settlement agreement (ECF 163-1) is referred to as the "Previous Agreement." Unless otherwise specified, all citations to "ECF __" are to docket entries in the above-captioned matter and refer to the ECF-generated pagination therein.

higher rate of interest. ECF 10 ¶¶ 1-2. Although Capital One ceased offering the 360 Savings account to new depositors, it did not inform existing 360 Savings accountholders that 360 Savings would no longer be Capital One's high-yield account going forward. *See id.* ¶ 6. Capital One has always paid a higher rate on 360 Performance Savings than on 360 Savings, especially since March 2022, as Capital One gradually raised the 360 Performance Savings rate up to a high of 4.30% APY, while keeping 360 Savings frozen at 0.30%. *Id.* ¶ 4. Plaintiffs claimed that Capital One breached the covenant of good faith and fair dealing and violated various state consumer protection laws by failing to raise interest rates on the 360 Savings account commensurate with rates paid on the 360 Performance Savings account, and concealing from 360 Savings accountholders (i) that 360 Savings was no longer Capital One's high-yield online savings account (indeed its rate had been frozen at an historical low); and (ii) the difference between the similarly named 360 Savings and 360 Performance Savings accounts—and its higher interest rate. *See* ECF 49 (motion to dismiss decision) at 34-40.

## B.    Procedural History

### 1.    Related Cases and Consolidation Proceedings

Plaintiff Savett initiated these proceedings through his counsel, Wolf Popper LLP, with the filing of *Savett v. Capital One, N.A.* in this Court in July 2023. *See* No. 1:23-cv-00890 (the "*Savett* Action"), ECF 1.[2] On January 21, 2024, *The Wall Street Journal* published an article reporting on Capital One's conduct as alleged in the *Savett* Action.[3] Thereafter, on February 26, 2024, thirteen more Plaintiffs, also represented by Wolf Popper, filed a related case adding additional claims and

---

[2] The *Savett* Action was amended on September 15, 2023, and again on October 19, 2023, to add two new Plaintiffs, as well as additional consumer protection claims and subclasses. *See Savett* Action, ECF 9, 19.

[3] Rachel Louise Ensign, *They Thought Their Money Was in High-Interest Accounts—They Got Paid Peanuts*, WALL ST. J., Jan. 21, 2024.

subclasses. *See Hopkins v. Capital One, N.A.*, No. 1:24-cv-00292 (E.D. Va.) (the "*Hopkins* Action"), ECF 1.[4] Beginning in late February 2024, more cases were filed by different Plaintiffs in other federal courts, which were then centralized with *Savett* and *Hopkins* before this Court. *See In Re: Capital One 360 Savings Account Interest Rate Litig.*, J.P.M.L. Case No. 3111, ECF 22.

Wolf Popper and Plaintiffs' counsel in the other centralized cases (Shamis & Gentile, P.A.; Edelsberg Law, PA; Ahdoot & Wolfson, PC; Kaliel Gold PLLC) (collectively the "JPA Firms") executed a Joint Prosecution Agreement ("JPA") providing that they would work cooperatively under the leadership of Wolf Popper. *See* ECF 5-2 ¶ 3(a)-(b). On June 24, 2024, the Court appointed Chet B. Waldman of Wolf Popper as Plaintiffs' Lead Counsel and Interim Class Counsel, and Matthew B. Kaplan of The Kaplan Law Firm as Plaintiffs' Local Counsel. ECF 6.

Plaintiffs filed their operative Consolidated Amended Complaint on July 1, 2024. ECF 10. On July 18, 2024, the Court set an aggressive "Rocket Docket" schedule for the case, leaving the parties with seven months to complete all discovery (including expert discovery) and with class certification and *Daubert* briefing to occur concurrently. *See* ECF 26; *see also* ECF 24 at 2. The Court also appointed Craig P. Seebald, a partner at Vinson & Elkins, to serve as Special Master for the purpose of overseeing discovery. *See* ECF 24.

On January 14, 2025, the Consumer Financial Protection Bureau ("CFPB") filed a civil action against Capital One, drawing from the facts alleged in this class action. *See Consumer Financial Protection Bureau v. Capital One, N.A.*, E.D. Va. No. 25-cv-61 ("CFPB Action"), ECF 1. A side-by-side comparison of the CFPB complaint (*id.*) with the operative complaint here (ECF 10) confirms that the factual predicate for the cases is nearly identical, with the CFPB complaint

---

[4] On March 15, 2024, the *Hopkins* Action was amended to add two more Plaintiffs and two more subclasses. *See Hopkins* Action, ECF 4.

basically using the same screenshots of the Capital One website and chart of comparative interest rates. On February 7, 2025, the CFPB voluntarily dismissed its complaint with prejudice, leaving this class action as the sole avenue for relief for all 360 Savings accountholders. *Id.* ECF 20.

On May 14, 2025, after the CFPB dismissed its case and the parties agreed in principle to settle this matter, the New York Attorney General filed a lawsuit against Capital One making the same allegations on behalf of New Yorkers. *See People of the State of New York v. Capital One, N.A.*, No 25-cv-4037, ECF 1 (E.D.N.Y. May 14, 2025) (the "NYAG Action"). The NYAG Action was also centralized before this Court by the JPML on August 7, 2025. ECF 175.

### 2. Motion Practice

The parties submitted over 750 pages of combined briefing on numerous contested legal issues, with Plaintiffs substantially prevailing on every motion that the Court decided. This briefing includes: Capital One's initial motion to dismiss the *Savett* Action (which Plaintiffs opposed); Capital One's motion to dismiss the Consolidated Amended Complaint (which Plaintiffs opposed and the Court denied in substantial part, *see* ECF 49); Capital One's motion to strike Plaintiffs' jury demand (which Plaintiffs opposed and the Court denied, *see* ECF 51); Capital One's motion to certify a question to the Supreme Court of Virginia (which Plaintiffs opposed and the Court denied, *see* ECF 61); discovery dispute briefing (decided in Plaintiffs' favor, *see* ECF 62, 76); Plaintiffs' motion for class certification (which Capital One opposed and was fully briefed); and six total *Daubert* motions, three by Plaintiffs and three by Capital One, all fully briefed.

### 3. Discovery

By the time the parties agreed in principle to the Settlement, and concurrently with the briefing mentioned above, Plaintiffs' counsel also completed a substantial amount of discovery to ensure compliance with Court ordered case deadlines, including:

- Negotiating a detailed (1) discovery plan, (2) protective order, and (3) protocol for exchange of electronically stored information ("ESI"), *see* ECF 43-46;

- Drafting and serving discovery requests, including four sets of interrogatories, two sets of requests for production, one set of requests for admission, and five non-party subpoenas;

- Responding to Capital One's discovery requests for each of the twenty-six Plaintiffs, comprising 27 requests for production per Plaintiff;

- Reviewing the approximately 75,000 documents (roughly two million pages) produced by Capital One and third parties;

- Resolving numerous, ongoing discovery disputes pertaining to issues including custodians, search terms, document repositories, deposition logistics, and the sufficiency and scope of both Capital One's and Plaintiffs' respective discovery responses, in one instance necessitating a hearing before the Special Master;

- Preparing for and defending the depositions of all twenty-six Plaintiffs, both remotely and, when necessary, in person at locations across the country;

- Reviewing documents, drafting internal memoranda and preparing outlines for the depositions of twenty of Capital One's current and former employees, and completing seven of those depositions;

- Completing expert discovery (including reports and depositions for six total experts across various disciplines).

*See* Waldman New PA Decl. ¶¶ 10-16.

### C.    Settlement Negotiations and Mediation Sessions

The Court's initial scheduling order required the parties to complete mediation by May 17, 2025. ECF 26 ¶ 20(a). On March 1, 2025, the Court amended that order, and instead ordered that

"[a]ll efforts at settlement must be completed by May 17, 2025." ECF 90 ¶ 7 (emphasis added). The Court appointed Special Master Seebald as a mediator (ECF 90 ¶ 2 & ECF 96) in conjunction with the parties' chosen private mediator, Robert Meyer of JAMS (ECF 90 ¶ 3).

The parties held an all-day, in-person mediation session with Special Master Seebald and Robert Meyer of JAMS on March 12, 2025. *See* ECF 95 at 2. The parties were unable to reach a settlement after this session. Accordingly, the parties held a second all-day, in-person mediation session with Mr. Meyer (appearing remotely) and Mr. Seebald on April 18, 2025. *See id.* Through negotiation and with the assistance of both Mr. Meyer and Mr. Seebald, and as a result of a proposal by the mediators, the parties agreed in principle to settle this matter after this April 18, 2025 mediation session. Waldman New PA Decl. ¶ 18. Thereafter, the parties held two additional remote mediation sessions with Mr. Meyer and Mr. Seebald on May 28, 2025, and May 30, 2025, to discuss and resolve disputes concerning the structure of the Previous Agreement. *See id.* ¶ 19. Under the Previous Agreement, Capital One would have paid class members $300 million from a cash fund, and $125 million in the form of increased interest payments to class members who continued to maintain 360 Savings accounts. *See* ECF 163-1.

### D.    Approval Proceedings for the Previous Agreement

Plaintiffs moved for preliminary approval of the settlement reflected in the Previous Agreement on June 6, 2025 (ECF 161), and the Court granted preliminary approval and directed notice to the class on June 16, 2025 (ECF 174). Plaintiffs then moved for final approval on September 11, 2025. ECF 196. The NYAG, joined by seventeen other state attorneys general, moved for leave to file an *amicus* brief opposing aspects of the Previous Agreement on September 23, 2025 (ECF 206). Plaintiffs responded to the *amicus* brief and a small number of class member objections on October 9, 2025 (ECF 225) and filed a further response to late-filed class member objections on October 23, 2025 (ECF 243). The Court posed questions to the parties about the

6

Previous Agreement on October 30, 2025 (ECF 248), to which the parties responded on November 4, 2025 (ECF 253, 254). The Court denied approval of the Previous Agreement on November 6, 2025 and "direct[ed] the parties to engage in further settlement negotiations to remedy the flaws in the proposed settlement highlighted by the Court." ECF 259 at 6. On November 13, 2025, Capital One filed a pleading advising that it would agree to a settlement containing terms that would remedy such flaws. ECF 264. The parties thereafter negotiated the new Settlement, participated in joint meetings with the Special Master and attorneys from the N.Y. Attorney General's Office, and executed it on December 12, 2025. *See* Settlement Agreement; Waldman New PA Decl. ¶ 21.

## II.    The Settlement

### A.    The Settlement Class

The Settlement Class is comprised of "the persons or Entities who maintained a Capital One 360 Savings account at any time during the Class Period (i.e., from September 18, 2019 through and including June 16, 2025), including joint and co-holders of 360 Savings accounts, as reflected in the Class List to be generated by Capital One." Settlement Agreement ¶ 2.45.

### B.    Settlement Relief

The Settlement provides monetary relief in the form of direct Class Cash Payments to Settlement Class Members from the Net Settlement Fund (i.e., $425 million net of fees and expenses), determined *pro rata* based on "the approximate amount of additional interest that would have been earned on [each 360 Savings] account during the Class Period had the account received the interest rate of the 360 Performance Savings product." Settlement Agreement ¶ 5. Additionally, Capital One "will (i) maintain and service both 360 Savings and 360 Performance Savings accounts for at least two years and (ii) pay the same rate of interest on deposits in, and apply the

same terms and conditions relating to fees and minimum balances to, 360 Savings accounts and 360 Performance Savings accounts." Settlement Agreement ¶ 6.

### C.    Release

The Settlement releases the Capital One Parties from all claims that in any way concern, arise out of, or relate to the facts alleged in the Complaint or the Action, or any theories of recovery that were, or could have been, raised at any point in the Action related to the Capital One 360 Savings account product. Settlement Agreement ¶ 2.40; *id.* ¶ 16.[5]

### D.    Settlement Administration and Notice Plan

The parties have retained Epiq as the Settlement Administrator, which the Court previously approved. Epiq will continue to maintain the Settlement Website, and class notice will be distributed by email or direct mail (postcards) to all 360 Savings accountholders using contact information from Capital One's records. *See generally* Declaration of Cameron R. Azari, Esq. Regarding New Notice Plan ("Azari New Notice Decl."). Notice costs will be reduced by sending email notice to all Settlement Class Members for whom such notice was successfully delivered regarding the Previous Agreement, and postcards will be sent only to the remainder of Settlement Class Members who did not previously receive such email notice. *See id.* ¶¶ 6-10; *see also* ECF 278 at 2 (order providing that "[t]he parties may proceed with notice by (1) sending notice by email to settlement class members with identifiable and valid email addresses, and (2) sending notice by mail only to those settlement class members for whom the parties do not have email addresses or who email addresses are invalid, such that the notice emails were previously undeliverable"). Epiq will also issue a press release. *See* Azari New Notice Decl. ¶ 11. This New Notice Plan is expected

---

[5] The Settlement also releases the Plaintiffs from all claims that arise out of or relate in any way to the institution, prosecution, or settlement of the Action. *Id.* ¶ 16.2.

to once again reach 95% or more of the Settlement Class. *Id.* ¶ 14. The forms of notice are enclosed as Exhibits 2-5 to the Waldman New PA Decl.

    **E.**    **Attorneys' Fees and Expenses, and Incentive Awards for the Representative Plaintiffs**

Plaintiffs' Counsel may request reimbursement of reasonable expenses from the Settlement Fund and payment of attorneys' fees in an amount approved by the Court. Settlement Agreement ¶ 21. The Settlement further provides that Plaintiffs may request, and Capital One will not oppose, Service Awards of up to $10,000 per Plaintiff from the Settlement Fund. *Id.* ¶ 20.

## LEGAL STANDARD

The Court directs notice of a class action settlement to class members upon a showing "that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). At the preliminary approval stage, "the Court determines whether the settlement is within the range of possible approval, such that there is probable cause to notify the class members of the proposed settlement." *Albert v. Glob. Tel*Link Corp.*, No. 20-cv-01936-LKG, 2024 U.S. Dist. LEXIS 197800, at *14 (D. Md. Oct. 31, 2024) (quotation and citation omitted). "At this initial stage, the Court must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.* (quotation and citation omitted). "Preliminary approval should be granted when a proposed settlement is within the range of possible approval, subject to further consideration after a final fairness hearing at which interested parties have had an opportunity to object." *Id.* (quotation, formatting, and citation omitted).

"The primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re*

*Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991).[6] "Though the parties enjoy a strong initial presumption that the compromise is fair and reasonable, the Court must still appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14cv238 (DJN), 2016 U.S. Dist. LEXIS 33708, at *8 (E.D. Va. Mar. 15, 2016) (quotation and citation omitted).

## ARGUMENT

## I.    The Proposed Settlement is Fair, Reasonable, and Adequate

### A.    The Settlement Is Fair

Rule 23(e) requires the Court to consider whether "(A) the class representatives and class counsel have adequately represented the class; [and] (B) the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2). "When assessing the fairness of a settlement, the Court looks primarily at whether a 'settlement was reached as a result of good-faith bargaining at arm's length, without collusion.'" *Manuel*, 2016 U.S. Dist. LEXIS 33708, at *8-9 (quoting *In re Jiffy Lube*, 927 F.2d at 159)). In making this fairness determination, the Court considers four factors: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of [consumer] class action litigation." *In re Jiffy Lube*, 927 F.2d at 159. Under all of the circumstances described above, there is no doubt that this Settlement is procedurally fair. *See* ECF 259 at 2 (final approval order for Previous Agreement, noting that "the proposed settlement is fair from a procedural standpoint"); *Manuel*, 2016 U.S. Dist. LEXIS 33708, at *9 (settlement fair

---

[6] The Fourth Circuit has held that the *Jiffy Lube* standards "almost completely overlap with the new Rule 23(e)(2) factors, rendering the analysis the same." *See Herrera v. Charlotte School of Law, LLC*, 818 Fed. App'x 165, 176 n.4 (4th Cir. 2020) (citing *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 484 n.8 (4th Cir. 2020)).

where, among other things, "the parties had engaged in extensive and aggressive discovery"; "the in-person negotiations took place over the course of an entire day in front of a seasoned and respected private mediator"; and "this Court would have difficulty overstating Class Counsel's experience in the area of [relevant] class action litigation.").

### B.     The Settlement Provides Adequate Relief

Rule 23(e) further requires the Court to consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).[7] Correspondingly, in considering whether a settlement is adequate, the Fourth Circuit directs Courts to consider "(1) the relative strength of the plaintiff's case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *In re Jiffy Lube*, 927 F.2d at 159. Here, these factors weigh strongly in favor of approval.[8]

Plaintiffs' claims, while meritorious, face significant risks. As the Court noted in its previous final approval order, "Plaintiffs face many hurdles to prevail on the merits of their claims,

---

[7] There are no other agreements between the parties to identify besides the Settlement Agreement. *See* Fed. R. Civ. P. 23(e)(3).

[8] The fifth *Jiffy Lube* factor—the degree of opposition to the settlement—cannot be addressed until after the class is notified. Additionally, Capital One's solvency is not a concern, and in any event, is "beside the point given the other factors weighing in favor of preliminary approval." *Solomon v. Am. Web Loan*, Civil Action No. 4:17cv145, 2020 U.S. Dist. LEXIS 112782, at *17-18 (E.D. Va. June 26, 2020) (quotation omitted).

including class certification, *Daubert* motions and ultimately proving their claims (under various provisions of state law) by a preponderance of the evidence, and . . . the existence of numerous disputed issues creates uncertainty and risk for all parties." ECF 259 at 2. The new Settlement provides substantial relief in light of these risks.

Plaintiffs estimate, based on the parties' previously submitted expert damages analyses, that the Settlement Fund, by itself, represents between approximately 14% and 57% of what Settlement Class Members could have obtained in the aggregate for their historical losses if Plaintiffs were successful through trial and appeal. *See* Waldman New PA Decl. ¶ 23. A recovery within this range is eminently reasonable given the risks of further proceedings. For example, in the *Checking Account Overdraft* litigation, the court granted final approval to a class action settlement of $410 million, amounting to only 9% of maximum recoverable damages. *Torres v. Bank of Am. (In re Checking Account Overdraft Litig.)*, 830 F. Supp. 2d 1330, 1347, 1350 (S.D. Fla. 2011). The risks in *Checking Account Overdraft* included (as here) National Bank Act preemption, which operates as "a 'light switch' which, if successfully turned 'on' by [the bank], would have led to dismissal of the entire case, which was predicated entirely on state law." *Id.* at 1347.[9] They also included merits risks, because (as here) the alleged conduct was "by no means clearly unlawful" insofar as "[t]he account agreements disclose[d] that [the bank] may" engage in the challenged conduct. *Id.* (quotation omitted). Finally, as here, "[h]ad [the bank] defeated class certification, the value of th[e] case would have decreased to near zero." *Id.* Although "[t]he combined risks . . . were real and potentially catastrophic for the Class," the court in *Checking*

---

[9] *See also Solomon*, 2020 U.S. Dist. LEXIS 112782, at *16 ("Here, the Defendants have continually asserted that they are immune to suit . . . . This Court has repeatedly disagreed with the Defendants' positions on these issues. . . . However, it is possible that the Fourth Circuit could render a decision adverse to the Plaintiffs . . . . Accordingly, these facts point to the uncertainty of the Plaintiffs' case and, thus, weigh in favor of settlement approval.").

*Account Overdraft* observed that "standing alone, nine percent or higher constitutes a fair settlement even absent the risks associated with prosecuting these claims." *Id.* at 1346-47; *see also McLachlan v. Bd. of Trs. of the Elevator Constructors Annuity*, No. 22-4115, 2025 U.S. Dist. LEXIS 71644, at *16 (E.D. Pa. Apr. 15, 2025) ("The Settlement represents around a 5.11% recovery based on Plaintiffs' estimate of maximum damages or a 40.6% recovery based on Defendants' estimate of damages. . . . Considering the risks, the Settlement Amount—negotiated at arm's length with the hands-on involvement of an experienced mediator—is reasonable since there is a probability that proceeding to trial would have yielded no recovery. This weighs in favor of approval of the Settlement.").

The Settlement recovery is even greater considering Capital One's prospective obligation to pay the interest rate for the 360 Performance Savings account to holders of the 360 Savings account for at least two years. The New York Attorney General, in its *amicus* brief, had calculated this relief to be worth roughly $530 million to class members who have not converted or closed their 360 Savings accounts (which as of the date of the previous Final Approval Hearing held approximately 85% of the class-wide damages under Plaintiffs' damages theory). *See* ECF 210 at 11-12 (NYAG *amicus* estimating that over three years Capital One "would have saved over $800 million compared to what it would have had to pay at the 360 Performance Savings rate" (emphasis removed)); Waldman New PA Decl. ¶ 23 (85% of classwide damages remained in 360 Savings); ECF 244 at 3 (Fourth Report of the Special Master noting that as of October 22, 2025 more than 4 million customers still maintained a 360 Savings account). This prospective relief, which

13

Plaintiffs were exceedingly unlikely to obtain through litigation,[10] further bolsters the adequacy of the Settlement.[11]

The remaining Rule 23(e) and *Jiffy Lube* factors confirm the adequacy of the Settlement. ***First***, further litigation would result in significant expense and delay; even if Plaintiffs continued to prevail in this Court, there is the possibility that the Fourth Circuit could accept a Rule 23(f) petition after class certification, and the near certainty that either side would appeal after trial, with no assurance that the Fourth Circuit would view the case as favorably as this Court has so far. ***Second***, the method for distributing relief is highly effective; Settlement relief will be sent via check or electronic payment without the need to file any claims, and existing 360 Savings customers will have their interest rates matched to 360 Performance Savings without any action required on their part. ***Third***, Plaintiffs' Counsel will request no more than 15% of the Settlement Fund in attorneys' fees, which is reasonable in light of Plaintiffs' Counsel's initiative, efforts, success obtained, and contingent risk assumed. Such a percentage is significantly lower than the norm for common fund settlements, no matter the size. *See* Brian T. Fitzpatrick, An Empirical Study of Class Action Settlements and Their Fee Awards, 7 J. Empirical Legal Stud. 811, 839 (2010) (for settlements of similar size as this one, the mean and median awards were 17.8% and 19.5%, respectively). This request also amounts to less than half of the one-third contingent fee that the named Plaintiffs authorized *ex ante* in the event that Plaintiffs' Counsel were successful

---

[10] *See Gutierrez v. Wells Fargo Bank*, 704 F.3d 712, 730 (9th Cir. 2012) (the "injunctive relief ordered by the district court," even to the extent it was aimed to remedy fraudulent conduct, "is vacated because each of its terms dictates relief relating to the [bank's operation itself], which is preempted").

[11] Both the historical loss and prospective relief figures will be assessed by the Special Master, and his conclusions in his forthcoming January 23, 2026 report will be posted to the Settlement Website. *See* Waldman New PA Decl., Ex. 3, § 2 (long form notice that will reference the Special Master's report).

in obtaining a recovery for the class. *See* Waldman New PA Decl. ¶ 28; *see also Thomas v. FTS USA, LLC*, No. 3:13cv825 (REP), 2017 U.S. Dist. LEXIS 45217, at *14-15 (E.D. Va. Jan. 9, 2017) (Novak, M.J.), *report and recommendation approved* 2017 U.S. Dist. LEXIS 44946, at *1 (E.D. Va. Mar. 27, 2017) ("any discussion of percentage awards should acknowledge the age-old assumption that a lawyer receives a third of his client's recovery under most contingency agreements. . . . Consequently, a fee award of one-third of the settlement fund would be consistent with that awarded in other cases." (citing Newberg on Class Actions § 15:73 (5th ed.)).

**C.    The Settlement Treats Settlement Class Members Equitably**

Rule 23(e) requires the Court to consider whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Class members are treated equitably under the new Settlement because they will each receive a *pro rata* share of the net common fund, and those who remain Capital One customers will all receive the same higher 360 Performance Savings interest rate going forward. *See In re Zetia (Ezetimibe) Antitrust Litig.*, 699 F. Supp. 3d 448, 460 (E.D. Va. 2023) ("the *pro rata* distribution of the Settlement Fund provided in the Plan of Allocation satisfies this requirement" of equitable treatment). The proposed incentive awards to the Plaintiffs do not affect this conclusion. *See In re Peanut Farmers Antitrust Litig.*, No. 2:19-cv-00463, 2021 U.S. Dist. LEXIS 140427, at *16 (E.D. Va. July 26, 2021) ("Should the Court grant a service award to the class representatives, the reward will be fair and reasonable in accordance with the requirements under Rule 23(e)(2). Therefore, the proposed . . . class settlement treats class members equitably relative to one another.").

**II.    The Settlement Class Can Be Certified**

The Settlement Class here is the same as the one the Court previously certified for settlement purposes. The Court's preliminary approval order for the Previous Agreement analyzed the Rule 23(a) and (b)(3) requirements, found them satisfied for the purposes of settlement, and

15

conditionally certified the Settlement Class. ECF No. 174 at 6. Nothing has changed that would alter the Court's analysis,[12] and the Settlement Class should once again be certified.

## III.     The Proposed Notice Plan Should Be Approved

Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) further provides that where the proposed class is to be certified under Rule 23(b)(3):

> the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed Notices provide all of this information[13] and will be sent directly to Settlement Class Members via email, or via postcard if no valid email address is available. *See generally* Azari New Notice Decl.

---

[12] Although the Court did not finally approve the Previous Agreement, the Court specifically rejected the contention that Plaintiffs' Counsel had not adequately represented the Settlement Class. *See* Waldman New PA Decl., Ex. 7 (transcript of final approval hearing).

[13] The Court found that the notices regarding the Previous Agreement complied with Rules 23(e)(1) and 23(c)(2)(B), but that the notices nevertheless did not adequately inform 360 Savings accountholders that their "money continues to earn a fraction of the interest that it would be earning in a 360 Performance Savings account." ECF 259 at 5-6. The new long form notice contains additional explicit detail about Capital One's conduct and the estimated percentage of maximum recovery achieved by the Settlement. *See* Waldman New PA Decl., Ex. 2, at 5 (§ 1). Moreover, the historical discrepancy in interest rates between the 360 Savings and 360 Performance Savings will no longer continue to be different pursuant to the new Settlement making the prior disclosure far less of an issue now.

16

## IV.    <u>Schedule for Notice and Final Approval</u>

The Court has already adopted a schedule for notice and final approval proceedings (ECF 278 at 3), and there have been no developments to date that warrant altering that schedule.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) conditionally certify the Settlement Class, (2) appoint Plaintiffs as Class Representatives, (3) appoint Interim Class Counsel and his law firm as Class Counsel, (4) preliminarily approve the Settlement, (5) approve the Notice Plan and direct that Notice be provided to the Settlement Class Members, and (6) approve and order the opt-out and objection procedures set forth in the Settlement.

Dated: December 23, 2025

Respectfully submitted,

/s/ *Chet B. Waldman*
Chet B. Waldman (admitted *pro hac vice*)*
Carl L. Stine (admitted *pro hac vice*)
Philip M. Black (admitted *pro hac vice*)
Matthew Insley-Pruitt (admitted *pro hac vice*)
Timothy D. Brennan (admitted *pro hac vice*)
WOLF POPPER LLP
845 Third Avenue 12th Floor
New York, NY 10022
Email: cwaldman@wolfpopper.com
          cstine@wolfpopper.com
          pblack@wolfpopper.com
          minsley-pruitt@wolfpopper.com
          tbrennan@wolfpopper.com

*\*Lead Counsel for Plaintiffs and Interim Class Counsel*

/s/ *Matthew B. Kaplan*
Matthew B. Kaplan VSB #51027
The Kaplan Law Firm
1100 N Glebe Rd
Suite 1010
Arlington, VA 22201
(703) 665-9529
Email: mbkaplan@thekaplanlawfirm.com

17

*Local Counsel for Plaintiffs*

Shamis & Gentile P.A.
Andrew J. Shamis
14 N.E. 1st Ave., Suite 705
Miami, FL 33132
Email   ashamis@shamisgentile.com

Edelsberg Law PA
Scott Edelsberg
Gabriel Mandler
20900 NE 30th Avenue, Suite 417
Aventura, FL 33180
Email: scott@edelsberglaw.com
           gabriel@edelsberglaw.com

Kaliel Gold PLLC
Sophia Goren Gold
950 Gilman Street, Suite 200
Berkeley, CA 94710
Email: sgold@kalielgold.com

Ahdoot & Wolfson, P.C.
Robert Ahdoot
Christopher E. Stiner
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
521 5th Avenue, 17th Floor
New York, NY 10175
Email: rahdoot@ahdootwolfson.com
           cstiner@ahdootwolfson.com

*Counsel for Plaintiffs*

18